

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 27, 2017

**BY ECF**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   **United States v. Devon Archer et al.,**
**S1 16 Cr. 371 (RA)**

Dear Judge Abrams:

The Government writes in response to defendant Devon Archer's motion for an order requiring all defendants in the above referenced matter to immediately return the production of his emails obtained pursuant to a search warrant executed on two of his email accounts.[1]  Archer's letter motion mischaracterizes the Government's communications with him, levels baseless accusations that the Government attempted to mislead the Court, and misstates the present state of affairs.  Leaving aside counsel's unwarranted and unsupported attacks, at its heart Archer's motion relates to the Government's good faith efforts to balance Archer's privacy interests with the possibility that his "non-responsive" emails could conceivably contain *Brady* material technically in the physical custody of the Government.  As set forth below, the Government attempted to obtain, and believed it had obtained, Archer's consent in handling the issue as it did.  Despite having not voiced any concern to the Government regarding its approach, Archer now seeks relief from the Court.  For the reasons set forth below, if the Court concludes that the Government does not "possess" Archer's non-responsive emails for *Brady* purposes or otherwise has no *Brady* obligations with respect to those materials, the Government does not object to Archer's request that the full email production be replaced by a production solely of responsive documents.  If, however, the Court determines that the Government is "in possession," of such materials, it requests that Archer's application be denied.

_____

[1] Defendant Bevan Cooney has filed a motion seeking similar relief.  As with Archer's counsel, Cooney's counsel was given an opportunity to object or otherwise respond to the Government's proposed production of these materials in discovery and declined to do so until after production occurred.

## Background

On or about December 28, 2016, the Government obtained a search warrant (the "Warrant") for (i) two email accounts used by defendant Devon Archer; (ii) two email accounts used by Archer's assistant; and (iii) one email account used by co-defendant Bevan Cooney. At the end of January 2017 and before the Government had fully obtained the returns from the service providers with custody of the email accounts that were the subject of the Warrant, Archer filed a motion to stay execution of the Warrant pending his decision as to whether to file a motion to quash the Warrant. In early February 2017, the Court denied the motion and denied a subsequent motion to stay the Court's denial pending an appeal. On or about February 3, 2017, Archer then filed a motion in the Second Circuit seeking a stay of this Court's decision and also filed a petition for a writ of mandamus. The Government moved to dismiss the appeal, opposed the stay, and opposed the petition for a writ of mandamus. On or about March 7, 2017, the Second Circuit granted the Government's motion to dismiss Archer's appeal and denied his petition for a writ of mandamus.

After the Second Circuit's disposition of Archer's appeal, the Government requested that Archer, his assistant, and Cooney, each provide the Government with a list of attorneys or law firms with whom they had communicated so that such communications could be segregated for review by a privilege "wall" team that was not involved with the investigation or prosecution of this matter. In April 2017, Archer (on behalf of himself and Momtazi) provided the Government with a list of proposed search terms to use in segregating potentially privileged documents. Following a discussion with counsel, the Government agreed to run the names of all identified attorneys, as well as their law firms, and to segregate any such emails for privilege review by a wall team. Cooney provided a list of attorneys and law firms in May 2017.

The Government used the list of attorneys and law firms to segregate all potentially privileged documents for review by a wall AUSA. On July 3, 2017, the potentially privileged emails having been segregated for review, the trial team first received access to the non-privileged emails obtained pursuant to the Warrant, consisting of approximately 130,000 documents.[2] Contrary to the assertions in Archer's letter, the Government then embarked on a "responsiveness" review in order to identify emails that fell within the category of documents sought by the Warrant. The trial team used a detailed list of search terms to assist in identifying responsive documents. The use of the "responsiveness" search terms yielded approximately 58,000 potentially responsive emails. Non-privileged emails which did not hit on a search term, of which there are approximately 70,000 were deemed non-responsive and will not be further reviewed by the Government absent an additional warrant from the Court. The 58,000 potentially responsive emails that did hit on the responsiveness search terms are being further reviewed for a final determination as to responsiveness. That review is ongoing and at the completion of the responsiveness review process, the Government will produce to each of the defendants the universe of emails that are deemed responsive to the Warrant.

---

[2] Archer's motion estimates his receipt of approximately 500,000 documents. The discrepancy is likely because the Government "de-duplicated" the results prior to beginning its search.

In the meantime, the Government took steps to satisfy its Rule 16 and other obligations. As discussed in further detail below, in doing so, the Government contemplated how to treat emails deemed non-responsive to the Warrant while being mindful of its possible *Brady* obligations relating to those emails. The Government planned not to review or access the non-responsive emails without an additional search warrant but the data nonetheless remained in the Government's physical possession. There was also the possibility – however remote – that the non-responsive emails could contain exculpatory material as to various co-defendants (*e.g.*, an email received from an Archer account could contain exculpatory information as to Cooney). The Government thus determined that the course most protective of the defendants' rights to exculpatory information was to produce *all* non-privileged documents to all defendants.[3]

The Government recognized that the defendants whose email accounts were the subject of the Warrant might wish to be heard on this contemplated approach. The Government similarly recognized that if Archer or Cooney did object to this approach, their co-defendants might also wish to be heard with respect to the issue. Accordingly, on June 19, 2017, the Government emailed all defense counsel, including counsel for Archer and Cooney, explaining that:

> As you know, we obtained a SW on email accounts belonging to Archer, Cooney and Sebastian Momtazi. We have segregated all potentially privileged emails which are being reviewed by a wall team. In order not to delay production, we propose to produce *all of the emails (other than those being reviewed for privilege)* to all defendants now. We will make a supplemental production of any emails that are ultimately determined not to be privileged at the completion of the privilege review.

(Def. Sub. Ex. A) (emphasis added).

Counsel for Archer responded to the email addressing the logistics of email production but making no objection to the Government's proposed plan to produce *all* non-privileged emails to all defendants. (*Id.*). Nor did any other defendant raise an objection to the Government's plan. Accordingly, the Government prepared the non-privileged emails for production and produced them to all defendants last week (the "Email Production").

---

[3] It is well-recognized that when defendants are equally capable of reviewing voluminous discovery material for potentially exculpatory material, the Government satisfies its *Brady* obligations by simply producing the voluminous material and need not specifically direct the defendants to potentially exculpatory documents within that material. *United States* v. *Ohle*, 2011 WL 651849 (S.D.N.Y. Feb. 7, 2011) ("[A]s a general rule, the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence."). Such an approach seemed particularly appropriate here given that the Government would not be permitted by the terms of the Warrant to search the electronic data just for *Brady* material, even if it could fashion a reasonable way to do so.

On July 25, 2017, counsel for Archer emailed the Government seeking to clarify the scope of emails included in the Email Production. (*Id.*). The Government reiterated that the Email Production contained "all non-priv emails from all five [email] accounts." (*Id.*). Counsel then for the first time raised objections to the method of production, and expressed a concern that "the government has not done any review of the e-mails to determine what is within the scope of the warrant and instead simply produced the accounts in their entirety."[4] (*Id.*). Counsel demanded that the Government require "all other defendants to return all copies of the documents from the accounts associated with Mr. Archer" to be replaced with a more limited set of responsive documents. (*Id.*). The Government responded that its June 19, 2017 email had set forth its intention to make the Email Production in this manner. (*Id.*). Counsel's response was the Government's first indication that counsel had (apparently) misunderstood the June 19, 2017 email and had not realized that all non-privileged emails would be produced to all defendants. The Government declined to demand the return of the Archer Emails (in light of the issues expressed above) but suggested the entry of a protective order. (*Id.*). Although counsel believed a protective order insufficient, he requested that the Government provide a proposed protective order as an intermediate step. (*Id.*). The Government immediately drafted such an order and, at approximately 2:00 p.m. on July 26, provided it to counsel (the "Draft Order"). (Def. Sub. Ex. B).

The Draft Order was designed to cover not only the Email Production, but to cover any future production of sensitive information, and was drafted based on a prior protective order entered in the *Galanis* matter pending before Judge Castel.[5] As a result, the Draft Order contained language concerning the risk that the disclosure of materials covered by the Draft Order might lead to the identification of individuals who could be subject to the risk of intimidation or harm.

At 6:11 p.m. on July 26, defense counsel responded to the Draft Order, indicating, among other comments, that he did not believe that the language concerning the risk of intimidation or harm was appropriately included in the Draft Order and suggesting that such language would "be misleading to the Court if it were to be submitted." (Def. Sub. Ex. C). Counsel did not give the Government an opportunity to respond. Instead, at 6:35 p.m., less than 25 minutes later, counsel filed the present motion, which, among other things accuses the Government of proposing an order "that was totally inappropriate," and was totally "disingenuous, and frankly misleading to the Court." (Def. Sub. at 7, note 7).

The Government, of course, never submitted the Draft Order to the Court, as it believed it was still negotiating the language of the Draft Order with defense counsel. Indeed, at 6:55 p.m., less than an hour after counsel first suggested changes to the language of the Draft Order, the

---

[4] This is not accurate. The Government is presently undertaking a responsiveness review of the emails produced pursuant to the Warrant. As noted previously, the Government is not reviewing the more than 70,0000 emails that did not hit on the list of responsiveness search terms. The Government has deemed those emails non-responsive to the Warrant at this time.

[5] In that case, Jason Galanis had, among other things, sent threatening text messages to an individual he incorrectly believed was cooperating with the Government.

Government responded to counsel explaining that while it did believe there was a rationale for including the language at issue, it would not object to the removal of such language.

### Discussion

While acknowledging "the Court's prior decision that challenges to the search warrant should be litigated in the context of a motion to suppress," (Def Sub. at 1), Archer spends the bulk of his motion levelling baseless attacks on the Government and previewing his purported suppression arguments.  With respect to Archer's allegations concerning the purported deficiency of the Warrant itself and the Government's allegedly inadequate review processes, the Government will address those arguments if and when Archer files a suppression motion on the schedule already set by the Court.

With respect to Archer's two principal allegations of misconduct, each is without any basis in fact.  The Government endeavored in good faith to notify the defendants of its intention to produce *all* non-privileged emails to all defendants, precisely so that the defendants could lodge any objection and so that any objection could be resolved prior to the production of the emails.  When the Government received no objection to its proposed plan, it had no way of knowing that counsel had misunderstood the plain meaning of the Government's email.  Counsel's suggestion that the Government has somehow acted improperly because the Government should have known that counsel would interpret the word "all" not to mean exactly what it says, but instead to mean a subset of emails consisting only of non-privileged *responsive* emails is absurd.  The Government was attempting to avoid exactly the issue now being litigated by advising all defendants, in advance, of exactly the production plan that it was proposing.

Archer's second allegation – one even more spurious – is that the Government attempted to mislead the Court through the inclusion of certain language in a draft protective order that the Government proposed to defense counsel for discussion purposes.  Indeed, the Government ultimately *agreed* with Archer's suggestion that the language in the Draft Order be changed.  But Archer's decision, less than twenty minutes after suggesting the changes, and prior to providing the Government with an opportunity respond, to forward the Draft Order to the Court and to accuse the Government of attempting to mislead the Court through the still-to-be-negotiated language of that Draft Order reeks of gamesmanship.  The Government is, in any event, more than willing to enter into a protective order and has provided an updated version to counsel for any further comment.[6]

We turn finally to Archer's repeated claim that the Government "has far exceeded the bounds of the warrant" and has "made no effort to comply with the Warrant." (Def. Sub. at 1, 3).  That allegation is factually mistaken.  As described in further detail above, the Government has coupled the use of search terms and human review to identify and segregate responsive emails from the non-responsive emails.  It thus has and will continue to abide by the bounds of the Warrant and to deem responsive only those emails covered by the Warrant itself.   In fact, it was

---

[6] We note that despite Archer's repeated reference to the lack of a protective order Archer has not himself sought a protective order at any juncture and did not raise the issue until the Government suggested it.

the Government's efforts to comply with the Warrant and segregate those emails not responsive to the Warrant that raised for the Government the question of whether the Government should produce all non-privileged emails (as opposed to just responsive non-privileged emails) to all defendants.  It is axiomatic that the Government has an obligation under the Due Process Clause to make a timely disclosure of any exculpatory or impeachment evidence that is material and *in its possession*.  *See Brady* v. *Maryland*, 373 U.S. at 87; *Giglio* v. *United States*, 405 U.S. 150, 154 (1972) (emphasis added). As a practical matter, the execution of a search warrant on an email account requires that the Government serve the search warrant on the email service provider (the "Provider").  The Provider must then provide all emails within that account – often for a specified time period – to the Government.  The Government must then review the emails to identify those that are responsive and those that are not.[7]  The Government must, however, maintain the original production of emails from the Provider in its possession, including those that are non-responsive.  *See, e.g.*, *United States* v. *Ganias*, 824 F.3d 199, 215 (2d Cir. 2017) (recognizing that "because of the complexity of [electronic] data [] and the manner in which it is stored, the nature of digital storage presents potential challenges to parties seeking to preserve digital evidence, authenticate it at trial, and establish its integrity for a fact-finder—challenges that materially differ from those in the paper file context" and that a result the Government may reasonably be required to maintain a complete copy of digital media, even where some of the contents of the media are not covered by the search warrant at issue).  This is because the Provider can only authenticate its production if it is maintained in its originally produced form. (*Id.*). As a result, notwithstanding the Government's segregation of responsive emails, it remains, at least as a technical matter, in "possession" of the non-responsive emails.

On the other hand, while these emails are technically in the possession of the Government, the Government does not truly control them.  The Government does not deem them responsive to the Warrant and will not review them further out of an abundance of caution, absent a new search warrant from the Court. There is thus a reasonable argument that the non-responsive emails are not in the Government's possession for *Brady* or any other purpose. Understanding that all defendants had no objection to the production of the non-responsive emails, the Government chose to make a more inclusive production of emails in an effort to be reasonable and from an abundance of caution. The Government is unaware of any case law addressing the Government's *Brady* obligations with respect to electronic communications obtained pursuant to search warrant but deemed "non-responsive" to the search warrant, and which thus remain both inaccessible to the Government but technically with its physical possession.

---

[7] The Government is aware of legal challenges to the appropriateness of its re-reviewing a full set of emails produced by a Provider following any initial segregation of responsive and non-responsive emails, without obtaining a new search warrant.  Out of an abundance of caution and in order to avoid any dispute on this issue in this case, after its initial segregation of responsive and non-responsive emails, and the completion of its responsiveness review, the Government does not intend to conduct additional searches or to in any way revisit the non-responsive emails without obtaining an additional search warrant.

Accordingly, if the Court determines that the Government does not "possess" such material or otherwise has no discovery or other obligations with respect to such material, the Government would not object to Archer's request. That is, the Government would not object to the return of the Email Production to be replaced with a production solely consisting of responsive emails upon the completion of the Government's review.  If, however, the Court determines that the Government does in fact "possess" these materials for purposes of *Brady*, then it requests that Archer's request be denied so that the Government can meet its disclosure obligations.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By:  /s/ Rebecca Mermelstein
Brian R. Blais
Rebecca Mermelstein
Andrea M. Griswold
Assistant United States Attorneys
(212) 637-2521/2360/1205

cc:     All counsel of record (by ECF)