UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JASON GALANIS,<br>GARY HIRST,<br>JOHN GALANIS, a/k/a "Yanni,"<br>HUGH DUNKERLEY,<br>MICHELLE MORTON,<br>DEVON ARCHER, and<br>BEVAN COONEY,<br><br>                    Defendants. | No. 16 Cr. 371 (RA) |

## DECLARATION OF MATTHEW L. SCHWARTZ

MATTHEW L. SCHWARTZ, pursuant to 28 U.S.C. § 1746, hereby declares:

1. I am a member of the bar of this Court and of the firm Boies Schiller Flexner LLP, and am counsel of record for defendant Devon Archer in the above-captioned case.

2. I make this declaration in support of Mr. Archer's motion for severance, his motion to suppress the fruits of two Stored Communications Act warrants, and his motion to dismiss Count Two of the Indictment, for a bill of particulars, for Rule 16 discovery, for disclosure of *Brady* material, and for other related relief. Unless stated otherwise, I make this declaration based upon my personal knowledge.

3. In advance of filing these motions, and pursuant to Local Criminal Rule 16.1, I have tried over the last several weeks to reach agreement with the government on various discovery and scheduling issues.

4. On January 16, 2018, the parties reached an agreement regarding the schedule for certain pre-trial disclosures. I have attached a true and correct copy of a January 16, 2018 e-mail

1

reflecting that agreement as Exhibit 1.  As set forth below at paragraphs 43-47, Mr. Archer and the government did not reach agreement with respect to certain other issues.

5.      I have attached a true and correct copy of the government's February 9, 2017 sentencing memorandum as to John Galanis in *United States v. Galanis* (the "Gerova case"), Case No. 15 Cr. 643 (PKC) [ECF No. 378] as Exhibit 2.

6.      Exhibit 3.

7.      I have attached a true and correct copy of a December 28, 2016 affidavit sworn by FBI Special Agent Shannon Bieniek in support of two Stored Communications Act warrants (the "Bieniek Affidavit") as Exhibit 4.

8.      I have attached a true and correct copy of two Store Communications Act warrants, addressed to Google and Apptix, signed on December 28, 2016 by the Honorable Barbara Moses, as Exhibit 5.

9.      I have attached a true and correct copy of a January 26, 2017 email from Google Legal Investigations Support to Devon Archer and Matthew Schwartz, and the redacted search warrant attached to it, as Exhibit 6.

10.     I have attached a true and correct copy of a January 27, 2017 letter on behalf of Mr. Archer to the Court [ECF No. 126] as Exhibit 7.

11.     I have attached a true and correct copy of a January 30, 2017 letter from the government to the Court [ECF No. 130] as Exhibit 8.

12.     I have attached a true and correct copy of the January 31, 2017 hearing transcript [ECF No. 135] as Exhibit 9.

13.     I have attached a true and correct copy of a February 1, 2017 letter on behalf of Mr. Archer to the Court [ECF No. 132] as Exhibit 10.

14. I have attached a true and correct copy of a February 3, 2017 order as Exhibit 11.

15. I have attached a true and correct copy of a February 6, 2017 motion for an emergency stay pending appeal, and for expedited briefing and consideration of the appeal, filed on behalf of Devon Archer, Case No. 17-346 (2d Cir.) [ECF No. 19], as Exhibit 12.

16. I have attached a true and correct copy of a February 6, 2017 petition for a writ of mandamus filed on behalf of Devon Archer, Case No. 17-353 (2d Cir.) [ECF No. 3], as Exhibit 13.

17. I have attached a true and correct copy of a February 6, 2017 order of the United States Court of Appeals for the Second Circuit [ECF No. 143], as Exhibit 14.

18. I have attached a true and correct copy of a February 10, 2017 affirmation by Brian R. Blais in opposition to Devon Archer's motion for a stay and petition for a writ of mandamus, Case No. 17-346 [ECF No. 47] (2d Cir.), as Exhibit 15.

19. I have attached a true and correct copy of a March 8, 2017 order of the United States Court of Appeals for the Second Circuit dismissing Mr. Archer's appeal, 17-346 [ECF No. 83] (2d Cir.), as Exhibit 16.

20. I have attached a true and correct copy of a March 8, 2017 order of the United States Court of Appeals for the Second Circuit denying Mr. Archer's petition for a writ of mandamus, 17-353 [ECF No. 39] (2d Cir.), as Exhibit 17.

21. I have attached a true and correct copy of an April 6, 2017 letter on behalf of Mr. Archer to the government as Exhibit 18.

22. I have attached a true and correct copy of an April 7, 2017 email from the government to me, copying others, as Exhibit 19.

23. I have attached a true and correct copy of an April 12, 2017 email on behalf of Mr. Archer to the government, copying others, as Exhibit 20.

24. I have attached a true and correct copy of a July 26, 2017 letter motion on behalf of Mr. Archer [ECF No. 191] as Exhibit 21.

25. I have attached a true and correct copy of a July 18, 2017 production cover letter from the government as Exhibit 22.

26. I have attached a true and correct copy of a July 27, 2017 letter from the government to the Court [ECF No. 195] as Exhibit 23.

27. I have attached a true and correct copy of the August 3, 2017 hearing transcript [ECF No. 213] as Exhibit 24.

28. I have attached a true and correct copy of an August 14 memo endorsement by the Court [ECF No. 222] as Exhibit 25.

29. I know from reviewing documents produced by the government in July 2017 that, pursuant to the two warrants attached as Exhibit 5 hereto, the government obtained, and the trial team had access to, many thousands of e-mails and other documents from several of Mr. Archer's e-mail accounts. Among the documents seized and produced by the government were more than 700 communications solely between Mr. Archer and his wife, covered by the marital privilege, as well as numerous attorney-client privileged communications and thousands upon thousands of totally irrelevant, but deeply personal, communications.

30. The attorney-client privileged communications seized and produced by the government included not only e-mails concerning entirely unrelated business transactions, but also communications between Mr. Archer and his former attorneys concerning this very investigation. Among other things, the government produced to the defendants e-mails between

Mr. Archer and his lawyers discussing how to respond to the SEC and Grand Jury subpoenas issued as part of their coordinated investigation, and other communications concerning defense strategy. Because the government's trial team produced these documents, I know that they were not segregated as part of the government's privilege review.

31. The government also seized and produced non-responsive documents that contained highly sensitive, personal, and confidential information. These communications included e-mails between Mr. Archer and his wife concerning their children's health; e-mails about the familial burdens created by Mr. Archer's busy travel schedule; highly sensitive materials, such as family medical documents and insurance information; and highly confidential documents, such as plans for home security.

32. As soon as the Second Circuit rejected Mr. Archer's appeal, I suggested to the government a protocol for reviewing the documents responsive to the warrants that would have avoided these problems, set out in the letter attached as Exhibit 18, above. The government declined to follow Mr. Archer's suggested protocol.

33. Had the government follow Mr. Archer's suggested protocol, however, it would have caught many of the privileged documents that the government instead seized and produced, including the communications between Mr. Archer and his former lawyers in this investigation. Those communications would have hit on one or more of the following terms (which were expressly suggested to the government on April 6 as part of Mr. Archer's proposed protocol, *see* Ex. 18): attorney*, confid*, counsel*, sec, subp*, doj, priv*, us w/5 attorney*, and us w/5 office. Even using the two terms "confid*" and "priv*" would have caught any such communications that contained the standard disclaimer warnings unintended recipients against reading, using, copying, distributing, or disclosing the contents of such privileged and confidential

communications (*i.e.*, the footer that appears at the bottom of many lawyers' e-mails, or commonly-used headers such as "Attorney-Client Privileged," "Confidential Attorney Work Product," or the like).

34. Because these materials were, in fact, copied, distributed, and disclosed by the government's trial team, as evidenced by their production to Mr. Archer and all of his co-defendants, it is clear that the trial team's attempt to prevent exposure to privileged materials through the use of a "wall" AUSA has failed, and they have become tainted.

35. Due to the sensitive and privileged nature of the communications that were seized by the government, they are not attached to this Declaration, but can be provided to the Court for *in camera* review.

36. I also know that the government seized more than just e-mails from the Archer Accounts. When the government produced the entirety of the Archer Accounts, that production included documents such as Mr. Archer's browsing history, payment data, loose files that Mr. Archer stored in Google's cloud-based storage system Google Drive, Mr. Archer's Google Alerts history, and other categories of information having nothing to do with e-mail.

37. Prior to the filing of the original indictment in this case in May 2016, Mr. Archer received subpoenas from both the SEC and the U.S. Attorney's Office. The subpoenas were essentially identical, and the prosecutor who signed the Grand Jury subpoena instructed me to have any discussions about the scope of the subpoenas, or search terms, with counsel for the SEC. In my experience, this is common in coordinated SEC and criminal investigations, because by producing documents to the SEC in the first instance, they can be shared freely with the U.S. Attorney's Office, whereas documents produced in the first instance to the U.S. Attorney's Office are subject to Federal Rule of Criminal Procedure 6's grand jury secrecy rule.

38.     After negotiating search terms, date ranges, and other limitations with the SEC, Mr. Archer produced thousands of documents to both the U.S. Attorney's Office and the SEC. Mr. Archer, for example, produced over 30,000 pages of documents to the U.S. Attorney's Office on May 9, 2016, *i.e.*, the very day that the government obtained its sealed complaint. Of these, thousands came from the internet accounts that would later be the subject of the warrants attached as Exhibit 5 (the "Archer Accounts"). Even after he was charged, Mr. Archer made a further production to the U.S. Attorney's Office in the form it requested.

39.     Mr. Archer also produced nearly 9,000 pages of documents to the SEC on December 6 and 21, 2016, which Mr. Archer understands were provided to the U.S. Attorney's Office. As with the aforementioned production to the government, a great number of the documents in these productions to the SEC were taken from the Archer Accounts.

40.     Counsel for Mr. Archer, myself included, met with three Assistant United States Attorneys on May 6, 2016. Also in attendance were attorneys for the Securities and Exchange Commission and FBI Special Agent Shannon Bieniek. One of the main topics of discussion at this meeting was one of the documents referenced in the Bieniek Affidavit (*see* Ex. 4 ¶ 17.c). The following Monday, Mr. Archer made a production responsive to a grand jury subpoena; that production included all of the other documents that would end up being cited (as to the Archer Accounts) in the Bieniek Affidavit. *See* Ex. 4 ¶¶ 14.a-b, 15.a-b, 17.a-b, 18, 19.a.

41.     I have attached a true and correct copy of a November 2, 2017 production cover letter from Lisa Korologos, on behalf of the government's "taint team," as Exhibit 26.

42.     Thus far, the government has produced approximately 10,000 documents from all of the Targeted Accounts that it claims to be responsive. The most recent production was received on January 10, 2018.

43. I have attached a true and correct copy of the January 31, 2017 hearing transcript [ECF No. 135] as Exhibit 27.

44. On December 29, 2017, pursuant to Local Criminal Rule 16.1, counsel for Mr. Archer sent a letter to the government requesting information and a bill of particulars, and offering to meet and confer regarding the issues identified in the letter ahead of the deadline for the instant motions. The letter also attached prior correspondence between Mr. Archer's counsel and the government on a variety of discovery-related issues. I have attached a true and correct copy of this December 29, 2017 letter on behalf of Mr. Archer to the government as Exhibit 28.

45. The government responded by letter on January 4, 2017, stating that a bill of particular was "not required," and that "we do not believe you are entitled to the materials you demand, and we do not intend to produce them."

46. I have attached a true and correct copy of this January 4, 2017 letter from the government as Exhibit 29.

47. Since June 2016, the government has made approximately 20 separate document productions, most recently on or about January 10, 2018, as referenced above. The government has thus far produced more than 4.3 million documents from at least 70 custodians, comprising well over 5.1 million pages – or a total of more than 1,500 gigabytes of data, including massive amounts of raw forensic and native data.
The discovery has been incredibly difficult to review, and has required enormous expenditures of attorney time and money simply to get it into shape where it could be reviewed. For example:

- Many of the documents produced by the government did not indicate who the underlying custodian was. The government produced in excess of 3 million documents gathered by the Securities and Exchange Commission and explained that the documents were produced to the SEC "by multiple custodians," but virtually all of the documents lacked custodian metadata.

- The government produced entire native and forensic images of certain drives and devices, without any information about what evidence on those drives or devices might be relevant, including an 850 GB drive containing forensic images of multiple other devices with no other identifying information and which cannot be loaded into a traditional document review platform.

- The government produced numerous files that were not text-searchable.

- The government produced "documents" that were in fact each hundreds or thousands of documents, meaning that they had to be reviewed page-by-page. For example, one "document" is actually a 4,565 page scanned pdf of records from Fulton Meyer, consisting of a mix of e-mails, financials statements, and other records.

- The government stripped metadata out of certain documents. For example, the government produced to Mr. Archer certain e-mails that it obtained pursuant to the warrants attached as Exhibit 5 above, without certain critical metadata fields such as DATE_ACCESSED and TIME_ACCESSED. When Mr. Archer previously produced these exact same documents to the government, he did so with the relevant metadata.

48. Mr. Archer's lawyers have also had to spend an inordinate time working through discovery issues with the government. For example, Mr. Archer's counsel informed the government months ago that metadata was missing from the government's productions. I had to make multiple requests, and receive several metadata overlays and follow up on them, to get to the point where only a handful of fields – which, as set forth above, I know are associated with the original documents – are still missing. Where metadata was unavailable or corrupted, counsel worked in tandem with a vendor at significant expense to Mr. Archer in an attempt to isolate files of interest and then manually identify associated native image files. Certain load files were corrupted in their entirety and had to be replaced.

49. I have attached a true and correct copy of a June 17, 2016 letter from Matthew Schwartz to Brian Blais, Aimee Hector, and Rebecca Mermelstein as Exhibit 30.

50. I have attached a true and correct copy of email correspondence between the government and counsel for Mr. Archer dated from August 22, 2016 through October 13, 2016 as Exhibit 31.

51. I have attached a true and correct copy of an August 3, 2017 order [ECF No. 212] as Exhibit 31.

52. I have attached a true and correct copy of a December 28, 2017 letter from Lisa Korologos, on behalf of the government's "taint team," as Exhibit 32.

53. I have attached a true and correct copy of a June 8, 2016 letter from the government as Exhibit 33.

54. I have attached a true and correct copy of the August 3, 2017 hearing transcript as Exhibit 34.

55. I have attached a true and correct copy of a September 26, 2017 order (ECF No. 244) as Exhibit 35.

56. I have attached a true and correct copy of a September 27, 2017 letter from the government to the Court (ECF No. 245) as Exhibit 36.

57. I have attached a true and correct copy of an October 27, 2017 Order (ECF No. 264) as Exhibit 37.

58. I have attached a true and correct copy of a June 8, 2016 Hearing Transcript as Exhibit 38.

59. I have attached a true and correct copy of a December 26, 2017 letter from the government as Exhibit 39.

60. I have attached a true and correct copy of a January 4, 2018 letter from the government to the Court [ECF No. 278] as Exhibit 40.

61. I have attached a true and correct copy of a June 24, 2016 e-mail on behalf of Mr. Archer to the government as Exhibit 41.

62. I have attached a true and correct copy of a January 16, 2018 declaration by Mr. Archer as Exhibit 42.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 16, 2018
       New York, New York

                                                /s/ Matthew L. Schwartz
                                                Matthew L. Schwartz