UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

UNITED STATES OF AMERICA

      - v. -

GARY HIRST, et al.,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

    :
    :
    :
    :    S3 16 Cr. 371 (RA)
    :


**GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTIONS *IN LIMINE***


ROBERT KHUZAMI
Attorney for the United States,
Acting Under Authority Conferred by 28
U.S.C. § 515

Rebecca Mermelstein
Brendan F. Quigley
Negar Tekeei
Assistant United States Attorneys
    - Of Counsel -

**Contents**

DISCUSSION ................................................................................................................ 1

I.    The Court Should Exclude Certain Prior Bad Acts of Jason Galanis ............................ 1

II.    The Court Should Exclude Evidence of Defendant Morton's Attempted Cooperation... 8

    A.    Background................................................................................................. 8

    B.    Applicable Law ......................................................................................... 9

III.    █████████████████████████████

## TABLE OF AUTHORITIES

### Cases

*United States* v. *Aboumousssalem*, 726 F.2d 906 (2d Cir. 1984) ................................................ 3, 5

*United States* v. *Benalcazer*, No. 09 Cr. 144, 2011 WL 4553027 (N.D. Ill. Sept. 29, 2011)....... 12

*United States* v. *Blake*, 195 F. Supp. 3d 605 (S.D.N.Y. 2016) ...................................................... 11

*United States* v. *Camacho*, 353 F. Supp. 2d 524 (S.D.N.Y. 2005)................................................. 8

*United States* v. *Crowley*, 318 F.3d 401 (2d Cir. 2003)................................................................. 14

*United States* v. *Crown*, No. 99 Cr. 1044, 2000 WL 709003 (S.D.N.Y. May 21, 2000) ............. 16

*United States* v. *DiMaria*, 727 F.2d 265 (2d Cir.1984) ................................................................ 11

*United States* v. *Dinga*, 609 F.3d 904 (7th Cir. 2010) .................................................................. 11

*United States* v. *Ebbers*, 458 F.3d 11 (2d Cir. 2006)....................................................................... 7

*United States* v. *Flaharty*, 295 F.3d 182 (2d Cir. 2002) ............................................................... 15

*United States* v. *Friedman*, 854 F.2d 535 (2d Cir. 1989) ............................................................ 8, 9

*United States* v. *Hamilton*, 373 F. App'x 95 (2d Cir. 2010)......................................................... 13

*United States* v. *Hunt*, 521 F.3d 636 (6th Cir. 2008)...................................................................... 7

*United States* v. *Kadir*, 718 F.3d 115, 124 (2d Cir. 2013)............................................................ 11

*United States* v. *Levin*, No. 15 Cr. 101 (KBF), 2016 WL 299031 (S.D.N.Y. Jan. 25, 2016)....... 18

*United States* v. *Marin*, 669 F.2d 73 (2d Cir. 1982) .................................................................... 11

*United States* v. *Martoma*, No. 12 Cr. 973 (PGG), 2014 WL 31213 (S.D.N.Y. Jan. 6, 2014)....... 4

*United States* v. *Mills,* 895 F.2d 897 (2d Cir. 1990)........................................................................ 4

*United States* v. *Nachamie*, 101 F. Supp. 2d 134 (S.D.N.Y. 2000 ................................................ 3

*United States* v. *Nelson*, 365 F. Supp. 2d 381 (S.D.N.Y. 2005) ................................................... 14

*United States* v. *Paccione*, 949 F.2d 1183 (2d Cir. 1991) ............................................................ 16

*United States* v. *Puckett*, 692 F.2d 663 (10th Cir. 1982) ............................................................... 4

*United States* v. *Rabinowitz*, 578 F.2d 910 (2d Cir. 1978) ........................................................... 15

*United States* v. *Rodriguez*, 259 F. App'x 270 (11th Cir. 2007) ................................................... 8

*United States* v. *Salameh*, 152 F.3d 88 (2d Cir. 1998) ................................................................. 15

*United States* v. *Schlussel*, No. 08 Cr. 694 (JFK), 2009 WL 536066 (S.D.N.Y. Feb. 27, 2009) . 14

*United States* v. *Serna*, 799 F.2d 842 (2d Cir. 1986).................................................................... 9

*United States* v. *Sliker*, 751 F.2d 477 (2d Cir. 1984)...................................................................... 4

*United States* v. *Trzaska*, 111 F.3d 1019 (2d Cir. 1997). .............................................................. 7

*United States* v. *Watts*, 934 F. Supp. 2d 451 (E.D.N.Y. 2013).................................................... 17

**Other Authorities**

Sand, Modern Federal Jury Instructions, ......................................................................................... 4

**Rules**

Fed. R. Evid. 608(b)............................................................................................................... 12, 13

Fed. R. Evid. 806 ......................................................................................................................... 6

Fed. R. Evid. 404(b)..................................................................................................................... 3

The Government submits this memorandum of law in support of its motions *in limine*. For the reasons set forth below, the Court should exclude evidence and testimony regarding (i) certain prior bad acts of Jason Galanis, (ii) evidence of defendant Michelle Morton's attempted cooperation with the Government and regulatory authorities, (iii) ████████████████████ ████████████████████████████████████████████ ████████████████████████

## DISCUSSION

### I.      The Court Should Exclude Certain Prior Bad Acts of Jason Galanis

As the Court is aware, the Government has moved for admission of (i) Jason Galanis's prior SEC bar and (ii) his arrest and conviction, along with defendants John Galanis and Gary Hirst, in the "Gerova" case.   (*See* ECF No. 339 at 2).   Galanis's prior SEC bar is admissible because it provides context for defendant Archer's false and misleading statement to the board of Burnham Investment Trust (the "BIT Board"), an affiliate of Burnham Securities, the placement agent for the Wakpamni bonds.   (*See id.* at 5 n.2).   The Government also anticipates that associates of Galanis and the defendants will testify that it was well-known that Galanis had previously been disciplined by the SEC, which undercuts any argument that the defendants were unwittingly duped by Galanis into participating in a fraudulent scheme.

Further, the arrests and convictions of Jason and John Galanis and Gary Hirst in the Gerova case are also relevant and admissible.   First, the Gerova events show both the prior relationship of trust between Hirst and Jason Galanis and between John and Jason Galanis.   (*See id.* at 7-8).   Second, the Gerova arrests and convictions are probative of John Galanis and Hirst's knowledge and intent in this case.   (*See id.* at 8).   Third, the Gerova arrests provide context for defendant Devon Archer's lies to the BIT Board and for actions the defendants took in

attempting to manage the Wakpamni bond scheme following Jason Galanis's arrest.   (*See id.* at 7).

Assuming the Court admits this evidence, the Government has no objection to the defense citing it to argue that Galanis was a fraudster, who duped the defendants.   To be clear, and as set forth in more detail below, the evidence would not be *admissible* for that purpose, but if it is already in the record for the reasons set out above, the Government does not seek to curtail whatever *arguments* the defendants wish to make with respect to that evidence.   █████

████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

███████

████████████████████

███████████

██████████████████████████████████

████████████████████████████████████

██████████████████████████████████

██████████████████████████████████

███████████████████████████████████

██████████████████████████████████

█████████████████████████████████████

2









**B.**





## II.    The Court Should Exclude Evidence of Defendant Morton's Attempted Cooperation

The Court should preclude Morton from introducing her self-serving statements to the

Government, the SEC, the Financial Industry Regulatory Authority ("FINRA"), or other federal

authorities in 2015.

### A.  Background

In her declaration submitted in support of her pre-trial motion, Morton asserted that on

June 11, 2015, almost ten months *after* she purchased the first tranche of WLCC bonds on behalf

8

of Hughes Capital Management, she contacted a representative of FINRA to discuss her "suspicions about [Jason] Galanis." (Morton Aff. ¶ 11). Morton goes on to claim that she asked the FINRA representative "to alert the SEC so that it could open an investigation into the matter without my name being associated." (*Id.* ¶ 12). The SEC served Morton with its first set of document requests related to the WLCC bonds in July 2015. In the late summer and fall of 2015, after being approached by the FBI, Morton met with prosecutors and agents and also communicated with SEC staff. Among other things, Morton recorded two meetings with Jason Galanis.

Notably, communications from well before June 2015 reflect that Morton was concerned about the threat of investigations and litigation related to the Wakpamni bonds. For months before her contact with the FINRA representative, clients of Hughes had been barraging Morton with complaints about the WLCC bonds, which she had secretly placed into their accounts and which they were unable to sell. Morton was well aware that these complaints could lead to litigation and regulatory inquiries. For example, in a text message sent to Galanis on March 12, 2015, Morton raised concerns about "be[ing] subject to litigation or [an] sec inquiry" after she was contacted by representatives of one of the pension funds, Richmond Retirement Services:

> Got an email from an attorney and the city attorney from Richmond today about the bond. Got to figure out how to handle. Cannot be subject to litigation or sec inquiry. Gotta focus . . . Focus on the threat of a lawsuit for breach of fiduciary duty for putting the bond in an account

(GX 3004-B).

### B. Applicable Law

A defendant's statements are admissible when offered by the Government because, pursuant to Federal Rule of Evidence 801(d)(2), "[a] statement that meets the following

9

conditions is not hearsay: . . . [t]he statement is offered against an opposing party and . . . was made by the party in an individual or representative capacity. . . ."  Fed. R. Evid. 801(d)(2)(A).

However, "[w]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."  *United States* v. *Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *see also United States* v. *Kadir*, 718 F.3d 115, 124 (2d Cir. 2013) ("A defendant may not introduce his own prior out-of-court statements because they are hearsay, and . . .  not admissible." (internal quotation marks omitted)).

Further, to the extent a defendant argues that her statements are admissible as a declaration of her then-existing state of mind under FRE 803(3), that hearsay exception applies only to statements that "face forward, rather than backward."  *United States* v. *DiMaria*, 727 F.2d 265, 271 (2d Cir.1984); *United States* v. *Blake*, 195 F. Supp. 3d 605, 610-11 (S.D.N.Y. 2016) (precluding a defendant from introducing her own out-of-court statements to law enforcement officers in which she pointed the finger at co-defendants as reflecting a then-existing state of mind because such statements reflected a "self-serving explanation of past events"); *United States* v. *Dinga*, 609 F.3d 904, 908-909 (7th Cir. 2010) (affirming the rejection of a defendant's attempt to introduce evidence of his offer to take a polygraph after his arrest).

Here, Morton's self-serving efforts to purportedly attempt to raise concerns with FINRA regarding Galanis occurred well after she learned that Hughes and Atlantic clients were dismayed and contemplating legal action regarding the WLCC bonds.   Moreover, Morton's purported cooperation with the Government and the FBI occurred after (i) the SEC had served document requests on her; and (ii) the FBI had approached her, not because of steps that she

took.   (Morton Aff. ¶ 14 ("On or about August 25, 2015, agents from the Federal Bureau of

Investigation ('FBI') physically approached me about Mr. Galanis")).

Moreover, even if Morton's 2015 statements to law enforcement were not inadmissible

hearsay, which they are, they should be precluded under Fed. R. Evid. 403 because any probative

value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or

misleading the jury.   *See United States* v. *Benalcazer*, No. 09 Cr. 144, 2011 WL 4553027, at

*13-14 (N.D. Ill. Sept. 29, 2011) (holding that a "defendant's interaction with law enforcement

agents, offered to negate criminal intent, is not only irrelevant but also confusing and misleading

to the jury").   The risk of jury confusion on this issue is significant, as Judge Rakoff noted in

precluding a recent securities fraud defendant from offering evidence that he contacted the FBI

in an effort to cooperate:

> [P]utting aside even the hearsay problem, I don't see how a jury is in a position
> to evaluate his action in that regard without his taking the stand and being subject
> to cross-examination about what his motives were in doing that. I mean, his
> motives could be, well, I thought I could talk my way out of it, or his motive
> could be, I didn't think my prior attorney had the right strategy. Usually, I see
> that on the 2255. And I could go on endlessly. So I think it's both confusing and
> of very limited probative value that's more than outweighed by the possibilities
> of confusion under 403, and I think it's really, when you analyze it down,
> although offered as an act, it's really a form of communication offered as a
> hearsay, out-of-court statements; so I'm not going to allow it.

Transcript, *United States* v. *Lumiere*, No. 16 Cr. 483 (JSR) (S.D.N.Y. Jan. 6, 2017), at 11

attached as Exhibit A.   To hold otherwise would be to invite every defendant aware of an

investigation to make backward-looking exculpatory statements and then offer them as state-of-

mind evidence.

In the event the Court does not rule prior to the commencement of trial on the

Government's motion to preclude evidence that defendant Morton attempted to act as a

purported whistleblower, the Government further moves to preclude defense counsel from referencing this purported whistleblowing in his opening statement.   It is axiomatic that an opening statement may only properly address evidence which is to be presented to the jury. *United States* v. *Hamilton*, 373 F. App'x 95, 97 (2d Cir. 2010) (opening statement appropriate because it "accurately described the evidence that was ultimately presented . . . and the implications reasonably drawn from that evidence").   Accordingly, if the Court has not ruled that certain evidence subject to challenge will be admitted, it would be improper for defense counsel to reference such evidence in opening statement.   This would be doubly so here, given the Rule 403 concerns articulated above.

**III.**









## **CONCLUSION**

The Court should grant the Government's motions *in limine*.

Respectfully submitted,

ROBERT KHUZAMI
Attorney for the United States,
Acting Under Authority Conferred by 28
U.S.C. § 515

By:    /s/ Brendan F. Quigley
Rebecca Mermelstein / Brendan F. Quigley /
Negar Tekeei
Assistant United States Attorneys
(212) 637-2360 / 2190/ 2442

Dated: April 2, 2018
       New York, New York

17