# EXHIBIT 13



MICHELLE A. MORTON
CEO

November 30, 2015

Mr. David L. Chamowitz
Chamowitz & Chamowitz, PC
118 N. Alfred Street
Alexandria, VA 22314

Re: Request for information

**SENT VIA EMAIL**

Dear David –

Thank you for forwarding the email from Mr. Weiss. I have conferred with Richard on this issue so you may consider this our joint response. We appreciate your guidance and your efforts to work with opposing counsel to resolve this issue. Please rest assured that it is not our intention or desire to be uncooperative; however, we have significant questions for which we must have answers before we present all of that opposing counsel has requested.

To be candid, the timing of the request, the information requested, the source of the request, the general lack of transparency, as well as other issues, would cause concern for anyone in our position; especially given the history of the relationship. We do not dispute the fact that our financiers/investors are entitled to information. Nevertheless, we cannot ignore the fact that we have been misled in the past, nor will we ignore the fact that with the arrests of September 24, the Securities and Exchange Commission may have an interest in any decisions we make or actions we take. No one else involved may share this view, but we believe that it is the proper view.

We will present each issue for which we require clarity separately.

ISSUE I – Identity of the true Financier/Investor

We are in possession of hundreds of emails and documents showing that our primary contact and the person representing BFG Socially Responsible Investing (BFGSRI) was Jason Galanis. In May of 2014, we were introduced to Jason Galanis and Jason Sugarman as "Partners." After conducting a thorough review of our documents, we have not been able to locate any document, reference, etc. that indicates that BFGSRI is a subsidiary (wholly owned or otherwise) of Wealth Assurance/Valor Group, Ltd. or any other Valor entity. The only reference to this that we have is a possible name change of BFGSRI to Valor Asset Management indicated in the Operating Agreement. As we have

---

ATLANTIC ASSET MANAGEMENT, LLC
916 PRINCE STREET   ALEXANDRIA, VA 22314   P: 703-684-7222   F: 703-684-7799
WWW.ATLANTICASSET.COM

**GOVERNMENT EXHIBIT 1403**
16 Cr. 371 (RA)

CONFIDENTIAL

CKR0000253
SEC-SDNY_EPROD-000042586

stated before, if BFGSRI is truly a subsidiary of Valor, we must notify the Securities and Exchange Commission immediately since we believe this is material information as it relates to their investigation of the Wakpamni Bond. If this is indeed the case, we also have other questions:

1. Why wasn't this affiliation disclosed at the time of the financing of the Hughes acquisition? The Operating Agreement was signed by Hugh Dunkerley as Managing Member of BFGSRI; there is no mention of BFGSRI being a subsidiary of any company.

2. If BFGSRI is truly a subsidiary of Valor/Wealth Assurance, yet may not have been at the time of the Hughes acquisition, when did it happen and why wasn't it disclosed? These questions are important because of the appearance that the sole purpose of the financings was to place the Wakpamni bonds in our client accounts. However, we all know that things are not as they appear; therefore, clarity on this issue is so important. Since Valor benefited from these investments as the annuity investor, this information is vital. Additionally, Jason Sugarman is a Director of Burnham Financial, which also benefitted financially from the investments.

3. What are the roles of Jason Galanis and Hugh Dunkerley? Much of the information Mr. Weiss' client is requesting was provided to one or the other of these individuals, so why isn't it in his clients possession?

4. If Valor is indeed the owner of BFGSRI, why didn't they participate in a scheduled conference call with the Atlantic controller? Jason Sugarman, Andrew Godfrey, Devon Archer and I held a call on Saturday September 26, 2015 and agreed to have a follow up call (September 28) so that they could have a better "handle" on the finances. Mr. Sugarman asked Mr. Godfrey to represent him on the call. After multiple delays requested by Mr. Godfrey, we settled on a time later in the day. Mr. Godfrey simply did not show up and did not notify us that he did not plan to participate. Any allegations that we have been uncooperative can be disproven easily.

5. Both Devon Archer and Jason Sugarman are members of the Valor Board of Directors. I was introduced to both of them by Jason Galanis. On September 24, 2015, I reached out to them and Mr. Galanis to continue our discussion about accessing the capital we needed. Mr. Archer responded on that day and Mr. Sugarman responded on the following day. On the 24th, Richard and I were in New York making a presentation. In his reply to my email, Mr. Sugarman removed Mr. Galanis' email address. We scheduled a call for Saturday (the 26th) and Mr. Galanis did not participate. Even with the removal of the address, none of the participants mentioned the arrests of Mr. Galanis' and Mr. Hirst. As mentioned, Messrs. Sugarman and Archer are board members of Valor. How an individual handles a situation is up to them, but I believe that it is reasonable to believe that they would want to protect their investment if indeed Valor is the owner of BFGSRI. One way to address this would be to let me know of the arrests as it may have an impact on clients that might recognize Mr. Hirst as a former CIO of Hughes and the individual that recommended the bonds and because Mr. Galanis was our primary contact. Planning a way forward should have been

ATLANTIC ASSET MANAGEMENT, LLC
916 PRINCE STREET   ALEXANDRIA, VA 22314   P: 703-684-7222   F: 703-684-7799
WWW.ATLANTICASSET.COM

CONFIDENTIAL

CKR0000254

SEC-SDNY_EPROD-000042587

"job 1." We had to find out about the arrests on our own. We are curious as to why the disclosure was handled in this manner.

### ISSUE II – Rashaun Williams, Devon Wicker, Devon Owens Sale of Note/Board Appointment

You addressed this issue adequately in the email you sent on November 15, 2015, but I think we should revisit this issue with a few points.

- During a call on June 9, Richard and I had a conversation with Devin Wicker wherein he expressed concern about the Wakpamni Bonds and their suitability for ERISA accounts. Specifically he said that "he did not think they were appropriate investments for ERISA accounts,", that "most of the risk resides with the holders and they are not being fairly compensated for their risk," "the annuity that invests in private equity investments can invest overseas , which presents a whole lot of problems," and finally "I can understand why we have had a hard time getting this information, if I were them (Jason and Andrew), I would not want to disclose this either." Mr. Galanis and Mr. Godfrey both informed us that Devin was an expert at liquidating these types of bonds. Mr. Wicker also expressed concern because (he stated) part of his broker dealer's net capital is comprised of a partial holding of a Wakpamni issue (approximately $3 million). The other curious disclosure from Mr. Wicker was that the Wakpamni position transferred into a Bonwick account held at Morgan Stanley came from the personal account of Mr. Jason Sugarman.

- Within days of these rather significant disclosures, Mr. Wicker was working very closely with Mr. Galanis to help us liquidate the bonds from client accounts, even though we discussed the risks and inappropriateness of the investment. Fast forward to the end of September/beginning of October and Mr. Wicker is among those that BFGSRI wants to place in a position of power within Atlantic.

- We have mentioned Mr. Williams' misrepresentations of his relationship with Mr. Galanis, but there are also other issues to disclose. On September 29, 2015, I spoke with Mr. Williams after he reached out to me via email. He was made aware of our financial situation, had spoken with "our guys" and wanted to help us by providing financial assistance and buying the Note from BFGSRI. The cost of this assistance was to place Mr. Wicker, Mr. Owens, and himself in high ranking positions within the firm and alter the Operating Agreement so that they would have greater control. This proposal was made without a modicum of due diligence being performed on their part.

- At first, Mr. Williams stated that he, Wicker, and Owens had a financial partner that was not affiliated with Burnham that would finance the deal. This seemed odd given financial information we have regarding Bonwick. Then during a call on October 9, 2015, he stated that the partners (Williams, Wicker & Owens) would be making the investment themselves, through a company they collectively own called "Value Investment Group." Per Mr. Williams, the company was established for the owners to make equity investments in

ATLANTIC ASSET MANAGEMENT, LLC
916 PRINCE STREET   ALEXANDRIA, VA 22314   P: 703-684-7222   F: 703-684-7799
WWW.ATLANTICASSET.COM

CONFIDENTIAL

CKR0000255

SEC-SDNY_EPROD-000042588

firms. Their source of funds is irrelevant except for one thing. Messrs. Williams and Wicker are Principals of a broker dealer; therefore, the existence of this firm, its stated purpose, and the time allotted for the business must be disclosed to FINRA. No mention is made for these individuals, this firm, or its activities via Broker Check, which constitutes a violation of FINRA regulations.

## ISSUE III – Observations

We have additional concerns In light of the ongoing investigations, the arrests that have been made, the lack of general transparency, and our belief that the SEC investigations of Mr. Galanis and Mr. Hirst were deliberately withheld from us. Mr. Hirst refused to be included in the form ADV and then left the firm. We now believe that he was aware that he was under investigation, but failed to disclose this important fact. During a call with Mr. Dunkerley on October 9, 2015, in discussing Mr. Hirst, Mr. Dunkerley said that we (Atlantic) had nothing to worry about since Mr. Hirst was never an employee of then Hughes Capital. I told him that his assertion was untrue and that since we had a contract with him and he had been on our payroll roster, and had a Hughes email address, we could not say that he was not affiliated with the firm. It is not lost on us that a week after having this conversation, we received notice demanding that Wicker, Owens and Williams be placed on the Board. In reviewing this, as well as other events of the last year, our questions and concerns are these:

1. The form in which the requests were presented is eerily familiar to us. The steps taken were predictable. From our vantage point, greater concern should be focused on protecting Atlantic, rather than the curious data dive in which Mr. Weiss' client wishes to engage (with the exception of the financial requests). For instance, requesting the ADV. The Atlantic ADV is readily available from the SEC website.

2. With the exception of the detailed client holding information, all of the information has been given to the entity identified as Weiss' client, albeit on a rolling basis as it has become available. To adopt a posture now of "demanding due diligence" may serve the client's purposes, but it is unclear what that purpose is. Again, if there are subpoenas "flying around," we are going to need to know what the end game is.

3. If the investor is indeed Valor, then two of its Board members were aware of the deep concerns of our client and staff regarding the Wakpamni Bond and the fact that having it remain in the GYOF (Global Yield Opportunity Fund) would cost the firm the client and close to $1 million in revenue. Yet, they did nothing. Now they are expressing concern about "their" investment. This is evidenced in numerous emails and conference calls (7/1/15, 7/2/15, and 7/7/15).

4. No representatives from Valor have reached out about the bond or its status. Our compliance officer reached out to Burnham et al. for a pricing of the bond and Hugh Dunkerley replied via email stating that a price could not be provided for the bond as it was under investigation. This information was not provided to us directly when it was known.

---

**ATLANTIC ASSET MANAGEMENT, LLC**
916 PRINCE STREET   ALEXANDRIA, VA 22314   P: 703-684-7222   F: 703-684-7799
WWW.ATLANTICASSET.COM

CONFIDENTIAL

CKR0000256
SEC-SDNY_EPROD-000042589

5. Mr. Wicker's opinions on the Wakpamni bond, coupled with the current investigation of the bond by the SEC, is a significant red flag.

6. Although everyone involved was aware of the financial condition of Atlantic before the financing, no one has supported the promise to provide the needed capital. However, the same individuals have financially benefitted from the placement of the Wakpamni bonds in the Hughes and Atlantic accounts. Even those that Mr. Weiss claims to represent. It is also important to note that neither Richard nor I benefitted financially or otherwise from the placement of the bond.

7. If Valor is indeed the owner of BFGSRI, why didn't they request this information prior to the financing? Why didn't they require this information soon after the acquisition of Atlantic? Mr. Sugarman was most assuredly aware of the financial condition because he and his wife provided small financing via wire within weeks of the April 2, 2015 close date. Coincidently, this financing came only after multiple pleas from us for funds to meet payroll (which Jason Galanis and Hugh Dunkerley knew we would need prior to the close of the acquisition). Pleas that were ignored until the second Wakpamni Bond was placed in GYOF. Once placed, we received Mr. & Mrs. Sugarman's wire. Please note that we did not know Mr. Sugarman at this time, and did not ask him directly. Mr. Galanis arranged for the funds. However, the lending agreement was with a firm called Thorsdale. Mr. Sugarman and his wife never provided approval for the repayment of the funds to go to Thorsdale. Because of certain statements made by Mr. Williams, we are investigating the validity of Thorsdale and if it is subject to investigation.

8. You informed us that Mr. Weiss claimed that Atlantic was not indeed owned by Richard and I, rather, we only owned the Hughes subsidiary. As a point of clarity, Hughes acquired Atlantic through a merger and the firms were legally combined. There is no such entity as a Hughes subsidiary. The firms do not have separate tax id numbers; Atlantic operates solely under the former Hughes tax id. This assertion, coupled with the information requested, raises a significant red flag regarding how the client information will be used and to whom it will be presented. It is vital that we have transparency on this particular issue. We must have comfort that the information will not be misused or misrepresented to any third parties.

9. As Atlantic, we have been awarded an account from the New York Mayor's Fund as a minority owned firm. It is felony fraud to apply for minority or woman owned mandates if the firm is not minority owned and controlled. Galanis, Sugarman et.al were aware of our efforts.

ATLANTIC ASSET MANAGEMENT, LLC
916 PRINCE STREET    ALEXANDRIA, VA 22314    P: 703-684-7222    F: 703-684-7799
WWW.ATLANTICASSET.COM

CONFIDENTIAL

CKR0000257

SEC-SDNY_EPROD-000042590

As I have stated, we wish to work with the financiers to come to an amicable agreement, but we must have clarity on these issues before we will move forward or engage in further negotiations. I am sure you can understand that given the significant amount of misinformation we have been given, and the appearance that we our staff and our clients may have been used in an improper way, we must err on the side of caution to protect all stakeholders.

Regards,

*Michelle A. Morton*

ATLANTIC ASSET MANAGEMENT, LLC
916 PRINCE STREET   ALEXANDRIA, VA 22314   P: 703-684-7222   F: 703-684-7799
WWW.ATLANTICASSET.COM

CONFIDENTIAL

CKR0000258
SEC-SDNY_EPROD-000042591