# EXHIBIT 23

*Uniform Securities Agent*
*State Law Examination*

---

## STUDY GUIDE

---



---

**North American Securities Administrators Association, Inc.**
*1996*

GOVERNMENT
EXHIBIT
**1026**
16 Cr. 371 (RA)

© Copyright 1996
North American Securities Administrators Association, Inc.

# STUDY GUIDE
## for the
# UNIFORM SECURITIES AGENT STATE LAW EXAMINATION

Table of Contents

| Section | | Page |
|---|---|---|
| | Introduction | 1 |
| | General Scope of Securities Laws | 3 |
| I | Definitions of Terms | 5 |
| II | Licensing or Registration Requirements for Broker-Dealers, Agents and Investment Advisers | 10 |
| III | Registration of Securities, Exempt Securities and Exempt Transactions | 14 |
| IV | Fradulent and Other Prohibited Practices | 18 |
| V | Regulatory Oversight, Criminal Penalties, Civil Liabilities, Scope of Act and General Provisions | 22 |
| | Exhibit I—Uniform Securities Act | 27 |

## INTRODUCTION

The Uniform Securities Agent State Law Examination and this study guide were prepared by the North American Securities Administrators Association (NASAA) in cooperation with representatives of the securities industry and industry associations. The study guide and examination, which cover principles of state securities regulation reflected in the Uniform Securities Act (as amended to date by NASAA), have three principal objectives:

(1) to educate agent applicants regarding state securities laws and the concepts of fair dealing with investors;

(2) to provide a basis for state securities administrators to determine the level of agent applicants' knowledge of state securities laws and regulations with a single uniform examination; and

(3) to reduce the burden on the industry resulting from multiple state law examination requirements.

This study guide is designed to assist course developers and trainers in preparing training materials, lecture notes and seminar programs for examination candidates, and to assist applicants in their personal study procedures. It may also be useful as a final review checklist prior to taking the examination.

The examination consists of 50 multiple choice questions and candidates must answer 35 questions correctly to attain a passing score (70%). Candidates have one hour to complete the examination. The following summary indicates the relative importance given to the particular sections of the Study Guide and the Uniform Securities Act:

| | |
|---|---|
| Definitions of Terms ................................................... | 20% |
| Licensing or Registration Requirements for Broker-Dealers, Agents and Investment Advisers ............................................. | 15% |
| Registration of Securities; Exempt Securities and Exempt Transactions ........................................................... | 10% |
| Fraudulent and Other Prohibited Practices ................................. | 45% |
| Regulatory Oversight, Criminal Penalties, Civil Liabilities; Scope of Act and General Provisions ......................................... | 10% |
| | 100% |

Each question in the examination, the weighing of the composite examination, the examination study guide, and the method in which the examination is administered has been approved by a committee of NASAA. The examination and study guide will

1

receive ongoing review by a committee of state securities regulators. A statistical analysis of each question used in the examination will be performed to determine its reliability.

Any attempt to compromise the examination may serve to destroy its validity and usefulness. Therefore, members of NASAA intend to bring appropriate action against persons who attempt to compromise the examination in whole or in part.

It should be noted that successful completion of the Uniform Securities Agent State Law Examination does not relieve a securities agent applicant of the personal responsibility to know and abide by the specific requirements of the securities laws and regulations of the states in which he or she will transact business. Therefore, prior to becoming licensed and transacting business, applicants should become familiar with the securities laws and regulations of each and every state in which they will be licensed or registered. Copies of each state's securities law and regulations may be obtained for a nominal charge by writing the appropriate state. Furthermore, although successful completion of the examination may satisfy the agent qualification examination requirements of a particular state, it does not convey the right to transact business prior to being granted a license or registration by that state.

Before granting initial agent licensing or registration some states may require agent applicants and/or their firms to certify that the agents have reviewed their state's blue sky law and understand their responsibilities.

The North American Securities Administrators Association believes this study guide and the Uniform Securities Agent State Law Examination will significantly benefit the industry and state regulators alike. The Association wishes to express its appreciation to the Investment Company Institute, the National Association of Securities Dealers, Inc. and the Securities Industry Association for their assistance in developing and implementing the project.

## GENERAL SCOPE OF SECURITIES LAWS

1. **Dual Regulation Under Federal and State Law.**
   The securities industry, and specifically the business of selling securities and providing investment advice, is subject to governmental regulation at both the federal and state levels. It is important to note that the federal securities laws have specifically reserved the right of states to regulate securities transactions.

2. **Federal Securities Laws.**
   a. Securities Act of 1933. The Securities Act of 1933 establishes, among other things, the requirement that companies wishing to sell their securities to the public interstate commerce or by use of the mails must register their securities with the Securities and Exchange Commission through the mechanism of a registration statement and prospectus. The purpose is to provide disclosure of important information concerning the securities being offered. It should be emphasized that the cornerstone of the Securities Act of 1933 is full and fair disclosure of relevant information in the prospectus. From this disclosure, investors should be able to obtain the information necessary to make an informed investment decision as to whether or not to purchase a security. The actual merits of securities or companies issuing securities are not reviewed by the Securities and Exchange Commission.
   
   b. Securities Exchange Act of 1934. The Securities Exchange Act of 1934 requires registration of national securities exchanges and broker-dealers and public reporting by most publicly held companies, and it regulates business practices in the securities industry.
   
   c. Public Utility Holding Company Act of 1935. The Public Utility Holding Company Act of 1935 requires the registration of all public holding companies, unless exempted by rule or order, and holding company systems engaged in the electric utility business or in the retail distribution of gas.
   
   d. Trust Indenture Act of 1939. The Trust Indenture Act of 1939 requires the qualification of public issues of debt securities in excess of $1,000,000 and impose standards of independence and responsibility on the indenture trustee and requires other provisions to be included in the indenture for the protection of security holders.
   
   e. Investment Company Act of 1940. The Investment Company Act of 1940 provides for registration and regulation of investment companies, for example, mutual funds.

3

    f.  <u>Investment Advisers Act of 1940.</u> The Investment Advisers Act of 1940 provides for the registration and regulation of investment advisers.

    g.  <u>Securities Investor Protection Act of 1970.</u> The Securities Investor Protection Act of 1970 established the Securities Investor Protection Corporation (SIPC), which has the power to supervise the liquidation of securities firms which find themselves in financial difficulties, and to arrange for the payment of claims asserted by their customers.

3.    **Administration of the Federal Securities Laws.**

The Securities and Exchange Commission (SEC) is the federal agency charged with the principal responsibility for the administration and enforcement of the federal securities laws. The National Association of Securities Dealers, Inc. (NASD) and securities exchanges regulate the daily securities activities of their member broker-dealers and agents.

4.    **State Securities Laws.**

The state securities laws are commonly referred to as "blue sky" laws. These laws generally provide for the regulation and registration of broker-dealers, investment advisers and agents, and the registration of securities and regulation of their sale.

The purpose of this Study Guide is to summarize and explain the basic concepts of state regulation of the securities industry by reviewing the Uniform Securities Act, which Act has been adopted or substantially adopted in approximately 35 states. The discussion of the Uniform Securities Act has been broken down into five basic sections:

    a.  Definitions of Terms;

    b.  Licensing or Registration Requirements for Broker-Dealers, Agents and Investment Advisers;

    c.  Registration of Securities, Exempt Securities and Exempt Transactions;

    d.  Fradulent and Other Prohibited Business Practices; and

    e.  Regulatory Oversight, Criminal Penalties, Civil Liabilities, Scope of the Act and General Provisions.

The applicable section of the Uniform Securities Act is listed at the end of each topic. Selected information follows, refer to the referenced sections of the Act for complete explanations.

## SECTION I

## DEFINITIONS OF TERMS

1. **Agent.**

   The term "agent" means any individual other than a broker-dealer who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities. However, the term "agent" does not include an individual who represents an issuer in:

   a. effecting transactions in certain securities exempted under the Act, for example, U.S. government and municipal securities, Canadian government and other specified foreign securities, securities of U.S. banks, savings institutions or trust companies, commercial paper with maturities of 9 months or less, or investment contracts issued in connection with an employee's stock purchase, savings, pension, profit sharing, or similar benefit plan;

   b. effecting certain transactions exempted under the Act, for example, isolated non-issuer transactions, transactions between the issuer and underwriters, or transactions with savings institutions or trust companies;

   c. effecting transactions with existing employees, partners or directors of the issuer if no commission or other remuneration is paid or given directly or indirectly for soliciting any person in the state.

   A partner, officer or director of a broker-dealer or issuer is an agent only if he or she effects or attempts to effect securities transactions in the state. [Section 401(b)]

   * * * COMMENT * * *

   **Some state securities laws include within the definition of an "agent" persons representing investment advisers.**

2. **Broker-Dealer.**

   The term "broker-dealer" means any person engaged in the business of effecting transactions in securities for the account of others or for his or her own account. However, the term "broker-dealer" does not include:

   a. an agent;

 b. an issuer (this exclusion is not available in many states);
 c. a bank, savings institution, or trust company; or
 d. a person who has no place of business in the state if:

  (1) he or she effects transactions in the state exclusively with or through

   (a) the issuers of the securities involved in the transactions,
   (b) other broker-dealers, or
   (c) banks, savings institutions, trust companies, insurance companies, investment companies (as defined in the Investment Company Act of 1940), pension or profit sharing trusts, or other financial institutions or institutional buyers, whether acting for themselves or as trustees; or

  (2) the person is licensed under the securities act of a state in which the person maintains a place of business and the person offers and sells in this state to a person who is an existing customer of the person and whose residence is not in this state. [Section 401(c)]

3. **Investment Adviser.**
The term "investment adviser" means any person:

 a. who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities; or,
 b. who, for compensation and as a part of a regular business, issues or promulgates analyses or reports concerning securities;
 c. including financial planners and others who, as an integral component of other financially related services, provide investment advisory services to others for compensation and as a part of a business or who hold themselves out as providing such services to others for compensation. [Section 401(f)]

However, the term "investment adviser" does not include the following:

 a. Investment Adviser Representative.
 b. Institutions. A bank, savings institution, or trust company;
 c. Professionals. A lawyer, accountant, engineer, or teacher whose perfor-

6

mance of these services is solely incidental to the practice of his or her profession;

d. Broker-Dealers. A broker-dealer or its agent whose performance of these services is solely incidental to the conduct of its business as a broker-dealer and who receives no special compensation for such services;

e. Publishers. A publisher of any newspaper, news column, newsletter, news magazine, or business or financial publication or service, whether communicated in hard copy form, or by electronic means, or otherwise, that does not consist of the rendering of advice on the basis of the specific investment situation of each client;

f. Persons Designated by Rule. Such other persons not within the intent of this definition as the Administrator may, by rule or order, designate. [Section 401(f)]

4.   **Investment Adviser Representative.**
The term "investment adviser representative" means any partner, officer, or director of an investment adviser or any person controlling or controlled by an investment adviser, including an employee who provides investment advice to clients. [Section 401(g)]

5.   **Issuer.**
The term "issuer" means any person who issues or proposes to issue any security. [Section 401(h)]

6.   **Security.**
The term "security" means any:

a. note;
b. stock;
c. treasury stock;
d. bond;
e. debenture;
f. evidence of indebtedness;
g. certificate of interest or participation in any profit sharing agreement;
h. collateral trust certificate;
i. pre-organization certificate or subscription;
j. transferable share;
k. investment contract;
l. voting trust certificate;

m. certificate of deposit for a security;

n. certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; or,

o. in general, any interest or instrument commonly known as a "security" or any certificate of interest or participation in, temporary or interim certificate for, receipt for guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

However, the term "security" does not include:

a. any insurance or endowment policy, or

b. annuity contract under which an insurance company promises to pay a fixed sum of money either in a lump sum or periodically for life or for some other specified period. (Many states have excluded from the definition of a security, variable annuity contracts issued by insurance companies.) [Section 401(m)]

### * * * COMMENT * * *

The proper determination of what is or is not a security is crucial to broker-dealers, investment advisers, or agents properly conducting their activities in compliance with state securities laws. Many questions have been raised relating to what constitutes a security. For the most part, these questions have involved special types of investment instruments which are not in the form of stocks, notes, or other traditional securities.

Chief among the types of interests which have been held in certain circumstances to be securities are arrangements known as "investment contracts." As established by the federal courts, the basic test for determining whether a specific investment comes within the definition of a security is whether the person invests his or her money in a common enterprise and is led to expect profits from the essential managerial efforts of the promotor or a third party. These arrangements may take the form of interests in oil and gas drilling programs, real estate condominiums and cooperatives, farm lands or animals, commodity option contracts, whiskey warehouse receipts, multi-level distributorship arrangements, and merchandising marketing schemes.

Questions concerning whether a proposed investment arrangement is a security should be directed to the broker's compliance department, in the first instance, or to the appropriate state or federal regulatory authority.

8

6.     **Miscellaneous Definitions.**

    a.  <u>Administrator.</u> The Uniform Securities Act provides that the Administrator (or such other designated office such as Commission, Commissioner, Secretary, etc.) will administer the Act. [Sections (401(a) and 406]

    b.  <u>Guaranteed.</u> The term "guaranteed" means guaranteed as to payment of principal, interest or dividends. [Section 401(e)]

    c.  <u>Non-issuer.</u> The term "non-issuer" means not directly or indirectly for the benefit of the issuer. [Section 401(i)]

    d.  <u>Offer/Offer to Sell.</u> The term "offer" or "offer to sell" includes every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value. [Section 401(k)]

    e.  <u>Person.</u> The term "person" means any individual, a corporation, a partnership, an association, a joint stock company, a trust where the interests of the beneficiaries are evidenced by a security, an unincorporated organization, a government or a political subdivision of a government. [Section 401(j)]

    f.  <u>Sale/Sell.</u> The term "sale" or "sell" includes every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value. [Section 401(k)]

## SECTION II

### LICENSING OR REGISTRATION REQUIREMENTS
### FOR
### BROKER-DEALERS, AGENTS AND INVESTMENT ADVISERS

1.   **Licensing/Registration Requirements.**

   a.   <u>Broker-Dealer.</u> It is unlawful for any person to transact business in the state as a broker-dealer unless registered as a broker-dealer under the Act. [Section 201(a)]

   b.   <u>Agent.</u> It is unlawful for any person to transact business in the state as an agent unless registered under the Act. It is also unlawful for any broker-dealer or issuer to employ an agent unless the agent is registered. [Sections 201(a) and (b)]

                        * * * COMMENT * * *

**Some states do not require agents to be registered when such agents represent a broker-dealer or issuer in effecting certain exempt transactions.**

   c.   <u>Investment Adviser.</u> It is unlawful for any person to transact business in the state as an investment adviser or an investment adviser representative unless:

      (1)   he or she is so registered under the Act;
      (2)   he or she has no place of business in this state and (A) his or her only clients in this state are investment companies or certain other institutions, or (B) he or she does not direct business communications into the state to more than five non-institutional clients; or
      (3)   his or her only clients in the state are certain institutional investors. [Section 201(c)]

2.   **Licensing/Registration Applications.**
   A broker-dealer, agent or investment adviser may obtain an initial or renewal registration by filing with the Administrator an application together with a consent to service of process. [Section 202(a)]

* * * COMMENT * * *

All states prescribe filing and/or examination fees in connection with the filing of an application for registration and those fees vary in amount from state to state.

3.     Licensing/Registration Standards.

    a.  Broker-Dealer.

        (1)  Minimum Capital. The Administrator may require that the broker-dealer have a minimum net capital as a condition of registration. [Section 202(d)]

        (2)  Surety Bond. The Administrator may require registered broker-dealers to post surety bonds in amounts and under conditions which the Administrator may determine. [Section 202(e)]

        (3)  Examinations. The Administrator may provide for a qualification examination which may be written or oral or both. Depending on the state, the examination may be required to be taken by one or more officers or executive officers of the broker-dealer. [Section 204(b)(6)]

    b.  Agent.

        (1)  Surety Bond. The Administrator may require registered agents to post surety bonds in amounts and under conditions which the Administrator may determine. An appropriate deposit of cash or securities must be accepted instead of a bond. [Section 202(e)]

        (2)  Examinations. The Administrator may provide for a qualification examination which may be written or oral or both. [Section 204(b)(6)]

        (3)  Notification Requirements on Termination of Relationship. When an agent begins or terminates a connection with a broker-dealer or issuer, or begins or terminates those activities which make him or her an agent, the agent as well as the broker-dealer or issuer must promptly notify the Administrator. [Section 201(b)]

    c.  Investment Adviser.

        (1)  Minimum Capital. The Administrator may require minimum financial requirements for registered investment advisers. [Section 202(d)]

11

(2) <u>Surety Bond.</u> The Administrator may require registered investment advisers to post surety bonds in amounts and under conditions which the Administrator may determine. [Section 202(e)]

(3) <u>Examinations.</u> The Administrator may provide for a qualification examination, which may be written or oral, or both. Depending upon the state, an examination may be required to be taken by one or more officers, or executive officers, and/or investment counselors actually managing client accounts where such clients reside in the state. [Section 204(b)(6)]

4.    **Term of License/Registration.**

Every broker-dealer, investment adviser and agent registration expires December 31 unless renewed. [Section 201(e)]

5.    **Post Licensing/Registration Provisions.**

a.    <u>Filing of Sales and Advertising Literature.</u> The Administrator may require the filing of any prospectus, pamphlet, circular, form letter, advertisement, or other sales literature or advertising communication addressed or intended for distribution to prospective investors, including clients or prospective clients of an investment adviser, unless the security or transaction is exempted under the Act. [Section 403]

b.    <u>Record-Keeping Requirements.</u> Every registered broker-dealer and investment adviser must make and keep such accounts, correspondence, memoranda, papers, books, and other records as the Administrator by rule prescribes. All records must be kept for three years unless the Administrator prescribes otherwise for particular types of records. (Compliance with the requirements of the SEC concerning preservation of records satisfies most states' record-keeping requirements.) [Section 203(a)]

c.    <u>Financial Reports.</u> Every registered broker-dealer and investment adviser must file such financial reports as the Administrator prescribes. [Section 203(c)]

d.    <u>Requirement to Update Information.</u> If the information contained in any document filed with the Administrator (such as a registration application) is or becomes inaccurate or incomplete in any material respect, the registrant must promptly file a correcting amendment. [Section 203(d)]

12

e. <u>Authority of Administrator to Conduct Examinations.</u> All records of a broker-dealer or investment adviser are subject at any time or from time to time, to such reasonable periodic, special, or other examination by representatives of the Administrator, within or without the state, as the Administrator deems necessary or appropriate in the public interest or for the protection of investors. [Section 203(e)]

13

## SECTION III

### REGISTRATION OF SECURITIES; EXEMPT SECURITIES AND EXEMPT TRANSACTIONS

1. **Registration Requirement.**

   It is unlawful for any person to offer or sell any security in this state unless:

   a. it is registered under the Act; or
   b. the security or transaction is exempt under section 402. [Section 301]

2. **Types of Securities Registrations.**

   a. <u>Registration by Filing.</u> Registration by filing is generally available for securities of companies that have achieved a specified level of performance, measured by such things as: length of time in business; number of public shareholders and market makers; limitations on failure to pay dividends or on default; stock price; obligations to file certain documents with the SEC; and net worth. Notification is accomplished by filing with the Administrator a statement demonstrating eligibility to proceed and describing the terms of the offering and the names of the underwriters, together with a copy of the offering circular or prospectus to be used. Not all states provide for this type of registration. [Section 302]

   b. <u>Registration by Coordination.</u> An application to register securities by coordination may be filed for any security as to which there is a currently pending application to register with the SEC under the Securities Act of 1933. Registration by coordination is effected by filing with the Administrator a registration statement containing a copy of the prospectus as filed under the Securities Act of 1933, the amount of the securities to be offered in the state and a list of the other states in which the offering will be filed. The registration statement on file with the Administrator becomes effective at the same time as the federal registration provided it has been on file for a required number of days and provided no order has been issued by the Administrator denying the registration. Any post effective amendment to the federal registration must also be filed with the Administrator. [Section 303]

14

c.  Registration by Qualification. Any security may be registered by quali-
fication by filing with the Administrator a registration statement contain-
ing specified information about the issuer, including a recent balance
sheet and a copy of the proposed offering circular. Securities will be
registered by qualification when there is to be no registration of the
securities with the SEC or when the SEC registration has already become
effective. [Section 304]

3.   **Exempt Securities.**

The following securities are exempted from the registration and the advertis-
ing filing requirements of the Act *but not* its anti-fraud provisions:

a   Government Securities. Any security issued or guaranteed by the United
States of America, any state or political subdivision or any agency of the
foregoing. Similarly, securities issued by Canada, any provinces thereof,
or any other recognized foreign government are also exempt. Industrial
revenue bonds and other securities not backed by the taxing power of a
state or local unit of government are subject to special rules and require-
ments in some states.

b.  Financial Institution Securities. Any security issued by and representing
an interest in, or debt of, or guaranteed by domestic banks, savings and
loan associations or credit unions.

c.  Public Utility and Common Carrier Securities. Any security issued or
guaranteed by any railroad, common carrier, or a utility which is regu-
lated by the Interstate Commerce Commission, or state Public Service
Commission.

d.  Securities Listed on Stock Exchanges. Any security listed on the New
York or American Stock Exchanges or other approved securities ex-
changes (or securities approved for listings) and any securities equal or
senior to such securities.

e.  Not-for-Profit Enterprise Securities. Any security issued by a person
organized and operated not-for-profit, but exclusively for religious or
charitable purposes.

f. Commercial Paper. Any commercial paper which evidences an obligation to pay cash within nine months of the date of issuance, if it is in denominations of at least $50,000 and is highly rated from a rating organization. [Section 402(a)]

### * * * COMMENT * * *

**The above list only identifies some of the securities which are exempted under the Act. A complete listing of all exempt securities is contained in section 402(a) of the Act.**

4.     **Exempt Transactions.**

The following transactions are exempted from the registration and the advertising filing requirements of the Act but not as its anti-fraud provisions:

a. Isolated "Non-Issuer" Transactions. Any isolated non-issuer transaction, whether effected through a broker-dealer or not. The term "isolated" is narrowly defined in most states.

b. "Non-Issuer" Transactions in Outstanding Securities. Any non-issuer transaction in an outstanding security (i.e., normal market trading) if: the issuer has a class of securities subject to certain registration and reporting requirements of the Securities Exchange Act of 1934, or registered under the Investment Company Act of 1940; or has filed comparable information with the Administrator.

c. Unsolicited Transactions. Any non-issuer transaction effected by or through a registered broker-dealer pursuant to an unsolicited order or offer to buy; but the Administrator may require that the customer acknowledge upon a specified form that the sale was unsolicited, and that a signed copy of each such form be preserved by the broker-dealer for a specified period.

d. Fiduciary Transactions. Any transaction by an executor, administrator, sheriff, marshall, receiver, trustee in bankruptcy, guardian or conservator.

e. Transactions With Financial Institutions. Any offer or sale to a bank, savings institution, trust company, insurance company, registered investment company, pension or profit-sharing trust, or other financial institution or institutional buyer, or to a broker-dealer, whether the purchaser is acting for itself or as trustee.

f.  Private Placement Transactions. Any transaction, pursuant to an offer directed by the offeror to not more than ten persons (other than certain financial institutions) in this state during any period of twelve consecutive months, whether or not the offeror or any of the offerees is then present in the state, if:

(1) the seller reasonably believes that all the buyers in the state (other than certain financial institutions) are purchasing for investment; and

(2) no commission or other remuneration is paid or given directly or indirectly for soliciting any prospective buyer in the state (other than financial institutions).

The Administrator may withdraw, modify or further condition this exemption. [Section 402(b)]

### * * * COMMENT * * *

The transactions listed above highlight only some of the exempt transactions contained in the Act. A complete list of all exempt transactions may be found in section 402(b).

Private Placement Transactions. There are important differences between federal and state law with respect to private placements. Under Section 4(2) of the Securities Act of 1933 and Regulation D promulgated thereunder, there is an exemption from federal registration for "private placements" which meet prescribed tests relating to the wealth and sophistication of the investors, their access to information concerning the issuer, and the manner in which the offering is made and the number of purchasers. On the other hand, the Uniform Securities Act's private placement exemption—Section 402(b)(9)—is based primarily on the making of a limited number of offers (10) to persons in the state within a period of 12 consecutive months and the nonpayment of sales commissions.

Thus, the Uniform Act exemption is both broader and narrower than the comparable federal exemption. It is broader in that up to ten offers and sales may be made in each state, there are no special suitability requirements for offerees, and no requirements that the offerees have access to prescribed information. But it is narrower in that only a limited number of offers may be made, and no commissions may be paid. A number of states have modified the Uniform Act exemption or adopted additional provisions similar to Regulation D. Reference to the law of each state is imperative.

This comment is meant only to emphasize the complexity of private placement transactions and it should not be relied upon as an opinion or statement of law regarding such transactions.

17

# SECTION IV

## FRAUDULENT AND OTHER PROHIBITED BUSINESS PRACTICES

1. **Sales and Purchases.**

    It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

    a. to employ any device, scheme, or artifice to defraud,

    b. to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

    c. to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. [Section 101]

2. **Advisory Activities.**

    a. It is unlawful for any person who receives any consideration from another person primarily for advising the other person as to the value of securities or their purchase or sale,

       (1) to employ any device, scheme, or artifice to defraud the other person; or

       (2) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon the other person; or

       (3) to act as principal for his or her own account and engage in transactions with clients without making certain disclosures; or

       (4) to engage in dishonest or unethical practices (which the Administrator may by rule define).

    b. In soliciting advisory clients, it is unlawful for any person to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

    c. It is unlawful for any investment adviser to enter into, extend, or renew any investment advisory contract unless it provides in writing

18

(1) <u>No Sharing in Profits;</u> that the investment adviser shall not be compensated on the basis of a share of capital gains upon or capital appreciation of the funds or any portion of the funds of the client;

(2) <u>No Assignment Without Consent;</u> that no assignment of the contract may be made by the investment adviser without the consent of the other party to the contract; and

(3) <u>Notification of Management Changes;</u> that the investment adviser, if a partnership, shall notify the other party to the contract of any change in the membership of the partnership within a reasonable time after the change; and

d.  It is unlawful for any investment adviser to take or have custody of any securities or funds of any client if

(1) the Administrator by rule prohibits custody; or

(2) in the absence of a rule, the investment adviser fails to notify the Administrator that he or she has or may have custody. [Section 102]

3.   **Prohibited Business Practices.**

State securities laws prohibit agents from engaging in dishonest or unethical business practices or from taking unfair advantage of clients. These prohibitions, which may or may not be specifically defined in a particular state's blue sky law, apply to offers or sales to investors or to purchases from investors.

While some forms of dishonest or unethical practices are easy to identify, many are not. Generally, each agent, relying on his or her own common sense and integrity, should be able to determine if his or her business practices are dishonest or unethical or if he or she is taking unfair advantage of a client.

Set forth below are many, but certainly not all, of the acts which have been committed by agents that have been held to constitute fraudulent, dishonest or unethical business practices or taking unfair advantage of clients:

a.   <u>Misleading or Untrue Statements.</u> An agent may not make any misleading or untrue statements of material fact in connection with either the purchase or sale of a security. For example, the following could be untrue statements of a material fact:

(1) inaccurate market quotations.

(2) incorrect statements of an issuer's earnings or projected earnings.

19

    (3) inaccurate statements as to the amount of commission or mark-up/mark-down to be charged for effecting a transaction.

    (4) telling customers that exchange listing of a security is anticipated, without knowledge of the truth of such a statement.

    (5) telling a customer that a security registered with the Securities and Exchange Commission or a state securities Administrator has been "approved" by such regulators.

b. <u>Failure to State Important Facts.</u> An agent may not omit to state a material fact necessary to make his or her statements not misleading in light of the surrounding circumstances. This means that agents may not be deliberately selective in what they choose to tell a customer.

c. <u>Inside Information.</u> Making recommendations on the basis of material inside information about an issuer or its securities, which information has not been made public.

d. <u>Suitability of Recommendations to and Transactions for Customers.</u>

    (1) Failure to make reasonable inquiry of customers as to their financial situations and needs and investment objectives.

    (2) Recommending securities transactions to customers without regard to their financial situation or needs or investment objectives.

    (3) Recommending the purchase or sale of a security without reasonable grounds for the recommendation.

    (4) Churning customer accounts, i.e., inducing transactions solely to generate commissions without regard to customers' best interests.

    (5) Inducing transactions in customer accounts which are excessive in size in view of the customers' financial resources.

    (6) Failure to sufficiently describe the important facts and risks concerning a transaction or set of transactions.

e. <u>Other Prohibited Business Practices.</u>

    (1) Accepting orders on behalf of customers from persons other than the customers without first obtaining third party trading authority.

    (2) Borrowing money or securities from a customer.

    (3) Commingling (mixing) customers' funds with the agent's own funds.

    (4) Deliberately failing to follow a customer's instructions.

(5) Effecting transactions for or on behalf of customers without specific authority to do so.

(6) Effecting transactions with a customer not recorded on the regular books or records of the agent's employing broker-dealer, unless the transactions are disclosed to, and authorized in writing by the broker-dealer prior to execution of the transactions.

(7) Exercising discretionary authority in a customer's account without first obtaining written discretionary authority from the customer.

(8) Failing to bring customers' written complaints to the attention of the agent's employing broker-dealer.

(9) Failing to inform a customer that certain transactions will involve larger than ordinary commissions, tax or transaction costs.

(10) Guaranteeing customers a profit, a specific result or guaranteeing against loss.

(11) Misrepresenting to customers the status of their accounts.

(12) Participating in activities or transactions which constitute market manipulation, such as phony market quotations, "wash sales," "matched" purchases or sales, and other transactions which may reasonably be expected to distort the trading in a security.

(13) Participating in transactions which create the misleading appearance of active trading in a security.

(14) Promising to perform certain services on a customer's behalf, without any intent to perform such services or without being properly qualified to perform such services.

(15) Sharing in the profits or losses in customer accounts without the written consent of the customer and the agent's employing broker-dealer and not in relationship to the agent's personal funds invested in the account.

(16) Soliciting orders for unregistered non-exempt securities.

(17) Representing that the Administrator approves of the broker-dealer's or agent's abilities.

21

SECTION V

**REGULATORY OVERSIGHT, CRIMINAL PENALITIES,**
**CIVIL LIABILITIES; SCOPE OF THE ACT AND GENERAL PROVISIONS**

1.    Regulatory Oversight.

    a.  Authority to Deny, Suspend or Revoke Registrations.

        (1) Broker-Dealers, Agent, Investment Advisers and Investment Adviser Representatives. An Administrator may by order deny, suspend, or revoke any registration (whether as a broker-dealer, agent, investment adviser or investment adviser representative); or censure, suspend, bar or limit the activities of any registrant, if the Administrator finds

           (a)  that the order is in the public interest, and

           (b)  that the applicant or registrant or any partner, officer, or director, or any person occupying a similar status or performing similar functions or any person directly or indirectly controlling the broker-dealer, or investment adviser:

                1.  Misleading Application. Has filed an application which is materially incomplete or misleading with respect to any material fact.

                2.  Willful Violation of Act. Has willfully violated or willfully failed to comply with any provisions of the Act.

                3.  Conviction Within 10 Years. Has been convicted, within the past 10 years, of any misdemeanor involving a security or any aspect of the securities business, or a felony.

                4.  Is Subject To Injunction. Is permanently or temporarily enjoined by any court of competent jurisdiction from engaging in or continuing any conduct or practice involving any aspect of the securities business.

                5.  Is Subject to Suspension or Revocation. Is the subject of an order of the Administrator denying, suspending, or revoking registration as a broker-dealer, agent, investment adviser, or investment adviser representative.

22

6. <u>Is Subject to Certain Adjudication.</u> Is the subject of an adjudication or determination within the past 10 years by a securities or commodities agency or the Administrator of any state, that the person has violated the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940 or the Commodity Exchange Act, or the securities or commodities law of any state.

7. <u>Guilty of Dishonest Practices.</u> Has engaged in dishonest or unethical practices in the securities business.

8. <u>Insolvent.</u> Is insolvent, either in the sense that liabilities exceed assets, or in the sense that obligations cannot be met as they mature.

9. <u>Not Qualified.</u> Is not qualified on the basis of such factors as training, experience, or knowledge of the securities business. (An Administrator may not deny, suspend or revoke a registration solely on the basis of lack of experience.) [Section 204(a)]

10. <u>Failure to Reasonably Supervise.</u> [Section 204(a)(2)(J)]

11. <u>Denial or Revocation of License.</u> The applicant's right to do business in the securities industry was denied or revoked by any other state, federal or foreign governmental agency or self-regulatory organization for cause, or the applicant was subject to an order in criminal, civil or administrative proceedings for securities or fraud-related violations of the law of any state, federal or foreign governmental unit. [Section 204(a)]

(2) <u>Securities.</u> An Administrator may issue a stop order denying effectiveness to, or suspending or revoking the effectiveness of any registration statement if he or she finds that the order is in the public interest, and that:

(a) <u>Misleading Application;</u> the registration statement is incomplete in any material respect or contains any false or misleading statements;

(b) <u>Illegal Business Activities;</u> issuer's enterprise or method of business is illegal where performed;

23

(c) Subject to Injunction; the security registered is the subject of an injunction entered by a court or any other federal or state act applicable to the offering;

(d) Fraudulent Offering; the offering would operate as a fraud on purchasers, or is made on terms which are unfair or inequitable; or

(e) Excessive Offering Expenses or Promoter's Fees; the offering would be made with unreasonable underwriter's compensation, promoter's profits or options. [Section 306]

* ☼ * COMMENT * * *

A complete list of the cause for denial, suspension or revocation of registrations may be found in Sections 204 and 306 of the Act. Furthermore, the Act provides that Administrators must provide notice to and an opportunity for hearing to persons affected by such actions. The Act also provides for judicial review of orders. These provisions are set forth in Sections 204, 306, and 411 of the Act.

b. Investigations and Subpoenas. The Administrator may conduct investigations for the purpose of determining if persons have or are about to violate the Act. These investigations may be private or public. The Administrator may, by subpoena, compel persons to testify and/or produce records in connection with investigations. If a person refuses to obey a subpoena, the Administrator may petition the appropriate court for enforcement of it. [Section 407]

c. Injunctions and Cease and Desist Orders. The Administrator may petition the court to enjoin persons from violating or attempting to violate the Act. Upon a proper showing the court may appoint a receiver for the defendant's assets. The Administrator also may issue cease and desist orders. [Section 408]

2.   Criminal Penalties.
Persons convicted of willful violations of the Act may be subject to imprisonment and/or fines for each violation. The number of years of imprisonment and/or amount of fines which may be imposed on persons found guilty of criminal offenses under the blue sky laws vary from state to state. [Section 409]

3. **Civil Liabilities.**

A person who offers or sells a security in violation of certain provisions of the Act, or an investment adviser who commits certain violations of the act in connection with rendering advice, is liable to the person purchasing such security (or the advisory client) for the consideration paid for the security (or the advice), plus interest (at the "legal" rate in most states) per year from the date of the purchase, plus attorney's fees, less the amount of income received on the security by the purchaser, upon tender of the security, or for damages if the purchaser no longer owns the security. The number of years for which a person may be held civilly liable for illegal securities transactions under blue sky laws varies from state to state. [Section 410]

4. **Scope of the Act.**

The scope of the Act section is intended to prescribe the limits of a state's jurisdiction to regulate securities transactions and the activities of persons engaged in the securities business by defining what "in this state" means with respect to:

a. offers to sell or to buy securities; and
b. acceptances of offers to buy or sell securities

Generally, the Act applies to all offers to sell or buy and all acceptances of offers to buy or sell securities if they originate from, are directed to or accepted in a state. Any part of an offer which is "in this state" will subject the whole transaction to the Act. Thus, if the client receives a soliciting telephone call in this state, it will not matter that the client actually goes out of the state to make payment, sign a contract, or receive the security. [Section 414]

5. **General Provisions.**

a. Misleading Filings. It is unlawful for any person to make or cause to be made, in any document filed with the Administrator or in any proceeding under the Act, any statement which is, at the time and in light of the circumstances under which it is made, false or misleading in any material respect. [Section 404]

b. <u>Rules, Forms, Orders and Hearings.</u> The Act empowers the Administrator to make, amend, and rescind such rules, forms, and orders and to hold such hearings as are necessary to carry out the provisions of the Act. The Administrator may not make a rule, form or order unless he or she finds that the action is necessary or appropriate in the public interest or for the protection of investors. In prescribing rules and forms the Administrator may cooperate with the securities administrators of other states and the Securities and Exchange Commission to achieve maximum uniformity. All rules and forms of the Administrator must be published. [Section 412]

c. <u>Administrative Files and Opinions.</u> Documents are considered filed under the Act when they have been received by the Administrator. Administrators must keep a register of all registrations of securities and applications for licensure which have ever been effective under the Act, of all notices of exemptions from registration, and of all denial, suspension and revocation orders issued. Such register is available for public inspection. Other files made or kept under the Act may be made available to the public as the Administrator by rule prescribes. The Administrator in his or her discretion may issue interpretive opinions or " no action" letters. [Section 413]

26

# EXHIBIT 1

# UNIFORM SECURITIES ACT

*Drafted by the*

## NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS

*and by it*

APPROVED AND RECOMMENDED FOR ENACTMENT
IN ALL THE STATES

**at its**

ANNUAL CONFERENCE
MEETING IN ITS SIXTY-FIFTH YEAR
DALLAS, TEXAS
AUGUST 20-25, 1956
AMENDED AUGUST 18-23, 1958

WITH
COMMENTS

APPROVED BY THE AMERICAN BAR ASSOCIATION AT ITS MEETING AT
DALLAS, TEXAS, AUGUST 30, 1956
AMENDMENTS APPROVED AUGUST 29, 1958

27

The Committee which acted for the National Conference of Commissioners on Uniform State Laws in preparing the Uniform Securities Act and its Amendments was as follows:

EDWARD L. SCHWARTZ, 85 Devonshire St., Boston, Mass., Chairman
BROCKENBROUGH LAMB, JR., Mutual Bldg., Richmond 19, Va.
W. HUGH PEAL, 30 Church St., New York, N.Y.
WILLIAM J. PIERCE, University of Michigan Law School, Ann Arbor, Mich.
HENRY P. THOMAS, Alexandria, Va.
WILLIAM O. WEAVER, Wapello Savings Bank Bldg., Wapello, Iowa
JOHN C. POLLOCK, Court House, Fargo, N.D., Chairman, Section E.

NORTH AMERICAN SECURITIES ADMINISTRATORS ASSOCIATION, INC.
ONE MASSACHUSETTS AVENUE, N.W.
SUITE 310
WASHINGTON, DC 20001

28

# TABLE OF CONTENTS

## PART I

### FRAUDULENT AND OTHER PROHIBITED PRACTICES

|  |  | Pag |
|---|---|---|
| Section 101. Sales and Purchases | | 3. |
| Section 102. Advisory Activities | | 3. |
| (a) | Fraudulent Advice | 3. |
| (b) | Solicitation of Clients | 3 |
| (c) | Investment Advisory Contracts | 3( |
| (d) | Compensation Based on Value of Fund | 3( |
| (e) | Custody of Clients' Funds and Securities | 3( |
| (f) | Administrator's Authority to Adopt Exemptions | 3 |

## PART II

### REGISTRATION OF BROKER-DEALERS, AGENTS, AND INVESTMENT ADVISERS

| Section 201. Registration Requirement | | 48 |
|---|---|---|
| (a) | Broker-Dealers and Agents | 48 |
| (b) | Agent's Relation to Broker-Dealer or Issuer | 48 |
| (c) | Investment Advisers | 48 |
| (d) | Investment Adviser Representative | 48 |
| (e) | Expiration of Registration | 48 |
| Section 202. Registration Procedure | | 49 |
| (a) | Application and Effective Date | 49 |
| (b) | Registration Fee | 49 |
| (c) | Successor Firms | 49 |
| (d) | Minimum Capital Rules | 50 |
| (e) | Surety Bonds | 50 |
| Section 203. Post-Registration Provisions | | 52 |
| (a) | Books and Accounts | 52 |
| (b) | Information to be Furnished | 53 |
| (c) | Financial Reports | 53 |
| (d) | Corrections | 53 |
| (e) | Inspection Power | 53 |
| Section 204. Denial, Revocation, Suspension, Cancellation, and Withdrawal of Registration | | 63 |
| (a) | Grounds for Denial, Suspension, or Revocation | 63 |
| (b) | Qualifications of Broker-Dealers, Agents, and Investment Advisers | 65 |
| (c) | Suspension Pendente Lite | 66 |
| (d) | Cancellation of Registration | 66 |
| (e) | Withdrawal from Registration | 66 |
| (f) | Procedure | 67 |

## PART III

### REGISTRATION OF SECURITIES

| Section 301. Registration Requirement | | 70 |
|---|---|---|
| Section 302. Registration by Filing | | 70 |
| (a) | When Applicable | 70 |

|  | Page |
|---|---|
| (b) Content of Registration Statement | 72 |
| (c) Effective Date | 72 |
| Section 303. Registration by Coordination | 73 |
| (a) When Applicable | 73 |
| (b) Content of Registration Statement | 73 |
| (c) Effective Date | 74 |
| Section 304. Registration by Qualification | 74 |
| (a) When Applicable | 74 |
| (b) Content of Registration Statement | 74 |
| (c) Effective Date | 78 |
| Section 305. Provisions Applicable to Registration Generally | 78 |
| (a) Persons Who May File | 78 |
| (b) Registration Fee | 78 |
| (c) Annexes to Registration Statement | 78 |
| (d) Incorporation of Documents by Reference | 78 |
| (e) Administrator's Power to Reduce Content of Registration Statement | 78 |
| (f) Content of Registration Statement for Non-issuer Distributions | 78 |
| (g) Escrow and Impounding | 78 |
| (h) Contract Form | 79 |
| (i) Effective Period, Withdrawal, and Non-issuer Distributions | 79 |
| (j) Reports | 79 |
| (k) Certain Amendments Allowed | 79 |
| (l) Prospectus Delivery | 80 |
| Section 306. Denial, Suspension, and Revocation of Registration | 80 |
| (a) Grounds | 80 |
| (b) Suspension Pendente Lite | 81 |
| (c) Procedure | 82 |
| (d) Power to Vacate or Modify Stop Order | 82 |

## PART IV
### GENERAL PROVISIONS

| Section 401. Definitions | 83 |
|---|---|
| (a) "Administrator" | 83 |
| (b) "Agent" | 83 |
| (c) "Broker-dealer" | 83 |
| (d) "Fraud" | 83 |
| (e) "Guaranteed" | 83 |
| (f) "Investment Adviser" | 83 |
| (g) "Investment Adviser Representative" | 84 |
| (h) "Issuer" | 84 |
| (i) "Non-issuer" | 85 |
| (j) "Person" | 85 |
| (k) "Sale" and "Offer" | 85 |
| (l) "Securities Act of 1933" and Other Federal Statutes | 86 |
| (m) "Security" | 86 |
| (n) "State" | 86 |
| Section 402. Exemptions | 86 |
| (a) Exempted Securities | 86 |
| (1) American Governments | 86 |
| (2) Foreign Governments | 86 |
| (3) Banks | 86 |

30

Pag

(4) Building and Loan Associations .......................... 8
(5) Insurance Companies ................................. 8
(6) Credit Unions ...................................... 8
(7) Railroads, Other Common Carriers, and Public Utilities ... 8
(8) Securities Listed on Certain Exchanges .................. 8
(9) Non-profit Persons .................................. 8
(10) Commercial Paper .................................. 8
(11) Employees' Benefit Plans ............................ 8
[(12) Cooperatives] .................................... 88
(b) Exempted Transactions ................................ 88
(1) Isolated Non issuer Transactions ...................... 88
(2) Certain Non-issuer Transactions ...................... 88
(3) Unsolicited Non-issuer Transactions by Broker-dealers .... 88
(4) Underwriting Transactions ........................... 88
(5) Whole Mortgages .................................. 88
(6) Sales by Executors, etc. .............................. 88
(7) Sales by Pledges ................................... 89
(8) Sales to Institutional Buyers and Broker-dealers ........... 89
(9) Offerings to a Limited Number of Persons ............... 89
(10) Preorganization Subscriptions by a Limited Number of
        Persons ....................................... 89
(11) Offers to Existing Security Holders .................... 89
(12) Offers during SEC Waiting Period ..................... 90
(c) Denial and Revocation of Exemptions ..................... 90
(d) Burden of Proof ...................................... 90
Section 403. Filing of Sales and Advertising Literature .......... 90
Section 404. Misleading Filings ............................... 91
Section 405. Unlawful Representations Concerning Registration or
        Exemption ...................................... 91
(a) No Official Approval ................................... 91
(b) Unlawful Representations ............................... 91
Section 406. Administration of Act ............................ 91
(a) Designation of Administrator ............................ 91
(b) Restrictions on Officials' Conduct ........................ 91
[(c) Fees] ............................................... 91
Section 407. Investigations and Subpoenas ..................... 91
(a) Investigations ........................................ 91
(b) Subpoenas ........................................... 92
(c) Subpoena Enforcement ................................. 92
(d) Compulsory Testimony ................................. 92
(e) Subpoenas upon Request of Administrator of Other State ..... 92
Section 408. Prohibitory Orders and Injunctions ................ 93
(a) Cease and Desist Orders ................................ 93
(b) Injunctions; Other Orders .............................. 93
Section 409. Criminal Penalties ............................... 93
(a) Penalties Prescribed ................................... 93
(b) Prosecuting Authority .................................. 93
(c) Saving of Other Crimes ................................. 93
Section 410. Civil Liabilities ................................. 94
(a) Violation of Registration or Fraud Provisions ............... 94
(b) Violations by Advisers ................................. 94
(c) Persons Liable ........................................ 95
(d) Tender .............................................. 95
(e) Survivability ......................................... 95

31

|  | Page |
|---|---|
| (f)   Statute of Limitations | 95 |
| (g)   Offer of Refund | 95 |
| (h)   Unenforceability of Illegal Contracts | 95 |
| (i)   Waivers Void | 95 |
| (j)   Saving of Existing Remedies | 95 |
| Section 411. Judicial Review of Orders | 96 |
| (a)   Procedure | 96 |
| (b)   Stays | 96 |
| Section 412. Rules, Forms, Orders, and Hearings | 96 |
| (a)   Authority | 96 |
| (b)   Standards for Adoption | 96 |
| (c)   Form and Content of Financial Statements | 97 |
| (d)   Publication of Rules and Forms | 97 |
| (e)   Good Faith Reliance | 97 |
| (f)   Hearings to Be Public | 97 |
| Section 413. Administrative Files and Opinions | 97 |
| (a)   When Filing Occurs | 97 |
| (b)   Register | 97 |
| (c)   Data May Be Made Public | 97 |
| (d)   Copies and Certifications | 97 |
| (e)   Interpretations | 98 |
| Section 414. Scope of the Act and Service of Process | 98 |
| (a)   Sellers | 98 |
| (b)   Buyers | 98 |
| (c)   Offer in this State | 98 |
| (d)   Acceptance in this State | 98 |
| (e)   Publications, Radio, and Television | 98 |
| (f)   Investment Advice | 98 |
| (g)   Consent to Service of Process | 99 |
| (h)   Substituted Service of Process | 99 |
| (i)   Continuances | 99 |
| Section 415. Statutory Policy | 100 |
| Section 416. Short Title | 100 |
| Section 417. Severability of Provisions | 100 |
| Section 418. Repeal and Saving Provisions | 100 |
| (a)   Repeal of Prior Law | 100 |
| (b)   Proceedings | 100 |
| (c)   Registrations | 100 |
| (d)   Offerings under Prior Law | 100 |
| (e)   Judicial Review | 100 |
| Section 419. Time of Taking Effect | 101 |
| Section 420. Cooperation with Other Agencies | 101 |
| (a)   Administrator may Cooperate with Other Securities Agencies or Administrators | 101 |
| (b)   Enumeration of Cooperation Authorized | 101 |

32

## PREFATORY NOTE

The Uniform Securities Act was drafted at the request of the Conference by Professor Louis Loss of the Harvard Law School together with Mr. Edward M. Cowett as Research Associate. The Act followed a two-year Study of State Securities Regulation made in consultation with an Advisory Committee containing representatives of the Conference, the American Bar Association, the National Association of Securities Administrators, the Securities and Exchange Commission, the Investment Bankers Association of America, and the National Association of Securities Dealers, Inc., as well as several practicing lawyers with experience in "blue sky law."

The comments included here are the official comments of the Conference. The Act together with the unofficial section-by-section comments of the drafters appear as an appendix in Loss and Cowett on "Blue Sky Law," published by Little, Brown & Co. in early 1957. The drafter's comments are considerably more detailed than the official comments and also describe generally the existing law. No inference of disagreement with the drafters' comments is to be drawn from the non-inclusion of all those comments here. The emphasis here is on brevity.

33

# UNIFORM SECURITIES ACT (1956), AS AMENDED

## Including NASAA Rules, as amended

### AN ACT

[Relating to securities; prohibiting fraudulent practices in relation thereto; requiring the registration of broker-dealers, agents, investment advisers, and securities; and making uniform the law with reference thereto:]

[Be it enacted. . . .]

**NCCUSL Comment.** .01 [*Adoption of Uniform Securities Law.*] The Uniform Securities Act, as approved by the National Conference of Commissioners on Uniform State Laws on August 25, 1956, is in four parts. The first three parts represent the three basic "blue sky" philosophies: (I) the "fraud" approach, (ii) registration of broker-dealers, agents, and investment advisers, and (III) registration of securities. Part IV contains those general provisions (definitions, exemptions, judicial review, investgatory, injunctive and criminal provisions, etc.) which are essential in varying degrees under any of the three basic philosophies.

The first three parts are designed to stand alone or in any combination. Appendix A specifies the changes requires to be made in the Act if Part III is deleted. Appendix B specifies those portions of Part IV which are required for only a "fraud" type of statute (Part I).

The Act lends itself to four alternate treatments of investment advisers. These are specified in Appendix C.

A state which enacts only Part I and the relevant portions of Part IV should delete from the title the words: "requiring the registration of broker-dealers, agents, investment advisers, and securities." A state which enacts only Parts I and II and the relevant portion of Part IV should substitute for those words: "requiring the registration of broker-dealers, agents, and investment advisers."

### NCCUSL Amendments.

.04 **1958 Amendments**—The following is the resolution adopted by a vote by states at the 1958 Annual Meeting of the National Conference of Commissioners on Uniform State Laws in Los Angeles on August 23rd:

BE IT RESOLVED, by the National Conference of Commissioners on Uniform State Laws, meeting in its Sixty-Seventh year, in Los Angeles, California, on the 23rd day of August, 1958, that the Amendments to the Uniform Securities Act are hereby approved and adopted as amendment to said Uniform Act, and that the Amendments be now submitted to the Board of Governors of the American Bar Association for its consideration, and that

if the Amendments be thereafter approved by the American Bar Association, they be promulgated for enactment by the legislatures of the several states, the District of Columbia, the Territory of Hawaii, the Territory of Alaska, the Commonwealth of Puerto Rico, and the insular possessions of the United States.

Subsequently the Amendments were submitted to the House of Delegates of the American Bar Association and on August 29, 1958, they were approved by that body.

## Part I Fraudulent and Other Prohibited Practices

**Sec. 101. [SALES AND PURCHASES.]** It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly

    (1) to employ any device, scheme, or artifice to defraud,

    (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or

    (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

**NCCUSL Comment**

**.01 [*Sec. 101—Sanctions for Unlawful Conduct*].**—This section is substantially the Securities and Exchange Commission's Rule X-10b-5, 17 CRF § 240.10b-5, which in turn was modeled upon § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), except that the rule was expanded to cover the purchase as well as the sale of any securities. There are no exemptions from § 1-1.

The sanctions for the conduct which is made "unlawful" by § 101 (or any other section which makes conduct "unlawful") are found in parts II, III and IV of the statute. Those sanctions include administrative proceedings of various sorts under §§ 204 and 306 when a registration of a broker-dealer, agent, investment adviser or security is pending or effective under Part II or III; judicial injunction under § 408; and criminal prosecution under § 409. Section 410(h) provides that "unlawful" conduct does not result in civil liability except as provided in § 410.

**Sec. 102. [ADVISORY ACTIVITIES.]** (a) It is unlawful for any person who receives, directly or indirectly, any consideration from another person for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise,

    (1) to employ any device, scheme, or artifice to defraud the other person,

(2) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon the other person,

(3) acting as principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the capacity in which he is acting and obtaining the consent of the client to such transaction. The prohibitions of this subparagraph shall not apply to any transaction with a customer of a broker-dealer if such broker-dealer is not acting as an investment adviser in relation to such transaction; or

(4) to engage in dishonest or unethical practices as the Administrator may define by rule.

(b) In the solicitation of advisory clients, it is unlawful for any person to make any untrue statement of a material fact, or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.

(c) Except as may be permitted by rule or order of the Administrator, it is unlawful for any investment adviser to enter into, extend, or renew any investment advisory contract unless it provides in writing

(1) that the investment adviser shall not be compensated on the basis of a share of capital gains upon or capital appreciation of the funds or any portion of the funds of the client;

(2) that no assignment of the contract may be made by the investment adviser without the consent of the other party to the contract; and

(3) that the investment adviser, if a partnership, shall notify the other party to the contract of any change in the membership of the partnership within a reasonable time after the change.

(d) Subparagraph (c)(1) does not prohibit an investment advisory contract which provides for compensation based upon the total value of a fund averaged over a definite period, or as of definite dates or taken as of a definite date. "Assignment," as used in subparagraph (c)(2), includes any direct or indirect transfer or hypothecation of an investment advisory contract by the assignor or of a controlling block of the assignor's outstanding voting securities by a security holder of the assignor; but, if the investment adviser is a partnership, no assignment of an investment advisory contract is considered to result from the death or withdrawal of a minority of the members of the investment adviser having only a minority interest in the business of the investment adviser, or from the admission to the investment adviser of one

36

or more members who, after admission, will be only a minority of the members and will have only a minority interest in the business.

(e) It is unlawful for any investment adviser to take or have custody of any securities or funds of any client if

(1) The [Administrator] by rule prohibits custody; or

(2) in the absence of rule, the investment adviser fails to notify the [Administrator] that he has or may have custody.

(f) The [Administrator] may by rule or order adopt exemptions from subparagraph (a)(3) and subparagraphs (e)(1), (e)(2) and (e)(3) where such exemptions are consistent with the public interest and within the purposes fairly intended by the policy and provisions of this act.

[Sec. 102 amended 10-14-81 (NASAA), 11-20-86 (NASAA).]

**01. Rule 102(a)(4)—1 [Dishonest or unethical practices.]**

## NASAA COMMENTS (1990) Rule 102 (a)(4)

**Comment:** Any person who directly or indirectly receives consideration from another person for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of the analyses or reports or otherwise is a fiduciary and has a duty to act for the benefit of its clients. The extent and nature of this duty varies according to the nature of the relationship with the client and the circumstances of each case. This duty may be imposed on those investment adviser representatives who fall within the class of persons covered in Section 102(a) of the Act.

Rule 102(a)(4) is not limited to advisory personnel who fall within the technical definition of Investment Adviser or Investment Adviser Representative or who are required to register as such. Consequently, the term "adviser" is used in the rule to encompass those persons subject to Section 102(a) of the Act. It should be noted that the term "adviser" as used in the rule includes individuals acting in behalf of the adviser.

As used in Subsection (a) of Section 102 of the Act "dishonest or unethical practices" shall include, but not be limited to the following:

(a) Recommending to a client to whom investment supervisory, management or consulting services are provided the purchase, sale or exchange of any security without reasonable grounds to believe that the recommendation is suitable for the client on the basis of information furnished by the client after reasonable inquiry concerning the client's investment objectives, financial situation and needs, and any other information known or acquired by the adviser after reasonable examination of the client's records as may be provided to the adviser.

(b) Placing an order to purchase or sell a security for the account of a client without authority to do so.

37

(c) Placing an order to purchase or sell a security for the account of a client upon instruction of a third party without first having obtained a written third-party trading authorization from the client.

(d) Exercising any discretionary powers in placing an order for the purchase or sale of securities without first obtaining written discretionary authority unless the discretionary power relates solely to the price at which, or the time when, an order involving a definite amount of specified securities shall be executed, or both.

(e) Inducing trading in a client's account that is excessive in size and frequency in view of the financial resources, investment objectives and character of the account.

(f) Borrowing money or securities from a client unless the client is a broker-dealer, an affiliate of the adviser, or a financial institution engaged in the business of loaning funds or securities.

(g) Loaning money to a client unless the adviser is a financial institution engaged in the business of loaning funds or the client is an affiliate of the adviser.

(h) Misrepresenting to any advisory client, or prospective advisory client, the qualifications of the advisor, its representatives or any employees or misrepresenting the nature of the advisory services being offered or fees to be charged for such service, or to omit omitting to state a material fact necessary to make the statements made regarding qualifications, services or fees, in light of the circumstances under which they are made, nor misleading.

(i) Providing a report or recommendation to any advisor client prepared by someone other than the adviser without disclosing that fact. (This prohibition does not apply to a situation where the adviser uses published research reports or statistical analyses to render advice or where an adviser orders such a report in the normal course of providing service.)

(j) Charging a client an advisory fee that is unreasonable.

(k) Failing to disclose to a client in writing before entering into or renewing an advisory agreement with that client any material conflict of interest relating to the adviser, its representatives or any of its employees, which could reasonably be expected to impair the rendering of unbiased and objective advice including;

(1) Compensation arrangements connected with advisory services to clients which are in addition to compensation from such services; and

(2) Charging a client an advisory fee for rendering advice when without disclosing that a commission for executing securities transactions pursuant to such advice will be received by the adviser, its representatives or its employees or that such advisory fee is being reduced by the amount of the commission earned by the adviser, its representatives or employees for the sale of securities to the client.

38

(l) Guaranteeing a client that a specific result will be achieved (gain or loss) as a result of the advice which will be rendered.

(m) Publishing, circulating or distributing any advertisement which does not comply with Rule 206(4)-1 under the Investment Advisers Act of 1940.

(n) Disclosing the identity, affairs, or investments of any client to any third party unless required by law to do so, or unless consented to by the client.

(o) Taking any action, directly or indirectly, with respect to those securities or funds in which any client has any beneficial interest, where the adviser has custody or possession of such securities or funds when the adviser's action is subject to and does not comply with the safekeeping requirements of Rule 206(4)-2 under the Investment Advisers Act of 1940 or the adviser is exempt from these requirements by virtue of Rule 102(e)(1)-1(b).

(p) Entering into, extending or renewing any investment advisory contract, other than a contract for impersonal advisory services, unless such contract is in writing and discloses, in substance, the services to be provided, the term of the contract, the advisory fee or the formula for computing the fee, the amount or the manner of calculation of the amount of the prepaid fee to be returned in the event of contract termination or non-performance, whether the contract grants discretionary power to the adviser or its representatives and that no assignment of such contract shall be made by the adviser without the consent of the other party to the contract.

(q) Employing any device, scheme, or artifice to defraud or engaging in any act, practice or course of business which operates or would operate as a fraud or deceit.

(r) It shall constitute a dishonest and unethical business practice within the meaning of Section 102(a)(4) of the Act for any investment adviser to fail to disclose to any client or prospective client all material facts with respect to:

(1) A financial condition of the adviser that is reasonably likely to impair the ability of the adviser to meet contractual commitments to clients, if the adviser has discretionary authority (express or implied) or custody over such client's funds or securities, or requires prepayment of advisory fees of more than $500 from such client, 6 months or more in advance; or

(2) A legal or disciplinary event that is material to an evaluation of the adviser's integrity or ability to meet contractual commitments to clients.

(s) There shall be a rebuttable presumption that the following legal or disciplinary events involving the adviser or a management person of the of the adviser (any of the foregoing being referred to hereafter as "person") that were not resolved in the person's favor or subsequently reversed, suspended, or vacated are material within the meaning of paragraph (b)(2) of this rule for a period of 10 years from the time of the event:

(1) A criminal or civil action in a court of competent jurisdiction in which the person:

    (A) Was convicted, pleaded guilty or nolo contendre (no contest) to a felony or misdemeanor, or is named subject of a pending criminal proceeding (any of the foregoing referred to hereafter as "action"), and such action involved: an investment-related business, fraud, false statements, or omission; wrongful taking of property; or bribery, forgery, counterfeiting, or extortion;

    (B) Was found to have been involved in a violation of an investment-related statute or regulation; or

    (C) Was the subject of any order, judgment, or decree permanently or temporarily enjoining the person from, or otherwise limiting the person from, engaging in any investment-related activity.

(2) Administrative proceedings before the [Administrator], Securities and Exchange Commission, any other federal regulatory agency or any other state agency (any of the foregoing being referred to hereafter as "agency") in which the person:

    (A) Was found to have caused an investment-related business to lose its authorization to do business; or

    (B) Was found to have been involved in a violation of an investment-related statute or regulation and was the subject of an order by the agency denying, suspending, or revoking the authorization of the person to act in, or barring or suspending the person's association with, an investment-related business; or otherwise significantly limiting the person's investment-related activities.

(3) Self-Regulatory Organization (SRO) proceedings in which the person:

    (A) Was found to have caused an investment-related business to lose its authorization to do business; or

    (B) Was found to have been involved in a violation of the SRO's rules and was the subject of an order by the SRO barring or suspending the person from membership or from association with other members, or expelling the person from membership; fining the person more than $2,500; or otherwise significantly limiting the person's investment-related activities.

(i) The information required it be disclosed by paragraph (b) shall be disclosed to clients promptly, and to prospective clients not less than 48 hours prior to entering into any written or oral investment advisory contract, or no later than the time of entering into such contract if the client has the right to

terminate the contract without penalty within five business days after entering into the contract.

(u) For purpose of this rule:

(1) "Management person" means a person with power to exercise, directly or indirectly, a controlling influence over the management or policies of an adviser which is a company or to determine the general investment advice given to clients.

(2) "Found" means determined or ascertained by adjudication or consent in a final SRO proceeding, administrative proceeding, or court action.

(3) "Investment-related" means pertaining to securities, commodities, banking, insurance, or real estate (including, but not limited to, acting as or being associated with a broker-dealer, investment company, investment adviser, government securities broker or dealer, municipal securities dealer, bank, savings and loan association, entity or person required to be registered under the Commodity Exchange Act [7 U.S.C. 1 et. seq.] or fiduciary).

(4) "Involved" means acting or aiding, abetting, causing, counseling, commanding, inducing, conspiring with or failing reasonably to supervise another in doing an act.

(5) "Self-Regulatory Organization" or "SRO" means any national securities or commodities exchange, registered association, or registered clearing agency.

(v) For purposes of calculating the 10-year period during which events are presumed to be material under paragraph (c), the date of a reportable event shall be the date on which the final order, judgment, or decree was entered, or the date on which any rights of appeal from preliminary orders, judgments or decrees lapsed.

(w) Compliance with this rule shall not relieve any investment adviser from the obligations of any other disclosure requirement under the Act, the rules and regulations thereunder, or under any other federal or state law.

[Rule 102(a)(4)-1 added 9-3-87, amended 10-9-88 and 4-27-90.]

**.05 Rule 102(e)(1)-1. [Custody of client funds or securities by investment advisers.]** (a) It shall be unlawful for any investment adviser to take or have custody of any securities or funds of any client unless:

(1) the investment adviser notifies the [Administrator] in writing that the investment adviser has or may have custody. Such notification may be given on Form ADV;

41

(2) the securities of each client are segregated, marked to identify the particular client having the beneficial interest therein and held in safekeeping in some place reasonably free from risk of destruction or other loss;

(3)(i) all client funds are deposited in one or more bank accounts containing only clients' funds, (ii) such account or accounts are maintained in the name of the investment adviser as agent or trustee for such clients, and (iii) the investment adviser maintains a separate record for each such account showing the name and address of the bank where the account is maintained, the dates and amounts of deposits in and withdrawals from the account, and the exact amount of each client's beneficial interest in the account;

(4) immediately after accepting custody or possession of funds or securities from any client, the investment adviser notifies the client in writing of the place where and the manner in which the funds and securities will be maintained and subsequently, if and when there is a change in the place where or the manner in which the funds or securities are maintained, the investment adviser gives written notice thereof to the client;

(5) at least once every three months, the investment adviser sends each client an itemized statement showing the funds and securities in the investment adviser's custody at the end of such period and all debits, credits and transactions in the client's account during such period; and

(6) at least once every calendar year, an independent certified public accountant or public accountant verifies all client funds and securities by actual examination at a time chosen by the accountant without prior notice to the investment adviser. A report stating that such accountant has made an examination of such funds and securities, and describing the nature and extent of the examination, shall be filed with the (Administrator) promptly after each such examination.

(b) This rule shall not apply to an investment adviser also registered as a broker-dealer under Section 15 of the Securities Exchange Act of 1934 if the broker-dealer is (1) subject to and in compliance with SEC Rule 15c3-1 (Net Capital Requirements for Brokers or Dealers), 17 C.F.R. 240.15c3-1 under the Securities Exchange Act of 1934, or (2) a member of an exchange whose members are exempt from SEC Rule 15c3-1, 17 C.F.R. 240.15c3-1 under the provisions of paragraph (b)(2) thereof, and the broker-dealer is in compliance with all rules and settled practices of the exchange imposing requirements with respect to financial responsibility and the segregation of funds or securities carried for the account of customers.

[Rule 102(e)(1)-1 added 9-3-87.]

**.09 Rule 102(f)-1. [Agency cross transactions.]** (a) For purposes of this rule, "agency cross transaction for an advisory client" means a transaction in which a person acts as an investment adviser in relation to a transaction

42

in which the investment adviser, or any person controlling, controlled by, or under common control with such investment adviser, including an investment adviser representative, acts as a broker-dealer for both the advisory client and another person on the other side of the transaction. When acting in such capacity such person is required to be registered as a broker-dealer in this state unless excluded from the definition.

(b) An investment adviser effecting an agency cross transaction for an advisory client shall be in compliance with Section 102(a)(3) of the Act if the following conditions are met:

(1) The advisory client executes a written consent prospectively authorizing the investment adviser to effect agency cross transactions for such client;

(2) Before obtaining such written consent from the client, the investment adviser makes full written disclosure to the client that, with respect to agency cross transactions, the investment adviser will act as broker-dealer for, receive commissions from and have a potentially conflicting division of loyalties and responsibilities regarding both parties to the transactions;

(3) At or before the completion of each agency cross transaction, the investment adviser or any other person relying on this sends the client a written confirmation. The written confirmation shall include (A) a statement of the nature of the transaction, (B) the date the transaction took place (C) an offer to furnish, upon request, the time when the transaction took place and (D) the source and amount of any other remuneration the investment adviser received or will receive in connection with the transaction. In the case of a purchase, if the investment adviser was not participating in a distribution, or, in the case of a sale, if the investment adviser was not participating in a tender offer, the written confirmation may state whether the investment adviser has been receiving or will receive any other remuneration and that the investment adviser will furnish the source and amount of such remuneration to the client upon the client's written request;

(4) At least annually, and with or as part of any written statement or summary of the account from the investment adviser, the investment adviser rule sends each client a written disclosure statement identifying (A) the total number of agency cross transactions during the period for the client since the date of the last such statement or summary and (B) the total amount of all commissions or other remuneration the investment adviser received or will receive in connection with agency cross transactions for the client during the period.

(5) Each written disclosure and confirmation required by this rule must include a conspicuous statement that the client may revoke the written consent required under subsection (b)(1) of this rule at any time by providing written notice to the investment adviser.

43

(6) No agency cross transaction may be effected in which the same investment adviser recommended the transaction to both any seller and any purchaser.

(c) Nothing in this rule shall be construed to relieve an investment adviser or investment adviser representative from acting in the best interests of the client, including fulfilling his duty with respect to the best price and execution for the particular transaction for the client nor shall it relieve any investment adviser or investment adviser representative of any other disclosure obligations imposed by the Act.

*[Rule 102(f)-1 added 9-3-87.]*

**.13 Rule 102(f)-2. [Exemption from section 102(a)(3) for certain broker-dealers.]** (a) For purposes of this Rule,

(1) "Publicly distributed written materials" means written materials which are distributed to 35 or more persons who pay for those materials.

(2) "Publicly made oral statements" means oral statements made simultaneously to 35 or more persons who pay for access to those statements.

(b) An investment adviser registered as a broker-dealer pursuant to Section 15 of the Securities Exchange Act of 1934 shall be exempt from Section 102(a)(3) of the Act in connection with any transaction in relation to which that broker-dealer acts as an investment adviser (1) solely by means of publicly distributed written materials or publicly made oral statements; (2) solely by means of written materials or oral statements not purporting to meet the objectives or needs of specific individuals or accounts; (3) solely through the issuance of statistical information containing no expressions of opinion as to the investment merits of a particular security; or (4) any combination of the foregoing services. This exemption shall apply only if the materials and oral statements disclose that, if the purchaser of the advisory communication uses the investment adviser's services in connection with the sale or purchase of a security which is a subject of the communication, the investment adviser may act as principal for its own account or as agent for another person. Compliance by the investment adviser with the foregoing disclosure requirement shall not relieve it of any other disclosure obligations under the Act.

*[Rule 102(f)-2 added 9-3-87.]*

**.16 Rule 102(f)-3. [Performance-base compensation exemption.]** (a) For purposes of this Rule,

(1) "Affiliate" shall have the same definition as in Section 2(a)(3) of the federal Investment Company Act of 1940.

(2) "Client's independent agent" means any person who agrees to act as an investment advisory client's agent in connection with the contract, but

44

does not include (A) the investment adviser relying on this rule; (B) an affiliated person of the investment adviser or an affiliated person of an affiliated person of the investment adviser including an investment adviser representative; (C) an interested person of the investment adviser; (D) a person who receives, directly or indirectly, any compensation in connection with the contract from the investment adviser, an affiliated person of the investment adviser, an affiliated person of an affiliated person of the investment adviser or an interested person of the investment adviser; or (E) a person with any material relationship between himself (or an affiliated person of that person) and the investment adviser (or an affiliated person of the investment adviser) that exists, or has existed at any time during the past two years.

(3) "Company" means a corporation, partnership, association, joint stock company, trust, or any organized group of persons, whether incorporated or not; or any receiver, trustee in a case under title 11 of the United States Code, or similar official or any liquidating agent for any of the foregoing, in his capacity as such. "Company" shall not include (A) a company required to be registered under the federal Investment Company Act of 1940 but which is not so registered, (B) a private investment company (for purposes of this subparagraph, a private investment company is a company which would be defined as an investment company under Section 3(a) of the federal Investment Company Act of 1940 but for the exception from that definition provided by Section 3(c)(1) of that act), (C) an investment company registered under the federal Investment Company Act of 1940, or (D) a business development company as defined in Section 202(a)(22) of the federal Investment Advisers Act of 1940, unless each of the equity owners of any such company, other than the investment adviser entering into the contract, is a natural person or company within the meaning of subsection (a)(3) of this rule.

(4) "Interested person" means (A) any member of the immediate family of any natural person who is an affiliated person of the investment adviser; (B) any person who knowingly has any direct or indirect beneficial interest in, or who is designated as trustee, executor, or guardian of any legal interest in, any security issued by the investment adviser or by a controlling person of the investment adviser if that beneficial or legal interest exceeds (i) one tenth of one percent of any class of outstanding securities of the investment adviser or a controlling person of the investment adviser or (ii) five percent of the total assets of the person seeking to act as the client's independent agent; or (C) any person or partner or employee of any person who, at any time since the beginning of the last two years, has acted as legal counsel for the investment adviser.

(b) Notwithstanding Section 102(c)(1) of the Act, an investment adviser may enter into, extend or renew an investment advisory contract which provides for compensation to the investment adviser on the basis of a share of

45

capital gains upon or capital appreciation of the funds, or any portion of the funds, of the client if the conditions in subsections (c) through (h) of this rule are met.

(c) The client entering into the contract must be (1) a natural person or a company who, immediately after entering into the contract, has at least $500,000 under the management of the investment adviser or (2) a person who the investment adviser and its investment adviser representatives reasonably believe, immediately before entering into the contract, is a natural person or a company whose net worth, at the time the contract is entered into, exceeds $1,000,000. The net worth of a natural person may include assets held jointly with that person's spouse.

(d) The compensation paid to the investment adviser with respect to the performance of any securities over a given period must be based on a formula with the following characteristics: (1) In the case of securities for which market quotations are readily available within the meaning of Rule 2a-4(a)(1) under the Investment Company Act of 1940 (Definition of "Current Net Asset Value" for Use in Computing Periodically the Current Price of Redeemable Security), 17 C.F.R. 270.2a-4(a)(1), the formula must include the realized capital losses and unrealized capital depreciation of the securities over the period; (2) in the case of securities for which market quotations are not readily available within the meaning of Rule 2a-4(a)(1) under the Investment Company Act of 1940, 17 C.F.R. 270.2a-4(a)(1), the formula must include (A) the realized capital losses of securities over the period and (B) if the unrealized capital appreciation of the securities over the period is included, the unrealized capital depreciation of the securities over the period; and (3) the formula must provide that any compensation paid to the investment adviser under this rule is based on the gains less the losses (computed in accordance with subdivisions (1) and (2) of this subsection) in the client's account for a period of not less than one year.

(e) Before entering into the advisory contract and in addition to the requirements of Form ADV, the investment adviser must disclose in writing to the client or the client's independent agent all material information concerning the proposed advisory arrangement, including the following:

(1) That the fee arrangement may create an incentive for the investment adviser to make investments that are riskier or more speculative than would be the case in the absence of a performance fee;

(2) Where relevant, that the investment adviser may receive increased compensation with regard to unrealized appreciation as well as realized gains in the client's account;

(3) The periods which will be used to measure investment performance throughout the contract and their significance in the computation of the fee;

46

(4) The nature of any index which will be used as a comparative measure of investment performance, the significance of the index, and the reason the investment adviser believes that the index is appropriate, and

(5) Where the investment adviser's compensation is based in part on the unrealized appreciation of securities for which market quotations are not readily available within the meaning of Rule 2a-4(a)(1) under the Investment Company Act of 1940, 17 C.F.R. 270.2a-4(a)(1), how the securities will be valued and the extent to which the valuation will be independently determined.

(f) The investment adviser (and any investment adviser representative) who enters into the contract must reasonably believe, immediately before entering into the contract that the contract represents an arm's length arrangement between the parties and that the client (or in the case of a client which is a company as defined in subsection (a)(3) of this rule, the person representing the company), alone or together with the client's independent agent, understands the proposed method of compensation and its risks. The representative of a company may be a partner, director, officer or an employee of the company or the trustee, where the company is a trust, or any other person designated by the company or trustee, but must satisfy the definition of client's independent agent set forth in subsection (a)(2) of this rule

(g) Any person entering into or performing an investment advisory contract under this rule is not relieved of any obligations under Section 102(a) or any other applicable provision of the Act or any rule or order thereunder.

(h) Nothing in this rule shall relieve a client's independent agent from any obligation to the client under applicable law.

*[Rule 102(f)-3 added 9-3-87.]*

**.18 Rule 102(f)-4. [Transactions deemed not to be assignments.]** For purposes of Section 102(c)(2) of the Act, a transaction which does not result in a change of actual control or management of an investment adviser is not an assignment.

*[Rule 102(f)-4 added 9-3-87.]*

## Part II Registration of Broker-Dealers, Agents, and Investment Advisers

**Sec. 201. [REGISTRATION REQUIREMENT.]** (a) It is unlawful for any person to transact business in this state as a broker-dealer or agent unless he is registered under this act.

(b) It is unlawful for any broker-dealer or issuer to employ an agent unless the agent is registered. The registration of an agent is not effective during any period when he is not associated with a particular broker-dealer registered under this act or a particular issuer. When an agent begins or terminates a connection with a broker-dealer or issuer, or begins or terminates those activities which make him an agent, the agent as well as the broker-dealer or issuer shall promptly notify the [Administrator].

(c) It is unlawful for any person to transact business in this state as an investment adviser or as an investment adviser representative unless (1) he is so registered under this act, or (2) he has no place of business in this state and (A) his only clients in this state are investment companies as defined in the Investment Company Act of 1940, other investment advisers, broker-dealers, banks, trust companies, savings and loan associations, insurance companies, employee benefit plans with assets of not less than one million dollars ($1,000,000), and governmental agencies or instrumentalities, whether acting for themselves or as trustees with investment control, or other institutional investors as are designated by rule or order of the [Administrator], or (B) during any period of twelve consecutive months he does not direct business communications in this state in any manner to more than five clients, other than those specified in subparagraphs (A), whether or not he or any of the persons to whom the communications are directed is then present in this state.

(d) It is unlawful for any investment adviser required to be registered to employ an investment adviser representative unless the investment adviser representative is registered under this act. The registration of an investment adviser representative is not effective during any period when he is not employed by an investment adviser registered under this act. When an investment adviser representative begins or terminates employment with an investment adviser, the investment adviser shall promptly notify the [Administrator].

(e) Every registration expires December 31st unless renewed.

*[Sec. 201 amended 8-23-58 (NCCUSL), 10-14-81 (NASAA), 11-20-86 (NASAA), 10-9-88 (NASAA).]*

**.01 Rule 201(c)(2)-1. [Institutional investors.]** (No rule has been drafted under this subsection, because the Committee did not believe that one was necessary at this time.)

*[Rule 201(c)(2)-1 added 9-3-87.]*

**Sec. 202. [REGISTRATION PROCEDURE.]** (a) A broker-dealer, agent, or investment adviser, or investment adviser representative may obtain an initial or renewal registration by filing with the [Administrator] or his designee an application together with a consent to service of process pursuant to section 414(g). The application shall contain whatever information the [Administrator] by rule requires concerning such matters as (1) the applicant's form and place of organization; (2) the applicant's proposed method of doing business; (3) the qualifications and business history of the applicant; in the case of the broker-dealer or investment adviser, the qualifications and business history of any partner, officer, or director, any person occupying a similar status or performing similar functions, or any person directly or indirectly controlling the broker-dealer or investment adviser; (4) any injunction or administrative order or conviction of a misdemeanor involving a security or any aspect of the securities business and any conviction of a felony; (5) the applicant's financial condition and history and (6) any information to be furnished or disseminated to any client or prospective client, if the applicant is an investment adviser. The [Administrator] may by rule or order require an applicant for initial registration to publish an announcement of the application in one or more specified newspapers published in this state. If no denial order is in effect and no proceeding is pending under section 204, registration becomes effective at noon of the thirtieth day after an application is filed. The [Administrator] may by rule or order specify an earlier effective date, and (he) may by order defer the effective date until noon of the thirtieth day after the filing of any amendment. Registration of a broker-dealer automatically constitutes registration of any agent who is a partner, officer, or director, or a person occupying a similar status or performing similar functions. Registration of an investment adviser automatically constitutes registration of any investment adviser representative who is a partner, officer, or director, or a person occupying a similar status or performing similar functions.

(b) Every applicant for initial or renewal registration shall pay a filing fee of $(X) in the case of a broker-dealer, $(X) in the case of an agent, $(X) in the case of an investment adviser, and $(X) in the case of an investment adviser representative. When an application is denied or withdrawn, the [Administrator] shall retain $. . . . . of the fee.

(c) A registered broker-dealer or investment adviser may file an application for registration of a successor, whether or not the successor is then in existence, for the unexpired portion of the year. There shall be no filing fee.

(d) The [Administrator] may by rule require a minimum capital for registered broker-dealers and establish minimum financial requirements for investment advisers., which may include different requirements for those investment advisers who maintain custody of clients' funds or securities or who have discretionary authority over same and those investment advisers who do not.

(e) The [Administrator] may by rule require registered broker-dealers, agents, and investment advisers who have custody of or discretionary authority over client funds or securities to post surety bonds in amounts up to $(X) and may determine their conditions. Any appropriate deposit of cash or securities shall be accepted in lieu of any bond so required. No bond may be required of any registrant whose net capital, or, in the case of an investment adviser whose minimum financial requirements, which may be defined by rule, exceeds $(X). Every bond shall provide for suit thereon by any person who has a cause of action under section 410 and, if the [Administrator] by rule or order requires, by any person who has a cause of action not arising under this act. Every bond shall provide that no suit may be maintained to enforce any liability on the bond unless brought within the time limitations of section 410(f).

*[Sec. 202 amended 11-20-86(NASAA).]*

**.01 Rule 202(a)-1. [Application for investment adviser registration.]** (a) The application for initial registration as an investment adviser pursuant to Section 202(a) of the Act shall be filed upon Form ADV (Uniform Application for Investment Adviser Registration) (17 C.F.R. 279.1) with the [Administrator] or with a central registration depository designated by the Administrator and contain the additional information required by subdivision (1) of this subsection. The initial application shall include the consent to service of process required by Section 414(g) of the Act.

(1) The application for initial registration shall also provide the following:

(A) A statement or certificate showing compliance by the investment adviser with the examination requirements of Rule 204(b)(6)-1;

(B) Such financial statements as set forth in Rule 203(e)-1, including at the time of application, a copy of the balance sheet for the last fiscal year, and if such balance sheet is as of a date more than 45 days from the date of filing of the application, an unaudited balance sheet prepared as set forth in Rule 203(e)-1;

(C) A copy of the surety bond required by Section 202(e)-1, if applicable; and

(D) The fee required by Section 202(b) of the Act.

(b) The application for renewal registration as an investment adviser shall be filed on Form ADV-S (Annual Report for Investment Advisers Registered under the Investment Advisers Act of 1940) (17 C.F.R. 279.3) and contain the additional information required by Subdivision (1) of this subsection.

(1) The application for renewal registration shall also provide the following:

(A) A copy of the surety bond required by Rule 202(e)-1, if applicable; and

(B) The fee required by Section 202(b) of the Act.

**.05 Rule 202(a)-2. [Application for investment adviser representative registration.]** (a) The application for initial registration as an investment adviser representative pursuant to Section 202(a) of the Act shall be filed upon Form U-4 (Uniform Application for Securities Industry Registration or Transfer) with the [Administrator] or with a central registration depository system designated by the [Administrator] and contain the additional information required by this rule. The initial application shall include the consent to service of process required by Section 414(g) of the Act.

(1) The application for initial registration shall also provide the following:

(A) A statement or certificate showing compliance by the investment adviser representative with the examination requirements of Rule 204(b)(6)-1; and

(B) the fee required by Section 202(b) of the Act.

(b) The application for renewal registration as an investment adviser representative shall, unless waived by the [Administrator], be filed with the [Administrator] or with a central registration depository system designated by the [Administrator]. No renewal registration as an investment adviser representative shall be effected until the fee required by Section 202(b) of the Act is remitted to the [Administrator] or to a central registration depository system designated by the [Administrator].

*[Rule 202(a)-2 added 9-3-87, amended 10-9-88.]*

**.09 Rule 202(d)-1. [Minimum financial requirements for investment advisers.]** (a) Unless an investment adviser posts a bond pursuant to Rule 202(e)-1, an investment adviser registered or required to be registered under the Act who has custody of client funds or securities shall maintain at all times a minimum net worth of $35,000, and every investment adviser registered or required to be registered under the Act who has discretionary authority over client funds or securities but does not have custody of client funds or securities, shall maintain at all times a minimum net worth of $10,000.

(b) Unless otherwise exempted, as a condition of the right to continue to transact business in this state, every investment adviser registered or required to be registered under the Act shall by the close of business on the next business day notify the [Administrator] if such investment adviser's total worth is less than the minimum required. After transmitting such notice, each investment adviser shall file by the close of business on the next business day a report with the [Administrator] of its financial condition, including the following:

(1) A trial balance of all ledger accounts;

(2) A statement of all client funds or securities which are not segregated;

(3) A computation of the aggregate amount of client ledger debit balances; and

(4) A statement as to the number of client accounts.

(c) For purposes of this Rule, the term "net worth," shall mean an excess of assets over liabilities, as determined by generally accepted accounting principles, but shall not include as assets: prepaid expenses (except as to items properly classified as current assets under generally accepted accounting principles), deferred charges, goodwill, franchise rights, organizational expenses, patents, copyrights, marketing rights, unamortized debt discount and expense, all other assets of intangible nature; home, home furnishings, automobile(s), and any other personal items not readily marketable in the case of an individual; advances or loans to stockholders and officers in the case of a corporation; and advances or loans to partners in the case of a partnership.

(d) The [Administrator] may require that a current appraisal be submitted in order to establish the worth of any asset.

*[Rule 202(d)-1 added 9-3-87.]*

**.11 Rule 202(e)-1. [Bonding requirements for certain investment advisers.]** Every investment adviser having custody of or discretionary authority over client funds or securities shall be bonded in an amount of not less than $35,000 by a bonding company qualified to do business in this State. The requirements of this Rule shall not apply to those applicants or registrants who comply with the requirements of Rule 202(d)-1.

*[Rule 202(e)-1 added 9-3-87.]*

**Sec. 203. [POST-REGISTRATION PROVISIONS.]** (a) Every registered broker-dealer and investment adviser shall make and keep such accounts, correspondence, memoranda, papers, books, and other records as the [Administrator] by rule prescribes. All records so required shall be preserved

for three years unless the [Administrator] by rule prescribes otherwise for particular types of records.

(b) With respect to investment advisers, the [Administrator] may require that certain information be furnished or disseminated as necessary or appropriate in the public interest or for the protection of investors and advisory clients. To the extent determined by the [Administrator] in his discretion, information furnished to clients or prospective clients of an investment adviser pursuant to the Investment Advisers Act of 1940 and the rules thereunder may be used in whole or partial satisfaction of this requirement.

(c) Every registered broker-dealer and investment adviser shall file such financial reports as the [Administrator] by rule prescribes.

(d) If the information contained in any document filed with the [Administrator] is or becomes inaccurate or incomplete in any material respect, the registrant shall promptly file a correcting amendment unless notification of the correction has been given under section 201(b).

(e) All the records referred to in subsection (a) are subject at any time or from time to time to such reasonable periodic, special, or other examinations by representatives of the [Administrator], within or without this state, as the Administrator deems necessary or appropriate in the public interest or for the protection of investors. For the purpose of avoiding unnecessary duplication of examinations, the [Administrator], insofar as he deems it practicable in administering this subsection, may cooperate with the securities administrators of other states, the Securities and Exchange Commission, and any national securities exchange or national securities association registered under the Securities Exchange Act of 1934.

*[Sec. 203 amended 11-20-86 (NASAA).]*

**.01 Rule 203(a)-1. [Record-keeping requirements for investment advisers.]** (a) Every investment adviser registered or required to be registered under the Act shall make and keep true, accurate and current the following books, ledgers and records:

(1) A journal or journals, including cash receipts and disbursements records, and any other records of original entry forming the basis of entries in any ledger.

(2) General and auxiliary ledgers (or other comparable records) reflecting asset, liability, reserve, capital, income and expense accounts.

(3) A memorandum of each order given by the investment adviser for the purchase or sale of any security, of any instruction received by the investment adviser from the client concerning the purchase, sale, receipt or delivery of a particular security, and of any modification or cancellation of any such

order or instruction. Such memoranda shall show the terms and conditions of the order, instruction, modification or cancellation; shall identify the person connected with the investment adviser who recommended the transaction to the client and the person who placed such order; and shall show the account for which entered, the date of entry, and the bank or broker-dealer by or through whom executed where appropriate. Orders entered pursuant to the exercise of discretionary power shall be so designated.

(4) All check books, bank statements, canceled checks and cash reconciliations of the investment adviser.

(5) All bills or statements (or copies thereof), paid or unpaid, relating to the business of the investment adviser as such.

(6) All trial balances, financial statements, and internal audit working papers relating to the business of such investment adviser.

(7) Originals of all written communications received and copies of all written communications sent by such investment adviser relating to (A) any recommendation made or proposed to be made and any advice given or proposed to be given, (B) any receipt, disbursement or delivery of funds or securities, or (C) the placing or execution of any order to purchase or sell any security; provided, however, (i) that the investment adviser shall not be required to keep any unsolicited market letters and other similar communications of general public distribution not prepared by or for the investment adviser, and (ii) that if the investment adviser sends any notice, circular or other advertisement offering any report, analysis, publication or other investment advisory service to more than 10 persons, the investment adviser shall not be required to keep a record of the names and addresses of the persons to whom it was sent; except that if such notice, circular or advertisement is distributed to persons named on any list, the investment adviser shall retain with the copy of such notice, circular or advertisement a memorandum describing the list and the source thereof.

(8) A list or other record of all accounts in which the investment adviser is vested with any discretionary power with respect to the funds, securities or transactions of any client.

(9) All powers of attorney and other evidences of the granting of any discretionary authority by any client to the investment adviser, or copies thereof.

(10) All written agreements (or copies thereof) entered into by the investment adviser with any client or otherwise relating to the business of such investment adviser as such.

(11) A copy of each notice, circular, advertisement, newspaper article, investment letter, bulletin or other communication that the investment ad-

viser circulates or distributes, directly or indirectly, to 10 or more persons (other than persons connected with such investment adviser), and if such notice, circular, advertisement, newspaper article, investment letter, bulletin or other communication recommends the purchase or sale of a specific security and does not state the reasons for such recommendation, a memorandum of the investment adviser indicating the reasons therefor.

(12) (A) A record of every transaction in a security in which the investment adviser or any advisory representative of such investment adviser has, or by reason of such transaction acquires, any direct or indirect beneficial ownership, except (i) transactions effected in any account over which neither the investment adviser nor any advisory representative of the investment adviser has any direct or indirect influence or control; and (ii) transactions in securities which are direct obligations of the United States. Such record shall state the title and amount of the security involved; the date and nature of the transaction (i.e., purchase, sale or other acquisition or disposition); the price at which it was effected; and the name of the broker-dealer or bank with or through whom the transaction was effected. Such record may also contain a statement declaring that the reporting or recording of any such transaction shall not be construed as an admission that the investment adviser or advisory representative has any direct or indirect beneficial ownership in the security. A transaction shall be recorded not later than 10 days after the end of the calendar quarter in which the transaction was effected.

(B) For purposes of this subdivision (12) the term "advisory representative" shall mean any partner, officer or director of the investment adviser; any employee who makes any recommendation, who participates in the determination of which recommendation shall be made, or whose functions or duties relate to the determination of which recommendation shall be made; any employee who, in connection with his duties, obtains any information concerning which securities are being recommended prior to the effective dissemination of such recommendations or of the information concerning such recommendations; and any of the following persons who obtain information concerning securities recommendations being made by such investment adviser prior to the effective dissemination of such recommendations or of the information concerning such recommendations: (i) any person in a control relationship to the investment adviser, (ii) any affiliated person of such controlling person and (iii) any affiliated person of such affiliated person. "Control" shall have the same meaning as that set forth in Section 2(a)(9) of the Investment Company Act of 1940, as amended.

(C) An investment adviser shall not be deemed to have violated the provisions of this subparagraph because of his failure to record securities transactions of any investment adviser representative if he establishes that he instituted adequate procedures and used reasonable diligence to obtain promptly reports of all transactions required to be recorded.

(13) (A) Notwithstanding the provisions of subdivision (12) above, where the investment adviser is primarily engaged in a business or businesses other than advising registered investment companies or other advisory clients, a record must be maintained of every transaction in a security in which the investment adviser or any advisory representative of such investment adviser has, or by reason of such transaction acquires, any direct or indirect beneficial ownership, except (i) transactions effected in any account over which neither the investment adviser nor any advisory representative of the investment adviser has any direct or indirect influence or control; and (ii) transactions in securities which are direct obligations of the United States. Such record shall state the title and amount of the security involved; the date and nature of the transaction (i.e., purchase, sale or other acquisition or disposition); the price at which it was effected; and the name of the broker-dealer or bank with or through whom the transaction was effected. Such record may also contain a statement declaring that the reporting or recording of any such transaction shall not be construed as an admission that the investment adviser or advisory representative has any direct or indirect beneficial ownership in the security. A transaction shall be recorded not later than 10 days after the end of the calendar quarter in which the transaction was effected.

(B) An investment adviser is "primarily engaged in a business or businesses other than advising registered investment companies or other advisory clients" when, for each of its most recent three fiscal years or for the period of time since organization, whichever is lesser, the investment adviser derived, on an unconsolidated basis, more than 50% of (i) its total sales and revenues, and (ii) its income (or loss) before income taxes and extraordinary items, from such other business or businesses.

(C) For purposes of this subdivision (13) the term "advisory representative", when used in connection with a company primarily engaged in a business or businesses other than advising registered investment companies or other advisory clients, shall mean any partner, officer, director or employee of the investment adviser who makes any recommendation, who participates in the determination of which recommendation shall be made, or whose functions or duties relate to the determination of which recommendation shall be made, or whose functions or duties relate to the determination of which securities are being recommended prior to the effective dissemination of such recommendations or of the information concerning such recommendations; and any of the following persons who obtain information concerning securities recommendations being made by such investment adviser prior to the effective dissemination of such recommendations or of the information concerning such recommendations: (i) any person in a control relationship to the investment adviser, (ii) any affiliated person of such controlling person and (iii) any affiliated person of such affiliated person. "Control" shall have the same meaning as that set forth in Section 2(a)(9) of the Investment Company Act of 1940, as amended.

(D) An investment adviser shall not be deemed to have violated the provisions of this subdivision (13) because of his failure to record securities transactions of any advisory representative if he establishes that he instituted adequate procedures and used reasonable diligence to obtain promptly reports of all transactions required to be recorded.

(14) A copy of each written statement and each amendment or revision thereof, given or sent to any client or prospective client of such investment adviser in accordance with the provisions of Rule 203(b)-1, and a record of the dates that each written statement, and each amendment or revision thereof, was given, or offered to be given, to any client or prospective client who subsequently becomes a client.

(15) All accounts, books, internal working papers, and any other records or documents that are necessary to form the basis for or demonstrate the calculation of the performance or rate of return of any or all managed accounts or securities recommendations in any notice, circular, advertisement, newspaper article, investment letter, bulletin or other communication that the investment adviser circulates or distributes, directly or indirectly, to 10 or more persons (other than persons connected with such investment adviser); provided, however, that, with respect to the performance of managed accounts, the retention of all account statements, if they reflect all debits, credits, and other transactions in a client's account for the period of the statement, and all worksheets necessary to demonstrate the calculation of the performance or rate of return of all managed accounts shall be deemed to satisfy the requirements of this paragraph.

(b) If an investment adviser subject to subsection (a) of this Rule has custody or possession of securities or funds of any client, the records required to be made and kept under subsection (a) above shall also include:

(1) A journal or other record showing all purchases, sales, receipts and deliveries of securities (including certificate numbers) for such accounts and all other debits and credits to such accounts.

(2) A separate ledger account for each such client showing all purchases, sales, receipts and deliveries of securities, the date and price of each such purchase and sale, and all debits and credits.

(3) Copies of confirmations of all transactions effected by or for the account of any such client.

(4) A record for each security in which any such client has a position, which record shall show the name of each such client having any interest in each security, the amount or interest of each such client, and the location of each such security.

(c) Every investment adviser subject to subsection (a) of this Rule who renders any investment supervisory or management service to any client shall,

with respect to the portfolio being supervised or managed and to the extent that the information is reasonably available to or obtainable by the investment adviser, make and keep true, accurate and current:

(1) Records showing separately for each such client the securities purchased and sold, and the date, amount and price of each such purchase and sale.

(2) For each security in which any such client has a current position, information from which the investment adviser can promptly furnish the name of each such client, and the current amount or interest of such client.

(d) Any books or records required by this Rule may be maintained by the investment adviser in such manner that the identity of any client to whom such investment adviser renders investment advisory services is indicated by numerical or alphabetical code or some similar designation.

(e)(1) All books and records required to be made under the provisions of paragraphs (a) to (c)(1), inclusive of this Rule (except for books and records required to be made under the provisions of paragraphs (a)(11) and (a)(15) of this rule), shall be maintained and preserved in an easily accessible place for a period of not less than five years from the end of the fiscal year during which the last entry was made on such record, the first two years in an appropriate office of the investment adviser.

(2) Partnership articles and any amendments thereto, articles of incorporation, charters, minute books, and stock certificate books of the investment adviser and of any predecessor, shall be maintained in the principal office of the investment adviser and preserved until at least three years after termination of the enterprise.

(3) Books and records required to be made under the provisions of paragraphs (a)(11) and (a)(15) of this Rule shall be maintained and preserved in an easily accessible place for a period of not less than five years, the first two years in an appropriate office of the investment adviser, from the end of the fiscal year during which the investment adviser last published or otherwise disseminated, directly or indirectly, the notice, circular, advertisement, newspaper article, investment letter, bulletin or other communication.

(f) An investment adviser subject to subsection (a) of this Rule, before ceasing to conduct or discontinuing business as an investment adviser shall arrange for and be responsible for the preservation of the books and records required to be maintained and preserved under this Rule for the remainder of the period specified in this Rule, and shall notify the [Administrator] in writing of the exact address where such books and records will be maintained during such period.

(g)(1) The records required to be maintained and preserved pursuant to this rule may be immediately produced or reproduced by photograph on film

or, as provided in paragraph (g)(2) below, on magnetic disk, tape or other computer storage medium, and be maintained and preserved for the required time in that form. If records are produced or reproduced by photographic film or computer storage medium, the investment adviser shall:

(A) arrange the records and index the films or computer storage medium so as to permit the immediate location of any particular record,

(B) be ready at all times to provide, and promptly provide, any facsimile enlargement of film or computer printout or copy of the computer storage medium which the Administrator by its examiners or other representatives may request,

(C) store separately from the original one other copy of the film or computer storage medium for the time required,

(D) with respect to records stored on computer storage medium, maintain procedures for maintenance and preservation of, and access to, records so as to reasonably safeguard records from loss, alteration, or destruction, and

(E) with respect to records stored on photographic film, at all times have available for the [Administrator's] examination of its records pursuant to section 203(d) of the Act, facilities for immediate, easily readable projection of the film and for producing easily readable facsimile enlargements.

(2) Pursuant to paragraph (g)(1) an adviser may maintain and preserve on computer tape or disk or other computer storage medium records which, in the ordinary course of the adviser's business, are created by the adviser on electronic media or are received by the adviser solely on electronic media or by electronic data transmission.

(h) For purposes of this rule, "investment supervisory services" means the giving of continuous advice as to the investment of funds on the basis of the individual needs of each client.

*[Rule 203(a)-1 added 9-3-87, amended 4-27-90.]*

**.05 Rule 203(b)-1. [Investment adviser brochure rule.]** (a) GENERAL REQUIREMENTS. Unless otherwise provided in this rule, an investment adviser, registered or required to be registered pursuant to Section 201 of the Act shall, in accordance with the provisions of this section, furnish each advisory client and prospective advisory client with a written disclosure statement which may be a copy of Part II of its Form ADV or written documents containing at least the information then so required by Part II of Form ADV, or such other information as the [Administrator] may require.

(b) DELIVERY. (1) An investment adviser, except as provided in paragraph (2), shall deliver the statement required by this section to an advisory client or prospective advisory client (A) not less than 48 hours prior to

entering into any investment advisory contract with such client or prospective client, or (B) at the time of entering into any such contract, if the advisory client has a right to terminate the contract without penalty within five business days after entering into the contract.

(2) delivery of the statement required by paragraph (1) need not be made in connection with entering into (A) an investment company contract or (B) a contract for impersonal advisory services.

(c) OFFER TO DELIVER. (1) An investment adviser, except as provided in subdivision (2), annually shall, without charge, deliver or offer in writing to deliver upon written request to each of its advisory clients the statement required by this section.

(2) The delivery or offer required by subdivision (1) need not be made to advisory clients receiving advisory services solely pursuant to (A) an investment company contract or (B) a contract for impersonal advisory services requiring a payment of less than $200.00.

(3) With respect to an advisory client entering into a contract or receiving advisory services pursuant to a contract for impersonal advisory services which requires a payment of $200.00 or more, an offer of the type specified in subdivision (1) shall also be made at the time of entering into an advisory contract.

(4) Any statement requested in writing by an advisory client pursuant to an offer required by this subdivision must be mailed or delivered within seven days of the receipt of the request.

(d) OMISSION OF INAPPLICABLE INFORMATION. If an investment adviser renders substantially different types of investment advisory services to different advisory clients, any information required by Part II of Form ADV may be omitted from the statement furnished to an advisory client or prospective advisory client if such information is applicable only to a type of investment advisory service or fee which is not rendered or charged, or proposed to be rendered or charged, to that client or prospective client.

(e) OTHER DISCLOSURES. Nothing is this rule shall relieve any investment adviser from any obligation pursuant to any provision of the Act or the rules and regulations thereunder or other federal or state law to disclose any information to its advisory clients or prospective advisory clients not specifically required by this rule.

(f) DEFINITIONS. For the purpose of this rule: (1) "contract for impersonal advisory services" means any contract relating solely to the provision of investment advisory services (A) by means of written material or oral statements which do not purport to meet the objectives or needs of specific individuals or accounts; (B) through the issuance of statistical information

containing no expression of opinion as to the investment merits of a particular security; or (C) any combination of the foregoing services.

(2) "entering into," in reference to an investment advisory contract, does not include an extension or renewal without material change of any such contract which is in effect immediately prior to such extension or renewal.

(3) "investment company contract" means a contract with an investment company registered under the Investment Company Act of 1940 which meets the requirements of Section 15(c) of that Act.

*[Rule 203(b)-1 added 9-3-87.]*

**.06 Rule 203(b)-2. WRAP FEE BROCHURE** (a) For purposes of this rule: (1) "Wrap Fee Program" means any program under which any client is charged a specified fee or fees not based directly upon transactions in a client's account for investment advisory services (which may include portfolio management or advice concerning the selection of other investment advisers) and execution of client transactions.

(2) "Portfolio manager" means an investment adviser who determines or recommends securities transactions for any portion of a client's portfolio.

(3) "Sponsor" means any applicant that is compensated under a wrap fee program for administering, organizing or sponsoring the program, or for selecting or providing advice to clients regarding the selection of other investment advisers in the program.

(b) Applicability of Disclosure Requirements. (1) An investment adviser that sponsors a wrap fee program shall, in lieu of the written disclosure statement required by 203(b)-1(a), furnish each client or prospective client of a wrap fee program, a separate written disclosure statement containing at least the information required by Part II of form ADV. Any information included in such disclosure statement that is not specifically required by Form ADV, Part II, should be limited to information concerning wrap fee programs for which the investment adviser is required to furnish disclosure statements under this paragraph.

(2) If an investment adviser sponsors or organizes more than one wrap fee program, the investment adviser may omit from the disclosure statement furnished to clients and prospective clients of a particular wrap fee program or programs any information required by Form ADV, Part II, that is not applicable to clients or prospective clients of that wrap fee program or programs.

(3) An investment adviser need not furnish the written disclosure statement required by paragraph 203(b)-2(b)(1) above, to clients and prospective clients of a wrap fee program if another investment adviser is required to

furnish and does furnish the written disclosure statement to all clients and prospective clients of the wrap fee program.

(c) Filing and Delivery. The wrap fee disclosure statement shall be attached to Form ADV. Part II and filed with the [Administrator]. If the investment adviser prepared separate wrap fee brochures for clients of different programs, each brochure shall be filed with the [Administrator]. An investment adviser shall deliver the statement required by this section to a client or prospective client of a wrap fee program (1) not less than 48 hours prior to entering into a wrap fee program contract with a client or prospective client, or (2) at the time of entering into any wrap fee program contract, if the advisory client has a right to terminate the contract without penalty within five business days after entering into the contract.

(d) Amendments. If information contained in the wrap fee disclosure statement becomes inaccurate in a material manner, the investment adviser shall promptly file an amendment to Form ADV with the [Administrator] correcting the information. An investment adviser may update the wrap fee disclosure statement by using a supplement or "sticker" that indicates what information is being added or updated and states the new or revised information, as long as the resulting brochure is readable. Non-material changes shall be filed within 90 days after the investment adviser's fiscal year end.

*Rule 203(b)-2, added 4-17-94.]*

**.07 Rule 203(c)-1. [Financial reporting requirements for investment advisers.]** (a) Every registered investment adviser who has custody of client funds or securities or requires payment of advisory fees six months or more in advance and in excess of $500 per client shall file with the [Administrator] an audited balance sheet as of the end of the investment adviser's fiscal year.

(1) Each balance sheet filed pursuant to this Rule must be:

(A) Examined in accordance with generally accepted auditing standards and prepared in conformity with generally accepted accounting principles;

(B) Audited by an independent public accountant or an independent certified public accountant; and

(C) Accompanied by an opinion of the accountant as to the report of financial position, and by a note stating the principles used to prepare it, the basis of included securities, and any other explanations required for clarity.

(b) Every registered investment adviser who has discretionary authority over client funds or securities, but not custody, shall file with the [Administrator] a balance sheet, which need not be audited, but which must be prepared in accordance with generally accepted accounting principles and represented by the investment adviser or the person who prepared the state-

ment as true and accurate, as of the end of the investment adviser's fiscal year.

(c) The financial statements required by this Rule shall be filed with the [Administrator] within 90 days following the end of the investment adviser's fiscal year.

*[Rule 203(c)-1 added 9-3-87.]*

**.09 Rule 203(d)-1. [Correction of documents filed by investment advisers and investment adviser representatives.]** (a) Any amendment required by Section 203(d) of the Act for an investment adviser shall be made on Form ADV in the manner prescribed by that form. Any amendment to Form ADV shall be filed with the [Administrator] within the time period specified in the instructions to that form relating to filings made with the Securities and Exchange Commission.

(b) Any amendment required by Section 203(d) of the Act for an investment adviser representative shall be made on Form U-4 in manner prescribed by that form.

*[Rule 203(d)-1 added 9-3-87.]*

**Sec. 204. [DENIAL, REVOCATION, SUSPENSION, CANCELLATION, AND WITHDRAWAL OF REGISTRATION.]** (a) The [Administrator] may by order deny, suspend, or revoke any registration or bar or censure any registrant or any officer, director, partner or person occupying a similar status or performing similar functions for a registrant, from employment with a registered broker-dealer or investment adviser, or restrict or limit a registrant as to any function or activity of the business for which registration is required in this state, if he finds (1) that the order is in the public interest and (2) that the applicant or registrant or, in the case of a broker-dealer or investment adviser, any partner, officer, or director, any person occupying a similar status or performing similar functions, or any person directly or indirectly controlling the broker-dealer or investment adviser

(A)  has filed an application for registration which as of its effective date, or as of any date after filing in the case of an order denying effectiveness, was incomplete in any material respect or contained any statement which was, in light of the circumstances under which it was made, false or misleading with respect to any material fact;

(B)  has willfully violated or willfully failed to comply with any provision of this act or a predecessor act or any rule or order under this act or a predecessor act;

(C)    has been convicted, within the past ten years, of any misdemeanor involving a security or any aspect of the securities business, or any felony;

(D)    is permanently or temporarily enjoined by any court of competent jurisdiction from engaging in or continuing any conduct or practice involving any aspect of the securities business;

(E)    is the subject of an order of the Administrator denying, suspending, or revoking registration as a broker-dealer, agent or investment adviser, or investment adviser representative;

(F)    is the subject of an adjudication or determination, after notice and opportunity for hearing, within the past 10 years by a securities or commodities agency or administrator of another state or a court of competent jurisdiction that the person has willfully violated the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940 or the Commodity Exchange Act, or the securities or commodities law of any other state;

(G)    has engaged in dishonest or unethical practices in the securities business;

(H)    is insolvent, either in the sense that his liabilities exceed his assets or in the sense that he cannot meet his obligations as they mature; but the [Administrator] may not enter an order against a broker-dealer or investment adviser under this clause without a finding of insolvency as to the broker-dealer or investment adviser;

(H.1)    has willfully violated the law of a foreign jurisdiction governing or regulating any aspect of the business of securities or banking or, within the past five years, has been the subject of an action of a securities regulator of a foreign jurisdiction denying, revoking or suspending the right to engage in the business of securities as a broker-dealer, agent or investment adviser or is the subject of an action of any securities exchange or self-regulatory organization operating under the authority of the securities regulator of a foreign jurisdiction suspending or expelling such person from membership in such exchange or self-regulatory organization; or

(I)    is not qualified on the basis of such factors as training, experience, and knowledge of the securities business, except as otherwise provided in subsection (b);

(J)    has failed reasonably to supervise his agents or employees if he is a broker-dealer, or his adviser representatives or employees if he is an investment adviser to assure their compliance with this act;

(K)  has failed to pay the proper filing fee; but the [Administrator] may
enter only a denial order under this clause, and (he) shall vacate
any such order when the deficiency has been corrected.

The [Administrator] may not institute a suspension or revocation
proceeding solely on the basis of a final judicial or administrative
order made known to [him] by the applicant prior to the effective
date of the registration unless the proceeding is instituted within
the next ninety days following registration. For the purpose of this
provision, a "final judicial or administrative order" shall not include
an order that is stayed or subject to further review or appeal. This
provision shall not apply to renewal registrations.

Comment: The intent of the amendment to the last sentence of -
204(a) is to limit estoppel to (1) disclosure at the time of initial
registration, not extending estoppel to any subsequent disclosures
prior to renewal registration, and (2) matters that have been fully
investigated and finally adjudicated, not extending estoppel to
"facts" or "transactions" that may have been partially disclosed but
not investigated. Also, even where this estoppel would otherwise
apply, it may be inapplicable due to the existence of one or more
other violations.

(b)  The following provisions govern the application of section 204(a)(2)(I):

(1)  The [Administrator] may not enter an order against a broker-dealer
on the basis of the lack of qualification of any person other than (A)
the broker-dealer himself if he is an individual or (B) an agent of the
broker-dealer.

(2)  The [Administrator] may not enter an order against any investment
adviser on the basis of the lack of qualification of any person other
than (A) the investment adviser himself if he is an individual or (B)
an investment adviser representative.

(3)  The [Administrator] may not enter an order solely on the basis of lack
of experience if the applicant or registrant is qualified by training or
knowledge or both.

(4)  The [Administrator] shall consider that an agent who will work under
the supervision of a registered broker-dealer need not have the same
qualifications as a broker-dealer and that an investment adviser rep-
resentative who will work under the supervision of a registered in-
vestment adviser need not have the same qualifications as an invest-
ment adviser.

(5)  The [Administrator] shall consider that an investment adviser is not
necessarily qualified solely on the basis of experience as a broker-

dealer or agent. When (he) finds that an applicant for initial or renewal registration as a broker-dealer is not qualified as an investment adviser, (he) may by order condition the applicant's registration as a broker-dealer upon his not transacting business in this state as an investment adviser.

(6) The [Administrator] may by rule provide for an examination, including an examination developed or approved by an organization of securities administrators, which examination may be written or oral or both, to be taken by any class of or all applicants. The [Administrator] may by rule or order waive the examination requirement as to a person or class of persons if the [Administrator] determines that the examination is not necessary for the protection of advisory clients.

(c) The [Administrator] may by order summarily postpone or suspend registration pending final determination of any proceeding under this section. Upon the entry of the order, the [Administrator] shall promptly notify the applicant or registrant, as well as the employer or prospective employer if the applicant or registrant is an agent or investment adviser representative, that it has been entered and of the reasons therefor and that within fifteen days after the receipt of a written request the matter will be set down for hearing. If no hearing is requested and none is ordered by the [Administrator], the order will remain in effect until it is modified or vacated by the [Administrator]. If a hearing is requested or ordered, the [Administrator], after notice of and opportunity for hearing, may modify or vacate the order or extend it until final determination.

(d) If the [Administrator] finds that any registrant or applicant for registration is no longer in existence or has ceased to do business as a broker-dealer, agent, investment adviser or investment adviser representative, or is subject to an adjudication of mental incompetence or to the control of a committee, conservator, or guardian, or cannot be located after reasonable search, the [Administrator] may by order cancel the registration or application.

(e) Withdrawal from registration as a broker-dealer, agent, investment adviser or investment adviser representative becomes effective thirty days after receipt of an application to withdraw or within such shorter period of time as the [Administrator] may determine, unless a revocation or suspension proceeding is pending when the application is filed or a proceeding to revoke or suspend or to impose conditions upon the withdrawal is instituted within thirty days after the application is filed. If a proceeding is pending or instituted, withdrawal becomes effective at such time and upon such conditions as the [Administrator] by order determines. If no proceeding is pending or instituted and withdrawal automatically becomes effective, the [Administra-

tor] may nevertheless institute a revocation or suspension proceeding under section 204(a)(2)(B) within one year after withdrawal became effective and enter a revocation or suspension order as of the last date on which registration was effective.

(f) No order may be entered under any part of this section except the first sentence of subsection (c) without (1) appropriate prior notice to the applicant or registrant (as well as the employer or prospective employer if the applicant or registrant is an agent or investment adviser representative), (2) opportunity for hearing, and (3) written findings of fact and conclusions of law.

*[Sec. 204 amended 10-14-81 (NASAA), 11-20-86 (NASAA), 4-11-87 (NASAA), 4-17-94 (NASAA), 10-09-94 (NASAA)].*

**.00 Rule 204(a)(2)(k). [Estoppel Language.]** The [Administrator] may not institute a suspension or revocation proceeding solely on the basis of a final judicial or administrative order made known to [him] by the applicant prior to the effective date of the registration unless the proceeding is instituted within the next ninety days following registration. *For the purpose of this provision, a "final judicial or administrative order" shall not include an order that is stayed or subject to further review or appeal.* This provision shall not apply to renewal registrations.

*Comment:* The addition of the second to last sentence of § 204(a)(2)(k) addresses the NASAA Broker-Dealer Regulation Committee's concern that the term "final judicial or administrative order" was ambiguous as to whether estoppel would apply to a stayed order or an order being appealed. The additional language was added to clarify the model amendment.

*[Rule 204(a)(2)(k) amended and adopted on 10-09-94.]*

**.001 Rule 204(a)(2)(k). [Estoppel Language.]** The [Administrator] may not institute a suspension or revocation proceeding solely on the basis of a final judicial or administrative order made known to [him] by the applicant prior to the effective date of the registration unless the proceeding is instituted within the next ninety days following registration. The provision shall not apply to renewal registrations.

*Comment:* The intent of the amendment to the last sentence of -204(a) is to limit estoppel to (1) disclosure at the time of initial registration, not extending estoppel to any subsequent disclosures prior to renewal registration, and (2) matters that have been fully investigated and finally adjudicated, not extending estoppel to "facts" or "transactions" that may have been partially disclosed but not investigated. Also, even where this estoppel would

otherwise apply, it may be inapplicable due to the existence of one or more other violations.

*[Rule 204(a)(2)(k) amended and adopted on 4-17-94.]*

**.01 Rule 204(b)(6)-1. [Examination requirements for investment advisers and investment adviser representatives.]** (a) Unless otherwise waived by the Administrator, an investment adviser shall take and pass the Uniform Investment Adviser State Law Examination with a score of seventy percent or better and shall take and pass the Investment Adviser Practice/Knowledge Examination with a score of seventy percent or better, as a condition of registration as an investment adviser. If the investment adviser is not an individual, an officer if the applicant is a corporation or a general partner if the applicant is a partnership, shall take and pass these examinations.

(b) Unless otherwise waived by the Administrator, an investment adviser representative shall take and pass the Uniform Investment Adviser State Law Examination with a score of seventy percent or better and shall take and pass the Investment Adviser Representative Practice/Knowledge Examination * with a score of seventy percent or better.

(c) Any person who was registered as an investment adviser or investment adviser representative in this state as of the effective date of these rules shall not be required to take and pass the Uniform Investment Adviser State Law Examination, Investment Adviser Practice/Knowledge Examination, or the Investment Adviser Representative Practice/Knowledge Examination.

(d) An applicant who has taken and passed the Uniform Investment Adviser State Law Examination with a score of seventy percent or better within 2 years prior to the date the application is filed with the [Administrator] or at any time if the applicant has not been inactive in the investment advisory business for more than two years when the application is filed, shall not be required to take and pass the Uniform Investment Adviser State Law Examination again.

(e) Persons deemed to be investment adviser representatives only because they solicit, offer or negotiate for the sale of or sell investment advisory services in this state shall not be required to take or pass a practice/knowledge examination.

*[Rule 204(b)(6)-1 added 9-3-87.]*

**.03 Rule 204(e)-1. [Withdrawal of investment adviser and investment adviser representative registrations.]** (a) The application for withdrawal of registration as an investment adviser pursuant to Section 204(e) of the Act shall

be filed upon Form ADV-W (Notice of Withdrawal from Registration as Investment Adviser) (17 C.F.R. 279.2) with the [Administrator] or with a central registration depository system designated by the [Administrator].

(b) The application for withdrawal of registration as an investment adviser representative pursuant to Section 204(e) of the Act shall be filed upon Form U-4 (Uniform Notice of Withdrawal of Securities Industry Registration) with the [Administrator] or with a central registration depository system designated by the [Administrator].

*[Rule 204(e)-1 added 9-3-87.]*

## Part III Registration of Securities

**Sec. 301. [REGISTRATION REQUIREMENT.]** It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 402.

**Sec. 302. [REGISTRATION BY FILING.]** (a) The following securities may be registered by filing, whether or not they are also eligible for registration under Section 303 or 304:

(1) Securities for which a registration statement has been filed under the Securities Act of 1933 in connection with the offering of the securities if the following conditions are satisfied:

(A) the issuer is organized under the laws of the United States or a state or, if the issuer is not organized under the laws of the United States or a state, it has appointed a duly authorized agent in the United States for service of process;

(B) the issuer has actively engaged in business operations in the United States for a period of at least 36 consecutive calendar months immediately before the filing of the federal registration statement;

(C) the issuer has registered a class of equity securities under Sections 12(b) or 12(g) of the Securities Exchange Act of 1934, which class of securities is held of record by 500 or more persons;

(D) the issuer has:

(i) (a) a total net worth of $4,000,000; or (b) a total net worth of $2,000,000 and net pretax income from operations before allowances for extraordinary items, for at least 2 of the 3 preceding fiscal years;

(ii) not less than 400,000 units of the class of securities registered under Section 12 of the Securities Exchange Act of 1934 held by the public, excluding securities held by officers and directors of the issuer, underwriters and persons beneficially owning 10% or more of that class of securities; and

(iii) outstanding warrants and options held by the underwriters and executive officers and directors of the issuer in an amount not exceeding 10% of the total number of shares to be outstanding after completion of the offering of the securities being registered;

(E) the issuer has been subject to the requirements of Section 12 of the Securities Exchange Act of 1934 and has filed all the material required to be filed under Sections 13 and 14 of that act for at least 36 calendar months immediately before the filing of the federal registration statement;

(F) for a period of at least 30 days during the 3 months preceding the offering of the securities registered there have been at least 4 market makers for the class of equity securities registered under Section 12 of the Securities Exchange Act of 1934;

(G) each of the underwriters participating in the offering of the security, and each broker-dealer who will offer the security in this state, is a member of, or is subject to the rules of fair practice of, a national association of securities dealers with respect to the offering and the underwriters have contracted to purchase the securities offered in a principal capacity;

(H) the aggregate commissions or discounts to be received by the underwriters will not exceed 10% of the aggregate price at which the securities being registered are offered to the public;

(I) neither the issuer nor any of its subsidiaries, since the end of the last fiscal year preceding the filing of the registration statement, have:

    (i) failed to pay a dividend or sinking fund installment on preferred stock;

    (ii) defaulted on indebtedness for borrowed money; or

    (iii) defaulted on the rental on one or more longterm leases; which defaults in the aggregate are material to the financial position of the issuer and its subsidiaries, taken as a whole; and

(J) in the case of an equity security, the price at which the security will be offered to the public is not less than $5 per share.

(2) Securities of an open-end investment company or unit investment trust for which a registration statement has been filed under the Securities Act of 1933 in connection with the offering of the securities if the following conditions are satisfied.

(A) the applicant has within the preceding 24 months previously qualified the sale of its securities pursuant to Section 303 or 304 or this paragraph or, in the case of a unit investment trust, its sponsor has previously registered the security of a substantially identical unit investment trust under Section 303 or 304 or this paragraph; and

(B) the applicant, or such previously qualified unit investment trusts, are in compliance with the material terms of such prior registrations.

(C) that since the registration under Section 303 or 304 there has been no material change in:

   (i)    the terms of its securities;

   (ii)   the method of selling or distributing its securities;

   (iii)  its investment practices, objectives or restrictions, or

   (iv)  in the terms of sale of its securities (including changes affecting the net proceeds of the sale to the applicant and the method of computing the selling price of its securities.)

(b) a registration statement under this section must contain the following information and be accompanied by the following documents in addition to the information specified in Section 305(c) and the consent to service of process required by Section 414(g):

(1) a statement demonstrating eligibility for registration by filing;

(2) the name, address, and form of organization of the issuer;

(3) with respect to a person on whose behalf a part of the offering is to be made in a non-issuer distribution: name and address, the amount of securities of the issuer held by the person as of the date of the filing of the registration statement; and a statement of the reasons for making the offering;

(4) a description of the security being registered; and

(5) a copy of the latest prospectus filed with the registration statement under and satisfying the requirements of Section 10 of the Securities Act of 1933.

(c)(1) If the information and documents required to be filed by subsection (b) have been on file with the [Administrator] for at least [5] business days, or any shorter period as the [Administrator], by rule or order, allows and the applicable registration fee has been paid before the effectiveness of the federal registration statement, a registration statement under this section automatically becomes effective concurrently with the effectiveness of the federal registration statement if no stop order is pending and no proceeding is pending under Section 306. If the federal registration statement becomes effective before the conditions in this subsection are satisfied and they are not waived, the registration statement becomes effective when the conditions are satisfied. The registrant shall promptly notify the [Administrator] by tele-

phone or telegram of the date and time when the federal registration statement became effective and the content of the price amendment, if any, and shall file promptly a post-effective amendment containing the information and documents in the price amendment. The [Administrator] shall promptly acknowledge receipt of notification and effectiveness of the registration statement as of the date and time the registration statement became effective with the Securities and Exchange Commission, or when all conditions have been met.

(2) In the case of a registration filed under subdivision (a)(2), if the information and documents required to be filed by subsection (b) have been filed with the [Administrator] and the applicable registration fee has been paid, a registration under subsection (a)(2) becomes effective on the business day of filing or upon the expiration of its existing registration, whichever last occurs, unless the [Administrator] by order specifies an earlier effective date, if no stop order is in effect and no proceeding is pending under Section 306.

*[Sec. 302 amended 4-11-87 (NASAA).]*

**Sec. 303. [REGISTRATION BY COORDINATION.]** (a) Any security for which a registration statement has been filed under the Securities Act of 1933 in connection with the same offering may be registered by coordination.

(b) A registration statement under this section shall contain the following information and be accompanied by the following documents in addition to the information specified in section 305(c) and the consent to service of process required by section 414(g):

(1) three copies of the latest form of prospectus filed under the Securities Act of 1933;

(2) if the [Administrator] by rule or otherwise requires, a copy of the articles of incorporation and by-laws (or their substantial equivalents) currently in effect, a copy of any agreements with or among underwriters, a copy of any indenture or other instrument governing the issuance of the security to be registered, and a specimen or copy of the security;

(3) if the [Administrator] requests, any other information, or copies of any other documents, filed under the Securities Act of 1933; and

(4) an undertaking to forward all future amendments to the federal prospectus, other than an amendment which merely delays the effective date of the registration statement, promptly and in any event not later than the first business day after the day they are forwarded to or filed with the Securities and Exchange Commission, whichever first occurs.

(c) A registration statement under this section automatically becomes effective at the moment the federal registration statement becomes effective if all the following conditions are satisfied: (1) no stop order is in effect and no proceeding is pending under section 306; (2) the registration statement has been on file with the [Administrator] for at least ten days; and (3) a statement of the maximum and minimum proposed offering prices and the maximum underwriting discounts and commissions has been on file for two full business days or such shorter period as the [Administrator] permits by rule or otherwise and the offering is made within those limitations. The registrant shall promptly notify the [Administrator] by telephone or telegram of the date and time when the federal registration statement became effective and the content of the price amendment, if any, and shall promptly file a post-effective amendment containing the information and documents in the price amendment. "Price amendment" means the final federal amendment which includes a statement of the offering price, underwriting and selling discounts or commissions, amount of proceeds, conversion rates, call prices, and other matters dependent upon the offering price. Upon failure to receive the required notification and post-effective amendment with respect to the price amendment, the [Administrator] may enter a stop order, without notice or hearing, retroactively denying effectiveness to the registration statement or suspending its effectiveness until compliance with this subsection, if he promptly notifies the registrant by telephone or telegram (and promptly confirms by letter or telegram when he notifies by telephone) of the issuance of the order. If the registrant proves compliance with the requirements of this subsection as to notice and post-effective amendment, the stop order is void as of the time of its entry. The [Administrator] may by rule or otherwise waive either or both of the conditions specified in clauses (2) and (3). If the federal registration statement becomes effective before all the conditions in this subsection are satisfied and they are not waived, the registration statement automatically becomes effective as soon as all the conditions are satisfied. If the registrant advises the [Administrator] of the date when the federal registration statement is expected to become effective, the [Administrator] shall promptly advise the registrant by telephone or telegram, at the registrant's expense, whether all the conditions are satisfied and whether he then contemplates the institution of a proceeding under section 306; but this advice by the [Administrator] does not preclude the institution of such a proceeding at any time.

*[Sec. 303 amended 8-23-58 (NCCUSL).]*

**Sec. 304. [REGISTRATION BY QUALIFICATION.]** (a) Any security may be registered by qualification.

(b) A registration statement under this section shall contain the following information and be accompanied by the following documents in addition to

the information specified in section 305(c) and the consent to service of process required by section 414(g):

(1) with respect to the issuer and any significant subsidiary: its name, address, and form of organization; the state or foreign jurisdiction and date of its organization; the general character and location of its business; a description of its physical properties and equipment; and a statement of the general competitive conditions in the industry or business in which it is or will be engaged;

(2) with respect to every director and officer of the issuer, or person occupying a similar status or performing similar functions: his name, address, and principal occupation for the past five years; the amount of securities of the issuer held by him as of a specified date within thirty days of the filing of the registration statement; the amount of the securities covered by the registration statement to which he has indicated his intention to subscribe; and a description of any material interest in any material transaction with the issuer or any significant subsidiary effected within the past three years or proposed to be effected;

(3) with respect to persons covered by clause (2): the remuneration paid during the past twelve months and estimated to be paid during the next twelve months, directly or indirectly, by the issuer (together with all predecessors, parents, subsidiaries, and affiliates) to all those persons in the aggregate;

(4) with respect to any person owning of record, or beneficially if known, ten percent or more of the outstanding shares of any class of equity security of the issuer: the information specified in clause (2) other than his occupation;

(5) with respect to every promoter if the issuer was organized within the past three years: the information specified in clause (2), any amount paid to him within that period or intended to be paid to him, and the consideration for any such payment;

(6) with respect to any person on whose behalf any part of the offering is to be made in a non-issuer distribution: his name and address; the amount of securities of the issuer held by him as of the date of the filing of the registration statement; a description of any material interest in any material transaction with the issuer or any significant subsidiary effected within the past three years or proposed to be effected; and a statement of his reasons for making the offering;

(7) the capitalization and long-term debt (on both a current and pro forma basis) of the issuer and any significant subsidiary, including a

description of each security outstanding or being registered or otherwise offered, and a statement of the amount and kind of consideration (whether in the form of cash, physical assets, services, patents, goodwill, or anything else) for which the issuer or any subsidiary has issued any of its securities within the past two years or is obligated to issue any of its securities;

(8) the kind and amount of securities to be offered; the proposed offering price or the method by which it is to be computed; any variation therefrom at which any proportion of the offering is to be made to any person or class of persons other than the underwriters, with a specification of any such person or class; the basis upon which the offering is to be made if otherwise than for cash; the estimated aggregate underwriting and selling discounts or commissions and finders' fees (including separately cash, securities, contracts, or anything else of value to accrue to the underwriters or finders in connection with the offering) or, if the selling discounts or commissions are variable; the basis of determining them and their maximum and minimum amounts; the estimated amounts of other selling expenses, including legal, engineering, and accounting charges; the name and address of every underwriter and every recipient of a finder's fee; a copy of any underwriting or selling-group agreement pursuant to which the distribution is to be made, or the proposed form of any such agreement whose terms have not yet been determined; and a description of the plan of distribution of any securities which are to be offered otherwise than through an underwriter;

(9) the estimated cash proceeds to be received by the issuer from the offering; the purposes for which the proceeds are to be used by the issuer; the amount to be used for each purpose; the order or priority in which the proceeds will be used for the purposes stated; the amounts of any funds to be raised from other sources to achieve the purposes stated; the sources of any such funds; and, if any part of the proceeds is to be used to acquire any property (including goodwill) otherwise than in the ordinary course of business, the names and addresses of the vendors, the purchase price, the names of any persons who have received commissions in connection with the acquisition, and the amounts of any such commissions and any other expense in connection with the acquisition (including the cost of borrowing money to finance the acquisition);

(10) a description of any stock options or other security options outstanding, or to be created in connection with the offering, together with the amount of any such options held or to be held by every person

required to be named in clause (2), (4), (5), (6), or (8) and by any person who holds or will hold ten percent or more in the aggregate of any such options;

(11) the dates of, parties to, and general effect concisely stated of, every management or other material contract made or to be made otherwise than in the ordinary course of business if it is to be performed in whole or in part at or after the filing of the registration statement or was made within the past two years, together with a copy of every such contract; and a description of any pending litigation or proceeding to which the issuer is a party and which materially affects its business or assets (including any such litigation or proceeding known to be contemplated by governmental authorities);

(12) a copy of any prospectus, pamphlet, circular, form letter, advertisement, or other sales literature intended as of the effective date to be used in with the offering;

(13) a specimen or copy of the security being registered; a copy of the issuer's articles of incorporation and by-laws, or their substantial equivalents, as currently in effect; and a copy of any indenture or other instrument covering the security to be registered;

(14) a signed or conformed copy of an opinion of counsel as to the legality of the security being registered (with an English translation if it is in a foreign language), which shall state whether the security when sold will be legally issued, fully paid, and non-assessable, and, if a debt security, a binding obligation of the issuer;

(15) the written consent of any accountant, engineer, appraiser, or other person whose profession gives authority to a statement made by him, if any such person is named as having prepared or certified a report or valuation (other than a public and official document or statement) which is used in connection with the registration statement;

(16) a balance sheet of the issuer as of a date within four months prior to the filing of the registration statement; a profit and loss statement and analysis of surplus for each of the three fiscal years preceding the date of the balance sheet and for any period between the close of the last fiscal year and the date of the balance sheet, or for the period of the issuer's and any predecessors' existence if less than three years; and, if any part of the proceeds of the offering is to be applied to the purchase of any business, the same financial statements which would be required if that business were the registrant; and

(17) such additional information as the [Administrator] requires by rule or order.

(c) A registration statement under this section becomes effective when the [Administrator] so orders.

*[Sec. 304 amended 4-23-58 (NCCUSL), 4-11-87 (NASAA) ]*

**Sec. 305. [PROVISIONS APPLICABLE TO REGISTRATION GEN-ERALLY.]** (a) A registration statement may be filed by the issuer, any other person on whose behalf the offering is to be made, or a registered broker-dealer.

[(b) Every person filing a registration statement shall pay a filing fee of $. . . . . . . percent of the maximum aggregate offering price at which the registered securities are to be offered in this state, but the fee shall in no case be less than $. . . . . . . or more than $. . . . . . . When a registration statement is withdrawn before the effective date or a pre-effective stop order is entered under section 306, the [Administrator] shall retain $. . . . . . . of the fee.]

(c) Every registration statement shall specify (1) the amount of securities to be offered in this state; (2) the states in which a registration statement or similar document in connection with the offering has been or is to be filed; and (3) any adverse order, judgment, or decree entered in connection with the offering by the regulatory authorities in each state or by any court or the Securities and Exchange Commission.

(d) Any document filed under this act or a predecessor act [within five years preceding the filing of a registration statement] may be incorporated by reference in the registration statement to the extent that the document is currently accurate.

(e) The [Administrator] may by rule or otherwise permit the omission of any item of information or document from any registration statement.

(f) In the case of a non-issuer distribution, information may not be required under section 304 or 305(j) unless it is known to the person filing the registration statement or to the persons on whose behalf the distribution is to be made, or can be furnished by them without unreasonable effort or expense.

(g) The [Administrator] may by rule or order require as a condition of registration by qualification or coordination (1) that any security issued within the past three years or to be issued to a promoter for a consideration substantially different from the public offering price, or to any person for a consideration other than cash, be deposited in escrow; and (2) that the proceeds from the sale of the registered security in this state be impounded

until the issuer receives a specified amount from the sale of the security either in this state or elsewhere.

(h) The [Administrator] may by rule or order require as a condition of registration that any security registered by qualification or coordination be sold only on a specified form of subscription or sale contract, and that a signed or conformed copy of each contract be filed with the [Administrator] or preserved for any period up to three years specified in the rule or order.

(i) Every registration statement is effective for one year from its effective date, or any longer period during which the security is being offered or distributed in a non-exempted transaction by or for the account of the issuer or other person on whose behalf the offering is being made or by any under-writer or broker-dealer who is still offering part of an unsold allotment or subscription taken by him as a participant in the distribution, except during the time a stop order is in effect under section 306. All outstanding securities of the same class as a registered security are considered to be registered for the purpose of any non-issuer transaction (1) so long as the registration statement is effective and (2) between the thirtieth day after the entry of any stop order suspending or revoking the effectiveness of the registration state-ment under section 306 (if the registration statement did not relate in whole or in part to a non-issuer distribution) and one year from the effective date of the registration statement. A registration statement may not be withdrawn for one year from its effective date if any securities of the same class are outstanding. A registration statement may be withdrawn otherwise only in the discretion of the [Administrator].

(j) So long as a registration statement is effective, the [Administrator] may by rule or order require the person who filed the registration statement to file reports, not more often than quarterly, to keep reasonably current the information contained in the registration statement and to disclose the prog-ress of the offering.

(k) a registration statement may be amended after its effective date so as to increase the securities specified to be offered and sold, if the public offering price and underwriters' discounts and commissions are not changed from the respective amounts of which the [Administrator] was informed. The amend-ment becomes effective when the [Administrator] so orders. Every person filing such an amendment shall pay a late registration fee of [$25] and a filing fee, calculated in the manner specified in subsection (b), with respect to the additional securities proposed to be offered. The amendment relates back to the date of the sale of the additional securities being registered, provided that within six months of the date of such sale the amendment is filed and the additional filing fee and late registration fee are paid.

(l) The [Administrator] may by rule or order require as a condition of registration under Sections 302, 303 or 304 that a prospectus be sent or given to each person to whom an offer is made in accordance with the prospectus delivery requirements of the Securities Act of 1933. * The [Administrator] may require that a prospectus containing any part of the information specified in subsection 304(b) be sent or given to each person to whom an offer is made before the sale of the security.

*NOTE: While no specific provisions for remedies have been provided for violations of the above prospectus delivery requirements proposals regarding such remedies will be forthcoming from the NASAA Uniform Securities Act Committee.

*[Sec. 305 amended 8-23-58 (NCCUSL), 4-11-87 (NASAA).]*

**Sec. 306. [DENIAL, SUSPENSION, AND REVOCATION OF REGISTRATION.]** (a) The [Administrator] may issue a stop order denying effectiveness to, or suspending or revoking the effectiveness of, any registration statement if he finds (1) that the order is in the public interest and (2) that

(A) the registration statement as of its effective date or as of any earlier date in the case of an order denying effectiveness, or any amendment under section 305(k) as of its effective date, or any report under section 305(j) is incomplete in any material respect or contains any statement which was, in the light of the circumstances under which it was made, false or misleading with respect to any material fact;

(B) any provision of this act or any rule, order, or condition lawfully imposed under this act has been willfully violated, in connection with the offering, by (i) the person filing the registration statement, (ii) the issuer, any partner, officer, or director of the issuer, any person occupying a similar status or performing similar functions, or any person directly or indirectly controlling or controlled by the issuer, but only if the person filing the registration statement is directly or indirectly controlled by or acting for the issuer, or (iii) any underwriter;

(C) the security registered or sought to be registered is the subject of an administrative stop order or similar order or a permanent or temporary injunction of any court of competent jurisdiction entered under any other federal or state act applicable to the offering; but (i) the [Administrator] may not institute a proceeding against an effective registration statement under clause (C) more than one year from the date of the order or injunction relied on, and (ii) may not enter an

order under clause (C) on the basis of an order or injunction entered under any other state act unless that order or injunction was based on facts which would currently constitute a ground for a stop order under this section;

(D) the issuer's enterprise or method of business includes or would include activities which are illegal where performed;

(E) the offering has worked or tended to work a fraud upon purchasers or would so operate;

[(E)] [the offering is being made on terms that are unfair, unjust or inequitable.]

(F) the offering has been or would be made with unreasonable amounts of underwriters' and sellers' discounts, commissions, or other compensation, or promoters' profits or participation, or unreasonable amounts or kinds of options;

(G) when a security is sought to be registered by notification, it is not eligible for such registration;

(H) when a security is sought to be registered by coordination, there has been a failure to comply with the undertaking required by section 303(b)(4); or

(I) the applicant or registrant has failed to pay the proper filing fee; but the [Administrator] may enter only a denial order under this clause and he shall vacate any such order when the deficiency has been corrected.

The [Administrator] may not institute a stop order proceeding against an effective registration statement on the basis of a fact or transaction known to him when the registration statement became effective unless the proceeding is instituted within the next thirty days.

(b) The [Administrator] may by order summarily postpone or suspend the effectiveness of the registration statement pending final determination of any proceeding under this section. Upon the entry of the order, the [Administrator] shall promptly notify each person specified in subsection (c) that it has been entered and of the reasons therefor and that within fifteen days after the receipt of a written request the matter will be set down for hearing. If no hearing is requested and none is ordered by the [Administrator], the order will remain in effect until it is modified or vacated by the [Administrator]. If a hearing is requested or ordered, the [Administrator], after notice of an opportunity for hearing to each person specified in subsection (c), may modify or vacate the order or extend it until final determination.

(c) No stop order may be entered under any part of this section except the first sentence of subsection (b) without (1) appropriate prior notice to the applicant or registrant, the issuer, and the person on whose behalf the securities are to be or have been offered, (2) opportunity for hearing, and (3) written findings of fact and conclusions of law.

(d) The [Administrator] may vacate or modify a stop order if he finds the conditions which prompted its entry have changed or that is otherwise in the public interest to do so.

*[Sec. 306 amended 4-11-87 (NASAA).]*

## Part IV General Provisions

**Sec. 401. [DEFINITIONS.]** When used in this act, unless the context otherwise requires:

(a) "[Administrator]" [substitute any other appropriate term, such as "Commission," "Commissioner," "Secretary," etc.] means the [official or agency designated in section 406(a)]

(b) "Agent" means any individual other than a broker-dealer who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities. "Agent" does not include an individual who represents an issuer in (1) effecting transactions in a security exempted by clause (1), (2), (3), (10), or (11) of section 402(a), (2) effecting transactions exempted by section 402(b), or (3) effecting transactions with existing employees, partners or directors of the issuer if no commission or other remuneration is paid or given directly or indirectly for soliciting any person in this state. A partner, officer, or director of a broker-dealer or issuer, or a person occupying a similar status or performing similar functions, is an agent only if he otherwise comes within this definition.

(c) "Broker-dealer" means any person engaged in the business of effecting transactions in securities for the account of others or for his own account. "Broker-dealer" does not include (1) an agent, (2) an issuer, (3) a bank, savings institution, or trust company, or (4) a person who has no place of business in this state if (A) he effects transactions in this state exclusively with or through (i) the issuers of the securities involved in the transactions, (ii) other broker-dealers, or (iii) banks, savings institutions, trust companies, insurance companies, investment companies as defined in the Investment Company Act of 1940, pension or profit-sharing trusts, or other financial institutions or institutional buyers, whether acting for themselves or as trustees, or (B) the person is licensed under the securities act of a state in which the person maintains a place of business and the person offers and sells in this state to a person who is an existing customer of the person and whose residence is not in this state.

(d) "Fraud," "deceit," and "defraud" are not limited to common-law deceit.

(e) "Guaranteed" means guaranteed as to payment of principal, interest, or dividends.

(f) "Investment adviser" means any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the

advisability of investing in, purchasing, or selling securities, or who, for compensation and as a part of a regular business, issues or promulgates analyses or reports concerning securities. "Investment adviser" also includes financial planners and other persons who, as an integral component of other financially related services, provide the foregoing investment advisory services to others for compensation and as part of a business or who hold themselves out as providing the foregoing investment advisory services to others for compensation. "Investment adviser" does not include (1) an investment adviser representative; (2) a bank, savings institution, or trust company; (3) a lawyer, accountant, engineer, or teacher whose performance of these services is solely incidental to the practice of his profession; (4) a broker-dealer or its agent whose performance of these services is solely incidental to the conduct of its business as a broker-dealer and who receives no special compensation for them; (5) a publisher of any bona fide newspaper, news column, newsletter, news magazine, or business or financial publication or service, whether communicated in hard copy form, or by electronic means, or otherwise, that does not consist of the rendering of advice on the basis of the specific investment situation of each client; or (6) such other persons not within the intent of this subsection as the [Administrator] may by rule or order designate.

(g) "Investment adviser representative" means any partner, officer, director of (or a person occupying a similar status or performing similar functions) or other individual employed by or associated with an investment adviser, except clerical or ministerial personnel, who (1) makes any recommendations or otherwise renders advice regarding securities, (2) manages accounts or portfolios of clients, (3) determines which recommendation or advice regarding securities should be given, (4) solicits, offers or negotiates for the sale of or sells investment advisory services, or (5) supervises employees who perform any of the foregoing.

(h) "Issuer" means any person who issues or proposes to issue any security, except that (1) with respect to certificates of deposit, voting-trust certificates, or collateral-trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a board of directors or persons performing similar functions or of the fixed, restricted management, or unit type, the term "issuer" means the person or persons performing the acts and assuming the duties of depositor or manager pursuant to the provisions of the trust or other agreement or instrument under which the security is issued; and (2) with respect to certificates of interest or participation in oil, gas, or mining titles or leases, or in payments out of production under such titles or leases, there is not considered to be any "issuer"

(i)  "Non-issuer" means not directly or indirectly for the benefit of the issuer.

(j)  "Person" means an individual, a corporation, a partnership, an association, a joint-stock company, a trust where the interests of the beneficiaries are evidenced by a security, an unincorporated organization, a government, or a political subdivision of a government.

(k)

(1)  "Sale" or "sell" includes every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value.

(2)  "Offer" or "offer to sell" includes every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value.

(3)  Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing is considered to constitute part of the subject of the purchase and to have been offered and sold for value.

(4)  A purported gift of assessable stock is considered to involve an offer and sale.

(5)  Every sale or offer of a warrant or right to purchase or subscribe to another security of the same or another issuer, as well as every sale or offer of a security which gives the holder a present or future right or privilege to convert into another security of the same or another issuer, is considered to include an offer of the other security.

(6)  The terms defined in this subsection do not include (A) any bona fide pledge or loan; (B) any stock dividend, whether the corporation distributing the dividend is the issuer of the stock or not, if nothing of value is given by stockholders for the dividend other than the surrender of a right to a cash or property dividend when each stockholder may elect to take the dividend in cash or property or in stock; (C) any act incident to a class vote by stockholders, pursuant to the certificate of incorporation or the applicable corporation statute, on a merger, consolidation, reclassification of securities, or sale of corporate assets in consideration of the issuance of securities of another corporation; or (D) any act incident to a judicially approved reorganization in which a security is issued in exchange for one or more outstanding securities, claims, or property interests, or partly in such exchange and partly for cash.

(l) "Securities Act of 1933," "Securities Exchange Act of 1934," "Public Utility Holding Company Act of 1935," "Investment Advisers Act of 1940," and "Investment Company Act of 1940" mean the federal statutes of those names as amended before or after the effective date of this act.

(m) "Security" means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting-trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. "Security" does not include any insurance or endowment policy or annuity contract under which an insurance company promises to pay [a fixed sum of] money either in a lump sum or periodically for life or for some other specified period.

(n) "State" means any state, territory, or possession of the United States, the District of Columbia and Puerto Rico.

*[Sec. 401 amended 8-23-58 (NCCUSL), 10-14-81 (NASAA), 11-20-86 (NASAA), 4-11-87 (NASAA).]*

**Sec. 402. [EXEMPTIONS.]** (a) The following securities are exempted from [Sections requiring registration and filing of advertising materials]:

(1) any security (including a revenue obligation) issued or guaranteed by the United States, any state, any political subdivision of a state, or any agency or corporate or other instrumentality of one or more of the foregoing; or any certificate of deposit for any of the foregoing;

(2) any security issued or guaranteed by Canada, any Canadian province, any political subdivision of any such province, any agency or corporate or other instrumentality of one or more of the foregoing, or any other foreign government with which the United States currently maintains diplomatic relations, if the security is recognized as a valid obligation by the issuer or guarantor;

(3) any security issued by and representing an interest in or a debt of, or guaranteed by, any bank organized under the laws of the United States, or any bank, savings institution, or trust company organized and supervised under the laws of any state;

(4) any security issued by and representing an interest in or a debt of, or guaranteed by, any federal savings and loan association, or any building and loan or similar association organized under the laws of any state and authorized to do business in this state;

(5) any security issued by and representing an interest in or a debt of, or guaranteed by, any insurance company organized under the laws of any state and authorized to do business in this state; [but this exemption does not apply to an annuity contract, investment contract, or similar security under which the promised payments are not fixed in dollars but are substantially dependent upon the investment results of a segregated fund or account invested in securities;]

(6) any security issued or guaranteed by any federal credit union or any credit union, industrial loan association, or similar association organized and supervised under the laws of this state;

(7) any security issued or guaranteed by any railroad, other common carrier, public utility, or holding company which is (A) subject to the jurisdiction of the Interstate Commerce Commission; (B) a registered holding company under the Public Utility Holding Company Act of 1935 or a subsidiary of such a company within the meaning of that act; (C) regulated in respect of its rates and charges by a governmental authority of the United States or any state; or (D) regulated in respect of the issuance or guarantee of the security by a governmental authority of the United States, any state, Canada, or any Canadian province;

(8) any security listed or approved for listing upon notice of issuance on the New York Stock Exchange, the American Stock Exchange, or the Midwest Stock Exchange [, or listed on the (insert names of appropriate regional stock exchanges)]; any other security of the same issuer which is of senior or substantially equal rank; any security called for by subscription rights or warrants so listed or approved; or any warrant or right to purchase or subscribe to any of the foregoing;

(9) any security issued by any person organized and operated not for private profit but exclusively for religious, educational, benevolent, charitable, fraternal, social, athletic, or reformatory purposes, or as a chamber of commerce or trade or professional association;

(10) a promissory note, draft, bill of exchange or bankers' acceptance that evidences an obligation to pay cash within 9 months after the date of issuance, exclusive of days of grace, is issued in denominations of at least $50,000, and receives a rating in one of the 3 highest rating categories from a nationally recognized statistical rating organization;

or a renewal of such an obligation that is likewise limited, or a guarantee of such an obligation or of a renewal;

(11) any investment contract issued in connection with an employees' stock purchase, savings, pension, profit-sharing, or similar benefit plan if the Administrator is notified in writing thirty days before the inception of the plan or, with respect to plans which are in effect on the effective date of this act, within sixty days thereafter (or within thirty days before they are reopened if they are closed on the effective date of this act);

[(12) insert any desired exemption for cooperatives.]

(b)  The following transactions are exempted from sections 301 and 403:

(1)  any isolated non-issuer transaction, whether effected through a broker-dealer or not;

(2)  a non-issuer transaction in an outstanding security if the issuer of the security has a class of securities subject to registration under Section 12 of the Securities Exchange Act of 1934 and has been subject to the reporting requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934 for not less than 180 days before the transaction; or has a class of securities registered under the Investment Company Act of 1940; or has filed and maintained with the [Administrator] for not less than 180 days before the transaction information substantially comparable to the information which the issuer would be required to file under Section 12(b) or Section 12(g) of the Securities Exchange Act of 1934 were the issuer to have a class of its securities registered under Section 12 of the Securities Exchange Act of 1934, in such form as the [Administrator] by rule provides, and shall pay a fee upon filing of [          ].

(3)  any non-issuer transaction effected by or through a registered broker-dealer pursuant to an unsolicited order or offer to buy; but the [Administrator] may by rule require that the customer acknowledge upon a specified form that the sale was unsolicited, and that a signed copy of each such form be preserved by the broker-dealer for a specified period;

(4)  any transaction between the issuer or other person on whose behalf the offering is made and an underwriter, or among underwriters;

(5)  any transaction in a bond or other evidence of indebtedness secured by a real or chattel mortgage or deed of trust, or by an agreement for the sale of real estate or chattels, if the entire

mortgage, deed of trust, or agreement, together with all th
bonds or other evidences of indebtedness secured thereby,
offered and sold as a unit;

(6) any transaction by an executor, administrator, sheriff, marsha
receiver, trustee in bankruptcy, guardian, or conservator;

(7) any transaction executed by a bona fide pledge without an
purpose of evading this act;

(8) any offer or sale to a bank, savings institution, trust company
insurance company, investment company as defined in the In
vestment Company Act of 1940, pension or profit-sharing trust
or other financial institution or institutional buyer, or to a broker
dealer, whether the purchaser is acting for itself or in some
fiduciary capacity;

(9) any transaction pursuant to an offer directed by the offeror to
not more than ten persons (other than those designated in para-
graph (8)) in this state during any period of twelve consecutive
months, whether or not the offeror or any of the offerees is ther
present in this state, if (A) the seller reasonably believes that al
the buyers in this state (other than those designated in paragraph
(8)) are purchasing for investment, and (B) no commission or
other remuneration is paid or given directly or indirectly for
soliciting any prospective buyer in this state (other than those
designated in paragraph (8)); but the [Administrator] may by
rule or order, as to any security or transaction or any type of
security or transaction, withdraw or further condition this ex-
emption, or increase or decrease the number of offerees per-
mitted, or waive the conditions in Clauses (A) and (B) with or
without the substitution of a limitation on remuneration;

(10) any offer or sale of a preorganization certificate or subscription
if (A) no commission or other remuneration is paid or given
directly or indirectly for soliciting any prospective subscriber
(B) the number of subscribers does not exceed ten, and (C) nc
payment is made by any subscriber;

(11) any transaction pursuant to an offer to existing security holders
of the issuer, including persons who at the time of the transaction
are holders of convertible securities, non-transferable warrants
or transferable warrants exercisable within not more than ninety
days of their issuance, if (A) no commission or other remuner-
ation (other than a standby commission) is paid or given directly
or indirectly for soliciting any security holder in this state, or (B)
the issuer first files a notice specifying the terms of the offer and

the [Administrator] does not by order disallow the exemption within the next five full business days;

(12) any offer (but not a sale) of a security for which registration statements have been filed under both this act and the Securities Act of 1933 if no stop order or refusal order is in effect and no public proceeding or examination looking toward such an order is pending under either act.

(c) The [Administrator] may by order deny or revoke any exemption specified in clause (8), (9) or (11) of subsection (a) or in subsection (b) with respect to a specific security or transaction. No such order may be entered without appropriate prior notice to all interested parties, opportunity for hearing, and written findings of fact and conclusions of law, except that the [Administrator] may by order summarily deny or revoke any of the specified exemptions pending final determination of any proceeding under this subsection. Upon the entry of a summary order, the [Administrator] shall promptly notify all interested parties that it has been entered and of the reasons therefor and that within fifteen days of the receipt of a written request the matter will be set down for hearing. If no hearing is requested and none is ordered by the [Administrator], the order will remain in effect until it is modified or vacated by the [Administrator]. If a hearing is requested or ordered, the [Administrator], after notice of and opportunity for hearing to all interested persons, may modify or vacate the order or extend it until final determination. No order under this subsection may operate retroactively. No person may be considered to have violated section 301 or 403 by reason of any offer or sale effected after the entry of an order under this subsection if he sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the order.

(d) In any proceeding under this act, the burden of proving an exemption or an exception from a definition is upon the person claiming it.

*[Sec. 402 amended 8-23-58 (NCCUSL); 4-11-87 (NASAA).]*

**Sec. 403. [FILING OF SALES AND ADVERTISING LITERATURE.]**
The [Administrator] may by rule or order require the filing of any prospectus, pamphlet, circular, form letter, advertisement, or other sales literature or advertising communication addressed or intended for distribution to prospective investors, including clients or prospective clients of an investment adviser unless the security or transaction is exempted by Section 402.

*[Sec. 403 amended 8-23-58 (NCCUSL).]*

**Sec. 404. [MISLEADING FILINGS.]** It is unlawful for any person to make or cause to be made, in any document filed with the [Administrator] or in any proceeding under this act, any statement which is, at the time and in the light of the circumstances under which it is made, false or misleading in any material respect.

**Sec. 405. [UNLAWFUL REPRESENTATIONS CONCERNING REGIS-TRATION OR EXEMPTION.]** (a) Neither (1) the fact that an application for registration under Part II or a registration statement under Part III has been filed nor (2) the fact that a person or security is effectively registered constitutes a finding by the [Administrator] that any document filed under this act is true, complete, and not misleading. Neither any such fact nor the fact that an exemption or exception is available for a security or a transaction means that the [Administrator] has passed in any way upon the merits or qualifications of, or recommended or given approval to, any person, security, or transaction.

(b) It is unlawful to make, or cause to be made, to any prospective purchaser, customer, or client any representation inconsistent with subsection (a).

**Sec. 406. [ADMINISTRATION OF ACT.]** (a) This act shall be administered by the [insert name of local administrative agency and any related provisions on method of selection, salary, term of office, budget, selection and remuneration of personnel, annual reports to the legislature or governor, etc., which are appropriate to the particular state].

(b) It is unlawful for the [Administrator] or any of his officers or employees to use for personal benefit any information which is filed with or obtained by the [Administrator] and which is not made public. No provision of this act authorizes the [Administrator] or any of his officers or employees to disclose any such information except among themselves or when necessary or appropriate in a proceeding or investigation under this act. No provision of this act either creates or derogates from any privilege which exists at common law or otherwise when documentary or other evidence is sought under a subpoena directed to the Administrator or any of his officers or employees.

[(c) Insert a provision, if desired, covering fees for examinations, filings under section 403, and other miscellaneous filings for which no fees are specified elsewhere in this act.]

**Sec. 407. [INVESTIGATIONS AND SUBPOENAS.]** (a) The [Administrator] in his discretion (1) may make such public or private investigations within or outside of this state as he deems necessary to determine whether any

person has violated or is about to violate any provision of this act or any rule or order hereunder, or to aid in the enforcement of this act or in the prescribing of rules and forms hereunder, (2) may require or permit any person to file a statement in writing, under oath or otherwise as the [Administrator] determines, as to all the facts and circumstances concerning the matter to be investigated, and (3) may publish information concerning any violation of this act or any rule or order hereunder.

(b) For the purpose of any investigation or proceeding under this act, the [Administrator] or any officer designated by him may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records which the [Administrator] deems relevant or material to the inquiry.

(c) In case of contumacy by, or refusal to obey a subpoena issued to, any person, the [insert name of appropriate court], upon application by the [Administrator], may issue to the person an order requiring him to appear before the [Administrator], or the officer designated by him, there to produce documentary evidence if so ordered or to give evidence touching the matter under investigation or in question. Failure to obey the order of the court may be punished by the court as a contempt of court.

(d) No person is excused from attending and testifying or from producing any document or record before the [Administrator], or in obedience to the subpoena of the [Administrator] or any officer designated by him, or in any proceeding instituted by the [Administrator], on the ground that the testimony or evidence (documentary or otherwise) required of him may tend to incriminate him or subject him to a penalty or forfeiture; but no individual may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after claiming his privilege against self-incrimination, to testify or produce evidence (documentary or otherwise), except that the individual testifying is not exempt from prosecution and punishment for perjury or contempt committed in testifying.

(e) The [Administrator] may issue and apply to enforce subpoenas in this state at the request of a securities agency or administrator of another state if the activities constituting an alleged violation for which the information is sought would be a violation of this [Act] if the activities had occurred in this state.

*[Sec. 407 amended 4-11-87 (NASAA).]*

Sec. 408. [PROHIBITORY ORDERS AND INJUNCTIONS.] Whenever it appears to the [Administrator] that any person has engaged or is about to engage in any act or practice constituting a violation of any provision of this act or any rule or order hereunder, he may in his discretion bring either or both of the following remedies:

(a) issue a cease and desist order, with or without a prior hearing against the person or persons engaged in the prohibited activities, directing them to cease and desist from further illegal activity; or

(b) bring an action in the [insert the name of appropriate court] to enjoin the acts or practices to enforce compliance with this act or any rule or order hereunder. Upon a proper showing a permanent or temporary injunction, restraining order, or writ of mandamus shall be granted and a receiver or conservator may be appointed for the defendant or the defendant's assets. In addition, upon a proper showing by the [Administrator] the court may enter an order of rescission, restitution or disgorgement directed to any person who has engaged in any act constituting a violation of any provision of this act or any rule or order hereunder. The court may not require the [Administrator] to post a bond.

NOTE: Constitutional due process considerations should be addressed by rulemaking or incorporation of the applicable administrative procedure act provisions of each jurisdiction.

*[Sec. 408 amended 4-11-87 (NASAA).]*

Sec. 409. [CRIMINAL PENALTIES.] (a) Any person who willfully violates any provision of this act except section 404, or who willfully violates any rule or order under this act, or who willfully violates section 404 knowing the statement made to be false or misleading in any material respect, shall upon conviction be fined not more than $5,000 or imprisoned not more than three years, or both; but no person may be imprisoned for the violation of any rule or order if he proves that he had no knowledge of the rule or order. [No indictment or information may be returned under this act more than five years after the alleged violation.]

(b) The [Administrator] may refer such evidence as is available concerning violations of this act or of any rule or order hereunder to the [attorney general or the proper district attorney], who may, with or without such a reference, institute the appropriate criminal proceedings under this act.

(c) Nothing in this act limits the power of the state to punish any person for any conduct which constitutes a crime by statute or at common law.

**Sec. 410. [CIVIL LIABILITIES.]** (a) Any person who

 (1) offers or sells a security in violation of section 201(a), 301, or 405(b), or of any rule or order under section 403 which requires the affirmative approval of sales literature before it is used, or of any condition imposed under section 304(d), 305(g), or 305(h), or

 (2) offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at (x) percent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security and any income received on it, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at six (x) percent per year from the date of disposition.

(b) Any person who

 (1) engages in the business of advising others, for compensation, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as a part of a regular business, issues or promulgates analyses or reports concerning securities in violation of sections 102, 201(c) or (d), 405(b), or of any rule or order under section 403, or

 (2) receives directly or indirectly any consideration from another person for advice as to the value of securities or their purchase or sale, whether through the issuance of analyses, reports or otherwise and employs any device, scheme, or artifice to defraud such other person or engages in any act, practice or course of business which operates or would operate as a fraud or deceit on such other person, is liable to that person who may sue either at law or in equity to recover the consideration paid for such advice and any loss due to such advice, together with interest at (x) percent per year from the date of payment of the consideration plus costs and reasonable attorney's fees, less the amount of any income received from such advice.

(c) Every person who directly or indirectly controls a person liable under subsections (a) and (b), including every partner, officer, or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the conduct giving rise to the liability, and every broker-dealer or agent who materially aids in such conduct is also liable jointly and severally with and to the same extent as such person, unless able to sustain the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable.

(d) Any tender specified in this section may be made at any time before entry of judgment.

(e) Every cause of action under this statute survives the death of any person who might have been a plaintiff or defendant.

(f) No person may sue under this section more than three years after the contract of sale, or the rendering of investment advice, or the expiration of two years after the discovery of the facts constituting the violation, whichever first occurs.

(g) No person may sue under this section (1) if the buyer received a written offer, before suit and at a time when he owned the security, to refund the consideration paid together with interest at (x) percent per year from the date of payment, less the amount of any income received on the security, and he failed to accept the offer within thirty days of its receipt, or (2) if the buyer received such an offer before suit and at a time when he did not own the security, unless he rejected the offer in writing within thirty days of its receipt.

(h) No person who has made or engaged in the performance of any contract in violation of any provision of this act or any rule or order hereunder, or who has acquired any purported right under any such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any suit on the contract.

(i) Any condition, stipulation, or provision binding any person acquiring any security or receiving any investment advice to waive compliance with any provision of this act or any rule or order hereunder is void.

(j) The rights and remedies provided by this act are in addition to any other rights or remedies that may exist at law or in equity, but this act does not create any cause of action not specified in this section or section 202(e)

*[Sec. 410 amended 8-23-58 (NCCUSL), 10-14-81 (NASAA), 11-20-86 (NASAA).]*

**Sec. 411. [JUDICIAL REVIEW OF ORDERS.]** (a) Any person aggrieved by a final order of the [Administrator] may obtain a review of the order in the [insert name of appropriate court] by filing in court, within sixty days after the entry of the order, a written petition praying that the order be modified or set aside in whole or in part. A copy of the petition shall be forthwith served upon the [Administrator], and thereupon the [Administrator] shall certify and file in court a copy of the filing and evidence upon which the order was entered. When these have been filed, the court has exclusive jurisdiction to affirm, modify, enforce, or set aside the order, in whole or in part. The findings of the [Administrator] as to the facts, if supported by competent, material and substantial evidence, are conclusive. If either party applies to the court for leave to adduce additional material evidence, and shows to the satisfaction of the court that there were reasonable grounds for failure to adduce the evidence in the hearing before the [Administrator], the court may order the additional evidence to be taken before the [Administrator] and to be adduced upon the hearing in such manner and upon such conditions as the court considers proper. The [Administrator] may modify his findings and order by reason of the additional evidence and shall file in court the additional evidence together with any modified or new findings or order. [The judgment of the court is final, subject to review by the (insert name of appropriate court).]

(b) The commencement of proceedings under subsection (a) does not, unless specifically ordered by the court, operate as a stay of the [Administrator's] order.

**Sec. 412. [RULES, FORMS, ORDERS, AND HEARINGS.]** (a) The [Administrator] may from time to time make, amend, and rescind such rules, forms, and orders as are necessary to carry out the provisions of this act, including rules and forms governing registration statements, applications, and reports, and defining any terms, whether or not used in this act, insofar as the definitions are not inconsistent with the provisions of this act. For the purpose of rules and forms, the [Administrator] may classify securities, persons, and matters within his jurisdiction, and prescribe different requirements for different classes. The [Administrator] may by rule adopt exemptions from the registration requirements of Sections 201 and 301 where such exemptions are consistent with the public interest and with the purposes fairly intended by the policy and provisions of this act.

(b) No rule, form, or order may be made, amended, or rescinded unless the [Administrator] finds that the action is necessary or appropriate in the public interest or for the protection of investors and consistent with the purposes fairly intended by the policy and provisions of this act. In prescribing rules and forms the [Administrator] may cooperate with the securities administrators of the other states and the Securities and Exchange Commis-

sion with a view to effectuating the policy of this statute to achieve maximum uniformity in the form and content of registration statements, applications, and reports wherever practicable.

(c) The [Administrator] may by rule or order prescribe (1) the form and content of financial statements required under this act, (2) the circumstances under which consolidated financial statements shall be filed, and (3) whether any required financial statements shall be certified by independent or certified public accountants. All financial statements shall be prepared in accordance with generally accepted accounting practices.

(d) All rules and forms of the [Administrator] shall be published.

(e) No provision of this act imposing any liability applies to any act done or omitted in good faith in conformity with any rule, form, or order of the [Administrator], notwithstanding that the rule, form, or order may later be amended or rescinded or be determined by judicial or other authority to be invalid for any reason.

(f) Every hearing in an administrative proceeding shall be public unless the [Administrator] in his discretion grants a request joined in by all the respondents that the hearing be conducted privately.

*[Sec. 412 amended 4-11-87 (NASAA).]*

**Sec. 413. [ADMINISTRATIVE FILES AND OPINIONS.]** (a) A document is filed when it is received by the [Administrator].

(b) The [Administrator] shall keep a register of all applications for registration of securities and registration statements and all applications for broker-dealer, agent, investment adviser or investment adviser representative registration which are or have ever been effective under this act; all written notices of claim of exemption from registration requirements; all orders entered under this act; and all interpretative opinions or no-action determinations issued pursuant to subsection (e). All records may be maintained in computer or microfilm format or any other form of data storage. The register shall be available for public inspection.

(c) The information contained in or filed with any registration statement, application, or report may be made available to the public under such rules as the [Administrator] prescribes.

(d) Upon request and at such reasonable charges as he prescribes, the [Administrator] shall furnish to any person photostatic or other copies (certified under his seal of office if requested) of any entry in the register or any document which is a matter of public record. In any proceeding or prosecution under this act, any copy so certified is prima facie evidence of the contents of the entry or document certified.

(e) The [Administrator] in his discretion may honor requests from interested persons for interpretative opinions or may issue determinations that the [Administrator] will not institute enforcement proceedings against certain specified persons for engaging in certain specified activities where the determination is consistent with the purposes fairly intended by the policy and provisions of this act. The [Administrator] may charge a fee for interpretative opinions and no-action determinations.

*[Sec. 413 amended 4-11-87 (NASAA).]*

**Sec. 414. [SCOPE OF THE ACT AND SERVICE OF PROCESS.]** (a) Sections 101, 201(a), 301, 405, and 410 apply to persons who sell or offer to sell when (1) an offer to sell is made in this state, or (2) an offer to buy is made and accepted in this state.

(b) Sections 101, 201(a), and 405 apply to persons who buy or offer to buy when (1) an offer to buy is made in this state, or (2) an offer to sell is made and accepted in this state. [Subsection (b), as amended by the Conference, August 23, 1958.]

(c) For the purpose of this section, an offer to sell or to buy is made in this state, whether or not either party is then present in this state, when the offer (1) originates from this state or (2) is directed by the offeror to this state and received at the place to which it is directed (or at any post office in this state in the case of a mailed offer).

(d) For the purpose of this section, an offer to buy or to sell is accepted in this state when acceptance (1) is communicated to the offeror in this state and (2) has not previously been communicated to the offeror, orally or in writing, outside this state; and acceptance is communicated to the offeror in this state, whether or not either party is then present in this state, when the offeree directs it to the offeror in this state reasonably believing the offeror to be in this state and it is received at the place to which it is directed (or at any post office in this state in the case of a mailed acceptance).

(e) An offer to sell or to buy is not made in this state when (1) the publisher circulates or there is circulated on his behalf in this state any bona fide newspaper or other publication of general, regular, and paid circulation which is not published in this state, or which is published in this state but has had more than two-thirds of its circulation outside this state during the past twelve months, or (2) a radio or television program originating outside this state is received in this state.

(f) Sections 102 and 201(c), as well as section 405 so far as investment advisers and investment adviser representatives are concerned, apply when any act instrumental in effecting prohibited conduct is done in this state, whether or not either party is then present in this state.

**Sec. 411. [JUDICIAL REVIEW OF ORDERS.]** (a) Any person aggrieved by a final order of the [Administrator] may obtain a review of the order in the [insert name of appropriate court] by filing in court, within sixty days after the entry of the order, a written petition praying that the order be modified or set aside in whole or in part. A copy of the petition shall be forthwith served upon the [Administrator], and thereupon the [Administrator] shall certify and file in court a copy of the filing and evidence upon which the order was entered. When these have been filed, the court has exclusive jurisdiction to affirm, modify, enforce, or set aside the order, in whole or in part. The findings of the [Administrator] as to the facts, if supported by competent, material and substantial evidence, are conclusive. If either party applies to the court for leave to adduce additional material evidence, and shows to the satisfaction of the court that there were reasonable grounds for failure to adduce the evidence in the hearing before the [Administrator], the court may order the additional evidence to be taken before the [Administrator] and to be adduced upon the hearing in such manner and upon such conditions as the court considers proper. The [Administrator] may modify his findings and order by reason of the additional evidence and shall file in court the additional evidence together with any modified or new findings or order. [The judgment of the court is final, subject to review by the (insert name of appropriate court).]

(b) The commencement of proceedings under subsection (a) does not, unless specifically ordered by the court, operate as a stay of the [Administrator's] order.

**Sec. 412. [RULES, FORMS, ORDERS, AND HEARINGS.]** (a) The [Administrator] may from time to time make, amend, and rescind such rules, forms, and orders as are necessary to carry out the provisions of this act, including rules and forms governing registration statements, applications, and reports, and defining any terms, whether or not used in this act, insofar as the definitions are not inconsistent with the provisions of this act. For the purpose of rules and forms, the [Administrator] may classify securities, persons, and matters within his jurisdiction, and prescribe different requirements for different classes. The [Administrator] may by rule adopt exemptions from the registration requirements of Sections 201 and 301 where such exemptions are consistent with the public interest and with the purposes fairly intended by the policy and provisions of this act.

(b) No rule, form, or order may be made, amended, or rescinded unless the [Administrator] finds that the action is necessary or appropriate in the public interest or for the protection of investors and consistent with the purposes fairly intended by the policy and provisions of this act. In prescribing rules and forms the [Administrator] may cooperate with the securities administrators of the other states and the Securities and Exchange Commis-

96

sion with a view to effectuating the policy of this statute to achieve maximum uniformity in the form and content of registration statements, applications, and reports wherever practicable.

(c) The [Administrator] may by rule or order prescribe (1) the form and content of financial statements required under this act, (2) the circumstances under which consolidated financial statements shall be filed, and (3) whether any required financial statements shall be certified by independent or certified public accountants. All financial statements shall be prepared in accordance with generally accepted accounting practices.

(d) All rules and forms of the [Administrator] shall be published.

(e) No provision of this act imposing any liability applies to any act done or omitted in good faith in conformity with any rule, form, or order of the [Administrator], notwithstanding that the rule, form, or order may later be amended or rescinded or be determined by judicial or other authority to be invalid for any reason.

(f) Every hearing in an administrative proceeding shall be public unless the [Administrator] in his discretion grants a request joined in by all the respondents that the hearing be conducted privately.

*[Sec. 412 amended 4-11-87 (NASAA).]*

**Sec. 413. [ADMINISTRATIVE FILES AND OPINIONS.]** (a) A document is filed when it is received by the [Administrator].

(b) The [Administrator] shall keep a register of all applications for registration of securities and registration statements and all applications for broker-dealer, agent, investment adviser or investment adviser representative registration which are or have ever been effective under this act; all written notices of claim of exemption from registration requirements; all orders entered under this act; and all interpretative opinions or no-action determinations issued pursuant to subsection (e). All records may be maintained in computer or microfilm format or any other form of data storage. The register shall be available for public inspection.

(c) The information contained in or filed with any registration statement, application, or report may be made available to the public under such rules as the [Administrator] prescribes.

(d) Upon request and at such reasonable charges as he prescribes, the [Administrator] shall furnish to any person photostatic or other copies (certified under his seal of office if requested) of any entry in the register or any document which is a matter of public record. In any proceeding or prosecution under this act, any copy so certified is prima facie evidence of the contents of the entry or document certified.

(e) The [Administrator] in his discretion may honor requests from interested persons for interpretative opinions or may issue determinations that the [Administrator] will not institute enforcement proceedings against certain specified persons for engaging in certain specified activities where the determination is consistent with the purposes fairly intended by the policy and provisions of this act. The [Administrator] may charge a fee for interpretative opinions and no-action determinations.

*[Sec. 413 amended 4-11-87 (NASAA).]*

**Sec. 414. [SCOPE OF THE ACT AND SERVICE OF PROCESS.]** (a) Sections 101, 201(a), 301, 405, and 410 apply to persons who sell or offer to sell when (1) an offer to sell is made in this state, or (2) an offer to buy is made and accepted in this state.

(b) Sections 101, 201(a), and 405 apply to persons who buy or offer to buy when (1) an offer to buy is made in this state, or (2) an offer to sell is made and accepted in this state. [Subsection (b), as amended by the Conference, August 23, 1958.]

(c) For the purpose of this section, an offer to sell or to buy is made in this state, whether or not either party is then present in this state, when the offer (1) originates from this state or (2) is directed by the offeror to this state and received at the place to which it is directed (or at any post office in this state in the case of a mailed offer).

(d) For the purpose of this section, an offer to buy or to sell is accepted in this state when acceptance (1) is communicated to the offeror in this state and (2) has not previously been communicated to the offeror, orally or in writing, outside this state; and acceptance is communicated to the offeror in this state, whether or not either party is then present in this state, when the offeree directs it to the offeror in this state reasonably believing the offeror to be in this state and it is received at the place to which it is directed (or at any post office in this state in the case of a mailed acceptance).

(e) An offer to sell or to buy is not made in this state when (1) the publisher circulates or there is circulated on his behalf in this state any bona fide newspaper or other publication of general, regular, and paid circulation which is not published in this state, or which is published in this state but has had more than two-thirds of its circulation outside this state during the past twelve months, or (2) a radio or television program originating outside this state is received in this state.

(f) Sections 102 and 201(c), as well as section 405 so far as investment advisers and investment adviser representatives are concerned, apply when any act instrumental in effecting prohibited conduct is done in this state, whether or not either party is then present in this state.

(g) Every applicant for registration under this act and every issuer which proposes to offer a security in this state through any person acting on an agency basis in the common-law sense shall file with the [Administrator], in such form as he by rule prescribes, an irrevocable consent appointing the [Administrator] or his successor in office to be his attorney to receive service of any lawful process in any non-criminal suit, action, or proceeding against him or his successor executor or administrator which arises under this act or any rule or order hereunder after the consent has been filed, with the same force and validity as if served personally on the person filing the consent. A person who has filed such a consent in connection with a previous registration need not file another. Service may be made by leaving a copy of the process in the office of the [Administrator], but it is not effective unless (1) the plaintiff, who may be the [Administrator] in a suit, action, or proceeding instituted by him, forthwith sends notice of the service and a copy of the process by registered mail to the defendant or respondent at his last address on file with the [Administrator], and (2) the plaintiff's affidavit of compliance with this subsection is filed in the case on or before the return day of the process, if any, or within such further time as the court allows.

(h) When any person, including any nonresident of this state, engages in conduct prohibited or made actionable by this act or any rule or order hereunder, and he has not filed a consent to service of process under subsection (g) and personal jurisdiction over him cannot otherwise be obtained in this state, that conduct shall be considered equivalent to his appointment of the [Administrator] or his successor in office to be his attorney to receive service of any lawful process in any non-criminal suit, action, or proceeding against him or his successor executor or administrator which grows out of that conduct and which is brought under this act or any rule or order hereunder, with the same force and validity as if served on him personally. Service may be made by leaving a copy of the process in the office of the [Administrator] and it is not effective unless (1) the plaintiff, who may be the [Administrator] in a suit, action, or proceeding instituted by him, forthwith sends notice of the service and a copy of the process by registered mail to the defendant or respondent at his last known address or takes other steps which are reasonably calculated to give actual notice, and (2) the plaintiff's affidavit of compliance with this subsection is filed in the case on or before the return day of the process, if any, or within such further time as the court allows.

(i) When process is served under this section, the court, or the [Administrator] in a proceeding before him, shall order such continuance as may be necessary to afford the defendant or respondent reasonable opportunity to defend.

*[Sec. 414 amended 8-23-58 (NCCUSL), 11-20-86 (NASAA).]*

99

**Sec. 415. [STATUTORY POLICY.]** This act shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this act with the related federal regulation.

**Sec. 416. [SHORT TITLE.]** This act may be cited as the Uniform Securities Act.

**Sec. 417. [SEVERABILITY OF PROVISIONS.]** If any provision of this act or the application thereof to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are severable.

**Sec. 418. [REPEAL AND SAVING PROVISIONS.]** (a) The [identify the existing act or acts] is [are] repealed except as saved in this section.

(b) Prior law exclusively governs all suits, actions, prosecutions, or proceedings which are pending or may be initiated on the basis of facts or circumstances occurring before the effective date of this act, except that no civil suit or action may be maintained to enforce any liability under prior law unless brought within any period of limitation which applied when the cause of action accrued and in any event within two years after the effective date of this act.

(c) All effective registrations under prior law, all administrative orders relating to such registrations, and all conditions imposed upon such registrations remain in effect so long as they would have remained in effect if this act had not been passed. They are considered to have been filed, entered, or imposed under this act, but are governed by prior law.

(d) Prior law applies in respect of any offer or sale made within one year after the effective date of this act pursuant to an offering begun in good faith before its effective date on the basis of an exemption available under prior law.

(e) Judicial review of all administrative orders as to which review proceedings have not been instituted by the effective date of this act are governed by section 411, except that no review proceeding may be instituted unless the petition is filed within any period of limitation which applied to a review proceeding when the order was entered and in any event within sixty days after the effective date of this act.

**Sec. 419. [TIME OF TAKING EFFECT.]** This act shall take effect on [insert date, which should be at least sixty or ninety days after enactment].

100

**Sec. 420 [COOPERATION WITH OTHER AGENCIES.]** (a) To encourage uniform interpretation and administration of this act and effective securitie regulation and enforcement, the [Administrator] may cooperate with th securities agencies or administrators of one or more states, Canadian prov inces or territories, or another country, the Securities and Exchange Com mission, the Commodity Futures Trading Commission, the Securities Inves tor Protection Corporation, any self-regulatory organization, any national o international organization of securities officials or agencies, and any govern mental law enforcement or regulatory agency.

(b) The cooperation authorized by subsection (a) includes, but is no limited to, the following actions:

(1) establishing a central depository for registration under this act an for documents or records required or allowed to be maintaine under this act;

(2) making a joint registration examination or investigation;

(3) holding a joint administrative hearing;

(4) filing and prosecuting a joint civil or administrative proceeding;

(5) sharing and exchanging personnel;

(6) sharing and exchanging information and documents subject to th restrictions of [insert applicable state law]; and

(7) formulating, in accordance with the [administrative procedure ac of this state, rules or proposed rules on matters such as statemen of policy, guidelines, and interpretative opinions and releases.

*[Sec. 420 added 4-11-87 (NASAA).]*

NOTE: The appendices pertaining to accommodation of the Uniform Secu rities Act to deletion of various parts are not reproduced in th Study Guide.