UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

                              :

UNITED STATES OF AMERICA

                              :

          - v. -

                              :      S3 16 Cr. 371 (RA)

GARY HIRST, et al.,

                              :

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


**GOVERNMENT'S MEMORANDUM OF LAW TO PRECLUDE EXPERT TESTIMONY**

ROBERT KHUZAMI
Attorney for the United States,
Acting Under Authority Conferred by 28
U.S.C. § 515

Rebecca Mermelstein
Brendan F. Quigley
Negar Tekeei
Assistant United States Attorneys
      - Of Counsel -

**Contents**

I.    **Applicable Law** ................................................................................................ **2**

    A.    Rule 16 ...................................................................................................... 2

    B.    Rule 702 .................................................................................................... 2

    C.    Rule 703 .................................................................................................... 3

    D.    Rule 704 .................................................................................................... 4

    E.    Rules 401-403 ........................................................................................... 4

II.   **Discussion** ......................................................................................................... **4**

    A.    John D. Finnerty ....................................................................................... 4

    B.    William Jannace ....................................................................................... 7

    C.    Paul Atkins ............................................................................................... 9

CONCLUSION ............................................................................................................ 11

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Air Disaster at Lockerbie Scot.,* 37 F.3d 804 (2d Cir. 1994) ................................................ 10

*Amorgianos* v. *Romano Enterprises*, 303 F.3d 256 (2d Cir. 2002) ........................................ 4

*Andrews* v. *Metro N. Commuter R.R. Co.*, 882 F.2d 705 (2d Cir. 1989).................................. 3, 6

*Bourjaily* v. *United States*, 483 U.S. 171 (1987) ........................................................ 2

*Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)................................................ 3, 5

*General Elec. Co.* v. *Joiner*, 522 U.S. 136 (1997)........................................................ 2

*Hygh* v. *Jacobs*, 961 F.2d 359 (2d Cir. 1992)................................................ 5

*Kumho Tire Company, Inc.* v. *Carmichael*, 526 U.S. 137 (1999) ............................................ 3, 4

*SEC* v. *Lipson*, 46 F. Supp. 2d 758 (N.D. Ill. 1998) ........................................ 4

*United States* v. *Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) ...................................... 10, 12

*United States* v. *DiDomenico*, 985 F.2d 1159 (2d Cir. 1993)........................................ 7

*United States* v. *Duncan*, 42 F.3d 97 (2d Cir. 1994) ........................................ 7, 10

*United States* v. *Fredette*, 315 F.3d 1235 (10th Cir. 2003) ........................................ 11

*United States* v. *Mejia*, 545 F.3d 179 (2d Cir. 2008)........................................ 3

*United States* v. *Nersesian*, 824 F.2d 1294 (2d Cir. 1987) ...................................... 5, 11

*United States* v. *Yousef*, 327 F.3d 56 (2d Cir. 2003) .................................... 3

**Rules**

Federal Rule of Criminal Procedure 16 ................................................................ 2, 9

Federal Rule of Evidence 702................................................................ 2

Federal Rule of Evidence 703................................................................ 4

Federal Rule of Evidence 704................................................................ 4, 7

Federal Rules of Evidence 401-403 ................................................................ 5

The Government respectfully submits this memorandum of law in support of its motion to preclude the admission of certain purported expert testimony at trial.   On or about March 30, 2018, consistent with the pre-trial schedule agreed to by the parties, defendant Devon Archer provided the Government with his "notice regarding anticipated expert testimony."   (See Ex. A). Archer proposes to call three expert witnesses: John Finnerty, a professor at Fordham University; William Jannace, a former Director and Counsel at the Financial Industry Regulatory Authority; and Paul Atkins, a former commissioner of the Securities and Exchange Commission.

The Court should preclude testimony from these witnesses in whole or in part, for three principle reasons.

*First*, Archer's expert notice is deficient.   While the rules require a defendant to provide notice of the "bases and reasons" for an expert's opinions, Archer's notice consists solely of the experts' opinions and hyperlinks to their web biographies.   While this could be a sufficient basis for an expert's opinions if the expert were solely providing background information on an industry or type of security (testimony to which the Government does not object), Archer's notice provides no indication of how his experts have reached opinions on issues specific to this case.

*Second*, a number of the experts' proffered opinions improperly speculate on the knowledge and intent of defendants Archer and Cooney and thereby invade the province of the jury.

*Third*, certain of the experts' proffered opinions are irrelevant or involve factual issues for which expert testimony is improper.

I.    **Applicable Law**

   **A. Rule 16**

   A defendant must "give to the government a written summary of any testimony that the

defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as

evidence at trial."   Fed. R. Crim. P. 16(b)(1)(C).   "This summary must describe the witness's

opinions, the bases and reasons for those opinions, and the witness's qualifications."   *Id.*

   **B. Rule 702**

   Rule 702 of the Federal Rules of Evidence provides:

   If scientific, technical, or other specialized knowledge will assist the trier of fact
   to understand the evidence or to determine a fact in issue, a witness qualified as
   an expert by knowledge, skill, experience, training, or education, may testify
   thereto in the form of an opinion or otherwise, if (1) the testimony is based upon
   sufficient facts or data, (2) the testimony is the product of reliable principles and
   methods, and (3) the witness has applied the principles and methods reliably to
   the facts of the case.

   The party that proffers expert testimony bears the burden of showing that it is admissible.

*See Bourjaily* v. *United States*, 483 U.S. 171, 172-73 (1987).   The District Court's exclusion of

expert testimony will be affirmed unless it constitutes an abuse of discretion.   *See General Elec.*

*Co.* v. *Joiner*, 522 U.S. 136, 142 (1997).

   At the threshold, the party seeking admission of expert testimony must demonstrate that

the testimony is based on the witness's specialized knowledge.   *See United States* v. *Mejia*, 545

F.3d 179, 196 (2d Cir. 2008) (district court erred in allowing expert testimony "about matters

that required no specialized knowledge").   Expert testimony is plainly inadmissible when it

merely addresses "lay matters which [the trier of fact] is capable of understanding and deciding

without the expert's help."   *Andrews* v. *Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d

Cir. 1989).

2

The trial court must also find that proposed expert testimony is both relevant and reliable prior to admitting it into evidence.   *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993); *see also Kumho Tire Company, Inc.* v. *Carmichael*, 526 U.S. 137 (1999).   Specifically, in *Daubert*, the Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597.   "*Daubert* applies to both defense and government experts." *United States* v. *Yousef*, 327 F.3d 56, 148 (2d Cir. 2003).

Applying Rule 702, the Court must determine whether the expert's reasoning and methodology underlying his testimony is valid, and whether that reasoning or methodology was applied reliably to the facts, so as to be relevant and helpful to the jury.   *See Kumho Tire Co.*, 526 U.S. 148-49; *see also Amorgianos* v. *Romano Enterprises*, 303 F.3d 256, 267 (2d Cir. 2002) (district court should undertake a rigorous examination of the facts on which the expert relies, the expert's methodology, and the application of that methodology to the facts).   The fact that an expert may generally possess "specialized knowledge" does not automatically render his opinions in this case reliable.   *See SEC* v. *Lipson*, 46 F. Supp. 2d 758, 761 (N.D. Ill. 1998) (fact that witness is a certified public accountant, generally possessing the "specialized knowledge" to qualify as an expert witness, does not automatically render his opinions reliable).

## C. **Rule 703**

Rule 703 of the Federal Rules of Evidence precludes an expert from disclosing to the jury "[f]acts or data that are otherwise inadmissible" unless the court determines that their probative value substantially outweighs their prejudicial effect, and the facts or data must be "of a type

reasonably relied upon by experts in the particular field forming opinions or inferences upon the subject."

### D.  Rule 704

Rule 704(b) of the Federal Rules of Evidence states: that "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.   Those matters are for the trier of fact alone."   Moreover, a district court must exclude expert testimony that "expresses a legal conclusion."   *Hygh* v. *Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992).   Similarly, the district court must be vigilant to prevent an expert from coming "dangerously close to usurping the jury's function."   *United States* v. *Nersesian*, 824 F.2d 1294, 1308 (2d Cir. 1987).

### E.   Rules 401-403

Rules 401 through 403 of the Federal Rules of Evidence state that relevant evidence is admissible when it tends to make the existence of any fact that is of consequence more or less probable than it would be without the evidence, but it may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice, confusion of the issues, and misleading the jury.   "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.   Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses."   *Daubert*, 509 U.S. at 595 (internal citations omitted).

## II.   <u>Discussion</u>

### A.  John D. Finnerty

Archer seeks to call Dr. John Finnerty to not only offer expert testimony with respect to background information relating to bonds, but also to render opinions with respect to the bonds

4

in this case and whether they were "unusual" or "would have raised any concerns."   In this latter

category, Archer seeks to elicit from Finnerty the following, *inter alia*,

- The bonds in this case allegedly purchased by Mr. Archer through Rosemont Seneca Bohai LLC were described in the Trust Indenture as being for an amount of $15 million, for a period seven years, with an interest rate of approximately 6% per year. The Trust Indenture also provides that most of the funds were to be invested in an annuity and the surplus of the annuity payments over the interest were to fund the construction of a community center for the Wakpamni Lake Community Corporation ("WLCC"), a tribal entity affiliated with the Sioux Oglala Nation, and other projects to benefit the tribe.

- A second issuance of the bonds in the amount of $5 million was purchased by Mr. Cooney. They were subject to the same terms and intended use.

- Nothing about the terms of any of the WLCC bond issuances or the intended use of proceeds was unusual or would have raised any concerns about the legitimacy of the offering.

- In order to encourage municipalities and tribal entities to engage in such transactions (and make improvements to their communities) there are laws that provide the tribal entities with some form of limited immunity from lawsuits.

- In this case the Sioux tribe was subject to such immunity and thus not subject to any liability in connection with the offering of the bonds, including whatever happened to them in the future.

(Ex. A at 3).   This testimony is impermissible for several reasons.   The first two bullet points

above concern factual issues—the terms and conditions of certain of the Wakpamni bonds—that

are not properly the subject of expert testimony.   The basic provisions of the Wakpamni bonds

are easily ascertainable by documentary evidence, and thus Archer and Cooney can adduce this

evidence by calling fact witnesses.   *Andrews* v. *Metro N. Commuter R.R. Co.*, 882 F.2d at 708

(2d Cir. 1989) ("For an expert's testimony to be admissible . . . it must be directed to matters

within the witness' scientific, technical, or specialized knowledge and not to lay matters which a

jury is capable of understanding and deciding without the expert's help.").

As to the third bullet point above, the Court should preclude testimony that "nothing . . . was unusual or would have raised concerns about the legitimacy of the offering."   Such testimony is plainly impermissible under Rule 704(b), because it attempts to tell the jury—either explicitly or implicitly through "semantic camouflage," *United States* v. *DiDomenico*, 985 F.2d 1159, 1165 (2d Cir. 1993)—that the defendants' actions demonstrate that they lacked a guilty *mens rea*.   Further, expert testimony that purports to tell the jury why the defendant took certain actions or whether those actions are consistent with committing fraud does not "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702, but instead usurps the jury's function by dictating a particular outcome.   *United States* v. *Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making the decision, but rather attempts to substitute the expert's judgment for the jury's." (emphasis in original)).

Finally, as to the last two bullet points, the Court should preclude Dr. Finnerty from testifying about those issues for at least two reasons.   Archer's effort to inform the jury that "tribal entities" have "some form of immunity" (whatever that means) is a transparent effort to suggest both that Archer was aware of this fact (if true) and that Archer did not believe that the Wakpamni bond transactions would ultimately harm the Wakpamni community.   But it is axiomatic that a defendant's good faith belief that everything would work out in the end does not constitute a legal defense and is thus inadmissible.   The issue at trial concerns whether the defendants participated in a scheme to defraud relating to the issuance of the bonds and the misappropriation of the bond proceeds, and ultimate harm to the tribe is not an element of the offense.   Second, issues of tribal or sovereign immunity appear beyond the scope of Dr.

6

Finnerty's expertise.   Finnerty's "areas of specialization include business and securities valuation, solvency analysis, derivatives [sic] instruments, and calculation of damages."   *See* John D. Finnerty, Ph.d., https://www.fiasi.org/hall-of-fame/fixed-income-hall-of-fame/69-2011-hall-of-fame/224-john-d-finnerty.   But nothing about Dr. Finnerty's qualifications indicates he is qualified to testify on issues related to immunity or tribal immunity in particular.

In short, the Court should preclude Dr. Finnerty's testimony on the issues referenced above.

## B. William Jannace

Archer also seeks to call William Jannace to offer expert testimony regarding background on broker-dealers.   He additionally hopes to elicit from Jannace the following impermissible testimony, *inter alia*:

- Most securities get a "haircut" of 100% for purposes of calculating net capital. That is, for net capital purposes, most securities' value is exactly zero. While the fair market value of those securities is non-zero, and may be substantial, they are valued at zero for purposes of calculating a broker's net capital position

- Burnham Securities ("BSI") was an introducing broker, and was subject to less stringent reporting requirements than clearing brokers. BSI only had to file an annual FOCUS report.

- BSI's annual report had to contain a net capital calculation.

- BSI's annual report for the year ended December 31, 2014 showed that it was in compliance, and that it had more net capital than was required.

- BSI was also in compliance with the net capital requirement as of April 2015, when it filed its annual report.

- The WLCC bonds are a type of highly illiquid municipal bonds, which means that, while they have value to some investors, for purposes of calculating net capital, they would have received a 100% haircut and their value would have been discounted to zero. They would have no positive effect on the calculation of BSI's net capital.

7

The Court should preclude this testimony because Archer's notice on these issues is deficient and the substance of this proposed testimony is improper.   While Archer provides a link to Mr. Jannace's website biography, the biography fails to provide any insight into Mr. Jannace's opinions regarding BSI or the WLCC bonds.  Fed. R. Crim. P. 16(b)(1)(C).   Further, the website biography provides no insight into how Mr. Jannace concluded that "[m]ost securities get a 'haircut' of 100% for purposes of calculating net capital" such that their value for net capital purposes is "exactly zero"; a conclusion that appears to be factually inaccurate.

Further, certain of Jannce's opinions are irrelevant and not the proper subject matter of expert testimony.   Expert testimony is not needed to read or interpret BSI's annual report, a document which is intended for the general public.   And the distinction between "clearing" broker and "introducing" brokers is not relevant to this case.

In addition, Archer proffers that Jannace will testify that:

- Rosemont Seneca Bohai's transfer of WLCC bonds to VL Assurance and/or BSI was entirely permissible, and consistent with Rosemont Seneca Bohai's representation letter.

- Mr. Cooney's transfer of WLCC bonds to Bonwick Capital was entire[l]y permissible, and consistent with Mr. Cooney's representation letter.

Again, statements that the defendants' actions were "entirely permissible" are not proper expert testimony under Rule 704 and usurp the role of the jury.   Such testimony improperly attempts to tell the jury that the defendants' actions demonstrate that they lacked a guilty mens rea.  *See also In re Air Disaster at Lockerbie Scot.,* 37 F.3d 804, 827 (2d Cir. 1994) ("[E]xpert testimony expressing a legal conclusion should ordinarily be excluded because such testimony is not the way in which a legal standard should be communicated to the jury."); *Duncan*, 42 F.3d at 101; *United States* v. *Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (expert testimony "must be

carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying the law to the facts before it").   It is up to the jury to decide on whether the actions of the defendants' were permissible and consistent with representations they had made to others.

### C.  Paul Atkins

Finally Archer seeks to offer testimony from Mr. Paul Atkins.   The Court should preclude this testimony in its entirety.

First, many of Atkins' opinions consist of abstract, vast generalizations that have no relevance in the context of this case.   For example, Atkins plans to opine that "Directors are generally not involved in the daily decisions about company, nor are they aware of them, nor should they be"; "directors generally would not receive information about the daily activities of the firm"; "it would be highly unusual for directors to be aware of" "particular transactions"; and "directors receive information of a more general nature" about companies.   Given the sheer magnitude of different boards of directors in the United States, this testimony lacks any probative value in the context of this case.   It provides no insight into the degree into which Archer, for example, was aware of the "particular transactions" at issue here.   *United States* v. *Fredette*, 315 F.3d 1235, 1239 (10th Cir. 2003) (excluding testimony of expert defense on rebate programs because proposed expert's "alleged expertise with regard to other programs gave him no special insight into whether [company at issue in that case] adhered to its rules and regulations").

Second, the notice for Atkins is deficient.   Archer simply provides a link to Atkins' website biography.   Archer provides no basis for Atkins' opinions on issues specific to this case,

including that Archer "would not be expected to be aware of the specifics of any of the particular businesses of the Burnham Financial Group, including the details of the WLCC bonds or the nature of the annuity investment"; that, "at no point was either Hughes or Atlantic required to disclose Mr. Archer or Mr. Cooney as a direct or indirect owner on Schedule A or Schedule B of the Form ADV," and "the Burnham Financial Group 'roll up' plan was perfectly lawful and appropriate."

Further, even if Archer had provided adequate notice, these opinions are not permissible expert testimony, because they again seek to usurp the role of the jury.   Archer's "aware[ness]" of the "details of the WLCC bonds [and] the nature of the annuity investment" are fact questions for the jury, which is tasked with determining whether he knowingly and intentionally joined the charged securities fraud scheme.   *See Nersesian*, 824 F.2d at 1308 (district court must be vigilant to prevent an expert from coming "dangerously close to usurping the jury's function"). Similarly, opinions about the legality of the Form ADV disclosures or the Burnham "'roll-up'" involve "legal conclusion[s] based upon the facts of the case."   *Bilzerian*, 926 F.2d at 1295 (holding that trial court properly excluded defense expert testimony generally understanding of the phrase "personal funds" in the securities industry because "it related directly to the issue of whether" the defendant's disclosures on an SEC form "complied with the" law).

Third, Atkins' opinions about SEC enforcement and regulatory issues, *See* Ex. A at 6-7, are not properly noticed, are improper under Rule 704, and are not relevant to this case.   Atkins plans to opine, for example, that "[t]he fact that an individual settled one case with the SEC in the past does not suggest he is any more or less likely than anyone else to violate the law in the future."   Atkins, however, is not being tendered as an expert on recidivism; Archer gives no

basis to think Atkins is an expert on recidivism; and statistical data about repeat offenders is not relevant to this case, particularly without any showing that Archer, Cooney, or the other defendants were aware of such data.

Accordingly, the Court should preclude testimony from Mr. Atkins.

## <u>CONCLUSION</u>

The Court should grant the Government's motion to preclude expert testimony.

Dated: New York, New York
April 16, 2018

Respectfully submitted,

ROBERT KHUZAMI
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

by:      ____/s/_____
Rebecca Mermelstein
Brendan F. Quigley
Negar Tekeei
Assistant United States Attorneys
(212) 637-2360 / 2190 /2444