

MATTHEW L. SCHWARTZ
Tel.:  (212) 303-3646
E-mail:  mlschwartz@bsfllp.com

April 24, 2018

**BY ECF**

Hon. Ronnie Abrams
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

   **Re:** *United States v. Jason Galanis, et al.*, S1 16 Cr. 371 (RA)

Dear Judge Abrams:

   I represent Devon Archer.  I write pursuant to the Court's instructions at the April 13, 2018 conference, and in response to the government's April 19, 2018 letter in further support of its motion to introduce certain evidence under Federal Rule of Evidence 404(b).

**A. If the Court Reconsiders the Admissibility of the Gerova Evidence, Mr. Archer Must Be Tried Separately From Gary Hirst and John Galanis**

   At the April 13 conference, Your Honor ruled that evidence of the Gerova arrests and convictions is inadmissible.  For all of the reasons that Mr. Archer and his co-defendants have previously given, that was plainly the correct ruling.

   In arguing otherwise, the government now concedes that "[t]he Government is not now asserting that the Gerova evidence is relevant against Archer."  (4/19/2018 Letter at 4 n.4).  This is a different story than the one the government gave previously,[1] but it is the right one.  Thus, to the extent that the Court is inclined to reconsider its decision excluding the Gerova evidence, it is absolutely essential that Mr. Archer not be tried alongside John Galanis and Gary Hirst.  The prejudice to Mr. Archer from being lumped together with Jason Galanis's prior, proven partners in crime will be overwhelming, and a simple limiting instruction will not suffice.  *See Zafiro v. United States*, 506 U.S. 534, 539 (1993) (finding that a risk of prejudice sufficient to grant severance "might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant"); *United States v. Gonzalez*, No. 09 Cr.  481 (CM), 2010 WL 339698, at *3 (S.D.N.Y. Jan. 28, 2010) (finding that prejudice justifying severance may occur "when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper" (quoting *United States v. Salameh*, 152 F.2d 88, 115 (2d Cir. 1998)));

---

[1] *See* ECF No. 369, at 7-8 ("Further evidence regarding the Gerova arrests is necessary to provide background and context to communications among various of the defendants, including Archer and Cooney and at least one cooperating witness. . . ."); ECF No. 339, at 7 (arguing that the Gerova arrests are "direct evidence of the crime" as to Mr. Archer).



*United States v. Lino*, No. 00 Cr. 632 (WHP), 2001 WL 8356, at *23 (S.D.N.Y. Jan. 2, 2001) (observing that courts ruling on severance "should consider . . . prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant." (citation omitted)).

**B.    In Arguing For the Admissibility of the City National Bank Evidence, the Government Has Articulated a New and Impermissible Theory of Securities Fraud**

Next, the government's letter seeks to reargue the admissibility of evidence concerning purported misstatements by Bevan Cooney to City National Bank, a topic on which the Court reserved decision. Mr. Archer has no view on the admissibility of this evidence.

In the course of making its argument, however, the government writes:

> Cooney was given money to purchase the [WLCC] bonds for at least two purposes: (i) to falsely suggest that there were legitimate purchasers of the bonds; and (ii) to permit the defendants to obtain control of additional Wakpamni bonds without locating any additional investor money, so that the bonds could be used as a currency in other transactions – as they were, for example, in funding the purchase of Bonwick.

(4/19/2018 Letter at 7). To the extent that the government intends to make the same arguments concerning the bonds that Mr. Archer allegedly purchased, its first argument – that the bonds were acquired "to falsely suggest that there were legitimate purchasers of the bonds" – should be precluded.[2] This fraud-on-the-market theory of the case – as to Mr. Archer – is unsupported by the evidence and constitutes an unconstitutional variance from the charges in the Indictment. *See generally United States v. Davis*, No. 13 Cr. 923 (LAP), 2017 WL 3328240, at *28 (S.D.N.Y. Aug. 3, 2017) ("A constructive amendment is a *per se* violation of the Fifth Amendment, and constructive amendments have been found when the government alleges one theory of the case in the indictment but argues another at trial." (citing *Stirone v. United States*, 361 U.S. 212, 217 (1960))).

This case has always been about two, and only two, kinds of alleged misconduct: (1) the alleged misappropriation of the proceeds of the WLCC bonds, and (2) the failure to disclose conflicts of interest and other violations of fiduciary duty at Atlantic and Hughes. *See* Ind. ¶ 30 (charging all five defendants with securities fraud, ". . . to wit, the defendants engaged in [1] a scheme to misappropriate the proceeds of several bond issuances by the WLCC and [2] also caused investor funds to be used to purchase the bonds, for which there was no secondary market through which such bonds could be redeemed, without disclosure to those investors of material facts, including the existence of multiple conflicts of interests, and which investments, in some

---

[2]    The second argument – that the bonds purchased by Messrs. Archer and Cooney were used as a currency substitute for regulatory capital requirements and to make corporate acquisitions – has always been part of the government's case and Mr. Archer has no objection to the government pursuing it.



cases, were outside the investment parameters of the accounts in which they were placed.").

Mr. Archer (and Mr. Cooney) are not alleged to have been involved in the second sort of misconduct at all. Thus, our trial preparation has been focused on the government's theory that Mr. Archer conspired to misappropriate $60 million in bond proceeds.

In a single clause of a single sentence hidden in a letter re-litigating unrelated Rule 404(b) evidence, the government appears to announce an entirely new theory of securities fraud: that Mr. Cooney defrauded the bond market by falsely suggesting that there were legitimate purchasers of the bonds, when he was somehow an illegitimate purchaser. If the government is permitted to make this argument, there is serious risk that the jury could convict based upon an uncharged fraud-on-the-market theory, rather than the charged conspiracy.

In response to Mr. Archer's motion for a bill of particulars and to dismiss the substantive securities fraud charge, the government claimed that its charges were valid and no particulars were necessary because the defendants were on notice of the government's evidence and legal theories through the discovery, charging instruments, and other disclosures in this case. *See* ECF No. 308, at 96-105. But nowhere has the government ever previously asserted that Mr. Archer (or Mr. Cooney) were responsible for misrepresentations to the bond market, and it is not what the Indictment charges. *See* Ind. ¶ 30.[3] The government should not be permitted to introduce an entirely new theory of securities fraud this late in the game. *See United States v. Milstein*, 401 F.3d 53, 65 (2d Cir. 2005) (vacating conviction where the government sought to prove a different

---

[3] The government has alleged that John Galanis falsely told the WLCC "that the First, Second, and Third Bond Issuances had been successful and that investors were demanding even more WLCC Bonds." ECF No. 308, at 3. It is undisputed that Mr. Archer and Mr. Cooney were not aware of these representations, and had no interactions with the WLCC. Thus, while these misstatements may constitute state of mind evidence as to John Galanis, they are not admissible as against Mr. Archer and Mr. Cooney, and are yet one more reason why Messrs. Archer and Cooney should be severed. *See generally Zafiro*, 506 U.S. at 539.

If the Court is nonetheless inclined to allow the government to introduce this evidence of false statements to the WLCC (as opposed to a fraud-on-the-market), it should give the following limiting instruction before and after the jury hears the evidence:

> [You are about to hear/You have heard] evidence that John Galanis made certain statements to the WLCC concerning the success of the WLCC bonds and the demand for them in the market. It is for you alone to decide whether John Galanis actually made those statements and, if so, whether there was anything wrongful about them, and you may consider that evidence only for its bearing, if any, on the question of John Galanis's knowledge and intent, and for no other purpose. You may not consider that evidence as evidence of guilt of any crime for which Devon Archer or Bevan Cooney is now on trial; that evidence has absolutely nothing to do with them.



manner of criminally misbranding drugs than was alleged in the indictment); *United States v. Johansen*, 56 F.2d 347, 352 (2d Cir. 1995) (reversing conviction where "there [was] a variance between the allegation in the indictment and the proof at trial"); *Davis*, 2017 WL 3328240, at *28 ("[C]onstructive amendments have been found when the government alleges one theory of the case in the indictment but argues another at trial." (citing *Stirone* 361 U.S. at 217)).  Thus, any argument that Mr. Archer purchased WLCC bonds in order to fraudulently represent that there were "legitimate purchasers" for the bonds should be excluded.

### C.     The Court Should Give a Limiting Instruction for the Form ADV Evidence

Finally, at the April 13 hearing, the Court ruled that evidence of purported misstatements on Atlantic and Hughes's Forms ADV was direct evidence of Michelle Morton's guilt, insofar as it is "probative of Ms. Morton's knowledge, intent, and consciousness of guilt in failing to disclose that she had ceded control of Hughes and Atlantic, in violation of her fiduciary duties as an investor advisor.  This failure also permitted the fraudulent scheme to continue operating unbeknownst to Ms. Morton's clients."  (4/13/2018 Tr. at 17).  The Court instructed Mr. Archer to submit a limiting instruction, however, in light of the fact that it is undisputed that Mr. Archer (and Mr. Cooney) had no knowledge of the Form ADV, let alone the purported misstatement on it – even though Messrs. Archer and Cooney were among the people whose identities allegedly should have been disclosed on the Forms ADV.  (*Id.* at 31).

Accordingly, Mr. Archer proposes that the Court give the following limiting instruction before and after the jury hears any evidence about the allegedly false Form ADV.

> [You are about to hear/You have heard] evidence that certain Forms ADV submitted on behalf of [Atlantic/Hughes] to FINRA failed to disclose the identities of people that the government contends exercised control over [Atlantic/Hughes].  It is for you to decide whether there was anything wrong about the way those Forms were filled out, or whether they were completed accurately in accordance with the various rules for Forms ADV.  Even if you determine that the Forms were incomplete, you may consider that evidence only for its bearing, if any, on the question of Michelle Morton's knowledge and intent, and for no other purpose.  You may not consider that evidence as evidence of guilt of any crime for which Devon Archer or Bevan Cooney is now on trial; that evidence has absolutely nothing to do with them.

Although Mr. Archer submits that the better course would be either to exclude this evidence entirely or to sever Messrs. Archer and Cooney from Ms. Morton (who has never objected to the Form ADV evidence), *see generally Zafiro*, 506 U.S. at 539, the above limiting instruction is necessary in any joint trial at which this evidence is admitted.  Moreover, a clear and repeated instruction to the jury that the Form ADV evidence does not pertain to Messrs. Archer and Cooney will save valuable jury time and avoid confusion, because it will allow us to forego presenting complex and prejudicial evidence about the accuracy of the Form ADV in light of the



rules concerning Minority Business Enterprises, as well as complicated and disputed expert testimony.  *See* ECF No. 355, at 11-14.

      Thank you for your consideration.

                                         Respectfully,

                                          /s/  Matthew L. Schwartz
                                         Matthew L. Schwartz