

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 19, 2018

**FILED UNDER SEAL**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

    Re:    **United States v. Jason Galanis, et al.,**
                **S1 16 Cr. 371 (RA)**

Dear Judge Abrams:

      The Government respectfully submits this letter requesting that the Court rule that the attorney-client privilege does not apply to certain email evidence (1) listed on the privilege logs of defendant Devon Archer ("Archer"), and/or (2) at issue in the Government's motion for a ruling that the crime-fraud exception applies (Dkt. No. 285).

### I.  BACKGROUND

      On November 2, 2017, the Government's privilege team in this matter (the "Filter Team") produced to Archer emails obtained pursuant to a search warrant (16 Mag. 8347) for email accounts belonging to Archer, codefendant Bevan Cooney ("Cooney"), and Sebastian Momtazi ("Momtazi"), bearing Bates ranges pr.review.archer_00000001-00020819 and pr.review.joint_00000001-00000639.[1] In its November 2, 2017 letter, the Filter Team advised Archer that it had designated documents with Bates ranges pr.review.archer_00000001-00019666 and pr.review.joint_00000001-00000530 as not privileged, but that as agreed at the pretrial conference on October 26, 2017, the Filter Team would not release these documents to the investigative team until Archer had an opportunity to review them.[2]

---

[1] Documents with the Bates prefix pr.review.archer consist of communications sent or received by Archer or Momtazi. Documents with the Bates prefix pr.review.joint consist of emails that sent or received by both Archer (or Momtazi) and Cooney.

[2] Archer agreed with the government's assessment with respect to the majority of these documents. The Filter Team subsequently released to the investigative team (*i.e.,* the government's trial team) only those emails that Archer has agreed are not privileged. Because this letter discusses the content

By letter dated December 28, 2017, the Filter Team identified an additional 24 of the emails produced to Archer on November 2, 2017, already designated by the Government as potentially subject to the crime-fraud exception, as also not privileged in the first instance.[3] On January 9, 2018, the Filter Team produced to Archer additional documents, bearing Bates ranges pr.review.archer_00020820-994 and pr.review.joint_00000640-42, which the Filter Team designated as potentially subject to the crime-fraud exception to the attorney-client privilege, and potentially not privileged in the first instance. On February 8, 2018, the Government produced to Archer additional documents, bearing Bates ranges pr.review.archer_00020954-21283 and pr.review.joint_00000643-666, also designated as potentially subject to the crime-fraud exception, and potentially not privileged in the first instance.

Archer provided the Government with a privilege log on January 8, 2018. ("Archer's Initial Privilege Log"). On March 12, 2018, Archer provided the Government: (1) an amended privilege log, which included one additional document ("Archer's Amended Privilege Log," attached hereto as Exhibit 1); and (2) a privilege log relating to the Government's January 9 and February 8, 2018 productions ("Archer's Supplemental Privilege Log," attached hereto as Exhibit 2).

The defendant has thus far declined the Government's requests that he provide additional information necessary to meet his burden of demonstrating that the elements of the privilege are met with respect to many of the emails on his privilege logs. Accordingly, for the reasons set forth below, the Filter Team respectfully requests that, absent Archer's prompt submission of sufficient evidentiary submissions to fill in factual gaps necessary to establish the privilege applies, the Court should rule that the vast majority of the communications on Archer's privilege logs are non-privileged.[4]

## II. LEGAL STANDARD

"To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *United States v. Constr. Prds. Res., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (citations omitted).

"The law is clear in this circuit that a person claiming the attorney-client privilege has the burden of establishing all the essential elements thereof." *von Bulow v. von Bulow*, 811 F.2d 136,

---

of some of the remaining email communications, the Filter Team is submitting this letter under seal, and the AUSAs on the trial team have not reviewed it.

[3] These 24 emails (33 documents including families) are: pr.review.archer_00019792-95, 19796-99, 19800-03, 19804-07, 19808-12, 19813-17, 19837-41, 19842, 20038, 20039, 20040, 20041, 20042-20106, 20107-08, 20241, 20242, 20243, 20244, 20248, 20249-83, 20284-85, 20517, 20664, 20665-68, 20669, 20670-20733, 20734-38, 20760-61, 20762-63; 20764-65, 20766-68, 20769-71, and 20775.

[4] Archer's privilege logs do not include emails at issue in the Government's crime-fraud motion. For the same reasons as those documents on Archer's privilege logs, these documents too are potentially not privileged in the first instance. However, the Court's decision on the Government's crime-fraud motion may moot the instant motion with respect to some or all of these communications.

146 (2d Cir. 1987) (citing *In re Horowitz*, 482 F.2d 72 (2d Cir.), *cert. denied*, 414 U.S. 867 (1973)). "That burden is not, of course, discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *Id.* (quoting *In re Bonanno*, 344 F.2d 830, 833 (2 Cir. 1965)). "To facilitate its determination of privilege, a court may require 'an adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps.'" *Constr. Prds. Res., Inc.*, 73 F.3d at 473 (citations omitted).

### III. The Court Should Find That the Attorney-Client Privilege Does not Apply to Email Communications That Include Third Parties Such as Jason Galanis, Where the Purported Privileged Client is COR Fund Advisors, LLC or BAM Holdings, LLC.

For the vast majority of the emails on his privilege logs, Archer asserts that the privileged client is COR Fund Advisors, LLC ("CORFA"). *See* Exhibits 1 and 2. For a smaller group, Archer asserts that the privileged client is BAM Holdings, LLC ("BAM Holdings"). *See id.* Many of these communications involve attorney Clifford Wolff ("Wolff"). Yet most of these communications also involve apparent third parties, including Jason Galanis ("Galanis").[5]

In its November 2, 2017 letter, the Filter Team requested that Archer provide a log setting forth information sufficient to evaluate the existence of the privilege, including, for those communication as to which Archer asserted that the privileged clients was an entity, such as CORFA and BAM Holdings, the relationship to the entities of all individuals included on the communications. Archer has not done so. This failure is particularly problematic with respect to those communications that include Galanis, because Archer has previously stated, essentially, that Galanis did not have any association or affiliation with CORFA or BAM Holdings. As alleged in the Complaint (Dkt No. 1), on or about October 1, 2014, Archer:

> in his capacity as managing member of CORFA, an investor in Burnham, and as manager and member of [BAM Holdings, LLC,] the entity that owned Burnham Asset Management, sent a letter to the Board of Trustees of the Burnham Investors Trust (the "BIT Board"), which operated certain mutual funds that used the Burnham name. In the letter, ARCHER falsely confirmed for the BIT Board that Jason Galanis . . . "would not be involved with any of the Burnham entities and their 'affiliated persons' (within the meaning of Section 2(a)(1) of the Investment Company Act) as well as their successors or assigns at Burnham Financial Group, Burnham Asset Management, Burnham Securities or Burnham Investors Trust."
> . . .
> ARCHER further claimed that JASON GALANIS "will have no interest of any kind, direct or indirect, in any of the Burnham entities or their successors, that he will not source deals to the Burnham entities and that the Burnham entities will not invest with or in, directly or indirectly, any business or enterprise in which [GALANIS] has any association, affiliation or investment, pecuniary or otherwise, directly or indirectly."

---

[5] This is also the case for at least two email strings, Bates range pr.review.archer_8353-59 and 8360-68, as to which Galanis's inclusion in earlier emails in the strings is not apparent from the privilege log.

(Complaint at ¶ 34(b); September 26, 2014 letter from Archer, on behalf of CORFA and BAM Holdings, to The Board of Trustees, Burnham Investors Trust, attached hereto as Exhibit 3). Thus, defendant Archer's own assertions appear to be in conflict with his contention that Galanis's inclusion on CORFA and BAM Holdings-related emails does not destroy any attorney-client privilege that might otherwise apply.

Although the Complaint and Indictment allege that Archer's statements in his October 1, 2014 letter were false, Archer has not disavowed them. Nor has Archer addressed the Government's request that he provide necessary information concerning Galanis and other third parties' relationships to CORFA and BAM Holdings, or otherwise explained how their inclusion in these emails is consistent with the communications being kept confidential. Simply put, Archer has failed to meet his burden to establish that the privilege applies to such communications.

The Court should find that the privilege does not apply to emails as to which the purported privileged client is CORFA or BAM Holdings that include third parties such as Galanis, or, at the very least, require that Archer promptly provide the Government and the Court with "evidentiary submissions to fill in [these] factual gaps" with respect to all third parties involved in the communications on his privilege logs and/or at issue in the Government's crime-fraud motion, so that the Court may resolve this issue. *Constr. Prds. Res., Inc.*, 73 F.3d at 473.

### IV. The Court Should Find That the Attorney-Client Privilege Does not Apply to Communications Between Galanis and Attorney Timothy Anderson.

A number of emails on Archer's privilege logs[6] and at issue in the Government's crime-fraud motion[7] are communications from attorney Timothy Anderson ("Anderson") that were forwarded by Galanis and/or Sebastian Momtazi. Yet Anderson represented in the related Securities and Exchange Commission ("SEC") case that he did not represent Galanis or any entity as to which Galanis was within the attorney-client privilege. *See* Anderson Motion for Protective Order, *SEC v. Archer et al.*, No. 16-CV-3505 (WHP), Dkt. 17, attached hereto as Exhibit 4. Accordingly, the Hon. William H. Pauley, III, U.S. District Judge, ordered in the SEC proceeding that Anderson's communications to Galanis were deemed not privileged. *See* August 26, 2016 Order of Hon. William H. Pauley, III, U.S. District Judge, *SEC v. Archer et al.*, No. 16-CV-3505 (WHP), Dkt. No. 76, attached hereto as Exhibit 5. These non-privileged communications did not become privileged simply because Galanis or Momtazi forwarded them to others, including Wolff, another attorney as to whom Archer has not met his burden to establish that Galanis was within the attorney-client privilege, as set forth in Part III, *supra*.

---

[6] Anderson communications on Archer's privilege logs bear Bates ranges pr.review.archer_2103-04 (forwarded by Galanis to Archer and Cooney), and 16377 (forwarded by Galanis to Archer and Wolff).

[7] Anderson communications at issue in the government's crime-fraud motion bear Bates ranges pr.review.archer_19703-05 (forwarded by Galanis to Archer and Cooney), pr.review.archer_20599-600 (forwarded by Galanis and Momtazi to Archer, Wolff, and each other), and pr.review.joint_608-610 (forwarded by Galanis to Archer and Cooney).

V.  **The Court Should Find That the Attorney-Client Privilege Does not Apply to Communications That Relate Primarily to Business Rather Than Legal Advice.**

A number of emails on Archer's privilege logs relate primarily to business, rather than legal advice.  For instance, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ appears to be purely business advise, as to which the attorney-client privilege does not apply. *See In re Grand Jury Subpoena Duces Tecum dated Sept. 15, 1983*, 731 F.2d 1032, 1037 (2d Cir. 1984) ("[T]he privilege is triggered only by a client's request for legal, as contrasted with business, advice.") (citing *In re John Doe Corp.*, 675 F.2d 482, 488 (2d Cir. 1987) ("The *Upjohn* privilege is clearly limited to made to attorneys solely for the purpose of the corporation seeking legal advice and its counsel rendering it")).

Similarly, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

In another email string, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ These communications do not primarily relate to legal advice, but are simply instructions to make payments.

Wolff also provides ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



In reviewing other information forwarded by Momtazi, Wolff responded:

The Court should find that the privilege does not apply to these communications, which are either wiring instructions or otherwise relate primarily to business and/or marketing advice, as opposed to legal advice, or, at the very least, require that Archer promptly provide the Government and the Court with "evidentiary submissions to fill in [all] factual gaps," so that the Court may resolve this issue. *Constr. Prds. Res., Inc.*, 73 F.3d at 473 (citations omitted).

VI. **The Court Should Find That the Attorney-Client Privilege Does not Apply to Communications That Were not Intended to or Did not Remain Confidential.**

Additional emails on Archer's privilege logs reflect communications among parties who did not intend that the communications remain confidential. In some instances, the email communications explicitly requested that information be shared with third parties. For instance,

Likewise,

Another email

Archer has not established that these communications were "intended to be and [were] in fact kept confidential." *Constr. Prds. Res., Inc.*, 73 F.3d at 473. The Court should find that the privilege does not apply to them, or, at the very least, require that Archer promptly provide the Government and the Court with "evidentiary submissions to fill in [all] factual gaps," so that the Court may resolve this issue. *Id.*

        Respectfully submitted,

        ROBERT KHUZAMI
        Attorney for the United States,
        Acting Under Authority Conferred by 28 U.S.C. § 515

    by:   */s/ Jeffrey Coffman*
        Lisa Korologos/Jeffrey Coffman
        Assistant United States Attorneys
        (212) 637-2406/2263

Enclosures

cc: Matthew Schwartz, Esq.