# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                          :

  UNITED STATES OF AMERICA,          :

                        - against –            :    **MEMORANDUM DECISION &**
                                                      :    **ORDER**
  MARK NORDLICHT,                     :
  DAVID LEVY,                             :    16-cr-00640 (BMC)
  DANIEL SMALL,                         :
  URI LANDESMAN,                     :
  JOSEPH MANN,                          :
  JOSEPH SANFILIPPO, and          :
  JEFFREY SHULSE,                    :
                                                       :
                    Defendants.         :
------------------------------------------------------------ X

**COGAN,** District Judge.

      Defendant Mark Nordlicht has moved the Court to sever his trial from that of his co-defendants. Daniel Small and David Levy subsequently joined the motion, and Joseph SanFilippo informed the Court that he does not oppose it. Nordlicht argues for severance because, *inter alia*, of the anticipated defense of one of his co-defendants, Jeffrey Shulse. Shulse intends to argue that he is innocent, that his co-defendants are guilty as charged, and that he reported their allegedly illegal conduct to the Government. Nordlicht's motion is granted in part, and Shulse's trial is severed from that of his co-defendants.

## BACKGROUND

      The Court presumes familiarity with the general background and procedural posture of the case. Generally, the Indictment alleges that defendants participated in two fraudulent schemes. First, it alleges that between November 2012 and December 2016, defendants concealed a growing liquidity crisis at Platinum's flagship hedge fund, Platinum Partners Value Arbitrage Fund L.P. ("PPVA"), overvalued the performance of PPVA's assets, liquidity, and

investments, and concealed the purpose of various transactions in violation of PPVA's governing documents. The Indictment also alleges that select investors were paid requested redemptions of their investments in PPVA ahead of and/or in lieu of other investors, contrary to PPVA's governing documents. Second, the Indictment alleges that between November 2011 and December 2016, certain of the defendants defrauded third-party holders of Black Elk Energy Offshore Operations, LLC ("Black Elk") bonds and deprived those bondholders of the proceeds of a Black Elk asset sale through misrepresentations regarding the ownership and control of the bonds. Black Elk was a portfolio company of PPVA. Defendants were indicted in December 2016.

Nordlicht was one of Platinum's founding partners and its Chief Investment Officer. As alleged in the Indictment, beginning in approximately 2011, Nordlicht had primary responsibility for Platinum's investment decisions and the valuation of its assets for all funds, including PPVA. Shulse was employed at Black Elk from approximately January 2014 to April 2015, serving first as its Chief Financial Officer and later as its Chief Executive Officer. Shulse previously moved the Court to sever his trial from that of his co-defendants, and the Court denied his motion.

Shulse anticipates that his defense will be that Platinum, through its officers (Nordlicht, Small, and Levy) perpetrated multiple frauds. He will claim that the other defendants kept the frauds hidden from him, and that when he became aware of what his co-defendants were doing, he immediately brought it to the attention of the SEC and other authorities. In support of his theory, Shulse will attempt to introduce out-of-court statements that he made to investigators, which apparently detail his discovery of the charged criminal conduct. On the other hand, Nordlicht and the remaining defendants will argue that there was no fraud, and that instead, the

Government merely disapproves, among other things, of Platinum's valuations of certain assets, inter-fund loans, and its challenging liquidity profile.

## DISCUSSION

Federal Rule of Criminal Procedure 8(b) states that an "indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." The Second Circuit interprets the rule "to mean that the acts must be unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." United States v. Attanasio, 870 F.2d 809, 815 (2d Cir. 1989) (internal quotations omitted).

"[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). "[A] defendant seeking severance under Rule 14 bears an extremely difficult burden of proving . . . that the prejudice would be so great as to deprive him of his right to a fair trial." U.S. v. Barret, 824 F. Supp. 2d 419, 433 (E.D.N.Y. 2011) (quotation omitted). Whether to grant a motion to sever is committed to the sound discretion of the trial court. Some factors to be considered include:

> the number of defendants and counts; (ii) the complexity of the indictment; (iii) the estimated length of trial; (iv) disparities in the amount or type of proof offered against the defendants; (v) disparities in the degrees of involvement by defendants in the overall scheme; (vi) possible conflict between defense theories or strategies; (vii) potential prejudice from evidence admitted only against codefendants but which is inadmissible or excluded as to a particular defendant; and (viii) potential prejudice if exculpatory evidence were unavailable in a joint trial, but would have been available to a defendant tried alone.

U.S. v. Guillen-Rivas, 950 F. Supp. 2d 446, 457 (E.D.N.Y. 2013). The benefits of joint trials are obvious: "[j]oint trials . . . limit inconveniences to witnesses, avoid delays in bringing defendants to trial and permit the entire story to be presented to a single jury." United States v. Rucker, 32 F. Supp. 2d 545, 547 (E.D.N.Y. 1999). The decision of whether to sever necessarily requires case by case analysis. See Zafiro, 506 U.S. at 534. Although a high risk of prejudice might require separate trials, "less drastic measures, such as limiting instructions, often will suffice." Id.

Despite this preference for joint trials, two major problems would arise from a trial of the defendants that includes Shulse: first, Shulse's strategy would necessarily subject Nordlicht and the other defendants to "double prosecution;" second, this strategy would inevitably lead to frequent objections against Shulse's argument and evidence, seriously disrupting trial in a manner that would test any jury. However, because these problems stem from Shulse's presence in the trial, and not Nordlicht's, and because they would, to some degree, affect all of Nordlicht's other co-defendants, the appropriate solution is to sever Shulse.

Turning first to the risk of double prosecution, Shulse, as described above, intends to argue that Nordlicht and his co-defendants are guilty as charged, and that he was, at worst, merely an unknowing pawn in their alleged frauds. Some degree of "finger-pointing" is to be expected in multi-defendant cases and is tolerable. See United States v. Casamento, 887 F.2d 1141, 1154 (2d Cir. 1989); United States v. Serpoosh, 919 F.2d 835, 837 (2d Cir. 1990) ("The mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance."). Shulse's strategy, however, presents a situation that is an order of magnitude more severe than routine accusations and blame-shifting between co-defendants. As an example, at oral argument, Shulse's counsel contemplated the possibility of presenting the

4

jury at closing with a display of emails allegedly incriminating Shulse's co-defendants, and pointing out his client's absence from them.  His inclusion in a joint trial would essentially make his co-defendants face prosecution on two fronts: one attack brought by the Government, and another leveled by Shulse.

This creates several problems.  First, Shulse's co-defendants would be burdened by having to parry off his accusations in addition to the Government's, seriously adding to the difficulty of their defense.  Second, although the Government has ethical commitments and disclosure requirements, Shulse would not have parallel obligations.  This would both disadvantage his co-defendants by compelling them to respond to his accusations, and secure an advantage for the Government.  This is because to the extent that it would have relied on arguments that overlap with Shulse's, the Government could instead let him make those arguments without then having to make relevant disclosures to his co-defendants.  Third, even with rigorous limiting instructions, the jury will be confronted with a serious challenge in distinguishing the Government's case against Shulse's co-defendants from *his* defense against the Government, which will entail a virtual case against the other defendants.  This risks "prevent[ing] the jury from making a reliable judgment about guilt or innocence."  Zafiro, 506 U.S. at 539.  Taken together, these concerns rise to the level of "legally cognizable prejudice" threatening Shulse's co-defendants right to a fair trial, and warranting severance.  Id. at 541.

Serious trial management concerns also militate in favor of severing Shulse.  With Shulse included, the Court anticipates innumerable objections during openings and witness examinations and cross-examinations, along with frequent side bars.  This risks adding to the complexity of an already challenging case, extending its length, and disrupting the parties'

5

presentations, all of which will heighten the chances of jury confusion, further jeopardizing defendants' right to a fair trial.

The Court does not make this decision lightly.  As the parties are aware, it earlier denied Shulse's motion to sever.  However, the positions that the parties will stake out at trial mean that the consequences of trying the defendants together outweigh the efficiencies and presumption of a joint prosecution.

## CONCLUSION

Shulse's trial is severed from that of his co-defendants.  The Court will confer with the parties to set a later trial date for Shulse.

**SO ORDERED.**

                                                                              U.S.D.J.


Dated:  Brooklyn, New York
        April 16, 2018