USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 5/9/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

JASON GALANIS, et al.,

            Defendants.

---

No. 16-CR-371 (RA)

ORDER

RONNIE ABRAMS, United States District Judge:

    As the parties are aware, the government filter team provided for *in camera* review the communications that are the subject of the trial team's motion to invoke the crime-fraud exception to attorney-client privilege. For the reasons that follow, the Court has identified a subset of 23 emails which are subject to the crime-fraud exception and should accordingly be disclosed to the government trial team.

    "The crime-fraud exception strips the privilege from attorney-client communications that relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1994) (citation omitted). "A party wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997) *abrogated on other grounds by Loughrin v. United States*, 134 S. Ct. 2384 (2014). Because, however, "*in camera* inspection . . . is a smaller intrusion upon the confidentiality of the attorney-client relationship," to obtain such review, a party seeking to pierce the attorney-client privilege must provide only "a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to

establish the claim that the crime-fraud exception applies." *United States v. Zolin*, 491 U.S. 554, 572 (1989) (alteration in original) (citation omitted); *accord Meyer v. Kalanick*, No. 15-CV-9796, 2016 WL 3189961, at *3 (S.D.N.Y. June 7, 2016).

In light of the indictment, there clearly exists probable cause to believe that a crime has been committed. The government's February 12 reply brief to its pre-trial motions included a spreadsheet ("initial crime-fraud log") identifying 181 communications and/or attachments identified by the filter team, which the trial team argued should be subject to the crime-fraud exception. Given that the trial team had not reviewed the communications, its arguments turned largely upon cursory descriptions of the topics discussed, the parties to the communications, and their timing in relation to overt acts alleged to have been committed in furtherance of the conspiracy. This showing was sufficient for the government to satisfy the minimal burden necessary to secure *in camera* review. Furthermore, at the March 6th conference, counsel for Mr. Archer, together with Mr. Cooney, consented to *in camera* review of the documents set forth in the initial crime-fraud log. *See* ECF No. 349, Tr. 29:13-19. Subsequently, the government filed an additional list of 63 emails ("supplemental crime-fraud log"), which Mr. Archer addressed in his sur-reply.[1] For substantially the same reasons described above, there was also a sufficient basis to justify *in camera* review of these communications.

Upon conducting *in camera* review, "the district court exercises its discretion again to determine whether the facts are such that the [crime-fraud] exception applies." *Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.*, No. 11-CV-09490 (ALC), 2016 WL 4154274, at *3 (S.D.N.Y. July 22, 2016) (citation omitted). Although the Court is not in a position to conclude that the vast

---

[1] The Court notes that it was not provided with the documents identified at entries 67 and 68 on the initial crime-fraud log and several other entries were blank or not returned because they are not stored in this jurisdiction.

2

majority of the documents fall within the scope of the crime-fraud exception, there is a relatively small subset of 23 documents out of the 244 provided for *in camera* review that plainly do qualify.[2]

Each of these 23 communications was made in order to effect Rosemont Seneca Bohai's acquisition of the second tranche of bonds. These emails show the alleged conspirators finalizing the necessary paperwork for Mr. Archer to purchase the bonds, as well as arranging for the transfer of the funds necessary to complete the purchase on Rosemont Seneca Bohai's behalf. A critical allegation in this matter with respect to Mr. Archer is that he purchased this second tranche using misappropriated proceeds from the first issuance, which were supplied by Jason Galanis. Accordingly, the following documents are not privileged and should be disclosed to the government trial team: entries 56-59, 69-72, and 74 on the initial crime-fraud log and entries 32-35, 39-42, 55, and 59-63 on the supplemental log.

SO ORDERED.

Dated: May 9, 2018
New York, New York

Ronnie Abrams
United States District Judge

---

[2] As the parties are well aware, the government and Mr. Archer agreed at the March 6th conference that the filter team would not litigate the merits of this motion. The Court has thus conducted its review absent the benefit of having seen the evidence that will be introduced at trial and without the input of a party, other than Mr. Archer, who is both intimately familiar with such evidence and has reviewed the communications at issue. Accordingly, the Court has been placed in the position of ascertaining the significance of individual communications—many of which appear on their face to concern legitimate business transactions—based largely on the allegations contained in the charging documents.

3