UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          v.<br><br>GARY HIRST,<br>JOHN GALANIS, a/k/a "Yanni,"<br>MICHELLE MORTON,<br>DEVON ARCHER, and<br>BEVAN COONEY,<br><br>          Defendants. | No. 16 Cr. 371 (RA) |

### DEVON ARCHER'S MEMORANDUM IN OPPOSITION TO
### THE GOVERNMENT'S SECOND SET OF MOTIONS *IN LIMINE*[1]

Matthew L. Schwartz
BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel.: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com

*Attorneys for Devon Archer*

---

[1]    As set forth below, certain portions of this memorandum are submitted on behalf of defendant Bevan Cooney, as well.

# **TABLE OF AUTHORITIES**

*Chambers v. Mississippi*,
  410 U.S. 284 (1973) ............................................................................................................... 8

*Chevron Corp. v. Donziger*,
  974 F. Supp. 2d 362 (S.D.N.Y. 2014) .................................................................................... 5

*Hart v. RCI Hospitality Holdings, Inc.*,
  90 F. Supp. 3d 250 (S.D.N.Y. 2015) ...................................................................................... 2

*Mutual Life Insurance Co. v. Hillmon*,
  145 U.S. 285 (1892) ......................................................................................................... 10, 12

*New America Marketing FSI LLC v. MGA Entertainment, Inc.*,
  187 F. Supp. 3d 476 (S.D.N.Y. 2016) .................................................................................... 3

*Pilgram v. McGraw-Hill Companies, Inc.*,
  599 F. Supp. 2d 462 (S.D.N.Y. 2009) .................................................................................... 5

*Scott v. City of New York*,
  591 F. Supp. 2d 554 (S.D.N.Y. 2008) .................................................................................... 2

*Shepard v. United States*,
  290 U.S. 96 (1933) ................................................................................................................ 10

*Smith v. Duncan*,
  411 F.3d 340 (2d Cir. 2005) ........................................................................................... 3, 4, 6

*United States v. Bellomo*,
  176 F.3d 580 (2d Cir. 1999) ................................................................................................. 11

*United States v. Cardascia*,
  951 F.2d 474 (2d Cir. 1991)          .................................           7

*United States v. Carneglia*,
  256 F.R.D. 384 (E.D.N.Y. 2009) ........................................................................................... 8

*United States v. Certified Environmental Services, Inc.*,
  753 F.3d 72 (2d Cir. 2014) ..................................................................................................... 5

*United States v. Coplan*,
  703 F.3d 46 (2d Cir. 2012) ................................................................................................... 11

*United States v. Ford*,
    435 F.3d 204 (2d Cir. 2006) .................................................................................................. 10

*United States v. Harris*,
    733 F.2d 994 (2d Cir. 1984) .................................................................................................... 3

*United States v. Herrera*,
    600 F.2d 502 (5th Cir. 1979) ............................................................................................. 4, 8

*United States v. Hicks*,
    848 F.2d 1 (1st Cir. 1988) ....................................................................................................... 5

*United States v. Kaiser*,
    609 F.3d 556 (2d Cir. 2010) .................................................................................................. 10

*United States v. Lagunes*,
    No. 3:12-CR-067 JD, 2013 WL 97466 (N.D. Ind. Jan. 8, 2013) ..................................... 11

*United States v. Lizotte*,
    856 F.2d 341 (1st Cir. 1988) ................................................................................................. 10

*United States v. May*,
    622 F.2d 1000 (9th Cir. 1980) .............................................................................................. 10

*United States v. Oguns*,
    921 F.2d 442 (2d Cir.1990) ................................................................................................... 11

*United States v. Ozsusamlar*,
    528 F. Supp. 2d 161 (S.D.N.Y. 2006) ................................................................................... 3

*United States v. Perez*,
    106 F. App'x 597 (9th Cir. 2004) .......................................................................................... 7

*United States v. Prevezon Holdings, Ltd.*,
    319 F.R.D. 459 (S.D.N.Y. 2017) .......................................................................................... 10

*United States v. Robinzine*,
    80 F.3d 246 (7th Cir. 1996) .................................................................................................. 11

*United States v. Santiago*,
    566 F.3d 65 (1st Cir. 2009) ..................................................................................................... 8

*United States v. Southland Corp.*,
    760 F.2d 1366 (2d Cir. 1985) .................................................................................................. 2

*United States v. Toombs*,
    No. 10-20009-CM, 2010 WL 5067617 (D. Kan. Dec. 7, 2010) ......................................... 9

*Unites States v. Foster*,
    986 F.2d 541 (D.C. Cir. 1993) ....................................................................................... 7

Defendant Devon Archer – and, with respect to the argument set forth in section I, below, defendant Bevan Cooney – respectfully submits this memorandum of law in opposition to the government's second motions *in limine*, styled as its "Motion to Preclude Certain Cross-Examination and Defense Exhibits, ECF No. 441 ("Mot.").

## ARGUMENT

### I. The Cooney-Crafton Recording Are Admissible As Non-Hearsay, And To Prove Cooney's State Of Mind[2]

Messrs. Archer and Cooney seek to introduce very limited portions of audio recordings, which reflect the way that Mr. Cooney described Mr. Archer (*i.e.*, a non-hearsay verbal act) as well as Mr. Cooney's own state of mind, and which illustrate Mr. Cooney's course of dealings. This evidence is relevant to the government's claim that Messrs. Archer and Cooney acted with an intent to defraud, and is admissible.

#### A. Relevant Background

On March 7, 2018, in its thirty-fourth production to defendants, the government disclosed recordings of conversations between Bevan Cooney and Billy Crafton – a man the government misleadingly labels "CC-1" – that were created in or about May 2014. Crafton, however, is *not* alleged to be a coconspirator of Messrs. Archer and Cooney, and has never been identified by the government as an unindicted coconspirator in this case. Instead, according to the government, these recordings were made by Crafton under the supervision of the government as part of a separate investigation, and without Mr. Cooney's knowledge. Messrs. Archer and Cooney seek to admit portions of that recording, as reflected in a draft transcript. *See* Draft Transcript, [ECF No. 441, Ex. A] ("Recording Tr.").

---

[2] The arguments in Section I of this memorandum are made on behalf of both Mr. Archer and Mr. Cooney.

On those recordings, Cooney can be heard pitching Crafton on various potential business ideas, and in the course of doing so describes Mr. Archer as "the biggest whale of anyone," and "the biggest show-pony of all time." Recording Tr. 2. Mr. Cooney later describes Mr. Archer's political connections, including the boast that "Biden works for him," which creates "layers of legitimacy." *See id.* at 4.

### B.   Applicable Law

#### 1.   Relevance, On A Motion *In Limine*

Evidence should not be lightly excluded as irrelevant on a motion *in limine*, as "[t]he Federal Rules of Evidence favor the admission of all relevant evidence." *Scott v. City of New York*, 591 F. Supp. 2d 554, 557 (S.D.N.Y. 2008); *see also Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) ("The 'standard of relevance established by the Federal Rules of Evidence is not high.' (quoting *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985))).

> Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. A district court will exclude evidence of a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. Indeed, courts considering a motion in limine may reserve judgement until trial, so that the motion is placed in the appropriate factual context. Moreover, a court's ruling regarding a motion *in limine* is subject to change when the case unfolds . . . . Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.

*Scott*, 591 F. Supp. 2d at 557 (quotation marks, citations, and footnotes omitted; ellipsis in original).

Because much of the evidence that the government now seeks to exclude "would have to be established as relevant in the context of facts presented at trial," the Court may find "that it is premature to exclude such evidence" even if its relevance is not apparent at the moment. *New*

2

*Am. Mktg. FSI LLC v. MGA Entm't, Inc.*, 187 F. Supp. 3d 476, 481 (S.D.N.Y. 2016); *see also United States v. Ozsusamlar*, 528 F. Supp. 2d 161, 164-65 (S.D.N.Y. 2006) (noting that reserving judgment on a motion *in limine* until trial allows the motion to be "placed in the appropriate factual context").

> **2.    Out-Of-Court Statements**

Out-of-court statements are only inadmissible if they (1) constitute hearsay, and (2) do not meet any of the hearsay exceptions. *See* Fed. R. Evid. 801(c), 802. A statement that is not offered for the truth of the matter asserted does not fall under the definition of hearsay in Rule 801(c). *See* Fed. R. Evid. 801(c)(2), 802. Further, a hearsay statement offered to show the declarant's then-present state of mind is admissible. *See* Fed. R. Evid 803(3) (admitting hearsay that is "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) . . . but not including a statement of memory or belief to prove the fact remembered or believed"); *see also Smith v. Duncan*, 411 F.3d 340, 346 n.4 (2d Cir. 2005) (explaining the difference between a statement offered as non-hearsay evidence of state of mind, and a hearsay statement that is admissible for its truth under the state of mind exception); *United v. Harris*, 733 F.2d 994, 1004 (2d Cir. 1984) (reversing district court's judgment due to exclusion of proffered evidence as hearsay because "[d]epending on the precise phraseology used by each witness, their testimony would have been admissible either as nonhearsay, or under the then existing state of mind hearsay exception.").

> **C.    The Crafton Records Are Admissible Both As Non-Hearsay Evidence of Mr. Cooney's State of Mind and Course of Dealing, as Well as for Their Truth Under Rule 803(3)**

The government's motion misperceives the basis of admissibility for the Cooney-Crafton recording. The recording is both admissible for legitimate non-hearsay purposes – to show Mr. Cooney's course of dealings, and to illustrate his state of mind – and for their truth under Rule

3

803(3). Neither of these bases is addressed at all in the government's motion. *See* Mot. at 15-16.[3]

### 1. Mr. Cooney's Statements Captured by the Crafton Recordings Are Admissible Because They Can Be Offered for Purposes Other Than Their Truth

Mr. Cooney's statements are admissible not for the truth of the matter asserted, but as verbal acts that reflect his course of dealings, and which reflect his state of mind. *See* Fed. R. Evid. 801(c)(2) (only a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement" can be hearsay); Advisory Note to Rule 801(c) ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay. . . . The effect is to exclude from hearsay the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights."); *United States v. Herrera*, 600 F.2d 502, 503 (5th Cir. 1979) (holding that proffered evidence of telephone conversation "was not hearsay" when "it was not offered for the truth of the matter asserted").

It does not matter one way or the other whether Mr. Cooney's statements are in fact true; the statements themselves show his state of mind at the time the recordings were made and illustrate his course of dealings in business, including the way in which he spoke about Mr. Archer. In particular, Messrs. Archer and Cooney intend to argue that Mr. Cooney's statements show that Mr. Cooney did not believe that he and Mr. Archer were part of a scheme to defraud

---

[3] In discussions with the government, Messrs. Archer and Cooney offered to affirmatively move to introduce this evidence, which would have eliminated the confusion. The government did not respond to the offer, and instead unilaterally filed its motion without further discussion, presumably because it wanted to have the last word. Because the government will necessarily make brand new arguments on reply if its presses its motion, Messrs. Archer and Cooney reserve the right to file a sur-reply.

4

anyone; because they are offered for this non-hearsay purpose, they are not precluded by the rule against hearsay. *See Smith*, 411 F.3d at 346 n.4 (noting that "'the mere utterance of a statement, without regard to its truth, may indicate circumstantially the state of mind . . . of the declarant' and is *not hearsay* (*e.g.,* 'I am Napoleon.')" (alteration in original)); *United States v. Hicks*, 848 F.2d 1, 3 (1st Cir. 1988) (affirming admission of request for assistance because such statement "was not admitted for the truth of anything asserted").

Mr. Cooney's statements are also relevant as non-hearsay verbal acts because they illustrate the way in which he talked about Mr. Archer. *See United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 89 (2d Cir. 2014) ("An out-of-court statement offered for some other purpose, such as to show that a statement was made, to demonstrate the statement's effect on the listener, or to show the circumstances under which subsequent events occurred, is not hearsay." (citations omitted)); *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 695 (S.D.N.Y. 2014) (statement "clearly was admissible, regardless of its truth, 'to explain the [ensuing] sequence of events' and, in addition, to demonstrate the relationship between Zambrano and Guerra"); *Pilgram v. McGraw-Hill Companies, Inc.*, 599 F. Supp. 2d 462, 477 (S.D.N.Y. 2009) (statement "not hearsay because it is offered for the fact that the comments were made – not to prove the truth of their content"). Similarly, Mr. Cooney's statements regarding Mr. Archer's political connections, including his associations (directly and indirectly) with Joe Biden and John Kerry, are not introduced to prove the truth of the matters asserted – Mr. Archer will not argue, for example, that "Biden works for him," as Cooney exaggerated – but to explain Mr. Cooney's state of mind when he made those statements and to show the jury the way in which Mr. Cooney talked about Mr. Archer. (*E.g.*, "you see what this is who weren't doing business with?  You don't get more politically connected and make people more comfortable than that."). These statements were part of the story Mr. Cooney was telling, and thus reflected his intent to show

5

Crafton that Mr. Archer was a useful face for their arrangement, specifically because of his connections.

This evidence directly undermines the government's claims. For example, pointing to Mr. Archer, Mr. Cooney stated that "These guys don't do fucking skuzzy deals." Recording Tr. at 4. This evidence is admissible to prove that Mr. Cooney said it, and that he believed it, both of which tend to directly undermine the government's case. These statements support that state of mind without regard to whether they are true. That is, as regards the non-hearsay evidence of Mr. Cooney's state of mind, it is only relevant that he said and believed Mr. Archer to be "a show-pony" and "a total fucking whale"; it does not matter whether Mr. Archer is a show pony or a whale (either literally or figuratively).

### 2. To the Extent that They Are Evidence of Mr. Cooney's Then-Present State of Mind, Those Statements on the Recordings Are Admissible for Their Truth

For the same reasons, even if the statements in question were being offered for the truth of the matter asserted – that Mr. Archer actually is a "show-pony," a "whale," or that he had "layers of legitimacy" – they are admissible under Federal Rule of Evidence 803(3), as they go to Mr. Cooney's state of mind that the time they were uttered. Such statements are admissible under "[t]he exception to the hearsay rule," which "is invoked when the statement is offered for the truth of the matter asserted *and* shows the declarant's state of mind (*e.g.*, 'I hate X.')." *Smith*, 411 F.3d at 346 n.4.

The government cites Rule 801(d)(2), arguing that a defendant cannot offer his or her own "self-serving" statement for the truth. Mot. at 9-11. But Rule 801(d)(2) does not create a bar to introducing one's own statement; it is simply a hearsay exception that is not applicable (and which Messrs. Archer and Cooney do not assert) here.

6

The government's argument that the Cooney-Crafton recordings are somehow "self-serving" – and therefore, presumably, do not actually reflect Mr. Cooney's state of mind – is also misplaced. A statement is only self-serving if the declarant knows that it could be exculpatory and so has an incentive to mislead; generally, such statements are made under circumstances that suggest a premeditated statement designed to falsely exculpate the declarant. *See, e.g.*, *United States v. Perez*, 106 F. App'x 597, 598 (9th Cir. 2004) ("Nor did the district court err when it excluded Perez's self-serving statement regarding ownership of the pants he was wearing, which he made *to a police officer at or about the time of his arrest*." (emphasis added)).[4]

Because Mr. Archer's own statements are not featured on the recordings, these are obviously not "self-serving statements" with regard to him. Nor was Mr. Cooney aware he was being recorded at the time of the Crafton conversation in May 2014, long before the investigations or even client complaints about the WLCC bonds began. Thus these statements could not be "self-serving" with regard to either of them, as Mr. Cooney could not have made them with any intent that they should serve to exculpate either him or Mr. Archer.

Finally, even if the statements were somehow self-serving, that would not render them inadmissible. In *United States v. Cardascia*, the Second Circuit made clear that, "[a]s we noted in *Harris*, the likelihood that the declarant is misrepresenting his state of mind is not an additional qualification to the admissibility of state of mind hearsay statements. 'If a declaration comes within a category defined as an exception, the declaration is admissible without any preliminary credibility finding by the judge, save for the 'catch-all' exceptions of Rules 803(24) and 804(5).' Instead, the self-serving nature of a statement is considered *when the jury weighs the evidence* at the conclusion of the trial." 951 F.2d 474, 487 (2d Cir. 1991).

---

[4] It is under this reasoning that Michelle Morton's statements to the government, other federal authorities, and her clients about her alleged suspicions and cooperation with the government must be excluded.

7

D. **The Admissibility of the Crafton Recordings Implicates Messrs. Archer's and Cooney's Constitutional Right to Put on Their Defenses**

Mr. Archer and Mr. Cooney respectfully submit that the exclusion of these recordings would be inconsistent with fundamental notions of justice, and would deprive them of their right to put on a defense.

In various ways, the courts have repeatedly expressed the principal that "[i]t is always open in a criminal case for the defendant to explain away the force of specific items of the government's proof by showing the existing of other hypotheses." See *Unites States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993). The government has made clear its intent to argue that other communications provide circumstantial evidence that is relevant and probative of the defendants' state of mind; therefore, fundamental fairness indicates that the jury should be allowed to hear other statements that will help them understand the true dynamic amongst the parties. While the government is of course free to argue the weight of the recording evidence and that its preferred exhibits better reflect the dynamic between the defendants, Messrs. Archer and Cooney should not be prohibited from introducing evidence that is critical to demonstrating the absence of an element the government must show to convict them. *See United States v. Santiago*, 566 F.3d 65, 71 (1st Cir. 2009) ("It is a serious matter to deprive a defendant of a fair opportunity to establish a merits defense; inconvenience and the risk of some confusion might not outweigh the benefits. Constitutional rhetoric aside, to do so might well (depending on the facts) be an abuse of discretion."); *Herrera*, 600 F.2d at 503 (noting that by failing to admit contents of telephone conversation district court had precluded defendant "from establishing the very heart of the defense" offered at trial); *United States v. Carneglia*, 256 F.R.D. 384, 390 ("The Federal Rules of Evidence and Rules of Criminal Procedure are designed to ensure that the defense as well as the government can fully present their cases, 'to secure fairness.' Application of the rules to permit the defendant to gather and present information favorable to his defense needs to take

8

account of due process and fairness." (citation omitted) (citing *Chambers v. Mississippi*, 410 U.S. 284, 289 (1973))).

## II. The Other Evidence Proffered By Mr. Archer Is Relevant And Admissible

The government objects categorically to "a large percentage" of Mr. Archer's proffered evidence on relevance and hearsay grounds. As set forth below, these arguments are generally misplaced.

In objecting to the exhibits' relevance (including relevant non-hearsay uses), however, what the government is really asking for is a proffer of relevance. But just as the government has repeatedly refused to provide its "order of proof," Mr. Archer is not required to explain prior to trial how each marked exhibit fits into his defense, or which witness's testimony it may be relevant to. *See* March 6, 2018 Hearing Tr. 61:4-5 (AUSA: "Again, I think we've gone beyond what we're required to disclose at this point."); *id.* at 69:12-15, 18-17 (AUSA: "I would just note that I think much of what [defense counsel] just demanded from the government he's not entitled to. It's a different way to ask for a bill of particulars. . . . We're not giving our order of proof to the defendants before the trial starts."); *id.* at 88:25-89:5 (AUSA: "I think what [the defendant] has asked for in this case is an order of proof. She's asked for a roadmap of what the government intends to do at trial, and she's just not entitled to that, and it's not reasonably fair to ask the government to disclose, at this point in the process, sort of how it intends to prove things."). By the government's own logic, questions about relevance should generally be reserved until trial.[5]

---

[5] To the extent that the Court believes a proffer of relevance is necessary or appropriate at this point, Mr. Archer respectfully requests the opportunity to do so under seal so as not to reveal his trial strategy.

9

### A.     Mr. Archer's Calendar Invites Are Relevant And Admissible

Evidence concerning Mr. Archer's schedule, including the degree to which he was incredibly busy during the relevant time period, is relevant and admissible.  As numerous of the government's own witnesses will testify, Mr. Archer was involved in and focused on numerous other businesses besides the ones at issue in this case, and was often unavailable or travelling.  Given that a large portion of the government's proof against Mr. Archer will be e-mails on which Mr. Archer was merely cc'd and/or to which he never replied – but which the government will surely argue Mr. Archer was consciously aware of – evidence that Mr. Archer was over-scheduled and pulled in numerous directions during the relevant time period is highly relevant.  *See United States v. Toombs*, No. 10-20009-CM, 2010 WL 5067617, at *3 (D. Kan. Dec. 7, 2010) (admitting evidence that defendant "was too busy . . . to be capable of operating the drug trafficking conspiracy in this case"); *see also* James Sterngold and Jenny Strasburg, "SAC to Employees: Cohen Didn't Read Dell Email at Heart of SEC's Case," *The Wall Street Journal* (July 23, 2013) (describing argument by hedge fund manager that he received 1,000 emails and executed 80 trades per day, and opened only about 11% of his emails on average), available at https://on.wsj.com/2KV8epT.

The government objects to this evidence on hearsay grounds, as well, but it is admissible for at least four independent reasons.  *First*, the evidence is largely being offered for a non-hearsay purpose, which is simply to show that Mr. Archer was over-scheduled.  With few exceptions, for which Mr. Archer will lay an appropriate foundation, Mr. Archer does not intend to argue that the text of the entries reflects his whereabouts at any particular time.

*Second*, the evidence is admissible under Rule 803(3) to show Mr. Archer's "plan."  *See Shepard v. United States*, 290 U.S. 96 (1933) (noting the admissibility of "[d]eclarations of intention, casting light upon the future" (discussing *Mutual Life Ins. Co. v. Hillmon*, 145 U.S.

10

285 (1892)); *see also* 1972 Advisory Note to Rule 803(3) ("The rule of [*Hillmon*], allowing evidence of intention as tending to prove the doing of the act intended, is, of course, left undisturbed.").

*Third*, the calendar entries constitute records of regularly conducted activity under Rule 803(6). *See United States v. Kaiser*, 609 F.3d 556, 575 (2d Cir. 2010) (finding that "business planners are similar enough to . . . calendars, in our view, to fall within the scope of the business records exception"); *United States v. Ford*, 435 F.3d 204, 214-15 (2d Cir. 2006) (upholding "admission of [defendant's] calendar as a business record"); *United States v. Lizotte*, 856 F.2d 341, 344 (1st Cir. 1988) (finding calendar entries admissible under Rule 803(6)).

And failing all else, *fourth*, the evidence is admissible under Rule 807 because it bears all of the necessary hallmarks of trustworthiness and its admission would serve the interests of justice. *See, e.g.*, *United States v. Prevezon Holdings, Ltd.*, 319 F.R.D. 459, 465 (S.D.N.Y. 2017).

### B. The Instagram Posts Are Not Offered For Their Truth

Jason Galanis's wife's Instagram posts are not being offered for the truth of the matter, and are therefore admissible notwithstanding the government's hearsay objection. *See United States v. May*, 622 F.2d 1000, 1007 (9th Cir. 1980) (holding that "a photograph is not an assertion, oral, written, or non verbal, as required by Fed. R. Evid. 801(a)"). Rather, the posts are being offered simply for the fact that they were posted. *See id.* ("[p]hotographs are admissible as substantive as well as illustrative evidence.").

The Instagram captions are likewise not hearsay. First of all, each of the captions cited by the government constitutes an utterance that is not a factual statement (*e.g.*, "Best Passover ever"; "Somewhere over the rainbow!"; "Thank you #Chanel for such a French Day!"), and therefore cannot be hearsay as a matter of law. *See generally United States v. Bellomo*, 176 F.3d

11

580, 586 (2d Cir. 1999) ("Statements offered as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein, are not hearsay."); *United States v. Robinzine*, 80 F.3d 246, 252 (7th Cir. 1996) (holding that an order or request "could not be hearsay, since it made no assertion of fact that could be true or false"); *cf. also United States v. Coplan*, 703 F.3d 46, 84 (2d Cir. 2012) (noting that "as a matter of law, questions are not 'assertions' within the meaning of Rule 801"); *United States v. Oguns*, 921 F.2d 442, 449 (2d Cir.1990) ("An inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay statement." (quotation marks omitted)).[6] In any case, as above, Mr. Archer is offering these exhibits for the fact that they were posted, not for the "truth" of their content.

### C. The BIT Board Emails Are Admissible

Evidence concerning communications with and about the BIT Board is admissible. As Mr. Archer has explained previously, the government seeks to point to a single letter from October 2014 to demonstrate that Mr. Archer made misstatements to the BIT Board, but that letter was the product of a lengthy and intricate back-and-forth. What Mr. Archer intends to do is admit evidence of that back-and-forth, to provide the appropriate context for the final representation letter. This evidence is admissible non-hearsay (*i.e.*, it is admissible to show what was said) and also as evidence of Mr. Archer's then-existing state of mind under Rule 803(3).

---

[6] As one court explained:

> [D]efendants' instructions to agents regarding what forms to fill out, what information to provide regarding vehicle purchase prices, whether or not to obtain insurance, where to keep certain documents, or how to explain the corporate registration if stopped by law enforcement are not admitted to prove their truth – *they are not factual statements and thus not true or false at all* – and therefore they are not hearsay in the first place.

*United States v. Lagunes*, No. 3:12-CR-067 JD, 2013 WL 97466, at *5 (N.D. Ind. Jan. 8, 2013) (emphasis supplied).

12

The government admits that "there may well be certain BIT Board communications that Archer may himself properly offer," and in fact only objects to two exhibits.

DX 4308 (attached as Exhibit 1), in which Mr. Archer reports that he will not be able to join a call with the BIT Board, is admissible both to prove the fact that it was said (*i.e.*, a non-hearsay use) and as a present sense impression ("I am taking off now") under Rule 803(1), which permits a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it," and as a statement of his "plan" ("I will be in the air and unavailable to call in today") under Rule 803(3), *see Hillmon*, 145 U.S. 285.

DX 4321 (attached as Exhibit 2), in which Jon Burnham complains about the legal fees being charged by the counsel to the BIT Board (which Burnham Financial Group was paying), is admissible as non-hearsay evidence, and as evidence of Mr. Archer's state of mind under Rule 803(3).

### D. The Galanis Plea Materials Are Admissible, With Appropriate Redactions

As the government notes, the admissibility of evidence concerning Jason Galanis's criminal history and his duplicitous cooperation with the government is the subject of a fully-submitted motion *in limine*. *See* [ECF No. 370] (Government's Motions in Limine) at 1-8; [ECF No. 415] (Devon Archer's Partial Opposition to Government's Motions *in Limine*) at 1-9. For the same reasons already laid out in Mr. Archer's Partial Opposition, the evidence the government continues to seek to exclude should, and to some extent *must*, be admitted. *See* [ECF No. 415] at 7-8; *see also* Fed. R. Evid. 609(a)(1)(A) (stating that evidence of a prior felony conviction "*must* be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant" (emphasis added)).

Assuming that the Court grants Mr. Archer's application and permits the evidence, Mr. Archer will meet-and-confer with the government on the best way to present it. Mr. Archer does

13

not dispute that the entirety of the marked Galanis exhibits should not be admitted, and they can be admitted either in redacted or partial form, or perhaps through stipulation. There is no need for the Court to delve into the presentation of this evidence before the parties have had a chance to confer.

### E. The PLA Evidence Is Relevant

Evidence concerning Mr. Archer's Morgan Stanley accounts is highly relevant; indeed, the government has itself marked numerous statements from those accounts, presumably because there are transactions between this account and the people and entities involved in the charged conduct. *See, e.g.*, GX 301-305, 307, 331, 332, 333, 358, 359, 361, 362, 1227.[7] In any event, the relevance of this evidence will become clear during the course of the trial. There is no basis upon which to preclude it as irrelevant at this point.

### F. The Other Evidence Offered By Mr. Archer Is Admissible

The government sensibly acknowledges that it "may not understand all [of the] arguments" that Mr. Archer may advance at trial. Mot. at 20. That admission alone counsels denial of the government's premature motions to exclude evidence on relevance grounds.

Similarly, there is no basis on which to exclude any of the ten objected-to exhibits on hearsay grounds. *See* Mot. at 21.[8] Indeed, virtually none of this evidence is being offered for the truth of the matter. Rather, it is being offered to prove the fact that it was said, or in some cases received, by or to Mr. Archer. For example, DX 4704 – a Yelp Guide to CroNOTS – is not

---

[7]   The government says that it is "awaiting confirmation" that the marked exhibits are in fact Morgan Stanley records. Mot. at 20. We understand that the government has now received that confirmation.

[8]   The objected-to exhibits, DX 4704, 4724, 4728, 4120, 4500, 4501, 4502, 4701, 4702, and 4703, are attached as Exhibits 3-12 for the Court's convenience.

14

being offered to prove that "the chocolate babka" is "full of decadent chocolate," or that the maple bacon cookies are "mind- and tongue-blowing."

Moreover, some of this evidence – such as Galanis's instruction that Mr. Cooney should receive a "tombstone" (*i.e.*, a deal toy) for a transaction involving fund.com – is not hearsay as a matter of law because it does not constitute a statement of fact. To the extent that any of this evidence is offered for the truth of the matter, it falls within the hearsay exceptions in Rules 803(1) and 803(3) because it is evidence of Mr. Archer's state of mind and/or describes his plan (if forward-looking) or describes or explains an event (if backwards-looking).

For example, DX 4501 is an e-mail from Sebastian Momtazi to a Morgan Stanley representative, copying Mr. Archer, with the instruction "Pls see attached for a wire request. It's a loan." The statement "it's a loan" is admissible (a) as non-hearsay, to prove that Mr. Archer received this communication; (b) as state of mind evidence for Mr. Archer; and (c) as evidence of Mr. Momtazi's plan.

## CONCLUSION

The government's second motions *in limine* should be rejected.

Dated: May 11, 2018
New York, New York

Respectfully,

 /s/ Matthew L. Schwartz
Matthew L. Schwartz
BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel.: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com

*Attorneys for Devon Archer*
