

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

May 21, 2018

**BY ECF**

Hon. Ronnie Abrams
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Jason Galanis, et al.*, 16 Cr. 371 (RA)

Dear Judge Abrams:

    I represent Devon Archer. I write in response to the Court's Order of May 18, in which the Your Honor asked for the parties' views on whether to include Michael Milken in the list of names of people who may be mentioned at trial [ECF No. 469], as well as in response to the government's letter of the same date [ECF No. 472].

**A.**    **Michael Milken**

    As set forth in Mr. Archer's letter of Thursday evening [ECF No. 468, at 7], we believe including Michael Milken's name on the list of people who may be mentioned at trial is an appropriate and necessary measure to ensure – assuming that the Court admits the Michael Milken evidence at all – that the parties are aware of whatever information and preconceived notions jurors may have about Milken. By adding Milken's name to the list of people who may be mentioned at trial, rather than asking a specific question about Milken, the Court will be able to elicit the needed information without calling undue attention to the issue. The government apparently agrees. [ECF No. 472, at 2 n.3].

    In the meanwhile, however, the government has also apparently backtracked from its position that "we shouldn't have a mini-trial about Michael Milken," (5/16/2018 Tr. at 87), and now wishes to introduce all sorts of extrinsic evidence about Milken, including by calling Judge Wood as a witness. With respect to the government, this is absurd.

    If the Court adheres to its rulings that the Milken documents are admissible without redaction, the appropriate course would be to (a) screen jurors to understand their pre-existing knowledge and bias about Milken, and then (b) let the document speak for itself, since the



government will not be calling any of the participants on the e-mail in its case-in-chief.[1] The introduction of extrinsic evidence to prove up the evidentiary foundation for the government so that it can argue an inference from Mr. Cooney's reference to Milken is flatly barred by the Federal Rules – an argument that the government's response does not grapple with.

Instead, the government's letter raises certain ways that the fact of Milken's prior conviction could be introduced, *if* it were an admissible fact. But it isn't. For example, the government points out that under Rule 803(21), evidence concerning reputation about a person's character is admissible under a hearsay exception. True enough, but that rule isn't an open invitation for all character evidence; nor does Rule 201 allow for the admission of all judicially-noticeable facts. The government's argument ignores the other Rules of Evidence, which carefully limit when such evidence is admissible. Under Rule 404, for example, the character of the defendant or victim may be admissible under certain circumstances; "[e]vidence of a witness's character may be admitted under Rules 607, 608, and 609." Those rules, in turn, permit evidence concerning a witness's character for truthfulness or untruthfulness, but explicitly bar "extrinsic evidence . . . to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b).

Here, Milken's character is utterly irrelevant: he is not a defendant, victim, witness, co-conspirator, or even a person who had any relevant direct interactions with the defendants. On that basis alone, character evidence concerning him should be barred. *See Mut. Life Ins. Co. of New York v. Treadwell*, 79 F. 2d 487, 489 (5th Cir. 1935) ("the character of a party who is not a witness is generally irrelevant" (citing *Thompson v. Bowie*, 71 U.S. (Wall.) 463, 469 (1866))).[2] And even if he were a witness, "character evidence" about his 30 year-old conviction would still not be admissible under the just-cited rule against proving "specific instances" of conduct. Fed. R. Evid. 608(b); *see also* 609(b) (evidence of criminal conviction presumptively inadmissible if more than 10 years old).

For the same reasons, the government's other suggestions – such as introducing Milken' actual criminal judgment of conviction, or the Court taking judicial notice – are similarly inadmissible. They are also unworkable. For example, as we noted in our May 17 letter [ECF

---

[1]   Of course, in the event that Mr. Archer or Mr. Cooney testifies, this is totally fair game for cross-examination. The government may cross them about the meaning of the reference to Milken, their knowledge of Milken's criminal history, and the like. But in the government's case-in-chief, such extrinsic evidence should be prohibited, as the Court already found. *See* 5/16/2018 Tr. at 87 (THE COURT: "to the extent that the jurors have no idea who Michael Milken is, there is no prejudice. But to the extent you were going to ask someone who is Michael Milken, who wasn't a party to these particular e-mails – if someone was a party to the e-mail, you can say: What was your understanding of what was meant? But assuming that you're not going to have anyone who wasn't [*sic*] a party to the e-mail, and you're going to ask a witness about Michael Milken, I don't want to have a mini-trial about Michael Milken.").

[2]   The Fifth Circuit's comment in *Treadwell* was specifically concerning civil cases. In criminal cases, as set forth above, character evidence of a defendant or victim may also be admissible in certain circumstances, even if they do not testify. *See* Fed. R. Evid. 404.



No. 468, at 6 n.2], introducing Milken's criminal judgment would be unduly prejudicial and would be one-sided. Plainly, the government should not be able to prove up the extrinsic facts supporting its interpretation of the "mikey Milken!!" e-mail without the defendants having the same opportunity.

And the government's proposal to call Judge Wood is truly amazing. First of all, it would be overwhelming prejudicial for a sitting Southern District Judge to testify about her personal experience presiding over Milken's trial – it would absolutely obliterate Mr. Archer and Mr. Cooney's ability to argue a competing inference, and be far out of proportion to the slight probative value of the evidence. It would also require a fairly substantial cross-examination. For example, Mr. Archer and Mr. Cooney would have to develop through cross-examination that the government's sentencing assertions about Milken's conduct were substantially false, and that although he was originally sentenced to 10 years' imprisonment, Judge Wood herself testified in a parole hearing that the total loss from Milken's crimes was only $318,000, and that she recommended that he be eligible for parole in three years. *See* Kurt Eichenwald, "Judge Who Gave Milken 10 Years Wants Him Eligible For Parole in 3," *The New York Times* (Feb. 20, 1991), available at https://nyti.ms/2LhvhLT. Ultimately, Milken's sentence was reduced from 10 years to two, and he was released after 22 months. *See* Francis X. Clines, "An Unfettered Milkin Has Lessons To Teach," *The New York Times* (Oct. 16, 1993), available at https://nyti.ms/2LkeR59.

Moreover, this sort of extrinsic evidence would require a true trial-with-a-trial, with Mr. Archer and Mr. Cooney having to call multiple witnesses to testify about (a) Milken's role innovating the high yield bond; (b) the facts underlying Milken's conviction, which had nothing to do with high yield bonds or in fact bonds at all; (c) the current role of the Milken Institute in advancing thought leadership in the financial industry, and (d) Milken's well-documented history of philanthropy.[3]

**B.      Jason Galanis, Hirst, and Morton's Pleas**

The government indicates that it is "considering" the defendants' offer to stipulate to Jason Galanis, Gary Hirst, and Michelle Morton's guilty pleas, but argues that those please are only admissible under Rules 609 and 806 to impeach their out-of-court statements. As set forth in Mr. Archer's May 17 letter, [ECF No. 469, at 9], that is the basis on which the defendants seek to introduce them. Mr. Archer has no intention of making arguments foreclosed by the Rules of Evidence.

To be clear, however, separate and apart from their guilty pleas, Mr. Archer does intend to make arguments about Jason Galanis, Gary Hirst, and Michelle Morton's *factual* guilt – that is, the fact that they engaged in criminal conduct, while Mr. Archer did not, without reference to

---

[3]      While the specific Milken reference the parties concentrated upon at the May 16 final pre-trial conference likely was not a reference to Milken's philanthropy, other Milken references in the government's evidence could be. In a world in which the parties have to put on percipient witnesses to testify about who Michael Milken is, the defendants would therefore have to include evidence of his philanthropy. So too for any judicial notice.

their guilty pleas.  Mr. Archer has been clear about this since at least his motion for severance, in which he argued that a joint trial with those defendants would have been mutually antagonistic.  Now that Hirst and Morton are not part of this trial, Mr. Archer's defense will be no less antagonistic to them.  Mr. Archer has no intention of using their guilty pleas to make this argument, but we want to be clear about our intentions.

### C.    The Photos Of Mr. Cooney and Sebastian Momtazi (DX 4910 and 4916)

Mr. Archer rests on his prior argument with respect to these exhibits, which are clearly admissible.  However, since the government has parsed our language so finely, let us be clear: Mr. Archer do not intend to argue that Mr. Cooney or Mr. Momtazi are "generally less upstanding" than Mr. Archer – not that that would be a prohibited argument.

### D.    Limiting Instructions

Finally, in a footnote, the government states that it "strongly disagrees with the statement on page ten of Archer's letter that 'there is nothing about the John Galanis statements to the WLCC . . . that is an integral part of the conspiracy.'"  [ECF No. 472, at 4, n.6 (ellipsis in original)].  To be clear, Mr. Archer is not requesting a limiting instruction with respect to all of John Galanis's statements to the WLCC.  Rather, a limiting instruction is appropriate with respect to John Galanis's apparent statements to the WLCC – *after* the WLCC had already been induced to and began issuing bonds – that the second and third bond issuances were a success.  That statement, which is about the bonds allegedly purchased by Mr. Cooney and Mr. Archer, was not an integral or obvious part of the conspiracy even as alleged, and was not reasonably foreseeable to Mr. Archer.  And once again, the government has declined to make any proffer to the contrary, in tacit recognition of that fact.  The Court should therefore adhere to its original decision to give a small number of targeted limiting instructions.

Thank you for your consideration.

Respectfully,

  /s/  Matthew L. Schwartz
Matthew L. Schwartz