


MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

May 30, 2018

**BY ECF**

Hon. Ronnie Abrams
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: *United States v. Jason Galanis, et al.*, S1 16 Cr. 371 (RA)**

Dear Judge Abrams:

I represent Devon Archer. I write to object to proposed GX 1286, which the government has informed us it intends to use as soon as tomorrow with its cooperating witness, Hugh Dunkerley. A copy is attached for the Court's review.[1]

GX1286 is an e-mail from Jason Galanis to Hugh Dunkerley, copying Bevan Cooney and Mr. Archer, dated February 10, 2014 – *i.e.*, before the start of the charged conspiracy – regarding entities and conduct that are wholly unrelated to the charged conduct. Specifically, the subject of the e-mail is "RSTP Capital Bank Account," and the body of the e-mail reads as follows:

> hugh
>
> attached are the documents for the bank account. they are:
>
> 1. articles of formation
> 2. operating agreement
> 3. no business in california
> 4. board of managers resolution to open a bank account
>
> Bevan, you need to sign the Operating Agreement on behalf of BOE Capital, the sole Member of the LLC. Return it to Hugh above.
>
> Hugh, please obtain a FEIN in the morning online. You will need it for the bank account.
>
> The expected transaction flow will be a $595,000 transfer from the account of Ballybunion at Banc of California initiated when you open this account. Nordgren will be initiating that internal transfer.
>
> RSTP will be wiring $594,000 to mbloom in connection with the Subscription Agreement (attached) and the related capital call.
>
> Thank you.
>
> Jason

[1] In an attempt to reach an agreement with the government, I raised these objections beforehand. At 11:09 PM, the government informed me that it was still considering my objection and would provide an answer in the morning. While Mr. Archer is hopeful that the government will voluntarily withdraw this exhibit, I provide this letter so that the relevant arguments are set out for Your Honor's consideration in the event that a ruling is necessary.





There are also six attachments:

(1) a certificate of formation for an entity called RSTP Capital LLC, which was apparently formed on December 4, 2013, by a lawyer named Steve Weiss;

(2) an unsigned operating agreement for RSTP Capital LLC, with signature lines for Dunkerley and Mr. Cooney;

(3) an unsigned letter confirming that RSTP Capital LLC does not do business in the State of California, with a signature line for Dunkerley;

(4) an unsigned certified resolution for RSTP Capital LLC authorizing Dunkerley to open bank accounts and be the signor on any such accounts, with a signature line for Dunkerley;

(5) a subscription agreement in a company called mbloom Fund I, L.P. by a company called HSDC Capital LLC, signed by someone named Karl Fooks on behalf of Hawaii Strategic Development Corporation, and associated investment documents; and

(6) a subscription agreement in mbloom Fund I L.P. by RSTP Capital LLC, and associated investment documents. Although the "contact person" for RSTP Capital LLC is identified as Mr. Archer, the document is signed in two places by "Bevan Cooney Authorized Agent for Devon Archer":

RSTP Capital, LLC
Entity Name (Full Legal Name)

Limited Liability Company, Delaware
Entity Type and Jurisdiction of Formation

By:
Signature

Bevan Cooney, Authorized Agent for Devon Archer
Signing Individual's Printed Name/Title

RSTP Capital, LLC
Entity Name (Full Legal Name)

Limited Liability Company, Delaware
Entity Type and Jurisdiction of Formation

By:
Signature

Bevan Cooney Devon Archer
Signing Individual's Printed Name/Title
authorized agent

## RELEVANT BACKGROUND

GX 1286 concerns transactions and entities that have absolutely nothing to do with the bond issuances or annuities in this case, and have everything to do with an entirely separate fraud perpetrated by Jason Galanis and Hugh Dunkerley, which predated the charged offenses.

In GX 1286, Jason Galanis describes an "expected transaction" involving the transfer of funds from what he describes as "the account of Ballybunion at Banc of California" to a new bank account for a different company called RSTP Capital LLC, and then RSTP Capital LLC's transfer of funds to a company called mbloom in connection with what Galanis describes as a





"Subscription Agreement." While Messrs. Archer and Cooney are copied on this e-mail, none of these entities or transfers or agreements is remotely relevant to this case.

The witness through whom the government intends to offer this exhibit, Hugh Dunkerley, pleaded guilty to a scheme involving Ballybunion on June 13, 2017. As explained by Dunkerley in his proffers, in or about January 2014 – which, importantly, is prior to when the government alleges the conspiracy here commenced, *see* Ind. ¶ 30 (alleging that the conspiracy ran from "at least in or about March 2014 through in or about April 2016") – Jason Galanis and Dunkerley diverted money that was originally intended to be transferred from Wealth Assurance AG to the real Ballybunion company in the United Kingdom to a fake Ballybunion bank account set up at the Banc of California. Specifically, in early 2014, Wealth Assurance AG was considering investing in (the real) Ballybunion. It appears that when that seemingly-legitimate deal fell through, Galanis and Dunkerley decided to divert the proposed investment to their fake Ballybunion instead.

By his own admission, Dunkerley was directly involved in the Ballybunion scheme and knew it to be a fraud. Mr. Archer, on the other hand, was not an executive or on the board of Wealth Assurance AG at the time of the initial proposed legitimate deal, and there is no evidence to suggest that he had any knowledge of the subsequent fraud.

Mr. Archer of course has no objection to the government eliciting on direct examination that Dunkerley and Jason Galanis had engaged in this prior fraud together, and that Dunkerley has now pleaded guilty to his involvement in that fraud. But the introduction of GX 1286 – which falsely and misleading associates Mr. Archer with that prior and totally separate fraud – should be precluded. Mr. Archer was entirely removed from and ignorant of Jason Galanis and Dunkerley's scheme – and Dunkerley will not testify otherwise.

## DISCUSSION

GX 1286 should be excluded. It is not relevant to the charged offenses; is unduly confusing and prejudicial; and appears to constitute evidence of prior bad acts that the government totally failed to disclose under Rule 404(b).

### I. GX 1286 Constitutes New Rule 404(b) Evidence, About Which The Government Has Never Provided Notice

The government has not identified any permitted purpose for which it can admit evidence concerning Ballybunion or RSTP Capital against Mr. Archer. *See* Fed. R. Evid. 404(b)(2). Furthermore, Mr. Archer long ago requested notice of any Rule 404(b) evidence that the government intended to introduce, and the government never identified any of the transactions or entities purportedly involved in the Ballybunion scheme. *See* ECF No. 339 (Mar. 12, 2018 Letter to Court) at 1-3 (listing the evidence that "the Government seeks to offer . . . as either direct evidence of the charged crime and/or as 404(b) evidence . . . [a]s set forth in the Government's 404(b) notice and as expanded upon at the pretrial conference on March 6, 2018," with no mention of Ballybunion, RSTP Capital LLC, or mbloom). The government has no basis on which to claim good cause to excuse the lack of pretrial notice under Rule 404(b) – Hugh





Dunkerley pled guilty to the Wakpamni and Ballybunion schemes at the same time, both in this case, back in June 2017 – nearly a full year ago.

Notice provided after the start of trial is not "reasonable" notice in this circuit. *See United States v. Silberstein*, No. 02 CR. 800 (SWK), 2003 WL 21488024, at *7 (S.D.N.Y. June 27, 2003) ("It has been the practice of courts in this circuit to deem notice afforded more than ten working days before trial as 'reasonable' within the meaning of Rule 404(b)."). Yet the government's 404(b) notices never disclosed any intent to offer evidence related to the subject matter of GX 1286. On February 28, 2018, the government sent its initial attempt at a 404(b) notice, which, as the defendants noted at a subsequent hearing, provided no description of actual evidence that would be offered regarding the specified acts. *See, e.g.*, Feb. 28, 2018 Letter at 2.

At the subsequent March 6, 2018 hearing, Your Honor agreed that as the proponent of Rule 404(b) evidence, the government had the burden to make a motion with respect to any such evidence:

> Mr. Schwartz: . . . I think the government ought to begin by setting forth exactly what it is that they intend to put in, how they intend to do it, how it is allegedly evidence of the charged crimes, and how it is admissible under Rule 404(b). I believe they bear the burden on that issue. So they should make a motion.
>
> The Court: I agree.

3/16/2018 Hearing Tr. 68:25-69:5. The government never moved with respect to Ballybunion, RSTP Capital LLC, mbloom, or any of the subject matter of GX 1286.

Further, under the plain language of the rule, to introduce prior bad acts evidence after the start of trial, the court must find "good cause" to excuse the lack of pretrial notice. *See* Fed. R. Evid. 404(b)(2)(B); *see also* Committee Note to 1991 Amendments ("The amendment requires the prosecution to provide notice, regardless of how it intends to use the extrinsic act evidence at trial, *i.e.*, during its case-in-chief, for impeachment, or for possible rebuttal. The court in its discretion may, under the facts, decide that the particular request or notice was not reasonable, either because of the lack of timeliness or completeness. Because the notice requirement serves as condition precedent to admissibility of 404(b) evidence, the offered evidence is inadmissible if the court decides that the notice requirement has not been met."). The government has not proffered any conceivable good cause.

Even if the government had provided timely notice of its intention to introduce this evidence, any attempt to connect Mr. Archer to the Ballybunion fraud would not be admissible, as the Court must first determine that such evidence is both "relevant to a disputed issue" and that "the probative value of the prior act evidence must substantially outweigh the danger of its unfair prejudice." *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017) (internal quotation marks omitted) (quoting *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002)). As discussed further below, the government cannot meet that burden.





## II. The Statements in GX 1286 Are Inadmissible Hearsay

Notice issues aside, GX 1286 constitutes inadmissible hearsay, to which no exception applies.[2] Neither the cover e-mail nor the attachments contain any statements by Mr. Archer, Mr. Cooney, or John Galanis, so it is not admissible in this trial as a party admission. And the exception that the government will likely rely on – the co-conspirator exception – clearly does not apply in this instance. Although GX 1286 is an e-mail from Jason Galanis, it cannot be a co-conspirator statement because it is not in any sense in furtherance of the charged conspiracy. At best, it is a statement in furtherance of an entirely separate, uncharged conspiracy of which Mr. Archer was not a part.[3]

First, the cover email in GX 1286 predates the period of the alleged conspiracy. The Indictment alleges that the conspiracy ran from "at least in or about March 2014 through in or about April 2016." Ind. ¶ 30. Therefore, per the government's own allegations, there was no conspiracy that could have been furthered by Jason Galanis's e-mail on February 10, 2014.

Second, the statements in GX 1286 concern conduct completely unrelated to the charged conspiracy, which was "a scheme to misappropriate the proceeds of several bond issuances by the WLCC and also caused investor funds to be used to purchase the bonds . . . ." *Id.* The e-mail in GX 1286 predates the first bond issuance by six months, and no bond proceeds existed that could have been misappropriated at that early stage. Indeed, the Court has just heard the testimony of Timothy Anderson, who testified that the very first meetings concerning the WLCC bonds occurred in March 2014, at an economic development conference in Las Vegas. Plainly, transactions contemplated to take place in February 2014 could not conceivably have involved bond proceed.

Third, with respect to whatever this new conspiracy is that the government believes was occurring, the government must make a showing that there was such a conspiracy and that Mr. Archer intentionally became a part of it. It simply has failed to do so.

---

[2] There is no doubt that GX 1286 is being offered for its truth, including that the attachments are what Jason Galanis represents them to be in his cover e-mail. Moreover, much of the document contains hearsay-within-hearsay. For example, Article III of the purported Operating Agreement for RSTP Capital LLC describes what the "business of the Company (its 'Business') shall be," and paragraph 4.2 in Article IV states that "Hugh Dunkerley and Devon Archer shall serve as Managers" of RSTP Capital. The purported Operating Agreement further suggests that another company, BOE Capital LLC, is a member of RSTP Capital LLC and, on the signature page, suggests that Bevan Cooney is BOE Capital's "Attorney in Fact." Later, in the subscription agreement to mbloom, the exhibit states that Bevan Cooney is also "authorized agent" for Mr. Archer in connection with the transaction – which he was not.

[3] Notably, Dunkerley did not even plead to a conspiracy involving the Ballybunion fraud. He pleaded only to substantive securities fraud.





**III. GX 1286 Is Unfairly Prejudicial and Misleading**

Apart from issues of relevance and hearsay, GX 1286 should be excluded under Rule 403. The e-mail predates the conspiracy at issue in this case and discusses entities entirely separate and apart from those that were involved in the bond issuances. Introducing evidence concerning Ballybunion and RSTP Capital would be a significant detour, and would necessitate a mini-trial concerning this unrelated scheme. Mr. Archer would be forced to explain through Hugh Dunkerley and other witnesses a series of transactions and schemes orchestrated by Jason Galanis that are entirely separate from the WLCC bonds. This will create needless evidentiary and trial management issues, confusing the jury, prolonging the trial, raising potential conflicts, and greatly prejudicing Mr. Archer. Weighed against the non-existent probative value of the exhibit to the charged crimes, it should be excluded. Furthermore, the Court has already excluded evidence concerning the Gerova fraud and the Code Rebel pump and dump – it would be entirely inconsistent to allow the introduction of evidence, at this late stage, of yet another entirely irrelevant fraud.

Thank you for your consideration.

Respectfully,

/s/ Matthew L. Schwartz
Matthew L. Schwartz