

MATTHEW L. SCHWARTZ
Tel.:  (212) 303-3646
E-mail:  mlschwartz@bsfllp.com

June 2, 2018

**BY ECF**

Hon. Ronnie Abrams
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      **Re:**     ***United States v. Galanis*, S3 16 Cr. 371 (RA)**

Dear Judge Abrams:

      I represent Devon Archer.  I write in response to the government's letter of Friday seeking permission to introduce what it describes as "evidence that both Devon Archer and Bevan Cooney were rewarded by Jason Galanis for their participation in the Wakpamni bond fraud through, in part, the receipt of Code Rebel [s]hares."  This evidence should be excluded.  It runs squarely afoul of the Court's prior ruling with respect to Code Rebel – a topic I raised in Court, and which the government's letter fails to confront.  This evidence is also, with respect to Mr. Archer, horribly misleading, will require the parties to go into painstaking detail on a variety of entities and transactions that are not otherwise part of this case, and exponentially more prejudicial than probative.

## RELEVANT BACKGROUND

      For months, Mr. Archer has been clear that, as to him, the Code Rebel evidence is irrelevant and prejudicial.  As far back as January, Mr. Archer sought severance from the other defendants because, among other reasons, the government was likely to seek to introduce Rule 404(b) evidence *as to other defendants* about Code Rebel, which had no relevance to him and would create spillover prejudice that would compromise the integrity of a joint trial.  [ECF No. 290, at 23-24, 27-28].  Mr. Archer pointed out that his "only alleged connection to Code Rebel is that [he] held shares."  *Id.* at 27-28.

      After the Court required the government to affirmatively move to introduce Rule 404(b) evidence, the government in fact filed a motion to introduce, among other things:

> Code Rebel:  Evidence relating to the buying and selling of shares of Code Rebel . . . during the conspiracy in this case, and following Code Rebel's May 2015 initial public offering ("IPO"). More specifically, and as discussed in detail at the conference, the Government intends to prove that Jason Galanis, Bevan Cooney, Gary Hirst, Devon Archer and other of their confederates took control of the entirety of Code Rebel's shares prior to the IPO, and



purchased virtually the entirety of the IPO shares. As a result, Galanis, Hirst, Cooney, Archer and others controlled virtually the entirety of Code Rebel's stock. This control enabled them to move Code Rebel's stock price from approximately $5 to a high of more than $40, making the shares owned by the various defendants (many of whom had received them for no consideration) worth millions (and in some cases tens of millions) of dollars.

[ECF No. 339, at 1-2].  Beyond this apparent pump and dump scheme, the government continued:  "The facts concerning Code Rebel are similarly intertwined with the criminal conduct here because they relate directly to the defendants' *use of the bond proceeds* and show the nature of the relationships between the defendants."  *Id.* at 5 (emphasis added).

Mr. Archer opposed the introduction of the Code Rebel evidence on numerous grounds, including that "any shares of Code Rebel acquired by Mr. Archer were *not* paid for using proceeds from the WLCC bonds."  [ECF No. 355, at 8 (emphasis in original)].  On the record on Thursday, the government confirmed this statement to be true.  *See* Trial Tr. 890:23 – 891:3 (THE COURT: "I want to understand if the funds from the RSTP Capital account . . . that were used to pay for the convertible note consisted of proceeds from the bond issuance." [AUSA]: "No.").

Nonetheless, in reply in support of its 404(b) motion, the government focused upon the allegation that "[f]rom approximately April 29, 2015 to May 18, 2015, approximately $5 million *of the proceeds of the fourth bond issuance* were transferred to two brokerage accounts" and used to purchase Code Rebel shares."  [ECF No. 369, at 12].  The government also pointed out that, in September 2015, some of those same Code Rebel shares – *i.e.*, shares that had been purchased with proceeds from the WLCC bonds – were allegedly sold for more than $1.2 million and used to make an interest payment on the first bond issuance.  *Id.* at 12.  The government's argument therefore focused exclusively on two ways that any evidence about Code Rebel was conceivably relevant: (1) that it reflected misappropriation and recycling of bond proceeds, and (2) that the alleged pump and dump reflected a way that the defendants allegedly hoped to profit.

At a pretrial hearing on April 13, Your Honor ruled:

> I am going to grant in part and deny in part the government's motion. Proceeds from the fourth bond issuance were used to purchase shares of the IPO – again, part of the conspiracy, which included the misappropriation of proceeds that were supposed to be invested in an annuity on behalf of the Native American tribe. Moreover, the resulting increase in the price per share of Code Rebel stock provided capital the defendants utilized to make the first interest payment on the bonds sold in the initial issuance, again contributing to the ability of the defendants to carry out the conspiracy. Thus, I am going to allow in evidence of *those facts*.



4/13/2018 Tr. at 19 (emphasis added).  The Court denied the balance of the government's motion. *Id.*  On a motion on which the government bore the burden and affirmatively moved to introduce evidence about Code Rebel, the Court ruled that the evidence was admissible only insofar as it involved the misappropriation of the proceeds of the WLCC bonds, and the recycling of funds to pay the coupon on the first issuance.  The Court ruled that it would "allow in evidence of *those facts*."

As the government noted on Friday, it marked numerous exhibits related to Code Rebel prior to trial – and Mr. Archer objected to them all, as being precluded pursuant to Your Honor's April 13 ruling.  *See* Ex. A, at 2, 3, 5 (April 26, 2017 defense mark-up of proposed government stipulation, striking out all Code Rebel evidence per the Court's ruling).[1]  The government specifically represented that it would offer Code Rebel evidence only subject to the Court's ruling limiting Code Rebel to the misappropriation and recycling of WLCC bond proceeds, *see* Ex. B, at 2-3 (April 27, 2018 government mark-up in response to Ex. A), and Mr. Archer stipulated to the authenticity of the evidence on that basis.  Indeed, when Mr. Archer objected to the Code Rebel evidence, the government explained:

> Judge Abrams has precluded evidence that Code Rebel was a pump and dump scheme, but has allowed evidence about how shares were purchased *using bond proceed*s and then how *those shares* were dispose[d] of.  Thus, these records are relevant and admissible.  And we don't think there is any dispute that they are authentic.

*See* Ex. B, at 2 (emphasis added); *see also id.* at 3 (incorporating same response to all Code Rebel objections).  In reliance on this representation about the intended use of the evidence, Mr. Archer stipulated to the Code Rebel evidence.

On Friday, however, the government for the first time announced that it intended to introduce extensive Code Rebel evidence having nothing whatsoever to do with the WLCC bonds.  The government provided *absolutely no notice* that it intended to defy the Court's order.  Rather, the issue came out serendipitously, after Mr. Archer objected to the government's efforts to introduce an exhibit that contained evidence of yet another secondary fraud perpetrated by Jason Galanis (in which Mr. Archer was not involved and was not alleged to be knowledgeable) involving a company called Ballybunion.  Had Mr. Archer not objected to GX1286, he would have been entirely sandbagged by the government's intended use of Code Rebel evidence.

---

[1]       We have not attached the lengthy e-mail correspondence associated with these mark-ups because they do not concern the Code Rebel evidence, but we can certainly provide them to the Court if it would be helpful.



## DISCUSSION

**A.    The Code Rebel Evidence Is Unduly Prejudicial, and the Probative Inference the Government Intends to Argue is Not Supported By Any Evidence**

In explaining the relevance of a document from February 2014, GX1286, the government for the first time revealed its theory that this document somehow put Mr. Archer on notice that, over the course of the next 17 months:

> Jason Sugarman transferred money to a lawyer,
> who transferred it to a company called RSTP Capital,
> (which was similarly-named to a company called Rosemont Seneca Technology Partners,
> which had entered into a convertible note with Code Rebel),
> which actually transferred funds to Code Rebel,
> which note was converted into shares,
> which shares were transferred to Rosemont Seneca Bohai LLC,
> which had itself actually transferred additional funds to Code Rebel,
> which resulted in the issuance of additional shares. . .

*none of which* involved a single penny to or from the WLCC, the WLCC bonds, the annuity provider, or anything else involved in the charged crimes.

Thus, unlike literally every other person and entity set forth in the government's letter, *all* of the Code Rebel shares held by Mr. Archer and/or Rosemont Seneca Bohai LLC were bought and paid for using real money.  And *none* of that money – not the money that Mr. Archer paid from his own pocket, and not the money that the government says came from Jason Sugarman – had anything to do with the WLCC bonds.

There will be no witness who will testify that any of the Code Rebel shares Mr. Archer and/or Rosemont Seneca Bohai received were some sort of illicit compensation or quid pro quo for Mr. Archer's alleged involvement with the WLCC bonds.  There is no document in which Mr. Archer and Jason Galanis – or anyone else – discuss any such thing.

There is literally no such evidence.

But the government has made its plan clear.  It intends to show that Mr. Archer and/or Rosemont Seneca Bohai LLC held shares – approximately $700,000 worth that were fully paid-for in funds having nothing to do with the WLCC bonds.  It then intends to show that those shares appreciated to more than $19 million – the result of the pump and dump scheme that Mr. Archer was not involved in, and which the Court has excluded.  Based on these facts, the government intends to argue that Jason Galanis gave Mr. Archer a $19 million reward for his participation in the charged scheme, even though there will be no evidence of any such arrangement.  To state this argument is to refute it.  The inference the government urges is simply not a permissible one based on the evidence.



The government argues that "[e]vidence of illicit gain is central to proving motive to commit any fraud." (Gov. Ltr. at 3). But there are two things wrong with that assertion here. First of all, the gain must be "illicit." Here, with respect to Mr. Archer, there is no evidence to show that the gain was illicit. Rather, all of the shares of Code Rebel held by Mr. Archer and/or Rosemont Seneca Bohai were paid for using funds unrelated to the WLCC bonds, and which the government does not otherwise claim to be illicit.[2]

Second, evidence of illicit gain is relevant to proving motive to commit fraud only if the defendant *knew* the gain was illicit. Absent knowledge on the part of the defendant of the illicit nature of the gain, evidence of simple *gain* proves nothing about criminal intent. Literally every business person seeks profits. Seeking or receiving profits is not proof of anything except capitalism. But there is no evidence – certainly the government has not provided notice of any – that Mr. Archer knew there was anything illicit about these gains.

And what is supposedly illicit about them? The shares were not purchased with dirty money. Again, no witness or document will establish or even hint at a quid pro quo. The government will not call a single witness who was even in the same room as Mr. Archer and Jason Galanis at the same time. There is only the government's imaginary agreement between Mr. Archer and Jason Galanis that Mr. Archer would accept Code Rebel shares as compensation for his role in the charged offense.

The Code Rebel evidence, however, would be grossly prejudicial to Mr. Archer because there is, of course, the misleading *appearance* that the gain was illicit, because $700,000 in shares jumped to $19 million in market value. But this is of course the result of the alleged pump and dump scheme, and by arguing that Jason Galanis gave Mr. Archer a $19 million reward, the government is trading off the pump and dump without actually proving that scheme. And, again, Mr. Archer *in fact* had nothing to do with any such scheme.

In short, as to Mr. Archer, the Code Rebel evidence is not probative of anything, but its prejudicial value is overwhelming because the jury will be blinded into seeing nearly $20 million of value in the Rosemont Seneca Bohai LLC account that the government will claim – without any evidentiary basis – was compensation from Jason Galanis as part of the charged offense. As to Mr. Archer, this evidence should be excluded as far more prejudicial than probative under Rule 403.

---

[2]     Although the government apparently believes the RSTP Capital bank account was originally set up in early 2014 to receive the illicit proceeds of Jason Galanis and Hugh Dunkerley's Ballybunion fraud (a crime that did not involve Mr. Archer and that he knew nothing about), the funds in the RSTP Capital account that were used to purchase the Code Rebel shares allegedly came from Jason Sugarman, via a lawyer.



**B.**    **The Code Rebel Evidence Will Confuse the Jury and Greatly Complicate the Trial**

        The Code Rebel evidence is not only extraordinarily prejudicial, but would also exponentially expand the breadth and complexity of what is already an extremely complex trial and confuse the jury, providing an independent reason why the evidence should be excluded under Rule 403.  Indeed, the government has repeatedly acknowledged the complexity of even a high-level summary of the Code Rebel evidence.  *See, e.g.*, Trial Tr. 707:25 – 708: 1 (AUSA: "It's complicated, but I will give it a go to explain it."); *id.* 954:10-11 ("So I think it is complicated. It may be that it is better put in writing . . . .").  If the government has no confidence in its ability to summarize these transactions for the Court, it is difficult to imagine a lay jury will be better situated to wade through the intricacies of the factual record related to Code Rebel – a factual record that, as it relates to Mr. Archer, will involve numerous new transactions and entities, including RSTP Capital and Rosemont Seneca Technology Partners, which otherwise would not be a part of this trial at all.

        As complex as the government's theory is, the evidence required to rebut it will be even more so.  The government's strategy relies entirely on divorcing particular transactions and events from the context that legitimizes them in the hopes that they will be tainted simply by virtue of their proximity to Jason Galanis.  As Mr. Archer has repeatedly made clear, he does not deny doing business with Jason Galanis.  In response, Mr. Archer will be forced to contextualize the transactions and the businesses to which they related in order to establish that, so far as he knew, all were wholly real and appropriate. With the government's addition of this new layer of complexity, Mr. Archer will be required to mark a number of additional exhibits, identify several new witnesses, and significantly expand the scope of his anticipated examinations of both the government's and his own witnesses.  In addition, the jury will require additional expert testimony to understand the nature of venture capital investments, due diligence, IPO pricing, and pre-IPO share valuation.  In sum, the government proposes to add not only a trial within a trial, but an entirely separate trial.[3]

**C.**    **Even If It Were Not Inadmissible In Its Own Right, the Court Has Already Precluded This Evidence**

        Separate and apart from all of the reasons why the government's new Code Rebel evidence and theory should be precluded, the Court has already precluded it.  This is the second time that that government has attempted to evade the plain language of the Court's 404(b) rulings – rulings upon which Mr. Archer relied in preparing for trial.[4]  Notably, the government this time has not even attempted to excuse its behavior.  Despite the fact that I pointed out Your

---

[3]        Needless to say, if the government is permitted to introduce this evidence as to Mr. Archer, it will force this trial to last well beyond the already optimistic four- to six-week estimate. In the middle of summer, this is certain to create significant jury issues.

[4]        The first, of course, was the Court's explicit ruling just six transcript pages later that "I am not going to permit the government to introduce evidence relating to the arrests and convictions of Mr. Hirst and John *and Jason Galanis* in Gerova."  4/13/2018 Tr. at 25 (emphasis added).

Honor's ruling in Court on Thursday, the government's letter ignores it except to assert without discussion or citation that "the Court's ruling did not preclude evidence that these shares themselves (without reference to any independent wrongful manipulation of value) were used as a method of compensating co-conspirators in the charged crimes." (Gov. Ltr. at 3).

But as set forth above, the government argued throughout that Code Rebel was relevant in two respects: because it represented the misappropriation and recycling of WLCC bond proceeds, and because it was used in a pump and dump scheme to reward certain co-conspirators who were gifted shares of Code Rebel. *See* 4/13/2018 Tr. at 19. The Court permitted the first use and rejected the second.[5] The government's surreptitious attempt to introduce the Code Rebel evidence against Mr. Archer represents a violation of the Court's order, and its letter yesterday amounts to a mid-trial motion for reconsideration that should be denied.

Mr. Archer relied on this ruling in his trial preparation. He objected to any Code Rebel evidence inconsistent with the Court's ruling. When the government clarified that its use of Code Rebel would be limited to what the Court permitted – *i.e.*, "evidence about how shares were purchased *using bond proceed*s and then how *those shares* were dispose of," Ex. B, at 2 – Mr. Archer did not focus on this evidence in his trial preparation, because we knew that the shares that Mr. Archer and/or Rosemont Seneca Bohai held had nothing to do with the WLCC bonds. While other individuals, as set forth in the chart in the government's letter, may have been gifted shares that were funded with WLCC bond money, that is not the case for Mr. Archer – as the government agrees.

Had Mr. Archer known that the government intended to prove that his purchase and receipt of Code Rebel shares was somehow "illicit" even though it had nothing to do with the WLCC bonds, he would have prepared his defense differently. Among other things, he would

---

[5]     The government also argues that it "has been raising this precise argument since at least March 2018." (Gov. Ltr. at 3). First, that is simply not so. The government has never before argued that shares of Code Rebel purchased with untainted funds – as opposed to shares paid for using the proceeds of the WLCC bonds – were relevant. Second, the passages cited by the government in its letter in which it raised "this precise argument" previously all predate the Court's April 13 ruling. *See id.* (citing March 6 transcript and earlier in the April 13 transcript). The Court's ruling obviously superseded whatever the government had claimed it would seek to introduce previously.

The government's claim that it has consistently argued that Code Rebel shares having nothing whatsoever to do with the WLCC bonds are an important part of this case is also belied by its recent conduct. Indeed, until this week, the government had not marked GX 1286 (which purportedly establishes Mr. Archer's knowledge of the Code Rebel account) or GX 1213 (the Rosemont Seneca Technology Partners Note). GX 1245 – Continental Stock Transfer's issuance of Code Rebel shares to Rosemont Seneca Bohai and others – was marked only last week. If, as the government claims, Mr. Archer's Code Rebel shares always have been a central element of the charged scheme, the omission of those exhibits from the government's initial, March 20, 2017 exhibit list was a remarkable oversight. Moreover, the fact that the government has only produced those exhibits now, in the midst of trial, compounds the prejudice to Mr. Archer.



have issued subpoenas to collect certain evidence. He would have retained an expert on IPO allocation practices, pricing, and the like. And I would have opened differently. As the government pointed out, in opening statements I observed that Mr. Archer lost money in this alleged fraud. Knowing that the government would argue that Mr. Archer received $15 million in WLCC bonds, I explained why he didn't. *See* Trial Tr. at 77 ("He didn't make $15 million."); *id.* at 94-96 (addressing the alleged $15 million at length). Had I known that the government would or could argue that Mr. Archer received an additional $19 million in Code Rebel shares, I would have similarly explained to the jury why that was not the case. Two weeks into trial, Mr. Archer should not have to be sandbagged by an entirely new theory of motive and intent, which the Court had already expressly precluded and upon which ruling Mr. Archer relied. Indeed, such evidence would constitute a prejudicial variance and create a significant appellate issue. *See, e.g., United States v. Davis*, No. 13 Cr. 923 (LAP), 2017 WL 3328240 (S.D.N.Y. Aug. 3, 2017) (in fraud case, reversing conviction and finding prejudicial variance where the government's proof of economic harm to victims/benefit to the defendants changed in opening statements and at trial, and as a result "Defendants here were surprised and not able to prepare adequately").

**D.      The "Gold Bars" Evidence Is Admissible**

On an unrelated note, the government seeks to preclude cross-examination of Francisco Martin on the fact that Jason Galanis instructed him to buy gold bars because they were "easier to sell without a trace." (3522-9, at 3).

First, it is not clear that this had anything to do with the pump and dump, as opposed to laundering the proceeds of the alleged WLCC fraud. The 3500 says that in the context of a "meeting at Galanis's house re what's next with Code Rebel and what other deals are on the table to buy into," including a discussion with "a plane broker to buy an airplane," Galanis "tasked" Martin with buying gold bars because they were "easier to sell without a trace." As the government points out, the 3500 also says that Galanis needed "to pay certain promoters to get the price stabilized." The government's letter suggests that these gold bars were given as payment to Galanis and Martin's co-conspirators in the pump and dump scheme, but that is far from clear in the 3500.

In any event, the purchase of gold bars – even if it was in furtherance of the pump and dump – is a totally separate act of concealment that has independent relevance. To be clear, Mr. Archer does not intend to ask more than one or two questions on this topic:

Q:      Isn't it true that Jason Galanis tasked you with buying gold bars?
A:      Yes.
Q:      He told you that gold is easier to sell without a trace?
A:      Yes.

That's all. The 3500 material provides a good faith basis upon which to ask Mr. Martin if he was tasked with buying gold bars having nothing to do with Code Rebel. This evidence is relevant to show the acts of concealment and evasion that Jason Galanis and his real co-conspirators engaged in, as opposed to the legitimate business transactions of which Mr. Archer was a part.

**BSF**

Thank you for your consideration.

Respectfully,

/s/  Matthew L. Schwartz
Matthew L. Schwartz

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                     :

UNITED STATES OF AMERICA,         :

         - v. -           :         <u>TRIAL STIPULATION</u>

                                       :

GARY HIRST,                      :

JOHN GALANIS,              :         S3 16 Cr. 371 (RA)

   a/k/a "Yanni,"            :

MICHELLE MORTON,         :

DEVON ARCHER, and         :

BEVAN COONEY             :

                                         :

                  Defendants.      :

------------------------------------------------------------ x

       IT IS HEREBY STIPULATED AND AGREED by and among the United States of

America, by ROBERT KHUZAMI, Attorney for the United States, Acting Under Authority

Conferred by 28 U.S.C. § 515, Rebecca Mermelstein, Brendan F. Quigley and Negar Tekeei,

Assistant United States Attorneys, of counsel, and GARY HIRST, the defendant, by and with the

consent of his attorneys, Michael Tremonte, Barry Levin, and Noam Biale; JOHN GALANIS,

a/k/a "Yanni," the defendant, by and with the consent of his attorney David Touger; MICHELLE

MORTON, the defendant, by and with the consent of her attorney, Gregory Morvillo; DEVON

ARCHER, the defendant, by and with the consent of his attorney, Matthew Schwartz; and

BEVAN COONEY, the defendant, by and with the consent of his attorney Paula Notari, that:

       1.        Government Exhibits 252, 254, 263, and 274 are true and correct copies of

records that were made, kept, and maintained in the regular course of business of the Wakpamni

Lake Community Corporation, were made by persons with knowledge of, or made from

1

information transmitted by persons with knowledge of, the information shown, and were made at or near the time the information became available.

2.      Government Exhibits 700, 701, 703, 708, 712-713, 715, and 725 are true and correct copies of records that were made, kept, and maintained in the regular course of business of Bonwick Capital and were made by persons with knowledge of, or made from information transmitted by persons with knowledge of, the information shown, and were made at or near the time the information became available.

3.      ~~Government Exhibits 772 and 785-791 are true and correct copies of records that were made, kept, and maintained in the regular course of business of Burnham Securities and were made by persons with knowledge of, or made from information transmitted by persons with knowledge of, the information shown, and were made at or near the time the information became available.~~

> **Comment [A1]:** Should be excluded (Code Rebel).

4.3.    Government Exhibits 803, 815-820, 900, 902, 910, 913, 932, 936, 948, 958, 974, 975, 980, and 981 are true and accurate copies of documents made, kept, and maintained in the regular course of business of Hughes Capital Management and/or Atlantic Asset Management, and were made by persons with knowledge of, or made from information transmitted by persons with knowledge of the information shown, and were made at or near the time the information became available.

5.      ~~Government Exhibit 1212 is a true and accurate copy of the Code Rebel IPO Escrow Statement for the period from May 5, 2015 to May 31, 2015 and was made, kept, and maintained in the regular course of business of Code Rebel and was made by persons with knowledge of, or made from information transmitted by persons with knowledge of, the information shown, and was made at or near the time the information became available.~~

> **Comment [A2]:** Should be excluded (Code Rebel)

2

~~6.~~4.     Government Exhibits 1223 and 1227 are true and correct copies of records that were ~~made, kept, and maintained in the regular course of business of Rosemont Seneca Bohai, LLC and were made by persons with knowledge of, or made from information transmitted by persons with knowledge of, the information shown, and were made at or near the time the information became available~~produced by Devon Archer on behalf of Rosemont Seneca Bohai, LLC.

**Comment [A3]:** We can stip to authenticity, but these are not documents that were created by RSB.

~~7.     Government Exhibits 1240 is a true and correct copy of the Code Rebel daily transfer journal.  Government Exhibits 1240 and 1241 were made, kept, and maintained in the regular course of business of Continental Stock Transfer and were made by persons with knowledge of, or made from information transmitted by persons with knowledge of, the information shown, and were made at or near the time the information became available.~~

**Comment [A4]:** Should be excluded (Code Rebel)

~~8.~~5.     Government Exhibits 1265, 1271, and 1284 are true and accurate copies of documents produced by Bevan Cooney to the Securities and Exchange Commission in response to a subpoena.

~~9.~~6.     Government Exhibit 1364 is a true and accurate copy of a record that was ~~made, kept, and maintained in the regular course of business of~~produced by Dilworth Paxson ~~and was made by persons with knowledge of, or made from information transmitted by persons with knowledge of the information shown, and was made at or near the time the information became available~~.

~~10.~~7.     Government Exhibits 1402, 1410, 1412 are true and accurate copies records that were ~~made, kept, and maintained in the regular course of business of~~produced by Hunter Taubman Weiss LLP or Hunter Taubman Fischer LLC~~, and were made by persons with~~

3

knowledge of, or made from information transmitted by persons with knowledge of the information shown, and were made at or near the time the information became available.

11.8.    Government Exhibits 1451 and 1452 are true and accurate copies of communications from BFG Socially Responsible Investments, Ltd to Michelle Morton and Richard Deary and were produced by Andrew Godfrey to the Securities and Exchange Commission in response to a subpoena.

12.9.    Government Exhibit 1500 is a true and accurate list of accounts affiliated with Francisco Martin at Interactive Brokers and was made, kept, and maintained in the regular course of business of Interactive Brokers and was made by persons with knowledge of, or made from information transmitted by persons with knowledge of the information shown, and was made at or near the time the information became available.

13.10.   Government Exhibit 1510 is a certificate of incorporation for Sovereign Nations Development Corp. and was made, kept, and maintained in the regular course of business of Sovereign Nations Development Corp. and was made by persons with knowledge of, or made from information transmitted by persons with knowledge of the information shown, and was made at or near the time the information became available.

14.11.   Government Exhibit 1540 is a true and accurate copy of documents made, kept, and maintained in the regular course of business of PARQ Advisors and was made by persons with knowledge of, or made from information transmitted by persons with knowledge of, the information shown, and was made at or near the time the information became available.

15.12.   Government Exhibits 1550 and 1551 are  true and accurate copies of documents made, kept, and maintained in the regular course of business ofproduced by United Security Funding and were made by persons with knowledge of, or made from information transmitted by

persons with knowledge of, the information shown, and were made at or near the time the information became available.

~~16.~~13.   Government Exhibits 1560 and 1561 are true and accurate copies of documents made, kept, and maintained in the regular course of business of the produced by Valor Group and were made by persons with knowledge of, or made from information transmitted by persons with knowledge of, the information shown, and were made at or near the time the information became available.

> **Comment [A5]:** We may be able to stipulate to this document as a business record, but would need to understand who created it and for what purpose, and whether it was ever finalized.  We also do not have the bates number corresponding to this document.

~~17.~~14.   Government Exhibits 1571, 1573- 1575, 1578, and 1595-1596 are true and accurate copies of documents produced to the SEC by Wealth Assurance Private Client Corporation, in response to a subpoena.

~~18.      Government Exhibits 1650-1652 are compilations obtained from Bloomberg reflecting true and accurate daily share price and trading volume in Code Rebel Stock for the dates specified.~~

> **Comment [A6]:** Should be excluded (Code Rebel)

~~19.~~15.   IT IS FURTHER STIPULATED AND AGREED by and among the parties that this stipulation is admissible as a Government Exhibit at trial.

Dated:        New York, New York
              _____, 2018


                    ROBERT KHUZAMI
                    Attorney for the United States,
                    Acting Under Authority Conferred by
                    28 U.S.C. § 515


              By: _____
                    Rebecca Mermelstein
                    Brendan F. Quigley
                    Negar Tekeei
                    Assistant United States Attorneys


5

By: _____
    Michael Tremonte
    Barry Levin
    Noam Biale
    Attorneys for Gary Hirst


By: _____
    David Touger
    Attorney for John Galanis


By: _____
    Gregory Morvillo
    Attorney for Michelle Morton


By: _____
    Matthew Schwartz
    Attorney for Devon Archer


By: _____
    Paula Notari
    Attorney for Bevan Cooney

6

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                         :

UNITED STATES OF AMERICA,          :

                                       :

           - v. -                :          <u>TRIAL STIPULATION</u>

                                       :

GARY HIRST,                     :

JOHN GALANIS,                :          S3 16 Cr. 371 (RA)

   a/k/a "Yanni,"             :

MICHELLE MORTON,          :

DEVON ARCHER, and         :

BEVAN COONEY              :

                                       :

                 Defendants.      :

                                       :

------------------------------------------------------------ x

      IT IS HEREBY STIPULATED AND AGREED by and among the United States of

America, by ROBERT KHUZAMI, Attorney for the United States, Acting Under Authority

Conferred by 28 U.S.C. § 515, Rebecca Mermelstein, Brendan F. Quigley and Negar Tekeei,

Assistant United States Attorneys, of counsel, and GARY HIRST, the defendant, by and with the

consent of his attorneys, Michael Tremonte, Barry Levin, and Noam Biale; JOHN GALANIS,

a/k/a "Yanni," the defendant, by and with the consent of his attorney David Touger; MICHELLE

MORTON, the defendant, by and with the consent of her attorney, Gregory Morvillo; DEVON

ARCHER, the defendant, by and with the consent of his attorney, Matthew Schwartz; and

BEVAN COONEY, the defendant, by and with the consent of his attorney Paula Notari, that:

      1.      Government Exhibits 252, 254, 263, and 274 are true and correct copies of

records that were made, kept, and maintained in the regular course of business of the Wakpamni

Lake Community Corporation, were made by persons with knowledge of, or made from

information transmitted by persons with knowledge of, the information shown, and were made at or near the time the information became available.

2.      Government Exhibits 700, 701, 703, 708, 712-713, 715, and 725 are true and correct copies of records that were made, kept, and maintained in the regular course of business of Bonwick Capital and were made by persons with knowledge of, or made from information transmitted by persons with knowledge of, the information shown, and were made at or near the time the information became available.

3.      Government Exhibits 772 and 785-791 are true and correct copies of records that were made, kept, and maintained in the regular course of business of Burnham Securities and were made by persons with knowledge of, or made from information transmitted by persons with knowledge of, the information shown, and were made at or near the time the information became available.

3. 4.      Government Exhibits 803, 815-820, 900, 902, 910, 913, 932, 936, 948, 958, 974, 975, 980, and 981 are true and accurate copies of documents made, kept, and maintained in the regular course of business of Hughes Capital Management and/or Atlantic Asset Management, and were made by persons with knowledge of, or made from information transmitted by persons with knowledge of the information shown, and were made at or near the time the information became available.

5.      Government Exhibit 1212 is a true and accurate copy of the Code Rebel IPO Escrow Statement for the period from May 5, 2015 to May 31, 2015 and was made, kept, and maintained in the regular course of business of Code Rebel and was made by persons with knowledge of, or made from information transmitted by persons with knowledge of, the information shown, and was made at or near the time the information became available.

> **Comment [A1]:** Judge Abrams has precluded evidence that Code Rebel was a pump and dump scheme, but has allowed evidence about how shares were purchased using bond proceeds and then how those shares were dispose of. Thus, these records are relevant and admissible. And we don't think there is any dispute that they are authentic.

> **Comment [A2]:** Same comment as above re: Code Rebel

~~4.~~6.    Government Exhibits 1223 and 1227 are true and correct copies of records that were produced by Rosemont Seneca Bohai, LLC.

~~5.~~7.    Government Exhibits 1240 is a true and correct copy of the Code Rebel daily transfer journal.  Government Exhibits 1240 and 1241 were made, kept, and maintained in the regular course of business of Continental Stock Transfer and were made by persons with knowledge of, or made from information transmitted by persons with knowledge of, the information shown, and were made at or near the time the information became available.

**Comment [A3]:** Same comment re code rebel above

Government Exhibits 1265, 1271, and 1284 are true and accurate copies of documents produced by Bevan Cooney to the Securities and Exchange Commission in response to a subpoena.

~~6.~~8.    Government Exhibit 1364 is a true and accurate copy of ~~a record that was made, kept, and maintained in the regular course of business of~~produced by Dilworth Paxson~~an August 25, 2014 Dilworth Paxson opinion letter regarding the "$24,844,089 Wakpamni Lake Community Corporation Special Limited Revenue Bonds (Taxable), Series of 2014 (Economic Development Program)."~~

9.    Government Exhibits 1402, 1410, 1412 are true and accurate copies records that were produced by Hunter Taubman Weiss LLP or Hunter Taubman Fischer LLC.  More specifically:

**Formatted**

    a.   Government Exhibit 1402 is a true and accurate copy of a November 18, 2015 letter from Hunter Taubman Fischer, LLC, counsel to Burnham Securities, Inc. to FINRA.

    b.   Government Exhibit 1410 is a true and accurate copy of a May 31, 2013 share purchase agreement between Res Anstalt, Wealth Assurance Holdings, Ltd., Wealth Assurance Beteiligungs AG, and Wealth Assurance AG.

7.c. Government Exhibit 1412 is a true and accurate copy of an August 11, 2014 Escrow Agreement between Wealth Assurance Holdings Ltd., BFG Socially Responsible Investing, and Hunter Taubman Weiss LLP.

8.10.   Government Exhibits 1451 and 1452 are true and accurate copies of communications from BFG Socially Responsible Investments, Ltd to Michelle Morton and Richard Deary and were produced by Andrew Godfrey to the Securities and Exchange Commission in response to a subpoena..

9.11.   Government Exhibit 1500 is a true and accurate list of accounts affiliated with Francisco Martin at Interactive Brokers and was made, kept, and maintained in the regular course of business of Interactive Brokers and was made by persons with knowledge of, or made from information transmitted by persons with knowledge of the information shown, and was made at or near the time the information became available.

10.12.   Government Exhibit 1510 is a certificate of incorporation for Sovereign Nations Development Corp. and was made, kept, and maintained in the regular course of business of Sovereign Nations Development Corp. and was made by persons with knowledge of, or made from information transmitted by persons with knowledge of the information shown, and was made at or near the time the information became available.

11.13.   Government Exhibit 1540 is a true and accurate copy of documents made, kept, and maintained in the regular course of business of PARQ Advisors and was made by persons with knowledge of, or made from information transmitted by persons with knowledge of, the information shown, and was made at or near the time the information became available.

12.14.   Government Exhibits 1550 and 1551 are  true and accurate copies of documents produced by United Security Funding and were made by persons with knowledge of, or made

> **Comment [A4]:** We'd like to revisit 1550. We think this is a business record.

~~from information transmitted by persons with knowledge of, the information shown, and were made at or near the time the information became available.~~

~~13.~~15.  Government Exhibit 1560 is a true and accurate copy of an August 4, 2014 share purchase agreement between GMT Duncan LLC, HCM Holdings, Inc., and Frankie D. Hughes. Government Exhibits 1560 and 1561 are true and accurate copies of documents produced by Valor Group ~~and were made by persons with knowledge of, or made from information transmitted by persons with knowledge of, the information shown, and were made at or near the time the information became available.~~

**Comment [A5]:** We may be able to stipulate to this document as a business record, but would need to understand who created it and for what purpose, and whether it was ever finalized. We also do not have the bates number corresponding to this document.

**Comment [A6]:** This was produced in August 2016 as bates VG0000094)

~~14.~~16.  Government Exhibits 1571, 1573- 1575, 1578, and 1595-1596 are true and accurate copies of documents produced to the SEC by Wealth Assurance Private Client Corporation, in response to a subpoena.

~~15.~~17.  IT IS FURTHER STIPULATED AND AGREED by and among the parties that this stipulation is admissible as a Government Exhibit at trial.

Dated:     New York, New York
                    _____, 2018


                                        ROBERT KHUZAMI
                                        Attorney for the United States,
                                        Acting Under Authority Conferred by
                                        28 U.S.C. § 515


                                        By: _____
                                             Rebecca Mermelstein
                                             Brendan F. Quigley
                                             Negar Tekeei
                                             Assistant United States Attorneys


                                        By: _____
                                             Michael Tremonte
                                             Barry Levin

Noam Biale
Attorneys for Gary Hirst


By: _____
David Touger
Attorney for John Galanis


By: _____
Gregory Morvillo
Attorney for Michelle Morton


By: _____
Matthew Schwartz
Attorney for Devon Archer


By: _____
Paula Notari
Attorney for Bevan Cooney