

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 4, 2018

**BY EMAIL AND ECF**
The Honorable Ronnie Abrams
United States District Judge,
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    <u>United States v. John Galanis, et al.</u>, S3 16 Cr. 371 (RA)

Dear Judge Abrams:

      The Government writes in advance of the testimony of Raycen Raines (expected to begin on Wednesday or Thursday) to request that the Court enforce its previous ruling with respect to cross-examination concerning the WLCC's involvement in online, short-term lending.

      As the Court is aware, on May 8, 2018, the Government moved *in limine*, to preclude cross-examination of Raycen Raines concerning the WLCC's involvement in online, short term lending (also known, pejoratively, as "payday lending") because "[e]fforts to associate [the WLCC] with a practice that many find unseemly or exploitive would operate only to unfairly tarnish these witnesses while saying nothing about their credibility") (Supp. Motion in Limine at 9). At the May 16, 2018 pretrial conference, the Court ruled on that motion, stating that:

> [N]one of the defendants seemed to intend to cross-examine the witness on this topic, but I would not allow this cross in any event under 608(b) in light of the witness's reasonable, although contested, belief that the activity is not illegal.

(Tr. at 60). Counsel for John Galanis agreed that he did not intend to cross-examine Raines about payday lending generally, but requested permission to cross-examine Raines on whether, "with respect to the WLCC lending business, Raines did things wrong, lied to people, or were found to be lying about what went on in their operation of payday lending." For example, counsel sought permission to cross-examine Raines about whether, he "told somebody the interest rate was 6 percent and the interest rate was 22 percent," but not about "the fact that the payday loan business is illegal." (Tr. at 60). In light of counsel's representation that he had a good faith basis to raise such questions based on allegations and lawsuits located on the internet, the Court allowed cross-examination on that basis.

Counsel did not, however, abide by the Court's ruling to reference the WLCC's lending solely in connection with efforts to impeach Raines through questioning about purported wrongdoing. Instead, as the Court knows, counsel repeatedly raised the issue of online lending with Tim Anderson. More specifically, counsel engaged in the following questioning of Anderson:

> Q: Are you aware that there is a conflict between the WLCC and the Oglala Sioux Tribe Counsel because the WLCC is involved in online lending?
>
> A: I am not
>
> Q: You do know that the WLCC is involved in online lending though?
>
> A: I do.
>
> Q: And what is another word for online lending?

At that point, the Government objected and requested a side bar. Following the side bar, the Court directed counsel to move on from the topic and agreed to revisit the matter prior to Raines's testimony. (Tr. at 44-47). Counsel did not, however, move on from the topic. Instead, counsel again raised the topic of lending by asking Anderson about the involvement of Steven Haynes in online lending. (Tr. at 50).

Counsel's questioning was clearly a violation of the Court's order, which permitted counsel to raise the topic of lending solely with respect to any specific wrongdoing by Raines in connection with that business. Indeed, at sidebar, counsel could proffer only that he "just want[ed] to establish that the WLCC has a pay day loan business." (Tr. at 295). But the mere fact of the WLCC involvement in lending is precisely what this Court precluded. And counsel's efforts to elicit from Anderson that the lending business is also known as "payday" lending can serve no legitimate purpose. Indeed, efforts to elicit this pejorative terminology demonstrates that counsel is doing exactly that which the Government moved to preclude – seeking to besmirch Raines and the WLCC through their connection to this business. Accordingly the Government respectfully requests that the Court admonish counsel to comply with the Court's previous order and to refrain from using the pejorative term payday lending in any further questioning.

The Government also believes that – in light of the information set forth below – the Court should preclude any cross-examination of Raines concerning the WLCC's involvement in online lending. In the alternative, the Court should require counsel to make a proffer concerning the good faith basis for such questions in advance of any cross-examination so that the Court may accurately assess the propriety of these questions.

In asserting that the WLCC's lending business was fraudulent, counsel appears to have relied on the following two publicly available court documents (attached hereto as Exhibits A and B), which contain the same accusations as counsel alleged in Court. But what is clear from a

review of these documents, is that the allegations relate solely to the purported fraudulent *structure* of the lending business. More specifically, these allegations concern (i) whether the WLCC was a legitimate subsidiary of the Wakpamni Lake Community and the Oglala Sioux Tribe; and (ii) whether the partnership between the WLCC and its non-tribal lending partners was itself illegal. With respect to the first, counsel can fully probe the legitimacy of the WLCC's existence without reference to payday lending (or to any purported difficulties with the Oglala Tribal Government). With respect to the second, the Court has already precluded questioning concerning the legality of the WLCC's lending operation based on a finding that the WLCC had a good faith belief its conduct was legal. Nothing in the attached court documents suggests that Raines lied about the prevailing interest rate or any other fact. Accordingly, all questioning on this topic should be precluded.

Respectfully submitted,

ROBERT KHUZAMI
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

By:  /s/ Rebecca Mermelstein\_\_\_\_\_
Rebecca Mermelstein
Brendan F. Quigley
Negar Tekeei
Assistant United States Attorneys
(212) 637-2360/2190/2442

cc:   Defense Counsel (via e-mail)