# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Greenbelt Division

JACINTA ELDER,
9004 Crowne Springs Circle, # 103
Louisville KY 40241

              Plaintiff,

v.

              Civil Action No. _____

RYAN SULLIVAN, ASHLEY BLAKE COLLINS,
RAYCEN RAINES, GENEVA LONE HILL, and
WAKPAMNI LAKE COMMUNITY
CORPORATION,

              Defendants.

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff, Jacinta Elder ("Plaintiff"), by counsel, and for her Class Action Complaint against Defendants, she alleges as follows:

## INTRODUCTION

1.      In an attempt to circumvent state usury, payday lending, and consumer fraud statutes, Defendants Ryan Sullivan, Ashley Blake Collins, Raycen Raines, and others created and operated several criminal enterprises to market and collect illegal "payday" loans. In an apparent attempt to insulate themselves from any legal liability, Defendants established what is similar to a "rent-a-tribe" business model, where a payday lending scheme associates with a Native American tribe in an attempt to cloak itself in the privileges and immunities enjoyed by the tribe—or to at least create the illusion that it enjoys tribal immunity. However, in this case, Defendants did not associate with an actual Native American tribe and instead claimed to be affiliated with a tribe that does not appear to exist.

2.      To facilitate their blatant violations of state interest-rate lending laws, Defendants helped form the Wakpamni Lake Community Corporation ("WLCC")—a holding company—

organized by several *rogue members* of the Oglala Sioux Tribe to facilitate their making of loans at annual interest rates in excess of 700%. Even though the Oglala Sioux Tribe rejected the business venture in 2011, Defendants nonetheless started the WLCC and proceeded to make high-interest loans through various websites that claimed to be owned and operated by the WLCC. *See, e.g.*, Nicholas Nehamas, *The Tribe That Said No: How One Rogue Tribal Member Tried to Drag the Oglala Sioux Into Payday Lending,* AL JAZEERA AMERICA (June 18, 2014), http://projects.aljazeera.com/2014/payday-nation/sioux-tribe-pay.html (last visited on June 28, 2017). Because Defendants could not get the Oglala Sioux Tribe to participate in their scheme, WLCC broadly held itself out as a tribal entity "owned" by the "Sioux Indians, South Dakota," *i.e.*, a tribe that does not exist.[1] These misrepresentations were part of an integrated scheme to misrepresent the WLCC's purported immunity, violate public policy, and deprive consumers of legal remedies and their day in court.

3.      This lawsuit challenges the WLCC's claims of sovereign immunity and seeks to disgorge the unlawful profits made by the WLCC, its members, any third parties, and their principals, who run all aspects of the lending business off tribal lands and without tribal

---

[1] There is no tribe called the "Sioux Indians" in South Dakota, nor is there any tribe that would refer to itself as such. The Great Sioux Nation is a confederacy of tribes consisting of sixteen modern day tribes. Steven J. Gunn, *Compacts, Confederacies, and Comity: Intertribal Enforcement of Tribal Court Orders*, 34 N.M. L. Rev. 297, 325 (2004). It is comprised of three distinct dialect groups: the Lakota, Dakota, and Nakota. Alexandra New Holy, *The Heart of Everything That Is: Paha Sapa, Treaties, and Lakota Identity*, 23 Okla. City U. L. Rev. 317, 352 n.1 (1998). The Oglala Sioux Tribe is a part of the Lakota, which is the western-most nation of the Great Sioux Nation consisting of seven bands located on the Pine Ridge, Rosebud, Cheyenne River, Standing Rock, Crow Creek, Flandreau, and Lower Brule reservations in South Dakota and North Dakota as well as the Fort Peck reservation in Montana. *Id.* "Although united by tradition, history, culture, and [an inter-tribal legislative body], the various Sioux tribes occupy separate reservations and have separate and distinct legal systems." Gunn, *supra*, at 338 n.198; *see generally* South Dakota Tribal Court Handbook (2006), (describing the distinct legal systems of the various South Dakota tribes), *available at* https://ujs.sd.gov/media/docs/IndianLaw%20Handbook.pdf.

involvement, including underwriting, funding, and collection of the loans. Even if the "Sioux Indians" of South Dakota was a valid Native American tribe that was affiliated with the enterprise pled herein, Defendants would not benefit from tribal immunity. Although the doctrine of tribal sovereign immunity protects tribes, it does not automatically extend to economic subdivisions of a tribe, and the Court must determine whether these entities are "analogous to a governmental agency, which should benefit from sovereign immunity" or whether they are more like a "commercial business enterprise, instituted for the purpose of generating profits for [their] private owners."[2] In this case, nearly all of the profits of the scheme went to non-tribal participants, the scheme was operated by non-tribal members, and the scheme was specifically designed for the purpose of evading state usury laws. Thus, even if it were technically incorporated under the laws of an actual tribe, extending the protections of tribal immunity to this scheme would not serve the policies underlying tribal sovereign immunity.

4.      Based on Defendants' conduct, Plaintiff alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), which prohibits any person employed by or associated with an enterprise from collecting "unlawful debt." RICO defines "unlawful debt" as a debt incurred in "the business of lending money or a thing of value at a rate usurious under State or Federal law, *where the usurious rate is at least twice the enforceable rate*." 18 U.S.C. § 1961(6) (emphasis added). Consistent with their standard policies, Defendants charged Plaintiff with an annual interest rate in excess of 735%—more than *30 times* the enforceable rate in Maryland. Defendants acted in concert to repeatedly violate Maryland's consumer loan and usury laws and collected unlawful debts from Plaintiff and the putative class members.

---

[2] *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1184 (10th Cir. 2010) (citing *Gavle v. Little Six, Inc.,* 555 N.W.2d 284, 293 (Minn.1996)).

5.     Plaintiff also alleges a class claim pursuant to Maryland's interest and usury law, which prohibits any company from making such loans to Maryland residents at annual percentage rates in excess of 24% unless certain exceptions not present here have been met. Md. Code, Com. Law § 12-103(c)(1)-(2). If an unlicensed lender makes a loan for less than $6,000 and charges interest in excess of 24%, such loans are void and unenforceable and the lender or any third-party may not collect, obtain or receive any principal, interest, or charges whatsoever on said loans. Md. Code, Com. Law § 12-314; *see also In the Matter of: Archway Holdings Group, LLC*, 2014 3645140, at *1 (MD Comm. Fin. Regs. 2014). Defendants' Payday Lending Companies are not, and have not been, licensed by the Maryland Commissioner of Financial Regulation to provide short-term consumer loans under the MCCL. Accordingly, Plaintiff seeks to disgorge all payments made by Maryland consumers plus three times the interest paid to Defendants. Md. Code, Com. Law § 12-314(b)(2); Md. Code, Com. Law § 12-114.

6.     Finally, Plaintiff seeks a declaratory judgment that Defendants' arbitration and choice-of-law provisions are unenforceable as a matter of public policy and because the provisions attempt to deprive consumers of both a remedy and of a day in court. Defendants' arbitration and choice-of-law provisions are illusory, unreasonable, and unconscionable because the loan agreements indicate that the "laws of the Tribe will govern this Agreement." (*See generally* July 1, 2013 Loan Agreement, attached as Exhibit 1). Moreover, Defendants' arbitration and choice-of-law provisions are unenforceable because it violates public policy concerns in Maryland and was procured through misrepresentations, including that WLCC was "wholly owned" and "operated by" a nonexistent tribe. These misrepresentations created the appearance that Plaintiff and the class members were doing business with a legitimate tribal government when, in reality, all aspects of the transaction were controlled by non-tribal participants like Sullivan and Collins.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to 18 U.S.C. § 1965 and 15 U.S.C. § 1692k(d). The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §§ 1367 and 1332(d)(2).

8.     Venue is proper in this Court under 28 U.S.C. § 1391(b) and Local Rule 501(4)(b)(iii) because of the events described in this Complaint took place in this District and Division.

## PARTIES

9.     Plaintiff Jacinta Elder is a natural person who resided in this District and Division at the time during which a substantial part of the events or omissions giving rise to the claims asserted herein occurred.

10.     Defendant Ryan Sullivan ("Sullivan"), is a natural person who resides in Kansas City, Missouri. During all times relevant hereto, Sullivan directed, controlled and owned some of the internet lending websites described above, including SeasidePayday.com, BeachsideCash.com, Blvdcash.com, FiresideCash.com, Baysidecash.com, and Whisper Rock, LLC, which he set up to market and collect illegal loans under the disguise of the WLCC. Sullivan is one of the architects of the illegal enterprise described herein and had direct personal involvement in the creation and operation of the illegal enterprise.

11.     Defendant Ashley Blake Collins ("Collins"), also known as Blake Collins, is a natural person who resides in Utah. During all times relevant hereto, Collins directed, controlled, and owned some of the internet lending websites described above, including Green Circle Lending and Cash Cloud, which he set up to market and collect illegal loans. Collins is one of the architects

of the illegal enterprise described herein and had direct personal involvement in the creation and operation of the illegal enterprise.

12.     Defendant Raycen Raines ("Raines") is a natural person who was born in Portland, Oregon. In 2011, Raines moved to the Pine Ridge Reservation, which is the land in South Dakota that is home to the Oglala Sioux Tribe. At all times relevant hereto, Raines was the "matchmaker," *i.e.*, the middleman who brought together Sullivan and Collins with the rogue members of the Oglala Sioux Tribe to establish the WLCC, which operates without approval from and without participation from the Oglala Sioux Tribe. The WLCC provides no benefit to the Oglala Sioux Tribe or any other tribe. Raines handles the relationship between the WLCC and the internet lending websites. Upon information and belief, Raines receives a percentage of the profits from the illegal loans for his role as the middleman.

13.     Defendant Geneva Lone Hill ("Hill") is the president of the WLCC. She is one of the rogue members of the Oglala Sioux Tribe who helped form the WLCC. Upon information and belief, Hill receives a percentage of the profits from the WLCC.

14.     Defendant Wakpamni Lake Community Corporation ("WLCC") is a privately held corporation, which operates without approval from and provides no benefit to the Oglala Sioux Tribe or any other tribe. In return for a small fraction of the profits, WLCC allows internet payday lending websites to use its name and falsely claim that they are "wholly-owned" and "controlled by" the WLCC. The WLCC does not participate in the day-to-day operations of the payday lending websites and does not perform any of the work in originating, underwriting, or financing the loans. The WLCC also does not handle the servicing of or collection of the illegal loans.

## FACTS

**A.      Overview of Defendants' Enterprise.**

15.      Over the last decade, businesses have sought to evade state lending laws by entering into ventures with Native American tribes to shield the businesses through use of tribal sovereign immunity. *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2052, 188 L. Ed. 2d 1071 (2014) (Scalia, J., dissenting) ("[P]ayday lenders (companies that lend consumers short-term advances on paychecks at interest rates that can reach upwards of 1,000 percent per annum) often arrange to share fees or profits with tribes so they can use tribal immunity as a shield for conduct of questionable legality." (citing Martin & Schwartz, *The Alliance Between Payday Lenders and Tribes: Are Both Tribal Sovereignty and Consumer Protection at Risk*? 69 WASH. & LEE L. REV. 751, 758–759, 777 (2012)).

16.      Before embarking on the tribal lending scheme, Collins set up an online lending company named Flobridge in 2009, which was quickly shut down after a lawsuit brought by the Idaho Department of Finance revealed that the payday lending company operated without a license and unlawfully used wage assignments to garnish consumers' wages. *See, e.g., Idaho v. Flobridge Group*, *LLC*, Case No. 2010-6-04 (Idaho).

17.      A similar enforcement action was brought against Sullivan and his company, Fireside Cash, by the Department of Financial & Professional Regulation for the state of Illinois.

18.       In order to continue doing business and evade state usury laws, Collins and Sullivan teamed up with Defendant Raines, a former insurance salesman originally from Oregon, who has Oglala lineage and moved to the Pine Ridge Reservation in 2011.

19.      Although Raines is an enrolled member of the Oglala Sioux Tribe, he is not a tribal official and does not represent or act on behalf of the Oglala Sioux Tribe or any other tribe.

20.     In January 2012, Raines approached members of the Wakpamni District—one of the nine subdivisions of the Pine Ridge Reservation—with a business opportunity to enter the internet payday lending market with Collins and his affiliated websites, such as Cash Cloud—an Arizona company.[3]

21.     During a meeting in January 2012, Raines presented members of the Wakpamni District with a proposed partnership agreement to do business with Cash Cloud.

22.     As compensation for its role in the deceptive scheme, Cash Cloud would pay the Wakpamni District $5 per new loan initiated by Cash Cloud with a net minimum payment of $100,000 per month.

23.     Under the proposed partnership agreement, the proceeds would be paid into a bank account held by Raines, who would remit 50% of the proceeds to the Wakpamni District.

24.     Ultimately, the Wakpamni Board rejected the business venture, but Raines set up the WLCC with a few rogue members of the Wakpamni district and proceeded to make the loans without the Oglala Sioux Tribe's permission.

25.     A 2012 CNBC report details certain of the details of the Oglala Sioux Tribe's ultimate decision to not involve itself in the business venture.  *See* Eamon Javers, *How Some Payday Landers Charge Over 700% On Loans,* CNBC (Sept. 17, 2012).[4]  When the tribal secretary was contact by CNBC and informed that the Fast Money Store website (then www.fastmoneystore.net) stated that it was affiliated with the Wakpamni, he responded "We were not aware of this payday lending project on the Internet until you brought it to our attention.  We believe that a fraud has been committed on us and these individuals pulled a fast one on us."

---

[3] A portion of the factual allegations are taken from Al Jazeera America's investigation into Raines and the WLCC, as well as other lawsuits and government enforcement actions against similar tribal lending schemes.
[4] *Available at* http://www.cnbc.com/id/49035819.

Indeed, even the tribal president, whose signature appeared on a Fast Money Store contract, admitted to CNBC that the contract had not been made according to tribal procedure.

26.     Although the WLCC holds itself out as the actual lender of these internet payday loans, Collins, Sullivan, and others not yet known to Plaintiff performed the underwriting requirements, funded the loans, and controlled all aspects of the servicing after the initiation of the loan.

27.     Nevertheless, WLCC erroneously held itself out as an "arm and instrumentality" of the "Sioux Indians" even though no such tribe exists and no tribe participates in any of the business functions of the WLCC or receives any of the illegal profits from the scheme.

28.     Aside from Cash Cloud, the WLCC has allowed its name to be used by no less than 16 internet payday lending companies, including Seaside Payday, BlvdCash, Whisper Rock, Green Circle, The Gan Eden Group, First Day, Fox Hills Cash, Rolling Plains Cash, Check Advance USA, Arrow Head Advance, Cash on Cloud9, Easy Cash Online Store, Bayside Cash, Fast Money Store, Fireside Cash, Seaside Dollar, and (collectively "Defendants' Payday Lending Companies").

29.     Upon information and belief, WLCC entered into a partnership agreement with each of Defendants' Payday Lending Companies and each of the individual Defendants executed at least one of the partnership agreements.

30.     Under the scheme, loans are made in the name of WLCC, but Sullivan, Collins, and others not yet known to Plaintiff, provided the infrastructure to market, fund, underwrite, and collect the loans, including by providing the following services: lead generation, technology platforms, payment processing, and collection procedures.

31.     Upon information and belief, Sullivan, Collins, and others controlled all aspects of Defendants' Payday Lending Companies claimed to be "wholly owned" and "controlled by" the WLCC, including the call centers, the loan software, the advertising, and the servicing of the loans.

32.     Upon information and belief, the Payday Lending Companies often shared employees, computer systems, and other operating costs—none of which were paid by the WLCC or any tribe.

33.     Upon information and belief, the WLCC had no control over the income or expenses of any of Defendants' Payday Lending Companies and no entitlement to the profits of the companies except for the nominal, flat-fee paid to the WLCC.

34.     In other words, the WLCC allows these companies to use WLCC's name as a front and, in return, receives a small fee for each loan.

35.     Upon information and belief, the small fee generated for use of the WLCC's name is retained by the rogue members who formed WLCC, including its president, Defendant Geneva Lone Hill and Raycen Raines.

36.     Upon information and belief, no member of a tribe or the Wakpamni subdivision participates in the day-to-day operations of the payday lending companies, and all such activities occur off the Pine Ridge Reservation.

37.     Indeed, Plaintiff's Loan Agreement listed Seaside's address as 35 New Road, PO Box 2391, Belize City. (July 1, 2013 Loan Agreement, attached as Exhibit 1, at 4).

38.     Moreover, all activities performed on behalf of the payday lending companies are not performed by employees located on the Pine Ridge Reservation but instead by employees located in Kansas, Utah, Florida, and Belize City.

39.     Upon information and belief, the money loaned to Plaintiff was transferred from a bank account owned and operated or controlled by Sullivan or other third parties not yet known to Plaintiff who have no connection to a tribe or the Pine Ridge Reservation.

40.     For example, the United States Attorney for the Southern District of New York has indicted Scott Tucker and Timothy Muir, competitors of Defendants, for engaging in exactly the same type of unlawful-lending "rent a tribe" and collection practices alleged herein.

41.     The Tucker indictment, which sets out a strikingly similar set of facts, includes: (1) Mr. Tucker, through the use of shell companies, personally lent money to thousands of consumers through payday loans; (2) Tucker personally controlled virtually every aspect of the operations of these sham entities; (3) these sham entities shared employees, computer systems, and "other operating costs and infrastructure of a single lending business"; and (4) Mr. Muir acted as general counsel for one of the Tucker entities. *United States v. Tucker*, Case No. 16-crim-091 (S.D. N.Y. Feb. 9, 2016) (Dot. 1 at ¶¶ 1–3).

42.     For example, the indictment explains:

In truth and in fact, as SCOTT TUCKER and TIMOTHY MUIR, the defendants, well knew, while TUCKER and MUIR took steps to create the sham appearance of tribal ownership and control of the Tucker Payday Lenders, Tribes 1–3 played no substantive role in the ownership or operation of the Tucker Payday Lenders at any time. To create the sham appearance of ownership, TUCKER assigned nominal ownership of the Tucker Payday Lenders to Tribes 1-3 (that is, Ameriloan, United Cash Loans, US Fast Cash, Advantage Cash Services and Star Cash Processing were assigned to Tribe 1, One Click Cash was assigned to Tribe 2, and 500 Fast Cash was assigned to Tribe 3), and from time to time caused Tribes 1-3 to appear as the businesses' owners on certain corporate and financial documents. However, in truth and in fact, at all relevant times, and as TUCKER and MUIR well knew, Tribes 1-3 had no power to make any decisions on behalf of any of the Tucker Payday Lenders, no control over the income or expenses of any of the Tucker Payday Lenders, and no entitlement to the Tucker Payday Lenders' profits.

Similarly, to create the sham appearance that Tribes 1–3 not only owned, but operated, the Tucker Payday Lenders, SCOTT TUCKER, the defendant, caused members of two of the tribes (Tribe 1 and Tribe 2) to have a tribal member press a key on a computer on a daily basis on tribal lands to purportedly "approve" the

extension of credit on hundreds or thousands of loans that the Tucker Payday Lenders, through their approximately 600 employees in Kansas, had in fact already approved and agreed to provide to customers. TUCKER did not require a third tribe that purportedly owned and operated one of the Tucker Payday Lenders (Tribe 3) to engage in this sham participation in the operations of his business at all.

*Id*. at ¶¶ 23-24.

43.     Just like the Tucker defendants, Defendants' business relationship was nothing more than an attempt to mislead consumers and regulators by an illusion that Defendants were protected by tribal immunity.

**B.     Defendants' Loans Charged Interest in Violation of Md. Code, Com. Law § 12-103, Md. Code, Com. Law § 12-306 and RICO.**

44.     Sullivan, Collins, and others not yet known to Plaintiff, through Defendants' Payday Lending Companies, marketed WLCC internet loans to Maryland residents.

45.     Under the terms of the standard Loan Agreements, the annual interest rates charged were at least twice the 24% cap imposed by Maryland law.

46.     Specifically, Defendants charged Ms. Elder with an annual percentage rate ("APR") of 735.0728% (July 1, 2013 Loan Agreement, attached as Exhibit 1).  Ms. Elder's loan in the amount of $500.00 was to be paid back in 32 bi-weekly payments for a total finance charge of $3,870.00, including $3,375.00 in interest.

47.     Md. Code, Com. Law § 12-103 prohibits any person from making such loans to Maryland residents in excess of 24% APR unless certain exceptions not present here are met.

48.     Md. Code, Com. Law § 12-306 prohibits any person from making payday loans to Maryland residents in excess of the following rates:

> For any loan with an original principal balance of $2,000 or less, the maximum interest rate is:
>
> (i) 2.75 percent interest per month on that part of the unpaid principal balance not more than $500;

(ii) 2 percent interest per month on that part of the unpaid principal balance that is more than $500 but not more than $700; and

(iii) 1.25 percent interest per month on that part of the unpaid principal balance that is more than $700.

(3) For any loan with an original principal balance of more than $2,000 and not more than $3,500, the maximum interest rate is 1.75 percent interest per month on the unpaid principal balance of the loan.

Md. Code, Com. Law § 12-306.

49.     Moreover, no person may make a loan under the MCCL without being licensed by the Maryland Commissioner of Financial Regulation.  Md. Code, Com. Law § 12-302; Md. Code, Fin. Inst. § 11-204.  Md. Code, Com. Law § 12-314 provides that a person "who is neither a licensee nor exempt from licensing may not receive or retain any principal, interest, or other compensation with respect to any loan that is unenforceable under [the MCCL]."

50.     Failing to acquire the appropriate license in Maryland is part of a pattern of conduct by the WLCC to evade state and federal law across the country. For example, the Department of Financial Institutions of the State of Washington, in response to complaints about many payday lending websites operated by the WLCC, has previously notified Washington consumers that the WLCC is not licensed there. *See* The Wakpamni Lake Corporation Not Licensed In Washington, *available   at*   http://www.dfi.wa.gov/consumer/alerts/wakpamni-lake-corporation-not-licensed-washington.

51.     Defendants' Payday Lending Companies are not, and have not been, licensed by the Maryland Commissioner of Financial Regulation to provide short-term consumer loans under the MCCL.

52.     Upon information and belief and as evidenced by the loan made to Plaintiff and the loans made by Defendants to the plaintiffs in a lawsuit against many of the same defendants pending in federal court in Virginia, *Wiley et al. v. Jardine et al.*, No. 3:17-cv-00011-MHL (E.D.

Va. filed Jan 5, 2017), all of Defendants' loans to Maryland consumers contained interest rates over 24% per year and also in excess of the rates set forth in Md. Code, Com. Law § 12-306.

53.     Accordingly, Defendants' loans were null and void, and it is unlawful for Defendants or any of their affiliated entities to collect or receive any principal, interest, or charges whatsoever on said loans, including any amounts paid by Plaintiff.

54.     Defendants received no less than $450.00, which was applied either entirely or almost entirely to interest, from Ms. Elder as a result of the $500.00 illegal loan made to her by Seaside Payday.

55.     Pursuant to Md. Code, Com. Law § 12-114, Plaintiff and the putative class members are also entitled to recover from Defendants an amount equal to the greater of (i) three times the amount of interest paid in excess of 24% or (ii) $500.

56.     Similarly, pursuant to Md. Code, Com. Law § 12-314, Plaintiff and the putative class members are entitled to recover from Defendants any principal, interest, or other compensation paid to Defendants with respect to all loans.

57.     Based on this conduct, Defendants also violated § 1962(c) of RICO, which prohibits the "collection of unlawful debt." 18 U.S.C. § 1962(c).

58.     RICO defines "unlawful debt" as a debt that was incurred in connection with "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

59.     As reflected by Plaintiff's Loan Agreement, Defendants charged an interest rate far more than twice the enforceable rates established by Md. Code, Com. Law § 12-103 and Md. Code, Com. Law § 12-306, and, thus, Defendants violated RICO's prohibition against the collection of unlawful debt.

60.     As a result of Defendants' participation in the enterprise and violations of RICO, Defendants are jointly and severally liable to Plaintiff and the putative class members for their actual damages, treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**D.     Defendants' Choice-of-Law and Arbitration Provisions Are Unenforceable.**

61.     Defendants' loan agreements not only violate Maryland's public policy against usurious loans, but they also contain illusory, unenforceable, and unconscionable choice-of-law and arbitration provisions that seek to disclaim all laws and deprive consumers of remedies and their day in court.

62.     In particular, Plaintiff's Loan Agreement provides:

**GOVERNING LAW**: The laws of the Tribe will govern this Agreement. However, any dispute arising out of this Loan Agreement and any renewal thereof will be subject to the ARBITRATION PROVISION, which is governed by the Federal Arbitration Act.

63.     Upon information and belief, the governing law provision—a virtually identical equivalent thereof—was template language included in all loan agreements involving the WLCC.

64.     Defendants' choice-of-law provision is illusory and unenforceable because it mandates use of the tribal law of the "Sioux Indians," which does not exist. *Hayes v. Delbert Services Corp.*, 811 F.3d 666, 673 (4th Cir. 2016) ("But a party may not underhandedly convert a choice of law clause into a choice of no law clause.").

65.     Defendants' governing law clause is further unenforceable because it violates public policy concerns in Maryland and was procured through fraud and misrepresentations, including that WLCC was "wholly owned" and "operated by" by "the Sioux Indians" of South Dakota.

66.     These statements were false, misleading, and designed to create the appearance that consumers were doing business with a neutral, government-like entity, which does not exist.

67.     In reality, the loans were owned and operated by individuals like Sullivan and Collins, who funded the loans, controlled the underwriting, and handled the day-to-day operations of the businesses, including the interactions with consumers and collections.

68.     Due to the unavailability of the chosen law and/or the fraudulent misrepresentations regarding the ownership and operations of the WLCC, the arbitration provision is also illusory and unenforceable.

69.     Plaintiff requests the Court to enter a declaratory judgment that the governing law and arbitration provisions are unenforceable as to Maryland consumers.

<u>**COUNT ONE:**</u>
**VIOLATIONS OF RICO, 18 U.S.C. § 1962(c)**
**(CLASS CLAIM AGAINST ALL DEFENDANTS)**

70.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

71.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class initially defined as:

> All Maryland residents who (1) executed a loan with Defendants' Payday Lending Companies or any other entity affiliated with the WLCC (2) where the loan was originated and/or any payment was made on or after June 30, 2013.

> Plaintiff is are a member of this class.

72.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

73.     <u>**Predominance of Common Questions of Law and Fact**</u>. **Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no

16

factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members.

74.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

75.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class, because her interests coincide with, and are not antagonistic to, the interests of the members of the Class she seeks to represent; she has retained counsel competent and experienced in such litigation; and she has and intends to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class. Plaintiff and her counsel possess no interest that would interfere with their vigorous pursuit of this action.

76.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Litigating the validity and enforceability of each loan agreement would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to

the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

77.    **Injunctive Relief Appropriate for the Class.**   **Fed. R. Civ. P. 23(b)(2).** In addition, class certification is appropriate because Defendant acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. Plaintiff and the putative class seek an injunction ordering the Defendants to divest themselves of any interest in any enterprise pled herein, including the receipt of usurious debt; prohibiting Defendants from continuing to engage in any enterprise pled herein; and ordering the dissolution of each Defendant that has engaged in any enterprise pled herein.

78.    As alleged above, Defendants, along with other participants not yet known to Plaintiff, violated § 1962(c) of RICO through the "collection of unlawful debt." 18 U.S.C. § 1962(c).

79.    RICO defines "unlawful debt" as a debt which was incurred in connection with "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

80.    All of the loans made to Maryland residents by Defendants and their affiliated companies included an interest rate far in excess of twice the enforceable rate in Maryland.

81.    This conduct began sometime as early 2012 and continues to date and will be repeated again and again in the future to the detriment of Maryland consumers.

82.    Plaintiff and the putative class members were injured as a result of Defendants' violations of 18 U.S.C. § 1962(c) and are entitled to treble their actual damages, which would include any interest, fees or other sums collected by Defendants.

83. As a result of Defendants' participation in the enterprise and violations of RICO, Defendants are jointly and severally liable to Plaintiff and the putative class members for their actual damages, treble damages, costs, and attorneys fees pursuant to 18 U.S.C. § 1964(c).

**COUNT TWO:**
**VIOLATIONS OF RICO, 18 U.S.C. § 1962(d)**
**(CLASS CLAIM AGAINST ALL DEFENDANTS)**

84. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

85. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class initially defined as:

> All Maryland residents who (1) executed a loan with Defendants' Payday Lending Companies or any other entity affiliated with the WLCC (2) where the loan was originated and/or any payment was made on or after June 30, 2013.

Plaintiff is are a member of this class.

86. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

87. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members.

88. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

89.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the members of the Class she seeks to represent; she has retained counsel competent and experienced in such litigation; and she has and intends to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class. Plaintiff and her counsel possess no interest that would interfere with their vigorous pursuit of this action.

90.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Litigating the validity and enforceability of each loan agreement would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

91.    **Injunctive Relief Appropriate for the Class.   Fed. R. Civ. P. 23(b)(2).** In addition, class certification is appropriate because Defendant has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. Plaintiff and the putative class seek an injunction ordering Defendants to divest

themselves of any interest in any enterprise pled herein, including the receipt of usurious debt; prohibiting Defendants from continuing to engage in any enterprise pled herein; and ordering the dissolution of each Defendant that has engaged in any enterprise pled herein.

92.     As alleged above, Defendants, along with other participants not yet known to Plaintiff, violated § 1962(d) of RICO by entering into a series of agreements to violate § 1962(c), including the partnership agreement entered into between the WLCC and the Payday Lending Companies.

93.     As explained above, Defendants knowingly entered into a series of agreements to facilitate the illegal lending scheme, which blatantly violates § 1962(c) of RICO.

94.     Plaintiff and the class members suffered actual damages as a result of Defendants' violations of 18 U.S.C. § 1962(d).

95.     As a result of Defendants' participation in the enterprise and violations of RICO, Defendants are jointly and severally liable to Plaintiff and the putative class members for their actual damages, treble damages, costs, and attorneys fees pursuant to 18 U.S.C. § 1964(c).

## COUNT THREE:
### VIOLATIONS OF MARYLAND INTEREST AND USURY LAW
### MD. CODE, COM. LAW § 12-101, *ET SEQ.*
### (CLASS CLAIM AGAINST ALL DEFENDANTS)

96.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

97.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class initially defined as:

> All persons (1) who resided or were located in Maryland; and (2) when they entered into a loan with one of Defendants' Payday Lending Companies or any other entity affiliated with the WLCC.

> Plaintiff is a member of this class.

98.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

99.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members.

100.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

101.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; she has retained counsel competent and experienced in such litigation; and she has and intends to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class. Plaintiff and her counsel possess no interest that would interfere with their vigorous pursuit of this action.

102.    **Injunctive Relief Appropriate for the Class.  Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendant acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. Plaintiff and the putative class seek an injunction ordering Defendants to divest themselves of any

interest in any enterprise pled herein, including the receipt of racketeering profits; prohibiting Defendants from continuing to engage in any enterprise pled herein; and ordering the dissolution of each Defendant that has engaged in any enterprise pled herein.

103.    Pursuant to Md. Code, Com. Law § 12-103(c)(1)-(2), unsecured written loan agreements at an interest rate greater than 24% per annum are prohibited.

104.    As set forth more fully above—in the course of making and collecting on payday loans to Plaintiff Elder and other consumers in Maryland—Sullivan, Collins, and Defendants' Payday Lending Companies repeatedly and knowingly charged, demanded, and accepted interest at a rate greater than 24% per annum in violation of Md. Code, Com. Law § 12-103(c)(1)-(2).

105.    None of the exceptions to and within Md. Code, Com. Law § 12-103 apply.

106.    Accordingly, Plaintiff and the putative class members are entitled to recover from Defendants an amount equal to the greater of (i) three times the amount of interest paid in excess of 24% or (ii) $500. Md. Code, Com. Law § 12-114.

### COUNT FOUR:
### VIOLATIONS OF MARYLAND CONSUMER LOAN LAW
### MD. CODE, COM. LAW § 12-301, *ET SEQ.*
### (CLASS CLAIM AGAINST ALL DEFENDANTS)

107.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

108.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class initially defined as:

> All persons (1) who resided or were located in Maryland; (2) when they entered into a loan with one of Defendants' Payday Lending Companies or any other entity affiliated with the WLCC; and (3) made a payment of any amount on the loan or who have an outstanding balance on the loan.

> Plaintiff is a member of this class.

109.  **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

110.  **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members.

111.  **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

112.  **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class, because her interests coincide with, and are not antagonistic to, the interests of the members of the Class she seeks to represent; she has retained counsel competent and experienced in such litigation; and she has and intends to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class. Plaintiff and her counsel possess no interest that would interfere with their vigorous pursuit of this action.

113.  **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Litigating the validity and enforceability of each loan agreement would prove burdensome and

expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

114.   **Injunctive Relief Appropriate for the Class.  Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendant acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. Plaintiff and the putative class seek an injunction ordering Defendants to divest themselves of any interest in any enterprise pled herein, including the receipt of usurious profits; prohibiting Defendants from continuing to engage in any enterprise pled herein.

115.   Maryland's Consumer Loan Law ("MCCL") limits the annual interest rate on payday loans as follows:

For any loan with an original principal balance of $2,000 or less, the maximum interest rate is:

(i) 2.75 percent interest per month on that part of the unpaid principal balance not more than $500;

(ii) 2 percent interest per month on that part of the unpaid principal balance that is more than $500 but not more than $700; and

(iii) 1.25 percent interest per month on that part of the unpaid principal balance that is more than $700.

(3) For any loan with an original principal balance of more than $2,000 and not more than $3,500, the maximum interest rate is 1.75 percent interest per month on the unpaid principal balance of the loan.

Md. Code, Com. Law § 12-306.

116.    Moreover, if an unlicensed lender makes a loan for less than $6,000 and charges interest in excess of 24%, such loans are void and unenforceable, and the lender or any third-party may not collect, obtain, or receive any principal, interest, or charges whatsoever on said loans. Md. Code, Com. Law § 12-314.

117.    As set forth more fully above—in the course of making and collecting on payday loans to Plaintiff Elder and other consumers in Maryland— Sullivan, Collins, and Defendants' Payday Lending Companies repeatedly and knowingly charged, demanded, and accepted interest far in excess of 24%.

118.    Accordingly, it was unlawful for Defendants or any of their affiliated entities to collect or receive any principal, interest, or charges on the loans, including all amounts paid by Plaintiff.

**COUNT FIVE:**
**DECLARATORY JUDGMENT**
**(CLASS CLAIM AGAINST ALL DEFENDANTS)**

119.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

120.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class initially defined as follows:

> **Declaratory Judgment Class**: All Maryland residents who (1) executed a loan with Defendants' Payday Lending Companies; (2) which contained a choice-of-law provision, arbitration provision, or forum selection clause similar or identical to Plaintiffs.
>
> Plaintiff is a member of the subclass.

121.    **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and

addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

122.   **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether the loan agreements are void as a matter of public policy and (2) whether the choice-of-law and arbitration provisions are enforceable.

123.   **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member.  In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

124.   **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class, because her interests coincide with, and are not antagonistic to, the interests of the members of the class she seeks to represent; she has retained counsel competent and experienced in such litigation; and she has and intends to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the class. Plaintiff and her counsel possess no interest that would interfere with their vigorous pursuit of this action.

125.   **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Litigating the validity and enforceability of each loan agreement would prove burdensome and

expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

126.    As explained above, Defendants' loan agreements not only violate Maryland's public policy, but they also contain unconscionable choice of law and arbitration provisions that are void and unenforceable for public policy concerns.

127.    The dispute and controversy is a justiciable matter that is not speculative, and a resolution by this court will determine the rights and interests of the parties to the Loan Agreements as well as the validity, if any, of the choice of law and forum-selection provisions.

128.    Pursuant to 28 U.S.C. § 2201, there is an actual justiciable controversy, and a declaratory judgment is the appropriate mechanism for resolving the validity and enforceability of the loan agreements.

129.    Accordingly, Plaintiff seeks a declaratory judgment that the choice of law and arbitration provisions are void and unenforceable as a matter of Maryland's well-established public policy.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE,** Plaintiff requests that the Court enter judgment on behalf of herself and the classes she seeks to represent against Defendants as follows:

A.     Certification for this matter to proceed as a class action under Fed. R. Civ. P. 23(b)(2) and 23(b)(3);

B.     Declaratory, injunctive, and damages relief as pled herein;

C.     Attorneys' fees, litigation expenses, and costs of suit; and

D.     Such other or further relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
**JACINTA ELDER**

By:__ _/s/_  Hassan Zavareei_____
Hassan Zavareei (No. 18489)
Jeffrey Kaliel (*pro hac vice* pending)
Andrew Silver (*pro hac vice* pending)
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
P: (202) 973-0900
F: (202) 973-0950
hzavareei@tzlegal.com
jkaliel@tzlegal.com
asilver@tzlegal.com

*Counsel for Plaintiff*

# EXHIBIT 1

Seaside Payday

# APPLICATION

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT:** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. **What this means for you:** When you open an account, we ("we" or "us" refers to Seaside Payday, a tribal entity wholly owned by the Wakpamni Lake Community Corporation (WLCC) of the Sioux Indians, South Dakota, a sovereign nation located within the United States of America, and operating within the Tribe's Reservation) will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying document.

**NOTICE:** *WE ARE REQUIRED BY LAW TO ADOPT PROCEDURES TO REQUEST AND RETAIN IN OUR RECORDS INFORMATION NECESSARY TO VERIFY YOUR IDENTITY*

## PERSONAL INFORMATION

| Name:Jacinta Elder | Social Security Number:███ | |
|---|---|---|
| Address:4701 Willard Ave | City:Chevy Chase | State:MD Zip:20815 |
| Date of Birth:███ | Length at Address Yrs: 2 Mths: | Email Address:███ |
| Home Phone: | Cell Phone: | Fax Number: |

## INCOME INFORMATION

| Employer:FDA | Month Net Income:███ | Work Phone:███ |
|---|---|---|
| Pay Period:BiWeekly | Next Pay Date:July 5, 2013 | Last Pay Date:June 21, 2013 |
| Length of Employment:24 | Customer Payroll | |
| Supervisor's Name:FDA | Supervisor or HR Phone:███ | |

## BANK INFORMATION

| Type of Account:Checking | Routing Number:███ | Account Number:███ |
|---|---|---|

## REFERENCE INFORMATION

| | | | |
|---|---|---|---|
| 1. | Phone Number:███ | Relationship:RELATIVE | |
| 2. | Phone Number:███ | Relationship:RELATIVE | |

By typing your name and clicking "I Agree" below, you are electronically signing this Application. By electronically signing and submitting this Application Statement, you certify that all of the information provided above is true, complete and correct and provided to us for the purpose of inducing us to make the loan for which you are applying and you acknowledge receiving a fully completed copy of this Application and accompanying documents. This Application will be deemed incomplete and will not be processed by us unless agreed by you below. By electronically signing below you also agree that we may obtain and use information about you from third parties, including consumer reports, to evaluate your application and to review your account for as long as you owe any amount to us.

**SIGNATURE: Jacinta Elder**                    **DATE: July 1, 2013**

COVERED BORROWER IDENTIFICATION STATEMENT

Federal law provides important protections to active duty members of the Armed Forces and their dependents. To ensure that these protections are provided to eligible applicants, we require you to select and electronically sign ONE of the following statements as applicable:

PLEASE SELECT ONE OF THE FOLLOWING STATEMENTS

I AM a regular or reserve member of the Army, Navy, Marine Corps, Air Force, or Coast Guard, serving on active duty under a call or order that does not specify a period of 30 days or fewer, or such member serving on Active National Guard duty.

I AM a dependent of a member of the Armed Forces on active duty as described above, because I am the member's spouse, the member's child under the age of eighteen years old, or I am an individual for whom the member provided more than one-half of my financial support for 180 days immediately preceding today's date.

--OR--

☉ I AM NOT a regular or reserve member of the Army, Navy, Marine Corps, Air Force, or Coast Guard, serving on active duty under a call or order that does not specify a period of 30 days or fewer (or a dependent of such a member).

WARNING: IT IS IMPORTANT TO FILL OUT THIS FORM ACCURATELY. KNOWINGLY MAKING A FALSE STATEMENT ON A CREDIT APPLICATION IS A CRIME.

Signature: Jacinta Elder Date: July 1, 2013

Case 1:16-cr-00371-RA   Document 499-2   Filed 06/04/18   Page 33 of 51
Seaside Payday
Case 8:17-cv-01807-TDC   Document 1-1   Filed 06/30/17   Page 4 of 10

## LOAN AGREEMENT

| Agreement Date: July 1, 2013<br>Payment Due Date: July 19, 2013 | LOAN#: 101132916 |
|---|---|
| Name of Lender: Seaside Payday, LDC<br>Address of Lender:<br>No. 35 New Road, P.O. Box 2391<br>Belize City<br>--, 00000 | NAME: Jacinta Elder<br>ADDRESS: 4701 Willard Ave<br>CITY: Chevy Chase<br>STATE: MD ZIP: 20815<br>PHONE: 3016563808 |

In this Loan Agreement (hereinafter, the "Loan Agreement") the words "you", "your" and "I" mean the borrower who has electronically signed it. The words "we", "us" and "our" mean Seaside Payday ("Lender"), a licensed lender of consumer loans regulated by the Tribal laws of Wakpamni Lake Community Corporation.

### TRUTH IN LENDING DISCLOSURES

| Annual Percentage Rate:<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 735.0728% | $3,375.00 | $500.00 | $3,875.00 |

Your payment schedule (the "Payment Schedule") will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $150.00 | July 19, 2013 |
| 1 | $150.00 | August 2, 2013 |
| 1 | $150.00 | August 16, 2013 |
| 1 | $150.00 | August 30, 2013 |
| 1 | $150.00 | September 13, 2013 |
| 1 | $150.00 | September 27, 2013 |
| 1 | $150.00 | October 11, 2013 |
| 1 | $150.00 | October 25, 2013 |
| 1 | $150.00 | November 8, 2013 |
| 1 | $150.00 | November 22, 2013 |
| 1 | $150.00 | December 6, 2013 |
| 1 | $150.00 | December 20, 2013 |
| 1 | $175.00 | January 3, 2014 |
| 1 | $167.50 | January 17, 2014 |
| 1 | $160.00 | January 31, 2014 |
| 1 | $152.50 | February 14, 2014 |
| 1 | $145.00 | February 28, 2014 |
| 1 | $137.50 | March 14, 2014 |
| 1 | $130.00 | March 28, 2014 |
| 1 | $122.50 | April 11, 2014 |
| 1 | $115.00 | April 25, 2014 |
| 1 | $107.50 | May 9, 2014 |
| 1 | $100.00 | May 23, 2014 |
| 1 | $92.50 | June 6, 2014 |
| 1 | $85.00 | June 20, 2014 |
| 1 | $77.50 | July 3, 2014 |
| 1 | $70.00 | July 18, 2014 |
| 1 | $62.50 | August 1, 2014 |
| 1 | $55.00 | August 15, 2014 |
| 1 | $47.50 | August 29, 2014 |
| 1 | $40.00 | September 12, 2014 |
| 1 | $32.50 | September 26, 2014 |

Prepayment: If you pay off the Loan early, you will not have to pay a penalty.

Returned Payment Fee: If any payment provided to us is returned for nonpayment, you will be charged a fee of $30.

Late Fee: If any payment listed in the Payment Schedule is not received by us on its Payment Due Date, you will be charged a fee of $20.

Security Interest: If you have chosen the ACH Debit Authorization option, your ACH authorization is security for this loan.

See the Loan Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment penalties.

Itemization of Amount Financed: $500.00 Amount given to you directly: $500.00

PROMISE TO PAY: You promise to pay to the order of Lender or any subsequent holder of this Agreement the principal sum of $500.00 plus interest from the date of this Loan at the rate of 735.0728% per year until this Loan is repaid in full. You promise to pay these amounts on the dates listed in the Payment Schedule above.

You also promise to pay us if our check is not honored by your bank for any reason.
Case 1:18-cv-00371-LO-TCB Document 49-2 Filed 06/04/18 Page 34 of 51
Case 8:17-cv-01807-TDC   Document 1-1   Filed 06/30/17   Page 5 of 10

**PAYMENTS:** You promise to pay each payment shown above on or before the applicable Payment Due Date. If you have chosen the ACH Debit Authorization option, your payment plus any fees due to us (if applicable) will be debited from your Bank Account on each Payment Due Date as set forth above. Additional provisions related to this authorization (including provisions related to how such authorization may be terminated) are set forth in the ACH Authorization terms set forth below. If you have chosen to receive your loan proceeds via check and to repay all amounts due pursuant to this Agreement via money order or certified check, please mail your payments payable to P.O. Box 6048, Pine Ridge, SD 57770, by the Payment Due Dates indicated within "When Payments Are Due" section of this agreement to Seaside Payday for receipt and processing. All mailed payments must reach this address by 4:00 pm Eastern Time on the Payment Due Date.

**NO CONTINGENCY:** You agree that we cannot make and have not made the Loan contingent upon your obtaining any other product or service from us or anyone else.

**PAYMENT APPLICATION:** Lender will apply your payments first to any fees due to Lender, then to earned but unpaid interest, and then to principal amounts outstanding.

**WHEN YOU BEGIN PAYING INTEREST:** You begin to pay us interest on the Loan on the date the proceeds of the Loan are deposited into your Bank Account, or, if you elect to repay your Loan proceeds by mail and thus receive your Loan proceeds by check through the mail, the date we issue the check (the "Disbursement Date"). Unavoidable delays as a result of bank holidays, the processing schedule of your individual bank, the untimely receipt of income verification, if such verification is required, inadvertent processing errors, "acts of God", and/or "acts of terror" may extend the time for disbursement. You will be charged interest on the unpaid amount of the Loan each day from the Disbursement Date until the Loan is paid in full. In calculating your payments, we have assumed you will make each payment on the day and in the amount due. If any payment is received after the Payment Due Date, you must pay any additional interest that accrues after such date. If you have any questions, please call us at 8667353525. There are no grace periods that apply to this Loan in connection with the Payment Due Dates set forth above. If you have elected to repay this Loan via ACH debits to your Bank Account and any payment is due on a day on which your bank is not open, then such payment shall be due on the next day upon which your bank is open. If you have elected to repay this loan via certified check or money order and any payment is due on a day other than a business day, then such payment will be due on the next business day.

**CALCULATION OF INTEREST AND PAYMENTS:** The interest charged hereunder is calculated using the outstanding principal balance method and has been computed to account for your payment of all installments on the scheduled Payment Due Dates. Interest shall not be payable in advance or compounded.

**ATTORNEYS' FEES RELATED TO COLLECTION:** You understand that in the event the Lender is required to employ an attorney at law to collect any amounts due under this Note, you will be required to pay the reasonable fees of such attorney to protect the interest of Lender or to take any other action required to collect the amounts due hereunder.

**PREPAYMENT:** You may prepay all or part of the amount you owe us at any time without penalty. If you pay in full early, you must pay the interest accrued on your Loan and all other amounts due.

**RETURNED PAYMENT FEE:** If any payment made by you on this Loan is not honored or cannot be processed for any reason, including not enough money in your Bank Account, you agree to pay us a fee of $30. You authorize us and our agents to make a one-time withdrawal from your Bank Account to collect this fee, if you have elected to repay this loan via ACH debits to your Bank Account. Your financial institution may also impose a fee if your Bank Account does not have sufficient funds to cover any debit processed for payment from such Bank Account.

**DEFAULT:** You will have broken your promise you made to us in this Agreement (each, a "Default") if: (a) you provide false or misleading information about yourself, your employment or your financial condition prior to entering into this Agreement, (b) you fail to make a payment by the due date or if your payment is returned to us for any reason, or (c) you file bankruptcy or become a debtor under applicable bankruptcy Laws.

**CONSEQUENCES OF DEFAULT:** Should you not do the things you agreed to under this Agreement, we may, at our option, do any one or more of the following things: (a) require you to immediately pay us everything you owe us; (b) withdraw money from your Bank Account that was not available when we tried to withdraw it at an earlier time, if you have elected to repay this loan via ACH debits to your Bank Account; and (c) pursue all legally available means to collect what you owe us. In the event we declare all amounts owed under this Agreement immediately due because you did not pay us, then you further authorize us and our agents to withdraw money from your Bank Account in the full amount due under this Agreement, if you have elected to repay this loan via ACH debits to your Bank Account. By choosing any one of more of these, we do not give up our right to use another way to collect the money you owe us later. We may decide not to use any of the ways described above to get back the money that you owe us. If so, we do not give up our right to consider what you said you would do to make payment(s) and, if you fail to make those payment(s), we will consider you to be in Default.

**VERIFICATION:** You authorize us to verify the information you provided to us in connection with your Loan application. You give us consent to obtain information about you from a consumer reporting agency or other sources at any time you have repayment obligations under this Loan. We reserve the right to withhold funding of this Loan, at any time prior to disbursement, to allow us to verify the information you have provided to us.

**CREDIT REPORTING:** We may report information about your Loan to credit bureaus. Late payments, missed payments, or other things you do may be reflected on your credit report.

**CONSENT TO ELECTRONIC COMMUNICATIONS: CONSENT TO ELECTRONIC COMMUNICATIONS:** The following terms and conditions govern electronic communications in connection with the Loan Agreement and the transaction evidenced hereby (the "Consent"). By electronically signing the Loan Agreement by clicking the "I AGREE" button and entering your name below, you are confirming that you have agreed to the terms and conditions of the Consent and that you have downloaded or printed a copy of this Consent for your records. You agree that:

- Any disclosure, notice, record or other type of information that is provided to you in connection with your transaction with us, including but not limited to, the Loan Agreement, this Consent, the Truth in Lending disclosures set forth above, change-in-term notices, fee and transaction information, statements, delayed disbursement letters, notices of adverse action, state mandated brochures and disclosures, and transaction information ("Communications"), may be sent to you electronically by posting the information at our web site, support@seasidepayday.com, or by sending it to you by e-mail, as permitted by applicable law.
- We will not be obligated to provide any Communication to you in paper form unless you specifically request us to do so or we are required to do so.
- You may obtain a copy of any Communication by contacting us at support@seasidepayday.com, or by calling us at 8667353525. You also can withdraw your consent to ongoing electronic communications in the same manner, and ask that they be sent to you in paper or non-electronic form. If you choose to receive Communications in paper or non-electronic form, we may elect to terminate the Loan Agreement and demand payment of the amount then due by the date of your withdrawal of Consent; or by the expiration of any minimum term mandated by law, whichever is later.
- You agree to provide us with your current e-mail address for notices at the address or phone numbers indicated above. If your e-mail address changes, you must send us a notice of the new address by writing to us or sending us an e-mail, using secure messaging, at least five (5) days before the change.

- In order to receive electronic communications in connection with this transaction, you will need a working connection to the Internet. Your browser must support the Secure Sockets Layer ("SSL") protocol. SSL provides a secure channel to send and receive data over the Internet. Microsoft Internet Explorer 6 and above supports this feature. You will also need either a printer connected to your computer to print disclosures/notices or sufficient hard drive space available to save the information (e.g., 1 megabyte or more). You must have your own Internet service provider.
- We may amend (add to, delete or change) the terms of this Consent to electronic communication by providing you with advance notice in accordance with applicable law.

By entering your name and clicking the "I Agree" button below, you are electronically signing this document and confirming that:

(1) your system meets the requirements set forth above;
(2) you agree to receive Communications electronically;
(3) you are able to receive emails send to the email address you have provided to us and to access and print or store information presented at this website; and
(4) you consent to having information regarding this transaction, and others you may enter into with us, transmitted via email to the email address you have provided to us, and to having that information communicated with any third party who has or obtains access to emails sent to that address.

**YOUR ELECTRONIC SIGNATURE:** You acknowledge and agree that when you type your name in the indicated boxes on this document, and click the "I Agree" button below, you are providing your electronic signature on this document. By electronically signing this document, you are agreeing to all the terms and conditions set forth in the Agreement, and certifying that all information you have provided in connection with this transaction is complete and accurate. You agree that your electronic signature shall have the same force and effect, and shall bind you to this Agreement in the same manner and to the same extent as a physical signature would do, in accordance with the Electronic Signatures in Global and National Commerce Act ("ESIGN") to the extent applicable. You also agree that this Agreement and all related documents are electronic records and that, as such, they may be transferred, authenticated, stored, and transmitted by electronic means.

**TEXT MESSAGING:** By electronically signing below, you authorize us, our assigns, successors or servicing agents to send SMS Statement Notifications (as defined below) to any phone numbers provided to us, our assigns, successors or service agents in connection with this loan. As used in this Disclosure, "SMS Statement Notifications" means any SMS (text message) communications from us to you pertaining to your loan sent to the phone numbers provided in connection with this loan, including but not limited to payment information, account information, due dates, delinquent accounts, program updates, and other marketing messages.

1. How To Unsubscribe: You may withdraw your consent to receive SMS Statement Notifications by changing by replying "STOP" to any received text message. Alternatively, you may call us at 8667353525. At our option, we may treat your provision of an invalid mobile phone number, or the subsequent malfunction of a previously valid mobile phone number, as a withdrawal of your consent to receive SMS Statement Notifications. We will not impose any fee to process the withdrawal of your consent to receive SMS Statement Notifications. Any withdrawal of your consent to use SMS Statement Notifications will be effective only after we have a reasonable period of time to process your withdrawal.
2. To request additional information contact us by telephone at (888) 528-7898.
3. The services are available on most cellular carriers. Additional carriers are added as they become available.
4. In order to access, view, and retain SMS Statement Notifications that we make available to you, you must have: (1) a SMS-capable mobile phone, (2) an active mobile phone account with a communication service provider; and (3) sufficient storage capacity on your mobile phone.
5. All SMS Statement Notifications in electronic format from us to you will be considered "in writing."
6. There is no service fee for SMS Statement Notifications but you are responsible for any and all charges, including but not limited to fees associated with text messaging, imposed by your communications service provider. Other charges may apply. Such charges may include those from your communications service provider. Please consult your mobile service carrier's pricing plan to determine the charges for sending and receiving text messages. These charges will appear on your phone bill. Message frequency depends on account settings.
7. Additionally, you agree that we may send any SMS Statement Notifications through your communication service provider in order to deliver them to you and that your communication services provider is acting as your agent in this capacity. You agree to provide a valid mobile phone number for these services so that we may send you certain information about your loan. Additionally, you agree to indemnify, defend and hold us harmless from and against any and all claims, losses, liability, cost and expenses (including reasonable attorneys' fees) arising from your provision of a mobile phone number that is not your own or your violation of applicable federal, state or local law, regulation or ordinance. Your obligation under this paragraph shall survive termination of this Agreement. SMS Statement Notifications are provided for your convenience only.
8. Receipt of each SMS Statement may be delayed or impacted by factor(s) pertaining to your communications service provider(s). We will not be liable for losses or damages arising from any disclosure of account information to third parties, non-delivery, delayed delivery, misdirected delivery or mishandling of, or inaccurate content in, the SMS Statement Notifications sent by us.

We may modify or terminate our text messaging services from time to time, for any reason, and without notice, including the right to terminate text messaging with or without notice, without liability to you, any other user or third party.

SIGNATURE: Jacinta Elder                                           DATE: July 1, 2013

**SECURITY:** Pursuant to Comment 2(a)(25) of the Federal Reserve Board Official Staff Commentary to Regulation Z 12 CFR 226.2, we have disclosed to you that our interest in the ECHECK/ACH Authorization Agreement is a security interest for Truth-in-Lending purposes only, because federal and international law do not clearly address whether our interest in the ECHECK/ACH Authorization Agreement is a "security interest."

**ASSIGNMENT:** This Agreement may not be assigned by you. We may assign or transfer this Agreement and our related rights and obligations without notice to you and your consent is not required if we make such an assignment or transfer.

**GOVERNING LAW: The laws of the Tribe will govern this Agreement.** However, any dispute arising out of this Loan Agreement and any renewal thereof will be subject to the ARBITRATION PROVISION, which is governed by the Federal Arbitration Act.

**ARBITRATION AGREEMENT**

**PLEASE READ CAREFULLY**

**THIS AGREEMENT PROVIDES FOR RESOLUTION OF DISPUTES THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR AND REPLACES THE RIGHT TO GO TO COURT AND HAVE A DISPUTE RESOLVED BY A JUDGE OR JURY. THIS AGREEMENT ALSO WAIVES YOUR ABILITY TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION.**

**GOVERNING LAW**
This Arbitration Agreement is governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16 ("FAA").

**WAIVER OF JURY TRIAL AND AGREEMENT TO ARBITRATE.** Unless you promptly opt-out of arbitration in the manner described below, by entering into this Arbitration Agreement, you are waiving your right to bring any claims that directly or indirectly arise from your Loan Agreement in any court other than a small claims tribunal. Instead, you are agreeing to resolve such claims in binding and mandatory arbitration.

Arbitration is a process in which persons with a dispute (a) waive their rights to file a lawsuit and proceed in court before a judge or jury; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Discovery in arbitration proceedings may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a matter of law. A court rarely overturns an arbitrator's decision.

**SCOPE OF THE ARBITRATION AGREEMENT.** For purposes of this Arbitration Agreement, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Agreement, the validity and scope of this Arbitration Agreement, the matters subject to arbitration under this Arbitration Agreement, and any claim or attempt to set aside this Arbitration Agreement, including but without limitation on the basis of unconscionability; (b) all federal or state law claims, disputes, or controversies, arising from or relating directly or indirectly to the Loan Agreement, the information you gave us before entering into the Loan Agreement, including the customer information application, and/or any past agreement or agreements between you and us; (c) all counterclaims, cross-claims, and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other common law theories; (e) all claims based upon a violation of any state or federal constitution, statute, or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company, affiliated entities, successors, assigns, or subsequent holders of your promissory note (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a class representative, or in any other representative capacity, or as member of any class or putative class asserting claims against us or any related third parties, (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

**CLASS ACTION WAIVER.** By agreeing to this Arbitration Agreement, you are waiving your ability to participate in class action litigation and/or class-wide arbitration as a class representative, a class member, or in any other capacity. This Class Action Waiver shall remain in effect even if a court or arbitrator finds that the agreement to arbitrate set forth in this Arbitration Agreement is unenforceable. **THEREFORE YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

- **YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and**
- **YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and**
- **YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT OR ARBITRATION FILED AGAINST US AND/OR RELATED THIRD PARTIES.**

1. Except as provided in Paragraph 10 below, all disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration on an individual basis with you only. **THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN ANY ARBITRATION.**

2. Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select either of the following arbitration organizations to administer the arbitration: the American Arbitration Association (hereinafter referred to as "AAA") (1-800-778-7879) http://www.adr.org or JAMS (1-800-352-5267) http://www.jamsadr.com. The parties may also agree in writing to select an arbitrator who resides within your federal judicial district who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association, and to arbitrate in accordance with such arbitrator's rules. If (a) the AAA and JAMS are unavailable or unwilling to arbitrate a dispute covered by this Arbitration Agreement, and (b) the parties cannot reach an agreement as to an alternative arbitrator, and (c) an action is filed in any court other than a small claims tribunal, that court shall appoint a substitute arbitrator pursuant to Section 5 of the FAA.

3. The party receiving notice of arbitration shall respond in writing by certified mail return receipt requested within twenty (20) days. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or we demand arbitration, you must notify us within twenty (20) days in writing by certified mail return receipt requested of your decision to select an arbitration organization. If you fail to notify us, then we have the right to select an arbitration organization. Arbitration proceedings will be governed by the rules and procedures of the selected arbitration organization or arbitrator, except to the extent such rules and procedures contradict the terms of this Arbitration Agreement, including the limitations on the arbitrator below. You may obtain a copy of the rules and procedures of the AAA and JAMS by contacting them at the contact information listed above.

4. Regardless of who demands arbitration, unless you request otherwise we will advance your portion of the arbitration expenses, including the filing, administrative, hearing, and arbitrator's fees ("Arbitration Fees"). Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. The arbitrator shall apply applicable substantive law consistent with the FAA, and applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitrator may award any relief available under applicable law, subject to the limitations set forth in this Arbitration Agreement. The arbitration hearing will be conducted in the county of your residence. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. If the arbitrator renders a decision or an award in your favor resolving the dispute, then you will not be responsible for reimbursing us for your portion of the Arbitration Fees, and we will reimburse you for any Arbitration Fees you have previously paid. If the arbitrator does not render a decision or an award in your favor resolving the dispute, then the arbitrator shall require you to reimburse us for the Arbitration Fees we have advanced, not to exceed the amount which would have been assessed as court costs if the dispute had been resolved by a state court with jurisdiction, less any Arbitration Fees you have previously paid. At the timely request of any party, the arbitrator shall provide a written explanation for the award. The arbitrator's award

5. The arbitrator may award you reasonable attorneys' fees and expenses if you substantially prevail in arbitration and applicable law does not prohibit such an award. If we or related third parties substantially prevail in arbitration, the arbitrator may not award us or related third parties reasonable attorneys' fees and expenses unless the arbitrator also finds that you asserted frivolous or fraudulent claims or allegations.

**6. PRE-ARBITRATION SETTLEMENT OFFER AND MINIMUM RECOVERY.** If you make a written request for a pre-arbitration settlement offer from us in the manner described below and the arbitrator awards you damages in an amount greater than our last pre-arbitration settlement offer, we will be liable to you for the greater of \$5,000 or the arbitrator's damages award, exclusive of any other relief the arbitrator may award you, including reasonable attorneys' fees and expenses. For purposes of this Paragraph only, if you properly request a pre-arbitration settlement offer from us and we do not make one, the Parties shall treat our last pre-arbitration settlement offer as being for zero dollars. Any request for a pre-arbitration settlement offer must be made in writing and submitted to the below listed address:

Wakpamni Lake Community Corporation
c/o Seaside Payday
P.O. Box 6048
Pine Ridge, SD 57770
Phone: 8667353525
Fax: 8667356855

To be valid, a request must include your name, address, account number, or social security number, the date of your Loan Agreement, and a clear and accurate description of your claims and any supporting facts. We shall have fourteen days to respond to your request, unless we and you otherwise agree in writing. Although we are entitled to make more than one pre-arbitration settlement offer, if we choose not to make more than one offer, our first offer shall be considered our last offer for purposes of this Paragraph regardless of whether you make additional requests. The Minimum Recovery provision of this Paragraph shall only apply to a damages award you obtain based on the same or materially similar claims and supporting facts as those set forth in your request for a pre-arbitration settlement offer.

7. All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal in the county of your residence for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.

8. This Arbitration Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA. If a final non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration law of the Tribe.

9. This Arbitration Agreement is binding upon and benefits you, your respective heirs, successors, and assigns. This Arbitration Agreement is binding upon and benefits us, our successors and assigns, and related third parties. This Arbitration Agreement continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. This Arbitration Agreement survives any cancellation, termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any part of this Arbitration Agreement is held invalid, the remainder, including the Class Action Waiver, shall remain in effect.

10. **OPT-OUT PROCESS**. You may choose to opt out of the Arbitration Agreement, but *only* by following the process set forth below. If you do not wish to be subject to this Arbitration Agreement, then you must notify us in writing within sixty (60) calendar days of the date of this Arbitration Agreement at the following address:

Wakpamni Lake Community Corporation
c/o Seaside Payday
P.O. Box 6048
Pine Ridge, SD 57770

Your written notice must include your name, address, account number or social security number, the date of this Arbitration Agreement, and a statement that you wish to opt out of this Arbitration Agreement. If you choose to opt out, then your choice will apply only to your Loan Agreement and will not apply to any other contracts, agreements, or other claims between you and us and any related third parties.

SIGNATURE: Jacinta Elder                                                          DATE: July 1, 2013

By electronically signing this Agreement and marking the "I AGREE" box below, you certify that the information given in connection with this Agreement is true and correct. You authorize us to verify the information given in connection with this Agreement, and you give us consent to obtain information about you from a consumer reporting agency or other sources. **You acknowledge, represent and warrant that: (a) you have read, understand, and agree to all of the terms and conditions of this Agreement, including the Arbitration Agreement and the waivers contained in the Arbitration Agreement of any rights to a jury trial and any rights to participate in class proceedings, (b) this Agreement contains all of the terms of the agreement between you and us and that no representations or promises other than those contained in this Agreement have been made, (c) you specifically authorize withdrawals and deposits to and from your Bank Account as described in this Agreement, if you have elected to repay this loan via ACH debits to your Bank Account (as set forth below) [TBD], (d) you are not a debtor under any proceeding in Bankruptcy and have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code, (e) this Agreement was filled in before you signed it, (f) you have received a copy of our privacy policy, and (g) you have the ability to print or retain a completed copy of this Agreement. You further acknowledge that we may withhold funding of your loan until we ensure all the information you gave us on your application is true and we decide whether you meet our requirements to receive the Loan.**

⊙ **I AGREE to all of the terms and conditions set forth above.**
SIGNATURE:Jacinta Elder                                             DATE:July 1, 2013

**PLEASE MAKE YOUR SELECTION**
⊙ **ELECTRONIC (as soon as the next business day):** By checking here, you authorize us to effect ACH debit and credit entries for this loan. You also agree to all of the terms in the separate ACH Authorization. The ACH Authorization may be used by Seaside Payday, its assigns, employees or agents.

○ **POSTAL MAIL:** By checking here, you request Loan proceeds be distributed to you by check and delivered by regular mail to the address listed on this loan agreement. If you elect to receive your proceeds by mail, you must also make your payments (via money order or certified check) by mail. You should allow sufficient time (at least 7 calendar days) for delivery of the Loan proceeds. Note also that interest begins accruing on the date we issue the check for the Loan proceeds (which is typically no less than one day after your execution of this Agreement).

ECHECK/ACH AUTHORIZATION

**READ VERY CAREFULLY BEFORE SIGNING. PLEASE REFER TO THE TERMS OF THE ACH AUTHORIZATION OR LOAN AGREEMENT TO DETERMINE OTHER REPAYMENT OPTIONS.**

**YOU ARE <u>NOT</u> REQUIRED TO PROVIDE THIS AUTHORIZATION TO OBTAIN A LOAN.**

* * *

**ACH AUTHORIZATION:** You hereby voluntarily authorize us, and our successors and assigns, to initiate an Automated Clearing House ("ACH") credit and/or debit entry to Your Bank Account as described below:

"YOUR BANK ACCOUNT" INFO:

Name: Jacinta Elder

Address: 4701 Willard Ave

City, State Zip: Chevy Chase, MD 20815

Phone: ███████

Amount: $500.00

Payment Due Date: July 19, 2013

Bank Name: PNCBANK, NA

Transit ABA Number: ███████

Checking Account Number: ███████

This ACH Authorization is a part of and relates to the Loan Agreement set forth above ("Loan Agreement"). Unless otherwise defined in this ACH Authorization, capitalized terms used herein shall have the meanings assigned to such terms in the Loan Agreement. The words "you", "your" and "I" mean the borrower who has electronically signed it. The words "we", "us" and "our" mean Seaside Payday ("Lender"), a licensed lender of consumer loans regulated by the laws of Wakpamni Lake Community Corporation, a sovereign nation Tribal entity operating within the boundaries of the Tribe's Reservation. You hereby voluntarily authorize us, and our successors and assigns, to initiate automatic ACH credit and debit entries to Your Bank Account in accordance with the Loan Agreement. You agree that we will initiate an ACH credit entry to Your Bank Account for the Amount Financed on or about the Disbursement Date of your Loan proceeds.

You also authorize us to initiate an ACH debit entry to Your Bank Account:

(a) each payment due on its Payment Due Date, as set forth in the Payment Schedule, as described in the Loan Agreement; and

(b) for any accrued fees as described in the Loan Agreement.

You agree that we may re-initiate a debit entry for the same amount two additional times if the ACH debit entry is dishonored or payment is returned for any reason. This ACH Authorization is to remain in full force and effect for this transaction until your indebtedness to us for the Total of Payments, plus any other charges or fees incurred and described in the Loan Agreement, is fully satisfied. You may only revoke the above ACH Authorization by contacting us directly as described below. If you revoke your ACH Authorization, you agree to provide us with another form of payment acceptable to us and you authorize us to prepare and submit one or more checks drawn on Your Bank Account so long as amounts are owed to us under the Loan Agreement. In no event shall any revocation affect prior payments made to us pursuant to this Authorization, constitute an event of default under the Loan Agreement.

If a payment is returned unpaid, you authorize us to make a one-time electronic fund transfer from Your Bank Account to collect a fee of $30. You voluntarily authorize us, and our successor and assigns, to initiate a debit entry to Your Bank Account for payment of this fee. You further authorize us to initiate debit entries as necessary to recoup the outstanding loan balance whenever an ACH transaction is returned to us for any reason. You acknowledge that the account on which your ACH Authorization is drawn is a legitimate, open and active account.

If any Payment Due Date is not a business day, the debit authorized by this ACH Authorization will occur on the next following business day.

You authorize us to verify all of the information that you have provided, including past and/or current information. You agree that the ACH Authorization herein is for repayment of loan and that these entries will appear as described in Loan Agreement. If there is any missing or erroneous information in this ACH Authorization regarding your bank, bank routing and transit number, or account number, then you authorize us to verify and correct such information.

If your payment is returned to us by your financial institution due to insufficient funds or a closed account, you agree that we may recover court costs and reasonable attorney's fees incurred by us.

*Right to stop payment and procedure for doing so.* If you have told us in advance to make regular payments out of your account, you can stop any of these payments. Here's how:

Call us at 8667353525, or write us at Support@seasidepayday.com, in time for us to receive your request 3 business days or more before the payment is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within 14 days after you call.

*Notice of varying amounts.* We will provide 10 days' prior notice to you before we debit your bank account if the payment due is greater than your payment due on any Payment Due Date plus any applicable fees and charges (as determined pursuant to the Loan Agreement).

*Liability for failure to stop payment of preauthorized transfer.* If you order us to stop one of these payments 3 business days or more before the transfer is scheduled, and we do not do so, we will be liable for your losses or damages.

**I AGREE**

This ACH AUTHORIZATION is received and executed on July 1, 2013

Signature: Jacinta Elder

JS 44 (Rev. 07/16)

Case 1:16-cr-00371-RA   Document 499-2   Filed 06/04/18   Page 40 of 51
Case 8:17-cv-01807-TDC   Document 1-1   Filed 06/30/17   Page 1 of 2

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS

JACINTA ELDER

**(b)** County of Residence of First Listed Plaintiff   Jefferson County, KY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Tycko & Zavareei LLP
1828 L St. NW, Ste 1000, Washington, DC 20036
(202) 973-0900

### DEFENDANTS

RYAN SULLIVAN, ASHLEY BLAKE COLLINS, RAYCEN RAINES, GENEVA LONE HILL, and WAKPAMNI LAKE COMMUNITY CORPORATION,

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*          *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☒ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation -
Transfer

☐ 8  Multidistrict
Litigation -
Direct File

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. § 1962
Brief description of cause:
Violation of RICO and Maryland Usury law

### VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $
5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

### VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
06/30/2017

SIGNATURE OF ATTORNEY OF RECORD
/s/ Hassan Zavareei

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Case 1:16-cr-00371-RA   Document 499-2   Filed 06/04/18   Page 41 of 51
Case 8:17-cv-01807-TDC   Document 1-2   Filed 06/30/17   Page 2 of 2

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Maryland

| | |
|---|---|
| Jacinta Elder | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | )  Civil Action No. |
| | ) |
| RYAN SULLIVAN, ASHLEY BLAKE COLLINS, | ) |
| RAYCEN RAINES, GENEVA LONE HILL, and | ) |
| WAKPAMNI LAKE COMMUNITY CORPORATION, | ) |
| _Defendant(s)_ | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Ashley Blake Collins
3586 E LATHAM WAY
GILBERT, AZ 85297

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Hassan A. Zavareei
Tycko & Zavareei LLP
1828 L Street, N.W., Suite 1000
Washington, DC 20036

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____
                                                                                   *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Maryland

| | | |
|---|---|---|
| Jacinta Elder | ) | |
| | ) | |
| | ) | |
| | ) | |
| _Plaintiff(s)_ | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| RYAN SULLIVAN, ASHLEY BLAKE COLLINS, | ) | |
| RAYCEN RAINES, GENEVA LONE HILL, and | ) | |
| WAKPAMNI LAKE COMMUNITY CORPORATION, | ) | |
| _Defendant(s)_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Geneva Lone Hill
One Wakpamni Lake Housing
Batesland, SD 57716

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Hassan A. Zavareei
Tycko & Zavareei LLP
1828 L Street, N.W., Suite 1000
Washington, DC 20036

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Maryland

| | |
|---|---|
| Jacinta Elder | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| | ) |
| RYAN SULLIVAN, ASHLEY BLAKE COLLINS, RAYCEN RAINES, GENEVA LONE HILL, and WAKPAMNI LAKE COMMUNITY CORPORATION, | ) |
| _Defendant(s)_ | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_   Raycen Raines
One Wakpamni Lake Housing
Batesland, SD 57716

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Hassan A. Zavareei
Tycko & Zavareei LLP
1828 L Street, N.W., Suite 1000
Washington, DC 20036

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____                          _____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

### District of Maryland

| | | |
|---|---|---|
| Jacinta Elder | ) | |
| | ) | |
| | ) | |
| | ) | |
| _Plaintiff(s)_ | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| RYAN SULLIVAN, ASHLEY BLAKE COLLINS, | ) | |
| RAYCEN RAINES,GENEVA LONE HILL, and | ) | |
| WAKPAMNI LAKE COMMUNITY CORPORATION, | ) | |
| _Defendant(s)_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*    Ryan Sullivan
2310 W. 75th St,
Prairie Village, KS 66208

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Hassan A. Zavareei
Tycko & Zavareei LLP
1828 L Street, N.W., Suite 1000
Washington, DC 20036

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Maryland

| | | |
|---|---|---|
| Jacinta Elder | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| RYAN SULLIVAN, ASHLEY BLAKE COLLINS, | ) | |
| RAYCEN RAINES,GENEVA LONE HILL, and | ) | |
| WAKPAMNI LAKE COMMUNITY CORPORATION, | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Wakpamni Lake Community Corporation
One Wakpamni Lake Housing
Batesland, SD 57716

SERVE: Geneva Lone Hill


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Hassan A. Zavareei
Tycko & Zavareei LLP
1828 L Street, N.W., Suite 1000
Washington, DC 20036


If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


*CLERK OF COURT*


Date: _____          _____
                                                                     *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*




My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: