

MATTHEW L. SCHWARTZ
Tel.:  (212) 303-3646
E-mail:  mlschwartz@bsfllp.com

June 11, 2018

**BY ECF**

Hon. Ronnie Abrams
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

     **Re:**    *United States v. Galanis*, S3 16 Cr. 371 (RA)

Dear Judge Abrams:

     I represent Devon Archer.  As discussed in Court this afternoon, I write to briefly set out Mr. Archer's objections to three exhibits that the government produced for the first time on June 8 and 10, 2018.  In addition, I write to object to one document that the government had indicated it intends to use with Daniel Turney, a witness who will testify tomorrow.

**I.**     **The Archer Diversified TCG, LLC Documents (GX 225, 226, and 2122)**

     On Friday, June 8th – four weeks into trial – the government for the first time marked GX 225 and GX 2122.  On Sunday, June 10th, the government added an additional exhibit on the same subject, GX 226.  All of these exhibits concern the same transaction:  Jason Galanis's purchase of a $10 million Tribeca condominium in the name of an entity he called Archer Diversified TCG, LLC.

     It appears that Archer Diversified TCG, LLC was an entity formed by Galanis's lawyer, Clifford Wolff, in the summer of 2014.  Archer Diversified TCG, LLC was beneficially owned by Jason Galanis, and Galanis signed all relevant documents having to do with it.  Specifically, Galanis signed the August 13, 2014 contract of sale for the apartment (GX 225), as well as a December 2, 2014 mortgage on the property (GX 226).  The $1 million down payment for the property was wired directly to the seller's lawyer on August 28, 2014, from the Wealth Assurance Private Client Corporation account at Chase, (GX 512, at 2), which the government will presumably argue represented a portion of the proceeds of the first WLCC bond issuance.

     The point is this:  Archer Diversified TCG, LLC has nothing whatsoever to do with Mr. Archer, except that it has "Archer" in its name.  The only evidence that even hints at any awareness of this fact on Mr. Archer's part is newly-marked GX 2122, which is a one-paragraph e-mail from Clifford Wolff to Sebastian Momtazi, copying Mr. Archer:



| | |
|---|---|
| **From:** | Clifford A. Wolff, Esq. [cwolff@wolfflawfirm.com] |
| **Sent:** | 7/9/2014 6:02:05 PM |
| **To:** | Sebastian Momtazi [smomtazi@rosemontcapital.com] |
| **CC:** | Devon Archer [darcher@rosemontseneca.com] |
| **Subject:** | Archer Diversified TRG, LLC |

Seb -

Jason Galanis is going to purchase a condo using the above name and Devon's cache. The company is using your office address. It is possible certain documents arrive in the name of AD TRG. I am listed as the registered agent, so the documents could have my name as well. Keep an eye out. Everything should get sent to my office, but I want to be proactive and put the deal on your radar. Thanks!

- Cliff

Even though Mr. Archer did not respond to this e-mail in any way, the government apparently intends to argue that Mr. Archer was therefore "on notice" that Galanis was using his name.

This e-mail should be excluded. To be clear, Mr. Archer has no objection to the government attempting to prove that Jason Galanis misappropriated WLCC bond money from the Wealth Assurance Private Client Corporation account and used it to purchase a luxury condominium for himself. But the government's attempt to tie Mr. Archer to this transaction creates the very real risk that the jury will be misled into believing that Mr. Archer was somehow involved in or knowledgeable about the fact that the apartment was paid for using misappropriated funds, when there is no dispute that that was not the case.

Moreover, these exhibits were produced far too late. By agreement, the government produced its exhibits approximately 45 days prior to the original trial date. Since that time, up to and through the time of trial, the government has consistently marked and produced new exhibits, and the defendants have not complained even as it has made the trial of this already-complex case more difficult. But the government's identification of these three exhibits just this past weekend, on an entirely new *topic*, is a bridge too far.

It is fairly clear what happened here: after receiving an unfavorable ruling on the Code Rebel evidence, the government sought to identify new evidence against Mr. Archer. Unable to show that he actually profited from Galanis's fraud, the government instead sought to tie Mr. Archer closer to Galanis's misappropriation. But with the government just days away from resting its case, it is far too late in the game for the government to be identifying entirely new subjects of evidence. *See, e.g.,* Trial Transcript at 1996 (ordering that for late-produced trial exhibits, "the government will have to make the case for the materiality *and need* for the late-disclosed exhibit outweighing unfair prejudice to the defense from the late disclosure."), *United States v. Bonventre*, 10 Cr. 228 (LTS). These exhibits were simply not timely disclosed and the defense will not have time to address them properly. There is no time, for example, for the defendants to issue subpoenas, investigate this evidence, and develop additional facts that might be necessary to rebut it.

Here, not only has the government marked these exhibits far too late, but they have scant relevance. The fact that Mr. Archer was cc'd on an e-mail from a lawyer in which the lawyer

mentioned using Mr. Archer's "cache" is not probative of any fact relevant to whether he joined a conspiracy to steal tens of millions of dollars in bond proceeds. The fact that those stolen bond proceeds were actually used by Jason Galanis when he purchased a home in the name of Archer Diversified TCG, LLC, however, will create enormous and prejudicial juror confusion. These exhibits should therefore be excluded. In the alternative, Mr. Archer respectfully requests an adjournment of trial to afford him sufficient time to investigate the government's new evidence.

## II.    The Daniel Turney Document (GX 955)

In addition, Mr. Archer objects to GX 955, which the government has stated it intends to introduce through Daniel Turney tomorrow. The exhibit is a one-paragraph e-mail from Michelle Morton to Richard Deary and Mr. Turney, and it reads as follows, in its entirety:

> **To:**          Richard Deary[RDeary@hughescm.com]; Daniel Turney[dturney@hughescm.com]
> **From:**      Michelle Morton
> **Sent:**      Wed 3/25/2015 3:08:12 PM
> **Importance:**          Normal
> **Subject:**   Despite their bs
>
> We are going to move forward with the buy, but with conditions. Met with the chairman of board of wealth assurance and two board members and they will give us the op cap we need but we need color on the payables so I may need Daniel on Friday. We will discuss tomorrow.
>
> Michelle
>
> Sent from my iPhone

This exhibit should be excluded because it constitutes hearsay and hearsay-within-hearsay. The government wishes to introduce GX 955 to prove the truth of the matter asserted, *i.e.*, that Michelle Morton actually "met with the chairman of [the] board of wealth assurance and two board members," as well as the truth of what allegedly happened at that meeting, *i.e.* that the Wealth Assurance board members said "they will give us the op cap we need," and perhaps that there were some unstated "conditions" on "the buy."

There is no permissible non-hearsay use for these statements – they were not, for example, made to any of the defendants – nor do these statements fit into any hearsay exception. The top level hearsay ("met with the chairman of [the] board of wealth assurance and two board members") is a statement by Michelle Morton, but it is not a co-conspirator statement in any sense of the word: the statement was not made to conspirators, nor is it in furtherance of the conspiracy. And even if Morton's statement did fall into the co-conspirator exception, the hearsay-within-hearsay ("they will give us the op cap we need") clearly could not, as it represents the embedded hearsay statements of the board members of Wealth Assurance.

The exhibit should also be excluded because it will confuse the jury. Morton's e-mail states that she "met with the chairman of [the] board of wealth assurance and two board members." It is utterly unclear who this refers to. The board of Wealth Assurance AG – the entity that owned BFG Socially Responsible Investing and which had lent money to GMT Duncan to acquire Atlantic and Hughes – consisted of Dr. Rory Knight (chairman), Alyoise



Steichen, Jason Sugarman, and Hugh Dunkerley.[1]  It is not clear what the government's purpose is for offering this document, but any probative value is substantially outweighed by the likelihood of confusion.

       Thank you for your consideration.

                            Respectfully,

                            /s/  Matthew L. Schwartz
                           Matthew L. Schwartz

---

[1]      Wealth Assurance Holdings, Ltd. no longer existed in March 2015, and was known as Valor Group, Ltd. at that time.  In any case, the board of WAH/Valor Group consisted of Hugh Dunkerley (chairman), Jason Sugarman, and Mr. Archer (*see* DX4007I, at 6).  Since Dunkerley testified clearly and repeatedly that he was never in the same room as Mr. Archer, Morton's e-mail plainly was not referring to the board of Valor Group.