

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 11, 2018

**BY EMAIL AND ECF**
The Honorable Ronnie Abrams
United States District Judge,
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

   Re: <u>United States v. John Galanis, et al.</u>, S3 16 Cr. 371 (RA)

Dear Judge Abrams:

  The Government writes in response to the letter filed by defendant Archer earlier this evening.

**I. The Court Should Allow Admission of GX 225, 226 and 2122**

  **A. Background**

  Jason Galanis planned to misappropriate a portion of the first tranche of Wakpamni bonds to finance the purchase of a luxury apartment in Manhattan. For example, on or about July 11, 2014, Galanis forwarded Archer a distribution list for the first Wakpamni bond issuance, stating "close, archie, target close is July 31[.]" (GX 2028).[1] Later in the email chain, Galanis told Archer "So Close[,] Cliff is running the stall for me on nyc mansion . . . . massively motivated." (*Id.*).

  Consistent with this plan, on or about August 27 and 28, 2014, the Wealth Assurance Private Client account at JP Morgan Chase received $24,320,936 in proceeds from the first Wakpamni bond issuance. The *very first wire* out of the account was to Katsky Korins, LLP, a New York law firm. (GX 512, at SEC-JPMC-P-0000944).[2] The bank records currently in evidence do not, however, establish the purpose of the wire to Katsky Korins.

  **B. GX 225, 226, and 2122 are Directly Relevant to Showing the Misappropriation of Bond Proceeds**

  GX 225 and 226 establish the purpose of that wire. Specifically, they establish that Katsky Korins represented the seller of the apartment that Galanis was buying. In short, there could be no

---

[1] GX 2028 is already in evidence.

[2] GX 512 is already in evidence.

more relevant evidence in the case showing the misappropriation of the bond proceeds. And this is not a "new topic," Archer Ltr. at 2; it is at the heart of the charged fraud. While Archer faults the Government for late disclosure of these documents, the Government received GX 225 and 226 via subpoena only the week before trial and promptly produced them as Rule 16 material.

Further, as the documents reflect, Galanis purchased the apartment, not in his own name, but using an entity called "Archer Diversified TRG." GX 2122 is relevant to show that Archer was on notice that Galanis intended to use Archer's name to purchase the apartment. This evidence is particularly probative in light of Archer's arguments that Galanis, at times, "used" Archer to add "legitimacy" to his endeavors. (*See, e.g.*, Tr. 76 (opening of Mr. Schwartz that "[t]he evidence will show that because Devon had connections and money and legitimacy, he was used by Jason Galanis."); Tr. 1866-67 (cross-examination of Raycen Raines that "Mr. Galanis did in fact boast about Mr. Archer and Mr. Biden's involvement . . . ."). GX 2122 shows that, far being an unwitting dupe about Galanis's use of his name in connection with the apartment purchase, Archer was, in fact, on notice of Galanis's use of his name.

## II. The Court Should Admit GX 955

The Court should also admit GX 955.

### A. Background

In early April 2015, Michelle Morton finalized the acquisition of Atlantic Asset Management by Hughes Capital Management. (*See, e.g.*, Tr. 1037 (testimony of Hugh Dunkerley that Atlantic acquisition closed around April 1, 2015). Within a matter of weeks, on or about April 16, 2015, Atlantic purchased the entire $16 million final tranche of WLCC bond on behalf of the OSERS pension fund. (*See. e.g.*, GX 512 at 33 (reflecting $15,850,000.00 deposit in Wealth Assurance Private client account on April 16, 2015). On April 23, 2015, a week after purchasing the bonds, Hughes received a $305,000 operating capital infusion *from the proceeds* of the final issuance. (*See, e.g.*, Tr. 1042 (Dunkerley testimony that he believed the $305,000 wire to Hughes on April 23, 2015 "was working capital")).

### B. GX 955 is Relevant and Admissible

The Government anticipates introducing evidence, apart from GX 955, that Morton met with certain of her backers, including defendant Archer, in New York City on March 25, 2015, just days before the Atlantic acquisition closed. As GX 955 indicates, that meeting concerned the purchase of Atlantic ("the buy"); "conditions" to the purchase; and Morton's need for operating capital ("op cap")—which was provided weeks later via the proceeds of the final issuance of Wakpamni bonds.

GX 955 is not hearsay. For one, Morton's statements are admissible as statements in furtherance of the conspiracy. The email was sent during a critical time in the midst of the charged securities fraud conspiracy. Although neither Deary nor Turney are co-conspirators, "Rule 801(d)(2)(E) does not require that the statement have been made to a person who is also a member of the conspiracy." 5 Weinstein's Federal Evidence § 801.34 (2018). Further, "a statement can

further a conspiracy even though uttered to an outsider if the statement is designed to help the coconspirators achieve their goal." *Id.* Here, Morton's statement was clearly designed to help finalize the acquisition of Atlantic (and in turn facilitate the placement of the final tranche of Wakpamni bonds). By seeking the assistance of Turney ("Daniel") "on the payables," she was seeking solidify her arrangement with her supporters for the acquisition of Atlantic—an acquisition which in fact closed days later and was followed by the placement of $16 million in Wakpamni bonds and the provision of operating capital from the proceeds of those bonds.

Relatedly, email is admissible as evidence of Morton's state of mind. Specifically, the email shows that Morton understood, that in buying Atlantic, she would receive not only financing for the purchase itself, but also operating capital, providing a further incentive for her to place the final tranche of Wakpamni bonds.

Accordingly, the Court should admit GX 955.

Respectfully submitted,

ROBERT KHUZAMI
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

By: /s/ Rebecca Mermelstein
Rebecca Mermelstein
Brendan F. Quigley
Negar Tekeei
Assistant United States Attorneys
(212) 637-2360/2190/2442

cc: Defense Counsel (via e-mail and ECF)