

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 15, 2018

**BY ECF**

The Honorable Ronnie Abrams
United States District Judge, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

    Re: <u>United States v. Galanis, et al.</u>, S3 16 Cr. 371 (RA)

Dear Judge Abrams:

  The Government writes in response to the letters filed by defendants Archer and Cooney last night and this morning.[1]

**I. GX 758, 763, 782, 783, 784, and 792 Are Admissible**

  The Court should reject defendant Archer's argument regarding GX 758, 763, 782, 783, 784, and 792. These exhibits are minutes for meetings of the board of Burnham Investors Trust (the "Board") that defendant Archer attended.

  First, the minutes are clearly admissible under Rule 803(6), as records of the Board's regularly conducted activity. *See, e.g.*, *United States* v. *DiPace*, 203 F. App'x 368, 370 (2d Cir. 2006) (affirming admission "of minutes of the trustees' meetings" under Rule 803(6)); *N. L. R. B.* v. *Local 40, Intern. Ass'n of Heat and Frost Insulators and Asbestos Workers, AFL-CIO*, 451 F.2d 119, 121 (2d Cir. 1971) ("The minutes of the Joint Trade Board meeting, as the record of a regularly conducted activity kept in the usual course of business by the recording secretary of Local 40, were properly admitted as a 'business-entries' exception to the hearsay rule."); *United States* v. *Pirk*, No. 15 Cr. 142 (EAW), 2018 WL 1521781, at *1-4 (W.D.N.Y. Mar. 28, 2018) (admitting minutes of a motorcycle club's weekly meetings under Rule 803(6)).

  Second, there is no hearsay within hearsay problem. *United States* v. *Borrasi*, 639 F.3d 774 (7th Cir. 2011), cited by Archer is distinguishable. In that case, a defendant sought to introduce "reports referenced in the minutes and any comments in the minutes regarding the substance of" reports submitted to an entity's board of directors. 639 F.3d at 774. While acknowledging that the

---

[1] For the record, none of the Government exhibits that the defense seeks to preclude are recently produced. The vast majority, if not all, were identified as Government exhibits in mid-March, six weeks before the original April 30 trial date and over two months before the actual start of trial on May 22.

minutes themselves "almost certainly fell within Rule 803(6)," the Seventh Circuit affirmed the exclusion of statements from the reports reproduced in the meeting minutes. *Id.* at 779-80 ("[T]he court did not abuse its discretion in refusing to admit any substantive descriptions of the reports in the minutes . . . .").

Here, by contrast, the Government is not seeking to introduce, through the minutes, evidence about the content of extraneous documents discussed at the meetings. Instead, the Government is introducing the minutes as records of what actually occurred at the meeting, that is as records of the Board's regularly conducted activity.

Third, even if there was a hearsay within hearsay issue, which there is not, any statements of defendant Archer would be admissible as statements of a party opponent, if offered for the truth of the matter asserted. Archer's analogy to GX 2117 is misplaced. In that exhibit, there were no actual statements made by Archer. Here, the minutes report on Archer's actual statements; there is no need for Archer to have adopted the statements. Further, Archer's statements, particularly about his association with Jason Galanis, are admissible for the fact that they were said, and not for the truth of the matter asserted. And the statements of others at meetings at which Archer was also present are admissible to provide context for Archer's statements to the Board. *See, e.g.*, *United States* v. *Guzman*, 754 F.2d 482, 487 (2d Cir. 1985) ("[Police officer's] questions were introduced, not for the truth of what he asserted, but to render [the defendant's] answers intelligible.").

Fourth, the Government does not intend to elicit testimony about the Board's internal deliberations. The Government will thus not, for example, elicit testimony about the portions of GX 758 reprinted on pages two and three of Archer's letter, which concern discussions that occurred after Archer left the meeting. In fact, the Government would be willing to redact that portion of the records entirely.

Finally, the discussion of the Atlantic receivership complaint GX 784 is admissible. The Government acknowledges that Archer is not one of the individuals referenced in that complaint, GX 784. Nonetheless, when asked "if he had any involvement with the events detailed" in the complaint, Archer responded "he had no involvement whatsoever with those events." GX 784 at 1-2. That statement was false, given that the Complaint discusses the first and final issuances of WLCC bonds, and the acquisitions of both Hughes and Atlantic, and is clearly admissible as a false exculpatory statement.

Accordingly, the Court should allow admission of the Board minutes.

## II.  GX 1401 Is Admissible

The Court should also reject Archer's motion regarding GX 1401.

To begin with, this document has been on the Government's exhibit list since March 19, 2018, and any suggestion that Archer was unaware the Government was considering using the document at trial is without merit.

Case 1:16-cr-00371-RA   Document 516   Filed 06/15/18   Page 3 of 5

Page 3

In any event, the exhibit is highly relevant. On September 26, 2014, Archer sent the Board a letter, among other things, confirming that Jason Galanis would "not be involved with any of the Burnham entities and their 'affiliated persons' . . . .":

> 2. You have provided us with assurances regarding the non-participation of Mr. Jason Galanis. We believe that you understand our views on this subject; that is, that we want an iron-clad assurance that, going forward, he will not be involved with any of the Burnham entities and their "affiliated persons" (within the meaning of Section 2(a)(19) of the Investment Company Act) as well as their successors or assigns at Burnham Financial Group, Burnham Asset Management, Burnham Securities or Burnham Investors Trust. But, for the avoidance of doubt, it is our understanding that Mr. Galanis will have no interest of any kind, direct or indirect, in any of the Burnham entities or their successors, that he will not source deals to the Burnham entities and that the Burnham entities will not invest with or in, directly or indirectly, any business or enterprise in which Mr. Galanis has any association, affiliation or investment, pecuniary or otherwise, directly or indirectly. Kindly confirm this understanding.
>
> Answer: Confirmed

**GOVERNMENT EXHIBIT 762** — 16 Cr. 371 (RA)

CONFIDENTIAL - FOIA EXEMPT                                         ID Burnham 0177

The Government anticipates Archer will argue that this letter, although signed by him, was drafted by lawyers, including Steven Weiss, and that Archer had no role in drafting the letter or awareness of the representations made in it.

GX 1401, sent the day before the letter was sent to the Board, directly rebuts this argument, by indicating that Archer was given that opportunity to review and comment on the letter. Indeed the subject of the email is "Re: Proposed Response to Sept. 25 letter to Burnham Trustees."

Moreover, GX 1401 is not privileged. The email contains no actual legal advice from Weiss to Archer, simply a request to "review and call me with comments." Further, since Archer has been on notice for at least three months of the existence of GX 1401, any privilege has been waived.

Should, however, the Court deem the email privileged, Archer should be precluded from arguing that he relied on the advice of attorneys in responding to the Board's inquires or that he was unaware of the contents of GX 762. Such an argument, if GX 1401 is not admitted, would allow Archer to use the privilege as both a sword and a shield and should be precluded.

### III. GX 3205, 3251, 2252 and 2281 Are Admissible

Defendant Cooney seeks to preclude GX 3205, 3251, 2252, and 2281. The Court should reject those arguments.

GX 2252 is a December 17, 2014 email from defendant Cooney to Eric Fulton. In the email, Cooney directs Fulton to "reclassify 1.9mm of the [T]horsdale related transfers as investment income." As numerous witnesses have testified, Thorsdale is an entity controlled by Jason Galanis. As such, the fact that Cooney acknowledges receiving almost two million dollars from Galanis during the time of the charged conspiracy is relevant to show the nature of the relationship between Cooney and Galanis and to show that Cooney benefitted from that relationship. The relevance of this evidence is heightened by Ms. Notari's opening, when she told the jury "You're going to hear and see money charts of all the money that Mr. Cooney lost. All the money that Mr. Cooney *gave* to Jason Galanis . . . . But in fact he lost everything." (Tr. 113 (emphasis added)). Accordingly, the Court should admit GX 2252.

Similarly, GX 3251, a May 2015 email, in which Cooney asserts that he has "Zero income for 2015[,] [o]nly loans," is relevant to show that the payments Cooney received from Thorsdale represented a significant portion of his income, providing a further motive for Cooney to assist Jason Galanis in the charged conspiracy.

GX 3205 is a February 20, 2014 email from defendant Cooney to Alexis Gluckman. The substance of the email concerns defendant Cooney's application to rent an apartment in New York City with Jason Galanis. This e-mail is relevant to show the nature of the relationship between Cooney and Jason Galanis and to corroborate the testimony of Government witnesses that Cooney and Galanis were, in fact, close friends. (Tr. 901 (Dunkerley testimony that Galanis and Cooney appeared to be "best of friends"). The evidence is further relevant because Cooney lists his "employer" as "BOE Capital," an entity that invested in Burnham Financial Group, the parent entity of the placement agent for the Wakpamni bonds.

Finally, GX 2281 is relevant to show the relationship between Cooney and Gary Hirst. This evidence is particularly relevant in light of defense arguments regarding the lack of connection between different co-conspirators in this case. While the Government has no objection to redacting the substance of the financial statement, it should be permitted to introduce the heading information (e.g., "Personal Checking Account," "Electronic Debits," "Other Credits," "Checks Paid") to make clear that the document is, in fact, a financial statement.

### IV. DX 4801-04, 4813, and 4821 Should Be Excluded

The Court should preclude DX 4801 through 4804, 4813, and 4821.

First, the relevance of these exhibits depends, in large measure, on hearsay statements contained therein. In DX 4801, for example, the defense seeks to offer Francisco Martin's statement that "Jason is VERY sensitive how communication flows" to prove just that—that Galanis was sensitive on how information flowed. *Cf.* Archer Ltr at 3 (arguing the email is relevant to show Galanis's "strict control over information"). Similarly, DX 4802, 4803, and 4821 contain

numerous factual assertions about Jason Sugarman, COR Advisors, and family, which are clearly hearsay if offered for the truth of the matter asserted.

      Second, DX 4801, 4802, and 4804 are not admissible under Rule 613(b). With respect to DX 4801, Martin did not deny making the statement. Indeed, he said "I must have written it." (Tr. 2313). Similarly, when shown DX 4802, Martin explicitly stated "I am not denying it." (Tr. 2316). With respect to DX 4804, it is not a prior inconsistent statement of *Martin*. Instead, counsel for defendant Archer asked Martin whether he recalled "*Jason Galanis* encouraging you to mention the Sugarmans and their father-in-law, Peter Gruber?" (Tr. 2318). As such, the statement at issue is not the "witness's prior inconsistent statement," *see* Rule 613(b), and is not admissible as impeachment.

      Respectfully submitted,

      ROBERT KHUZAMI
      Attorney for the United States, Acting Under
      Authority Conferred by 28 U.S.C. § 515

By: /s/_____
      Rebecca Mermelstein
      Brendan F. Quigley
      Negar Tekeei
      Assistant United States Attorneys
      (212) 637-2360/2190/2482

Enclosures

cc:    Counsel of record (via ECF)