

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 17, 2018

**BY ECF**

The Honorable Ronnie Abrams
United States District Judge, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    <u>United States v. Galanis, et al.</u>, S3 16 Cr. 371 (RA)

Dear Judge Abrams:

      The Government writes briefly in further opposition to defendant Archer's motions regarding the meeting minutes of the Board of Burnham Investors Trust (the "Board") and the Government's summary charts, as well as to update the Court on GX 2103.

**I.   GX 758, 763, 782, 783, 784, and 792 Are Admissible**

      As set forth in the Government's letter of Friday, the Board minutes are plainly records of regularly conducted activity and thus are admissible pursuant to Rule 803(6)—a fact Archer now, at least in part, concedes. Further, Archer provides no basis for a distinction between introducing the minutes to "reflect the attendance at meetings or to show what the [Board's] resolutions were," which he concedes is admissible, Archer 6/16/18 Ltr. at 1, and other portions of the minutes recording the Board's other activities.

      The Court should also reject Archer's "hearsay within hearsay" argument.

      For one, the Government is seeking to use the Board minutes simply as a record of what happened at the meetings, not to prove up the content of extraneous documents or statements. *United States* v. *Pirk*, No. 15 Cr. 142 (EAW), 2018 WL 1521781, at *5 (W.D.N.Y. Mar. 28, 2018) (rejecting hearsay-within-hearsay argument for board minutes because minutes "consist of a contemporaneous record of the matters discussed during the meetings—just as any meeting minutes would for any type of club or organization"). Archer's attempt to reconcile the Seventh Circuit's holding in *United States* v. *Borassi*, 639 F.3d 744 (7th Cir. 2011) with his argument is unavailing. As the Seventh Circuit noted, "the meeting minutes" in that case "almost certainly fell with Rule 803(6) . . . ." 639 F.3d at 779. The issue, "however" was that the district court had excluded "reports referenced in the minutes and any comments in the minutes regarding the substance of those reports." *Id.* The Seventh Circuit agreed with the district court that "the statements contained in the reports, as well as any quotations or specific references to them in the minutes, constituted inadmissible hearsay." *Id.* at 780.

Here, by contrast, the Government is seeking to use the minutes only to prove what happened at the meeting, i.e., as a "record" of an "event," *see* Rule 803(6), the Board meetings, and not to prove the content of extraneous documents discussed at the meeting. Accordingly, there is no hearsay within hearsay issue.

Second, even if a hearsay within hearsay analysis was necessary, the Board minutes would still be admissible. To begin with, in large measure, the Government is not seeking to admit the minutes to prove the truth of Archer's statements therein, but simply to show what Archer said at the meetings and his course of dealings with the Board. Most notably, the Government is not seeking to introduce Archer's statements about Jason Galanis's affiliation with Burnham for the truth of the matter asserted, just the opposite in fact.

In any event, Archer's statements in the minutes are also admissible as statements of a party opponent. "Contrary to one contention by [Archer], when a statement is the party's own statement, there is no requirement that the party opponent 'adopt' the statement." *See Bondie* v. *Bic Corp.* 947 F.2d 1531, 1534 (6th Cir. 1991). In *Bondie*, for example, the Sixth Circuit affirmed the admission of a social worker's report under Rule 803(6), and the plaintiff's statements in that report under Rule 801(d)(2)(A) as statements of a party opponent. *See id.* (explaining that the report "was admissible, nevertheless, by virtue of the combined effect of Rule 801(d)(2)(A) and Rule 806"); *accord Ruffin* v. *City of Boston*, 146 F. App'x 501, 506 (1st Cir. 2005) (admitting the plaintiff's statements in an emergency medical technician's report because the report was "admissible as, at least, [a] business record under Rule 803(6)" and "[d]ouble hearsay statements by [the plaintiff] in that report were admissible as statements of a party opponent").

To the extent Archer takes issue with the accuracy or completeness of Moynihan's recording of his statements, that is certainly a fair basis for cross-examination, but it is not a reason to exclude the minutes entirely. As the Second Circuit noted in allowing admission of a report containing a defendant's statements to the authorities, the "weight and credibility to be extended to [the report and the defendant's statements therein] were matters for the jury, which might be (and were) explored on cross examination." *See Rosario* v. *Amalgamated Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228, 1251 (2d Cir. 1979).

Accordingly, the Court should allow the Government to admit the Board minutes.

## II.  Summary Charts

Archer seeks to force the Government to change its summary charts to comport with his preferred presentation of evidence. As with all of Archer's efforts to control the Government's presentation of its case, this should be firmly rejected. Archer attempts to compel the Government to alter its charts in two ways. First, Archer seeks to prevent the Government from identifying transfers to/from "RSB (Archer)," which he argues improperly creates exact equivalence between RSB and Archer, while the trial evidence establishes merely that Archer was "associated" with RSB. This is preposterous. The Government has introduced evidence that account statements for RSB were addressed to Rosemont Seneca Bohai, c/o Devon Archer. (GX 301). Contrary to Archer's assertion, this evidence is indeed cited in the summary charts. On this basis alone the charts properly refer to RSB/Archer. The propriety of this reference is further enforced by the

ample trial evidence establishing that Archer was associated with – and indeed solely controlled RSB. Archer may cross-examine the summary chart witness concerning the basis for designating RSB as "Archer." But in light of the substantial evidence supporting this statement, he may not prevent the Government from accurately and helpfully presenting this evidence to the jury.

Archer also seeks to force the Government to identify Wealth Assurance Private Client Corp, by its full name in every instance in which it appears in the summary charts. This too should be rejected. The Government's charts, through color coding and other indications, make amply clear that references to Wealth Assurance are references to Wealth Assurance Private Client Corporation. And the Government will make this point clearly through the witness. But the unwieldly length of the name makes it impracticable to list the full name on the summary chart and the abbreviation "WAPCC" is too easily confused with the wholly unrelated WLCC. The Government should thus be permitted to present its evidence in its preferred form.[1]

## III.  GX 2103

As the Court may recall, GX 2103 is an email sent by Archer in response to receiving a press release regarding Jason Galanis's September 2015 arrest. Based on discussions with the parties, the Government understands there is no objection to admitting the email if (i) the content to the press release is redacted in its entirety; (ii) the Court instructs the jury that the redacted portion of the email relates to Jason Galanis's arrest; and (iii) the jury is given a limiting instruction, along the lines of the limiting instruction the Court provided regarding defendant Cooney during the testimony of Francisco Martin.[2]

---

[1] The Government also notes that it produced draft summary charts to all defense counsel on May 30, 2018, for the explicit purpose of permitting counsel time to review the summary charts long in advance of their use. Notwithstanding having had these exhibits for weeks, counsel first raised these issues on Saturday, June 16, 2018, less than 48 hours before the summary charts will be offered.

[2] (*See* Tr. 2178 (""So, ladies and gentlemen, you've just heard evidence that in September 2015 Jason Galanis was arrested. You need to know that Jason Galanis' arrest in September 2015 was for unrelated conduct and had nothing to do with this case. I further instruct you that Mr. Cooney was not a subject of that investigation, and there is no evidence that he knew about Jason Galanis' conduct in that unrelated case until after Jason Galanis was arrested.")).

## IV. Remaining Issues

The Government rests on its previous arguments with respect to the other issues raised in defendants' letters of recent days.

          Respectfully submitted,

          ROBERT KHUZAMI
          Attorney for the United States, Acting Under
          Authority Conferred by 28 U.S.C. § 515

By: /s/_____
          Rebecca Mermelstein
          Brendan F. Quigley
          Negar Tekeei
          Assistant United States Attorneys
          (212) 637-2360/2190/2482

Enclosures

cc:     Counsel of record (via ECF)