

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 24, 2018

**BY ECF**

The Honorable Ronnie Abrams
United States District Judge, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   **United States v. Galanis, et al., S3 16 Cr. 371 (RA)**

Dear Judge Abrams:

The Government respectfully submits this letter relating to the following issues raised at the charge conference on June 22, 2018: (1) the need for a conscious avoidance instruction, as included in the Court's June 21, 2018 draft jury instructions; (2) the propriety of the multiple conspiracies instruction proposed by the defendants; and (3) the propriety of instructions related to unanimity on the Government's theories of the crime and the special findings verdict form proposed by the defendants.

**I.      The Court's Conscious Avoidance Instruction is Warranted and Appropriate**

**A.   Relevant Facts**

Defendants John Galanis, Devon Archer and Bevan Cooney's have presented a defense at trial focused primarily on their lack of knowledge of the fraudulent scheme and fraudulent acts committed by other members of the scheme.

With respect to John Galanis, he has presented a defense that he was unaware of the fraudulent nature of the scheme, and that the $2.35 million that he received from the proceeds of the first WLCC bond issuance was merely a "finder's fee" to which he was entitled for "being the originator of the deal." (Tr. 73 (opening arguments)). In his opening argument, counsel argued that "this financial transaction was not a total fraud from the beginning" but a "completely legal and well thought out financial transaction that was to benefit the WLCC and all the parties involved," and it was "the acts of others and the ensuing Government investigation that caused the financial transaction to ultimately fail." (Tr. 72, 74). And, during cross-examination, John Galanis has advanced the theory that he was a mere conduit of information for Jason Galanis, and that Jason Galanis controlled the aspects of the WLCC bond deals and lied people who relied on him as the deals were formed and carried out (even while he, John Galanis, stayed involved throughout each

bond series and well into late 2015).  (Tr. 323, 387, 424-26 (cross-examination of Tim Anderson); 1071, 1094-95, 1118-20, 1542-43, 1142 (cross examination of Hugh Dunkerley).

Similarly, Devon Archer wants to argue that he was "duped in a sophisticated con" by Jason Galanis and that he "was used."  (Tr. 76, 2801 (cross-examination of Molly Moynihan)).   In openings, counsel argued that "[t]he evidence will show that Devon had no clue that other people, . . . like Jason Galanis . . . like Hugh Dunkerley . . . were stealing money" and that "Devon had no clue."  (Tr. 76.)  Counsel for Archer also asserted that "Devon was aware of the bonds; but no, he didn't know what Jason Galanis was doing with that money," and that "Devon had no clue that Jason Galanis had recycled money from the first bond issuance" because Jason Galanis hid where the money was coming from "to convince Devon that he was investing Jason Galanis's own money." (Tr. 94-95).  Counsel for Archer has not contested the existence of a criminal scheme with respect to the Wakpamni bonds, and the parties have stipulated that other members of the conspiracy have pled guilty for their involvement in this scheme—Jason Galanis, Hugh Dunkerley, Gary Hirst, and Michelle Morton.  Rather, counsel for Archer has argued that Archer did not know about their criminal conduct.  *See, e.g.*, Tr. 94 ("So, yeah, Devon was aware of the bonds; but no, he didn't know what Jason Galanis was doing with that money.").

Lastly, Bevan Cooney has also presented a defense premised on his lack of knowledge of others committing a fraud.  He has argued that he believed that "the WLCC bond was a great success" and that "Jason Galanis was feeding them lie after lie after lie, and they had every reason to believe that these bonds were thriving."  (Tr. 108).  Counsel also asserted that "[t]here is not going to be any direct evidence, there is not going to be a single witness who will sit on that witness stand and who is going to say Bevan Cooney knew what was involved in this case."  (Tr. 106).  Counsel also asserted that Cooney was "not a sophisticated finance guy" and had not graduated from college.  (Tr. 101, 107, 114).   In addition, counsel for Cooney has argued that "Cooney did not know" that Jason Galanis was a "con artist" and "had every reason to believe that everything that he was involved in was entirely legitimate."  (Tr. 108-109).  Like Archer, Cooney has argued that he was a victim, and that Jason Galanis "was very good at masterminding, manipulating people" and "seized on their weaknesses, he seized on the fact that Mr. Cooney was not a finance guy and he was . . . very easy to take advantage of."  (Tr. 110-111).

The defendants have also cross-examined witnesses in an effort to suggest that they lacked the required knowledge to be found guilty.  The record is replete with questioning about how various witnesses received information from Jason Galanis, believed or trusted Jason Galanis, followed instructions by Jason Galanis, and were lied to or mislead by Jason Galanis.  (Tr. 323, 325, 387, 435, 566, 593, 596  (cross-examination of Timothy Anderson); 1071, 1094-95, 1097-98, 1105, 1118-20, 1126-27, 1141-42, 1166-67, 1298-99, 1300, 1310-12, 1328-39, 1332, 1339, 1394, 1430, 1460-61, 1517, 1540, 1542-43 (cross-examination of Hugh Dunkerley); 2198, 2200-01, 2210, 2216, 2244, 2275, 2278, 2280, 2295-96, 2309, 2315-16, 2336, 2347 (cross-examination of Francisco Martin).  Through such questioning, counsel for each of the defendants have advanced the theme that because other people admitted to having been lied to or deceived by Jason Galanis, they, too, lacked the requisite knowledge of the scheme.

The evidentiary record, including scores of emails and transactional documents, establishes that the three defendants were each heavily involved in the WLCC transactions at issue. Additionally, the Government submits that the evidentiary record makes clear that the defendants had direct knowledge of the scheme, as evidenced by various email among participants in the scheme, and the lies and false statements that the trial defendants uttered as part of the scheme. While the defendants obviously contest this, they cannot credibly argue that they were not deeply involved in the relevant transactions.

### B.  Applicable Law

The doctrine of conscious avoidance is "a practical necessity given the ease with which a defendant could otherwise escape justice by deliberately refusing to confirm the existence of one or more facts that he believes to be true." *United States* v. *Reyes*, 302 F.3d 48, 54 (2d Cir. 2002). "A conscious-avoidance charge is appropriate when (a) the element of knowledge is in dispute, and (b) the evidence would permit a rational juror to conclude beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *United States* v. *Ebbers*, 458 F.3d 110, 124 (2d Cir.2006) (quotations omitted).  "A factual predicate may be established where a defendant's involvement in the criminal offense may have been so overwhelmingly suspicious that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge." *United States* v. *Lange*, 834 F.3d 58, 78 (2d Cir. 2016) (internal quotation marks and alteration omitted).

### C.  Discussion

The Government is entitled under the law to rely on the doctrine of conscious avoidance in order to meet its burden of proof with respect to the defendants' knowledge, and there is an adequate evidentiary basis in the record for the instruction.

*First*, a conscious avoidance instruction is warranted based on the trial record.  John Galanis, Archer and Cooney have firmly denied having any knowledge of the fraudulent aspects of the Wakpmani bond scheme, to have bene "duped." (*See, e.g.*, Tr. 3453 (statement of Mr. Schwartz at charge conference)); *cf. United States* v. *Ghailani*, 761 F. Supp. 2d 167, 198 (S.D.N.Y. 2011) (Kaplan, J.) (finding conscious avoidance instruction appropriate where "the theory of Ghailani's defense was that he was an innocent dupe. This contention permeated his defense.").  As such, knowledge is clearly at issue.

Moreover, there is an adequate factual predicate: the documentary and testimonial evidence establishes that each defendant was extensively involved in correspondence, meetings, phone calls, and bank transactions involving the WLCC bonds, proceeds of the bond transactions, and, with respect to Archer and Cooney, the rollup plan.  John Galanis received $2.35 million of the bond proceeds for his personal use; Archer received $15 million of the bond proceeds, purchased *more bonds* with them, and then transferred those bonds to help Burnham meet its net capital requirements; and Cooney received $5 million of bond proceeds, purchased *more bonds* with them, and then transferred those bonds to help Bonwick meet its net capital requirements.  As the Second

Circuit articulated in *Cuti*, "[t]his purported lack of knowledge defense, despite [the defendant's] deep involvement in the transactions that effectuated the fraud, all but invited the conscious avoidance charge." 720 F.3d at 464; *accord United States* v. *Lange*, 834 F.3d 58, 78 (2d Cir. 2016) (affirming conscious avoidance charge in securities fraud prosecution where defendant "argued at trial he lacked knowledge of the nature of the fraudulent schemes"); *United States* v. *Bonventre*, 646 F. App'x 73, 85 (2d Cir. 2016) (summary order) ("Bongiorno's 'purported lack of knowledge defense, despite [her] deep involvement in the transactions that effectuated the fraud, all but invited the conscious avoidance charge.'" (quoting *United States* v. *Cuti*, 720 F.3d at 464)).

Indeed, the law is clear that "[r]ed flags about the legitimacy of a transaction can be used to show both actual knowledge and conscious avoidance." *United States* v. *Goffer*, 721 F.3d 113, 127 (2d Cir. 2013) (internal quotation marks omitted). Thus, "the second prong [of the conscious avoidance test] may be established where a defendant's involvement in the criminal offense may have been *so overwhelmingly suspicious* that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge." *United States* v. *Svoboda*, 347 F.3d 471, 480 (2d Cir. 2003) (citation and internal quotation marks omitted) (emphasis in original). "For example, in a securities fraud case, if a defendant attended meetings that were part of the charged scheme, yet argues that he lacked the requisite scienter because, for example, he 'didn't bother to read in full' the documents he signed, the charge is appropriate." *Cuti*, 720 F.3d at 463 (citing *United States* v. *Ebbers*, 458 F.3d 110, 124-25 (2d Cir. 2006)).

Here, each of the defendants was aware of numerous such "red flags." For example, John Galanis was aware, from having edited documents regarding the bond offering, that the bond documents did not provide for a $2.35 million finder's fee, yet he apparently intends to claim that he believed he was rightly entitled to this money. (*See, e.g.*, GX 1304 (Email from John Galanis to Tim Anderson and Steven Haynes attaching "Wakpamni Source & Use of Funds v15.pdf")). Similarly, for example, with respect to defendants Archer and Cooney, there is ample evidence that they were aware Jason Galanis did not have $20 million to give them to buy the second tranche of bonds, absent the proceeds of the first issuance. For example, in GX 2021, Archer told Galanis and Cooney that "we need discretionary funds at our command soonest," to which Galanis responded ""I'm laser focused on summer cash hole, and discretionary. I don't need any more deals until we can pull triggers ourselves." Similarly, in GX 2023, Galanis emails Archer and Cooney at draft copy of the indenture for the first bond issuance, stating that his "primary objective is to get us a source discretionary liquidity." Moreover, all of the trial defendants were aware that Jason Galanis-related entities were on all sides of the first bond issuance, including the investment adviser, the placement agent, and the annuity provider. More generally, there is ample evidence, from his interactions with the BIT Board, that Archer was on notice of red flags surrounding Galanis's past regulatory history. (*See also* GX 2111 (April 2014 email between Archer and Galanis in regarding efforts to clean up search results of Galanis on Google, in which Archer notes "Don't get me wrong in that I enjoy defending you but might be nicer if it wasn't as challenging!").

In short, in light of both the defendants' deep involvement in the transactions at issue and the red flags surrounding those transactions, there is clearly an adequate factual predicate for the conscious avoidance instruction.

*Second*, as set forth above, the Government is permitted under well-established law to argue that the defendants *both* possessed actual knowledge of the conspiracy's unlawful objections, *and*, in the alternative, consciously avoided learning of the objects. *United States* v. *Carlo*, 507 F.3d 799, 802 (2d Cir. 2007) ("There was nothing inappropriate or inconsistent in the government arguing that [defendant] had actual knowledge that his statements were false or, in the alternative, that he was aware of a high probability that they were false, but consciously avoided confirming that suspicion."). This is because "the same evidence that will raise the inference that the defendant had actual knowledge of the illegal conduct ordinarily will also raise the inference that the defendant was subjectively aware of a high probability of the existence of illegal conduct." *United States* v. *Kozeny*, 667 F.3d 122, 133-34 (2d Cir. 2011). In *Cuti*, the Government argued that the defendant's actual knowledge of an accounting fraud could be inferred from his participation in many of the core events that furthered the fraud, including, among other things, "personally sign[ing] or approv[ing]" various agreements and participating in various meetings that advanced the fraud. *Cuti* at 720 F.3d at 463. The defendant countered that he took all of these actions without actual knowledge of the fraud, asserting that "[t]hen and now he believed [the fraudulent transactions in which he participated] to be entirely proper." *Id.* at 464 n.6. The Second Circuit explained that the defense, in the context of the other evidence presented, provided strong justification for a conscious avoidance instruction:

> Th[e] [defendant's] purported lack of knowledge defense, despite [his] deep involvement in the transactions that effectuated the fraud, *all but invited* the conscious avoidance charge. The same evidentiary facts that supported the government's theory of actual knowledge also raised the inference that he was subjectively aware of a high probability of the existence of illegal conduct and thus properly served as the factual predicate for the conscious avoidance charge[.]

*Id.* (emphasis added). Therefore, the fact the Government will argue that the defendants had direct knowledge of the scheme in no way undermines the need for, or legitimacy of, a conscious avoidance charge.

*Third*, the decision in *United States* v. *Tuzman*, 15 Cr. 536 (PGG), cited by the defense, is distinguishable in several respects. As an initial matter, the court in *Tuzman* noted that none of the defendants were arguing that they weren't "paying attention" or "didn't read that email." *United States* v. *Tuzman*, 15 Cr. 536 (PGG), December 20, 2017 Tr. 6783 (Judge Gardephe: "I mean, there are certainly cases where a defendant takes the stand and says: 'I wasn't paying attention; I didn't read that email; yeah, I was at the meeting, but I wasn't paying attention.'"). But that *is* the record here. Archer has squarely argued that he was "knee deep in diapers" when "Jason Galanis and Hugh Dunkerley and the other people that the other lawyers talked about were plotting to steal that bond money" (Tr. 80) and even elicited testimony that Archer was "extremely busy . . . focused on closing up, selling one business and then also starting another business, so he was traveling quite often" (Tr. 3288 (testimony of Krista Archer)). Even more to the point, Archer clearly intends to argue that Jason Galanis hid information from him and that he either did not see and/or did not sign some of the letters to the BIT Board and transaction documents relevant in this case, notwithstanding that he was copied on emails transmitting those documents. (Tr. 3276-86

(testimony and summary chart by Mr. Jackson)).  Those are precisely the types of defense arguments that make a conscious avoidance charge appropriate.  *Tuzman* Tr. 6789 ("The example that the *Cuti* case cites . . . is that there's evidence that a defendant attended a meeting, that he wasn't paying attention to what was going on, or the defendant signed documents but offered evidence he didn't bother to read the documents.  If we had that kind of evidence here, I'd be sympathetic to your position.").  Moreover, the record in *Tuzman* was that the fraud was perpetrated *at the direction of* the trial defendants—who, along with the cooperating defendant, were the principal architects of the crime—whereas here, the record is that the trial defendants were participants in the fraud but did not necessarily *centrally direct* the fraud in the way that their co-conspirator, Jason Galanis, did.  *Tuzman* Tr. 6787 ("The record here is that he was an integral player, according to the government, in the fraud, that it was done at his direction.  There was testimony about that from multiple witnesses[.]").  *Tuzman* is distinguishable.  A conscious avoidance instruction is particularly appropriate here, where John Galanis, Archer and Cooney's involvement in the fraudulent scheme was "so overwhelmingly suspicious that [their] failure to question suspicious circumstances establishes [their] purposeful contrivance to avoid guilty knowledge."  *United States* v. *Lange*, 834 F.3d 58, 78 (2d Cir. 2016).

## II.      A Multiple Conspiracy Instruction is Not Warranted

The defendants' requests for a multiple conspiracy instruction for Count One should be rejected, as there is no factual predicate in the trial record to support such a charge.

A "defendant is entitled, upon proper request, to an instruction submitting to the jury any defense theory *for which there is a foundation in the evidence*."  *United States* v. *Bryser*, 954 F.2d 79, 87 (2d Cir. 1992) (emphasis added).  However, "if only one conspiracy has been alleged and proved[,] the defendants are not entitled to a multiple conspiracy charge."  *United States* v. *Maldonado-Rivera*, 922 F.2d 934, 962 (2d Cir. 1990) (internal quotations omitted); *accord United States v. Romero-Padilla*, 583 F.3d 126, 130 (2d Cir. 2009); *United States* v. *Vasquez*, 113 F.3d 383, 387 (2d Cir. 1997).  In order to secure a reversal on the ground that a trial court failed to give a multiple conspiracy charge, a defendant must show both that "there was evidence of separate networks operating independently of each other" and that the defendant "suffered substantial prejudice resulting from the failure to give the requested charge."  *United States* v. *Cusimano*, 123 F.3d 83, 89 (2d Cir. 1997) (internal quotations omitted); *accord United States* v. *Vazquez*, 113 F.3d at 386; *United States* v. *Maldonado-Rivera*, 922 F.2d at 962-63.

Nothing in the record supports a multiple conspiracy instruction.  At the charge conference, counsel for Archer arguing that the Government charged "to distinct acts of securities fraud as its objects," that being "the undisclosed conflicts to investors of Atlantic and Hughes," and "the misappropriation of the WLCC bond funds," and that there was "more than ample evidence for a jury here to determine that those were entirely separate conspiracies."  Tr. 3450.  That is simply incorrect.  The indictment charges a single overall scheme "to misappropriate the proceeds of several bond issuances by the WLCC and also cause[] investor funds to be used to purchase the bonds, for which there was no secondary market through which such bonds could be redeemed, without disclosure to those investors of material facts, including the existence of multiple conflicts of interest, and which investments, in some cases, were outside the investment parameters of the

accounts in which they were placed." S3 Indictment ¶ 30.  The inducement of the WLCC to issue bonds and the purchase of the bonds by unwitting pension fund investors is what allowed for the misappropriation of the bond proceeds—all of those steps were part and parcel of the very same scheme.  *See United States* v. *Eppolito*, 543 F.3d 25, 48 (2d Cir.2008) ("[A] single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance.") (quotation omitted).  The proof at trial has been clear that there was a common goal and significant overlap in the individuals who perpetrated each phase and aspect of the overall scheme, including the trial defendants.  Only one conspiracy has been alleged and proved, and the defendants are not entitled to a multiple conspiracies charge.

## III.   There is No Basis or Precedent for an Instruction Regarding Unanimity on the Government's Theory or the Special Verdict Sheet Proposed by the Defendants

It is well established that a jury need not be unanimous on a theory of liability, especially when a single crime can be committed in various ways.  *See Schad* v. *Arizona*, 501 U.S. 624, 631-32 (1991) (holding that jury, in convicting the defendant of first-degree murder, did not need to be unanimous as between premeditated murder theory and felony murder theory and noting that "'different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line.'" (quoting *McKoy* v. *N. Carolina*, 494 U.S. 433, 449 (1990)); *United States* v. *McIntosh*, 753 F.3d 388, 394 (2d Cir. 2014) (holding that jury did not need to be unanimous as to means by which defendant violated federal assault statute, 18 U.S.C. § 111(a)); *United States* v. *Stewart*, 433 F.3d 273, 319 (2d Cir. 2006) (holding, in affirming conviction under 18 U.S.C. § 1001, that district court "did not err by failing to instruct the jurors that they must agree unanimously as to which theory of the offense-false statement or concealment-supported the verdict," because "the several different types of fraudulent conduct proscribed by section 1001 are not separate offenses . . . .rather they describe different means by which the statute is violated");*United States* v. *Paris*, No. 03:06 Cr. 64 (CFD) (Oct. 24, 2007) ("Jurors are required to unanimously conclude that the elements of an offense are satisfied, but are not required to unanimously agree on which means a defendant used to commit a particular element.") (citing *Richardson* v. *United States*, 526 U.S. 813, 817 (1999)); *see also United States* v. *Kozeny*, 667 F.3d 122, 131–32 (2d Cir. 2011) ("hold[ing] that the jury need not agree on a single overt act to sustain a conspiracy conviction").  At the charge conference, contrary to this authority, the defense suggested an instruction regarding the Government's theories of liability (apart from the statutory bases) and "on the concept where the Government has multiple different theories, both legal theories and factual theories" that "the jury understand that they need to be unanimous on one in order to convict."  (Tr. 3461-62).  Of course, that is simply not the law.

"[T]he jury does not have to accept the Government's case hook, line, and sinker in order to convict—indeed, juries can and often do convict defendants based on divergent and even mutually-incompatible theories of liability."  *United States* v. *Rosario*, No. 09-CR-415-2 VEC, 2015 WL 518217, at *5 (S.D.N.Y. Feb. 9, 2015) (citing *Schad* v. *Arizona*, 501 U.S. 624, 630 (1991); *United States* v. *McIntosh*, 753 F.3d 388, 392 (2d Cir.2014) (per curiam )).  Indeed, "juries can convict when some jurors believe that the defendant was a principal and others believe he was an aider and abettor."  *Id.*  The Second Circuit has recognized that "[i]n dicta, we have suggested that a jury is

unanimous even if some jurors convicted on a theory of principal liability and others on aiding and abetting." *United States* v. *Ferguson*, 676 F.3d 260, 279 (2d Cir.2011) (citing *United States* v. *Peterson*, 768 F.2d 64, 67 (2d Cir.1985) (Friendly, J.)). Moreover, "[e]ven assuming that the jury had to agree on the theory of liability, the general unanimity instruction—'it is necessary that each juror agrees to [the verdict],' . . .—was sufficient to remove any genuine danger that the jury would convict on disparate theories." *Id.*

Therefore, the Court's current instructions that "[y]ou must be unanimous as to which type of unlawful conduct, if any, the defendant you are considering committed" (page 28 of the Court's instructions) and "your verdict must be unanimous" is more than sufficient (page 54 of the Court's instructions).

Finally, with respect to the verdict sheets proposed by the defense, there is no basis in the law or prior practice of courts in this District to use the confusing and misleading special verdict form proposed by the defense. The Government's proposed verdict sheet, attached as Exhibit A, is consistent with the verdict sheets used by judges in this District, including in multiple securities fraud trials involving multiple defendants. *See* Exhibits B-E (verdict forms from *United States* v. *Bonventre*, 10 Cr. 228 (LTS); *United States* v. *Cervino and Khan*, 15 Cr. 171 (ALC); and *United States* v. *Tuzman*, 15 Cr. 536 (PGG); *United States* v. *Blaszczak, et al.*, 17 Cr. 357 (LAK). *Accord United States* v. *Spock*, 416 F.2d 165, 180-83 (1st Cir. 1969) (explaining why special verdicts are generally disfavored in criminal cases).

In light of this clear precedent, the defendants' proposed verdict sheet shows, yet again, the lengths to which they will go to obfuscate the law and the facts to this jury. It is confusing, misleading, and unprecedented in a criminal case. It should be wholly rejected.

## IV.  Indictment and Defense Theory

At the charge conference, the Court inquired as to the party's position regarding providing the jury with a copy of the Indictment and the defense theories of the case. The Government respectfully requests that the Court provide neither the Indictment nor the defense theories to the jury.

## V.  Remaining Issues

The Government also writes briefly in response to Archer's June 23, 2018 letter regarding the anticipated testimony of Seth Fliegler. In his letter, Archer suggests that there is something improper about the Government asking the Court to revisit its prior ruling about the admissibility of certain Code Rebel evidence. The defense, however, is attempting to use the Court's prior ruling as both a sword and a shield. The defense's proposed testimony of Fliegler unfairly omits the benefits that Archer received and *anticipated receiving* during the course of the conspiracy in a way that would leave the jury with the false and misleading impression that Archer only lost and had no hope of gaining anything from his participation. That is, of course, not the case. The defense's argument that Archer would not have taken money out of his own pocket and put it in the scheme if he knew a fraud was occurring, is directly contradicted by Archer's receipt of the

convertible note, which demonstrates that Archer expected a substantial profit and explains the reasons why Archer kept putting up money to keep the scheme going.  Should Fliegler be allowed to testify, the Government should be allowed to cross-examine Fliegler regarding Code Rebel and to introduce certain Code Rebel evidence in a rebuttal case.

Respectfully submitted,

ROBERT KHUZAMI
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

By: /s/_____
    Rebecca Mermelstein
    Brendan F. Quigley
    Negar Tekeei
    Assistant United States Attorneys
    (212) 637-2360/2190/2482

Enclosures

cc:    Counsel of record (via ECF)

# Exhibit A

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
UNITED STATES OF AMERICA,          :
                                   :
          - v.-                    :    S3 16 Cr. 371 (RA)
                                   :
                                   :
JOHN GALANIS,                      :
     a/k/a "Yanni,"                :
DEVON ARCHER, and                  :
BEVAN COONEY,                      :
                                   :
              Defendants.          :
-----------------------------------x
```

Please indicate your verdicts with a check mark (✓):


## **COUNT ONE**
**(Conspiracy to Commit Securities Fraud)**


JOHN GALANIS:            Guilty _____        Not Guilty _____


DEVON ARCHER:            Guilty _____        Not Guilty _____


BEVAN COONEY:            Guilty _____        Not Guilty _____


## **COUNT TWO**
**(Securities Fraud)**


JOHN GALANIS:            Guilty _____        Not Guilty _____


DEVON ARCHER:            Guilty _____        Not Guilty _____


BEVAN COONEY:            Guilty _____        Not Guilty _____

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA       :

    v.             :

DANIEL BONVENTRE,        **S10 10 Cr. 228 (LTS)**
ANNETTE BONGIORNO,      :
JOANN CRUPI, a/k/a "Jodi,"
JEROME O'HARA, and       :
GEORGE PEREZ,         :

      Defendants.   :
-------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 2 4 2014

## VERDICT FORM

**Count One**

1. With respect to Count One, which charges all five of the Defendants with participating in a criminal conspiracy to defraud the investment advisory clients of Madoff Securities, how do you find each of the Defendants?

     a. DANIEL BONVENTRE

       Guilty **X**    Not Guilty ___

     b. ANNETTE BONGIORNO

       Guilty **X**    Not Guilty ___

     c. JO ANN CRUPI

       Guilty **X**    Not Guilty ___

     d. JEROME O'HARA

       Guilty **X**    Not Guilty ___

Court Exhibit 4 (4
3-24-2014   3:18

e.   GEORGE PEREZ

Guilty **X**          Not Guilty ___

**Count Two**

2.   With respect to Count Two, which charges Defendants DANIEL BONVENTRE, JO ANN CRUPI, JEROME O'HARA and GEORGE PEREZ with participating in a criminal conspiracy involving securities fraud and falsification of books and records in connection with audits of Madoff Securities, how do you find each of the Defendants?

a.   DANIEL BONVENTRE

Guilty _X_          Not Guilty ___

b.   JO ANN CRUPI

Guilty _X_          Not Guilty ___

c.   JEROME O'HARA

Guilty _X_          Not Guilty ___

d.   GEORGE PEREZ

Guilty _X_          Not Guilty ___

**Count Three**

3.    With respect to Count Three, which charges Defendant DANIEL BONVENTRE with participating in a criminal conspiracy at Madoff Securities to engage in accounting fraud and to defraud banks, how do you find the Defendant?

DANIEL BONVENTRE

Guilty X̶    Not Guilty___


**Count Four**

4.    With respect to Count Four, which charges Defendant DANIEL BONVENTRE with participating in a criminal conspiracy to commit tax fraud at Madoff Securities in connection with IRS audits of Bernard Madoff's taxes, how do you find the Defendant?

DANIEL BONVENTRE

Guilty X̶    Not Guilty___


**Count Five** [NO VERDICT REQUESTED]


**Count Six**

6.    With respect to Count Six, which charges all five of the Defendants with securities fraud in connection with Madoff Securities investment advisory clients, how do you find each of the Defendants?

a.    DANIEL BONVENTRE

Guilty X̶    Not Guilty___



b.   ANNETTE BONGIORNO

Guilty  X          Not Guilty___

c.   JO ANN CRUPI

Guilty  X          Not Guilty___

d.   JEROME O'HARA

Guilty X_          Not Guilty___

e.   GEORGE PEREZ

Guilty X          Not Guilty___


**Count Seven**

7.   With respect to Count Seven, which charges Defendants DANIEL
     BONVENTRE, JO ANN CRUPI, JEROME O'HARA and GEORGE PEREZ
     with securities fraud in connection with audits at Madoff Securities, how do you
     find each of the Defendants?

a.   DANIEL BONVENTRE

Guilty X          Not Guilty___

b.   JO ANN CRUPI

Guilty X          Not Guilty___

c.   JEROME O'HARA

Guilty X          Not Guilty___

       d.     GEORGE PEREZ

          Guilty ✗           Not Guilty ___

**Count Eight**

8.    With respect to Count Eight, which charges Defendant DANIEL BONVENTRE with securities fraud in connection with Madoff Securities' accounting practices, how do you find the Defendant?

        DANIEL BONVENTRE

        Guilty ✗          Not Guilty ___

**Count Nine**

9.    With respect to Count Nine, which charges all five of the Defendants with falsifying the books and records of a broker-dealer, in connection with fraudulent trading documents, how do you find each of the Defendants?

       a.     DANIEL BONVENTRE

          Guilty ✗         Not Guilty ___

       b.     ANNETTE BONGIORNO

          Guilty ✗         Not Guilty ___

       c.     JO ANN CRUPI

          Guilty ✗         Not Guilty ___

d.    JEROME O'HARA

       Guilty ✗          Not Guilty____

e.    GEORGE PEREZ

       Guilty ✗          Not Guilty____


**Count Ten**

10.    With respect to Count Ten, which charges Defendants DANIEL BONVENTRE, JO ANN CRUPI, JEROME O'HARA and GEORGE PEREZ with falsifying the books and records of a broker-dealer in connection with certain audits, how do you find each of the Defendants?

    a.    DANIEL BONVENTRE

         Guilty ✗          Not Guilty ___

    b.    JO ANN CRUPI

         Guilty ✗          Not Guilty____

    c.    JEROME O'HARA

         Guilty ✗          Not Guilty ___

    d.    GEORGE PEREZ

         Guilty ✗          Not Guilty ___

**Count Eleven**

11. With respect to Count Eleven, which charges Defendant DANIEL BONVENTRE with falsifying the books and records of a broker-dealer in connection with fraudulent accounting documents, how do you find the Defendant?

        a.      DANIEL BONVENTRE

            Guilty _X_          Not Guilty____


**Count Twelve**

12. With respect to Count Twelve, which charges all five of the Defendants with falsifying the records of an investment advisor by creating fraudulent trading documents, how do you find each of the Defendants?

        a.      DANIEL BONVENTRE

            Guilty_X_          Not Guilty____

        b.      ANNETTE BONGIORNO

            Guilty _X_          Not Guilty____

        c.      JO ANN CRUPI

            Guilty _X_          Not Guilty ___

        d.      JEROME O'HARA

            Guilty _X_          Not Guilty ___

        e.      GEORGE PEREZ

            Guilty_X_          Not Guilty____

**Count Thirteen**

13. With respect to Count Thirteen, which charges Defendants DANIEL BONVENTRE, JO ANN CRUPI, JEROME O'HARA and GEORGE PEREZ with falsifying the records of an investment adviser by creating fraudulent trading documents, how do you find each of the Defendants?

     a.    DANIEL BONVENTRE

        Guilty __X__       Not Guilty ___

     b.    JO ANN CRUPI

        Guilty __X__       Not Guilty ___

     c.    JEROME O'HARA

        Guilty __X__       Not Guilty ___

     d.    GEORGE PEREZ

        Guilty __X__       Not Guilty ___

**Count Fourteen**

14. With respect to Count Fourteen, which charges Defendant DANIEL BONVENTRE with falsifying the books and records of an investment adviser in connection with fraudulent accounting documents, how do you find the Defendant?

       DANIEL BONVENTRE

       Guilty __X__       Not Guilty ___

**Count Fifteen**

15.    With respect to Count Fifteen, which charges Defendant DANIEL BONVENTRE with causing a false and misleading filing to be made with the SEC, how do you find the Defendant?

DANIEL BONVENTRE

Guilty  X             Not Guilty ____

**Count Sixteen**

16.    With respect to Count Sixteen, which charges Defendant JO ANN CRUPI with participating in a criminal conspiracy to commit bank fraud in connection with loans obtained on behalf of Madoff Securities employee David Kugel, how do you find the Defendant?

JO ANN CRUPI

Guilty X             Not Guilty ____

**Count Seventeen**

17.    With respect to Count Seventeen, which charges Defendant JO ANN CRUPI with bank fraud in connection with loans obtained on behalf of Madoff Securities employees David Kugel and Craig Kugel, and Heather Kugel, how do you find the Defendant?

JO ANN CRUPI

Guilty X             Not Guilty ____

**Count Eighteen**

18. With respect to Count Eighteen, which charges Defendant DANIEL
    BONVENTRE with bank fraud in connection with loans obtained on behalf of
    Madoff Securities, how do you find the Defendant?

DANIEL BONVENTRE

Guilty X          Not Guilty___

**Count Nineteen** [NO VERDICT REQUESTED]

**Count Twenty**

20. With respect to Count Twenty, which charges Defendant DANIEL
    BONVENTRE with making and subscribing to a false income tax return for the
    year 2003, how do you find the Defendant?

DANIEL BONVENTRE

Guilty X          Not Guilty___

**Count Twenty-One**

21. With respect to Count Twenty-One, which charges Defendant DANIEL
    BONVENTRE with making and subscribing to a false income tax return for the
    year 2004, how do you find the Defendant?

DANIEL BONVENTRE

Guilty X          Not Guilty___

**Count Twenty-Two**

22.    With respect to Count Twenty-Two, which charges Defendant DANIEL
BONVENTRE with making and subscribing to a false income tax return for the
year 2006, how do you find the Defendant?

DANIEL BONVENTRE

Guilty $\times$           Not Guilty____

**Count Twenty-Three**

23.    With respect to Count Twenty-Three, which charges Defendant DANIEL
BONVENTRE with making and subscribing to a false income tax return for the
year 2007, how do you find the Defendant?

DANIEL BONVENTRE

Guilty $\times$           Not Guilty____

**Count Twenty-Four**

24.    With respect to Count Twenty-Four, which charges Defendant DANIEL
BONVENTRE with corruptly obstructing the lawful administration of the
Internal Revenue Laws in connection with IRS audits of Bernard Madoff's taxes,
how do you find the Defendant?

DANIEL BONVENTRE

Guilty $\times$           Not Guilty____

**Count Twenty-Five**

25.   With respect to Count Twenty-Five, which charges Defendant ANNETTE BONGIORNO with tax evasion for the year 2004, how do you find the Defendant?

ANNETTE BONGIORNO

Guilty X          Not Guilty ___

**Count Twenty-Six**

26.   With respect to Count Twenty-Six, which charges Defendant ANNETTE BONGIORNO with tax evasion for the year 2005, how do you find the Defendant?

ANNETTE BONGIORNO

Guilty X          Not Guilty ___

**Count Twenty-Seven**

27.   With respect to Count Twenty-Seven, which charges Defendant ANNETTE BONGIORNO with tax evasion for the year 2006, how do you find the Defendant?

ANNETTE BONGIORNO

Guilty X          Not Guilty ___

**Count Twenty-Eight**

28.  With respect to Count Twenty-Eight, which charges Defendant ANNETTE
BONGIORNO with tax evasion for the year 2007, how do you find the
Defendant?

ANNETTE BONGIORNO

Guilty X          Not Guilty ___

**Count Twenty-Nine**

29.  With respect to Count Twenty-Nine, which charges Defendant ANNETTE
BONGIORNO with tax evasion for the year 2008, how do you find the
Defendant?

ANNETTE BONGIORNO

Guilty X          Not Guilty ___

**Count Thirty**

30.  With respect to Count Thirty, which charges Defendant ANNETTE
BONGIORNO with corruptly obstructing the lawful administration of the Internal
Revenue Laws, how do you find the Defendant?

ANNETTE BONGIORNO

Guilty X          Not Guilty

**Count Thirty-One**

31. With respect to Count Thirty-One, which charges Defendant JO ANN CRUPI with tax evasion for the year 2004, how do you find the Defendant?

JO ANN CRUPI

Guilty X          Not Guilty ___


**Count Thirty-Two**

32. With respect to Count Thirty-Two, which charges Defendant JO ANN CRUPI with tax evasion for the year 2007, how do you find the Defendant?

JO ANN CRUPI

Guilty X          Not Guilty ___


**Count Thirty-Three**

33. With respect to Count Thirty-Three, which charges Defendant JO ANN CRUPI with tax evasion for the year 2008, how do you find the Defendant?

JO ANN CRUPI

Guilty X          Not Guilty ___


Dated: New York, New York
    March 24, 2014

_____
**Signature of Foreperson**

# Exhibit C

COURT'S
EXHIBIT NO. 2
IDENTIFICATION/EVIDENCE
DKT.# 15 CR141
DATE: 3-21-17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

‑v.‑

**CHRISTOPHER CERVINO, a/k/a "Smitty,"**
**and SHEIK F. KHAN, a/k/a "Abida Khan,"**

                    **Defendants.**

                                        **S5 15-cr-00171 (ALC)**

---

# VERDICT FORM

USDC SDNY
DOCUMENT ELECTRONICALLY
FILED
DOC#: _____
DATE FILED: 3-22-17

**COUNT ONE:**        **Conspiracy to Commit Securities Fraud**

As to Count One, how do you find the defendant, CHRISTOPHER CERVINO, guilty or not guilty?

       Guilty   ✕  _____        Not Guilty _____

As to Count One, how do you find the defendant, ABIDA KHAN, guilty or not guilty?

       Guilty   ✕  _____        Not Guilty _____


**COUNT TWO:**        **Securities Fraud**

As to Count Two, how do you find the defendant, CHRISTOPHER CERVINO, guilty or not guilty?

       Guilty   ✕  _____        Not Guilty _____

As to Count Two, how do you find the defendant, ABIDA KHAN, guilty or not guilty?

       Guilty   ✕  _____        Not Guilty _____


**COUNT THREE:**      **Conspiracy to Commit Wire Fraud**

As to Count Three, how do you find the defendant, CHRISTOPHER CERVINO, guilty or not guilty?

       Guilty   ✕  _____        Not Guilty _____

As to Count Three, how do you find the defendant, ABIDA KHAN, guilty or not guilty?

       Guilty   ✕  _____        Not Guilty _____

**COUNT FOUR:**        **Wire Fraud**

As to Count Four, how do you find the defendant, CHRISTOPHER CERVINO, guilty or not guilty?

       Guilty   ✕  _____        Not Guilty _____

As to Count Four, how do you find the defendant, ABIDA KHAN, guilty or not guilty?

       Guilty   ✕  _____        Not Guilty _____

**COUNT FIVE:**        **Aggravated Identity Theft**

As to Count Five, how do you find the defendant, ABIDA KHAN, guilty or not guilty?

Guilty ____X____        Not Guilty _____

**COUNT SIX:**        **Investment Adviser Fraud**

As to Count Six, how do you find the defendant, ABIDA KHAN, guilty or not guilty?

Guilty ____X____        Not Guilty _____

**After completing the form, the foreperson must sign below:**

New York, New York
March 22, 2017

_____
                    FOREPERSON

Steele Filipek

# Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

KALEIL ISAZA TUZMAN, and OMAR
AMANAT,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/26/17

S8 15 Cr. 536 (PGG)

**VERDICT FORM**

Please indicate your verdicts with a check mark (✓):

## COUNT ONE
### (Conspiracy to Commit Wire Fraud: Maiden Capital Investors)

**OMAR AMANAT:**        Guilty ___✓___      Not Guilty _____

## COUNT TWO
### (Wire Fraud: Maiden Capital Investors)

**OMAR AMANAT:**        Guilty ___✓___      Not Guilty _____

## COUNT THREE
### (Aiding and Abetting Investment Adviser Fraud)

**OMAR AMANAT:**        Guilty ___✓___      Not Guilty _____

## COUNT FOUR
### (Conspiracy to Commit Securities Fraud: Market Manipulation)

**OMAR AMANAT:**          Guilty _____✓_____          Not Guilty _____

**KALEIL ISAZA TUZMAN:**          Guilty __✓____          Not Guilty _____

## COUNT FIVE
### (Conspiracy to Commit Wire Fraud: Kit digital Shareholders)

**KALEIL ISAZA TUZMAN:**          Guilty __✓____          Not Guilty _____

## COUNT SIX
### (Conspiracy to Commit Securities Fraud, Make False Statements
### In Annual and Quarterly SEC Reports, and Make False Statements to Auditors)

**KALEIL ISAZA TUZMAN:**          Guilty __✓____          Not Guilty _____

When the jury has reached a verdict, the foreperson should sign and date this form and inform the Marshal that the jury has reached a verdict.

Dated: December _26_, 2017

_____
Signature of Foreperson

# Exhibit E

JAN
5/3/18
4:46 pm

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

    -against-                         S1 17-cr-357 (LAK)

DAVID BLASZCZAK, et al.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BH OW
10 S

## **Verdict Form**
Please indicate your verdict with a check mark (✓)

## **CONVERSION OF GOVERNMENT PROPERTY**

### COUNT THREE
(2012 CMS Radiation Oncology Proposed Rule)

DAVID BLASZCZAK:      Guilty  ✓      Not Guilty _____

THEODORE HUBER:      Guilty  ✓      Not Guilty _____

ROBERT OLAN:      Guilty  ✓      Not Guilty _____

CHRISTOPHER WORRALL:      Guilty  ✓      Not Guilty _____

### COUNT ELEVEN
(2012 CMS Internal Data Analysis Relevant to NxStage)

DAVID BLASZCZAK:      Guilty _____      Not Guilty  ✓

CHRISTOPHER WORRALL:      Guilty _____      Not Guilty  ✓

### COUNT THIRTEEN
(2013 CMS Kidney Dialysis (ESRD) Proposed Rule)

DAVID BLASZCZAK:      Guilty  ✓      Not Guilty _____

CHRISTOPHER WORRALL:      Guilty _____      Not Guilty  ✓

### COUNT EIGHTEEN
(2013 CMS Home Health Proposed Rule)

DAVID BLASZCZAK:      Guilty  ✓      Not Guilty _____

1

## **TITLE 15 SECURITIES FRAUD**

### COUNT FOUR
(June 7, 2012 Short Sale of Varian)

DAVID BLASZCZAK:  Guilty _____  Not Guilty ___✓___

THEODORE HUBER:  Guilty _____  Not Guilty ___✓___

ROBERT OLAN:  Guilty _____  Not Guilty ___✓___

CHRISTOPHER WORRALL:  Guilty _____  Not Guilty ___✓___

### COUNT FIVE
(June 14, 2012 Short Sale of Varian)

DAVID BLASZCZAK:  Guilty _____  Not Guilty ___✓___

THEODORE HUBER:  Guilty _____  Not Guilty ___✓___

ROBERT OLAN:  Guilty _____  Not Guilty ___✓___

CHRISTOPHER WORRALL:  Guilty _____  Not Guilty ___✓___

### COUNT SIX
(June 15, 2012 Short Sale of Varian)

DAVID BLASZCZAK:  Guilty _____  Not Guilty ___✓___

THEODORE HUBER:  Guilty _____  Not Guilty ___✓___

ROBERT OLAN:  Guilty _____  Not Guilty ___✓___

CHRISTOPHER WORRALL:  Guilty _____  Not Guilty ___✓___

### COUNT SEVEN
(June 18, 2012 Short Sale of Varian)

DAVID BLASZCZAK:  Guilty _____  Not Guilty ___✓___

THEODORE HUBER:  Guilty _____  Not Guilty ___✓___

ROBERT OLAN:  Guilty _____  Not Guilty ___✓___

CHRISTOPHER WORRALL:  Guilty _____  Not Guilty ___✓___

## COUNT EIGHT
(June 25 and 29, 2012 Short Sale of Varian)

DAVID BLASZCZAK:                Guilty _____       Not Guilty ____✓____

THEODORE HUBER:                 Guilty _____       Not Guilty ____✓____

ROBERT OLAN:                    Guilty _____       Not Guilty ____✓____

CHRISTOPHER WORRALL:            Guilty _____       Not Guilty ____✓____

## COUNT FOURTEEN
(2013 CMS Kidney Dialysis (ESRD) Proposed Rule)

DAVID BLASZCZAK:                Guilty _____       Not Guilty ____✓____

CHRISTOPHER WORRALL:            Guilty _____       Not Guilty ____✓____

**WIRE FRAUD**

COUNT NINE
(2012 CMS Radiation Oncology Proposed Rule)

DAVID BLASZCZAK:      Guilty __✓__      Not Guilty _____

THEODORE HUBER:      Guilty __✓__      Not Guilty _____

ROBERT OLAN:      Guilty __✓__      Not Guilty _____

CHRISTOPHER WORRALL:      Guilty __✓__      Not Guilty _____

COUNT TWELVE
(2012 CMS Internal Data Analysis Relevant to NxStage)

DAVID BLASZCZAK:      Guilty _____      Not Guilty __✓__

CHRISTOPHER WORRALL:      Guilty _____      Not Guilty __✓__

COUNT FIFTEEN
(2013 CMS Kidney Dialysis (ESRD) Proposed Rule)

DAVID BLASZCZAK:      Guilty __✓__      Not Guilty _____

CHRISTOPHER WORRALL:      Guilty _____      Not Guilty __✓__

## **TITLE 18 SECURITIES FRAUD**

<u>COUNT TEN</u>
(2012 CMS Radiation Oncology Proposed Rule)

DAVID BLASZCZAK:          Guilty __✓__          Not Guilty _____

THEODORE HUBER:          Guilty __✓__          Not Guilty _____

ROBERT OLAN:                Guilty __✓__          Not Guilty _____

CHRISTOPHER WORRALL:   Guilty _____          Not Guilty __✓__

<u>COUNT SIXTEEN</u>
(2013 CMS Kidney Dialysis (ESRD) Proposed Rule)

DAVID BLASZCZAK:          Guilty __✓__          Not Guilty _____

CHRISTOPHER WORRALL:   Guilty _____          Not Guilty __✓__

## CONSPIRACY TO CONVERT GOVERNMENT PROPERTY, COMMIT TITLE 15 SECURITIES FRAUD AND DEFRAUD THE UNITED STATES

### COUNT ONE

DAVID BLASZCZAK:          Guilty ___✓___        Not Guilty _____

THEODORE HUBER:          Guilty ___✓___        Not Guilty _____

ROBERT OLAN:          Guilty ___✓___        Not Guilty _____

CHRISTOPHER WORRALL:          Guilty _____        Not Guilty ___✓___


## CONSPIRACY TO CONVERT GOVERNMENT PROPERTY AND DEFRAUD THE UNITED STATES

### COUNT SEVENTEEN

DAVID BLASZCZAK:          Guilty ___✓___        Not Guilty _____


## CONSPIRACY TO COMMIT WIRE FRAUD AND TITLE 18 SECURITIES FRAUD

### COUNT TWO

DAVID BLASZCZAK:          Guilty ___✓___        Not Guilty _____

THEODORE HUBER:          Guilty ___✓___        Not Guilty _____

ROBERT OLAN:          Guilty ___✓___        Not Guilty _____

CHRISTOPHER WORRALL:          Guilty _____        Not Guilty ___✓___

6

Dated:                     , 2018

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____