

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

June 24, 2018

**BY E-MAIL AND ECF**

Hon. Ronnie Abrams
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Galanis*, S3 16 Cr. 371 (RA)

Dear Judge Abrams:

    I represent Devon Archer. I write, pursuant to the Court's direction, to address several issues that were raised at Friday's charge conference and to respond to the government's letter on the same topics [ECF No. 529].

**I.    A Conscious Avoidance Charge Would Be Inappropriate And Misleading On The Facts Of This Case**

    Mr. Archer respectfully submits that a conscious avoidance instruction is inappropriate in this case, for at least two reasons. First, there is simply no factual predicate for the charge. There is no evidence that any defendant – and certainly not Mr. Archer – took any steps to "willfully blind" himself to any relevant fact. To the contrary, the evidence is that Jason Galanis took active measures to fool Mr. Archer. The government's arguments about Mr. Archer's liability have never been based on willful blindness. Indeed, the government opened on proposition – ultimately totally unsupported in the evidence – that Messrs. Archer and Cooney "devised a scheme, a scheme to use tribal bonds to fuel" their "business empire." (Tr. at 54).

    Second, a conscious avoidance charge would be deeply confusing here. As explained further below, even where there is a sufficient factual predicate for the charge, conscious avoidance is only available to the government as a theory to prove a defendant's "knowledge" of a specific *fact*. For example, the prototypical case of conscious avoidance is a drug courier who intentionally does not ask any questions about or look inside the suitcase he or she is being paid $5,000 to convey from a foreign country to the United States. *See* Ex. A, Transcript at 6784-85, *United States v. Tuzman*, 15 Cr. 536 (PGG). But a defendant cannot be found to have acted willfully or with intend to defraud via conscious avoidance, nor can a defendant join a conspiracy through conscious avoidance. *See United States v. Ferrarini*, 219 F.3d 145, 154-55 (2d Cir. 1994) (defendant cannot consciously avoid joining a conspiracy); *United States v. Henry*, 888 F.3d 589, 601 (2d Cir. 2018) ("although a finding of conscious avoidance may be a substitute for actual knowledge, it cannot substitute for the finding of the element of 'willfulness' necessary to prove the crimes charged"); *see also United States v. Bakal*, 20 F. Appx. 37, 43 (2d Cir. 2001) (table) (finding that jury "instruction equated conscious avoidance with intent, not



knowledge," and was therefore "problematic" because "conscious avoidance is a theory of knowledge, not intent, and [] the jury had to find both intent and knowledge to convict the defendants.").

A conscious avoidance instruction "may only be given if (1) the defendant asserts the lack of some specific aspect of knowledge required for conviction; and (2) the appropriate factual predicate for the charge exists, *i.e.*, 'the evidence is such that a rational juror may reach [the] conclusion beyond a reasonable doubt . . . that [the defendant] was aware of a high probability [of the fact in dispute] and consciously avoided confirming that fact.'" *Ferrarini*, 219 F.3d at 154 (quoting *United States v. Rodriguez*, 983 F.2d 455, 458 (2d Cir. 1993)) (internal citation omitted; alterations supplied). Moreover, the second condition is only met where the evidence shows that the defendant deliberately closed his eyes to the relevant fact: "[W]e have held that conscious avoidance cannot be established when the factual context 'should have apprised [the defendant] of the unlawful nature of [his] conduct,' – and have instead required that the defendant have been 'shown to have decided not to learn the key fact.'" *Id*. at 157 (quoting *Rodriguez*, 983 F.2d at 458).

In a conspiracy case, conscious avoidance is not available to prove a defendant's intent to participate in the alleged conspiracy. As the *Ferrarini* court stated:

> There are "two aspects of knowledge involved in a conspiracy: 1) knowing participation or membership in the scheme charged and 2) some knowledge of the unlawful aims and objectives of the scheme." Conscious avoidance may not be used to support a finding as to the former, *i.e.*, intent to participate in a conspiracy, but it may be used to support a finding with respect to the latter, *i.e.*, knowledge of the conspiracy's unlawful goals.

219 F.3d at 154-55 (quoting *United States v. Lanza*, 790 F.2d 1015, 1022 (2d Cir. 1986)) (citation omitted). *See also United States v. Scotti*, 47 F.3d 1237, 1243 (2d Cir.1995) ("The reason that we do not permit conscious avoidance instructions on the issue of knowing participation in a conspiracy is that it is logically impossible for a defendant to intend and agree to join a conspiracy if he does not know that it exists.").

Likewise, in a fraud case, conscious avoidance is not available to prove a defendant's willfulness or intent to defraud. *See Henry*, 888 F.3d at 601. Rather, it is available solely to demonstrate the defendant's knowledge of some relevant fact – of course, if and only if there is a sufficient factual predicate to demonstrate that the defendant took active steps to willfully blind him- or herself to the consciously-avoided fact. *See United States v. Rodriguez*, 983 F.2d 455, 458 (2d Cir. 1993) ("[S]ince the instruction permits the jurors to infer knowledge only when persuaded beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact, the charge is warranted only if the evidence is such that a rational juror may reach that conclusion beyond a reasonable doubt."); *United States v. Lanza*, 790 F.2d 1015, 1022 (2d Cir. 1986) (conscious avoidance instruction requires that "evidence may be construed as deliberate ignorance"); *cf. United States v. Ferrarini*, 219 F.3d 145, 157 (2d Cir. 2000) ("The fact that a jury can – on the evidence – find actual knowledge does not mean that it can also find conscious avoidance.").



In this case, there is simply no fact that the defendants allegedly consciously avoided. Indeed, at Friday's charge conference, the government advanced the argument that the defendants consciously avoided the knowledge "that they were participating in a scheme with respect to these bonds," (Tr. at 3454), and "[d]id they know they were participating in a fraud?" (Tr. at 3457). In its letter, the government repeats these points, noting that John Galanis "has presented a defense that he was unaware of the fraudulent nature of the scheme," that Bevan Cooney has "presented a defense premised on his lack of knowledge of others committing a fraud," and that Mr. Archer has argued that he "did not know about [his alleged co-conspirators'] criminal conduct." [ECF No. 529, at 1-2].

With all respect to the government, these are simply not facts that one can consciously avoid, and the suggestion otherwise is both legally wrong and deeply confusing. A defendant must willfully and with intend to defraud "participate in a scheme" or "participate in a fraud," and conscious avoidance is not available as a theory to prove willfulness or fraudulent intent. *See United States v. Friedman*, 300 F.3d 111, 125 (2d Cir. 2002) (reiterating that conscious avoidance "cannot substitute for the intent necessary to prove the crimes charged" (internal quotation marks omitted) (quoting *United States v. Samaria*, 239 F.3d 228, 238 (2d Cir. 2001))); *cf. United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181 (2d Cir. 1989) ("[A] finding of conscious avoidance [cannot] alone provide the basis for finding purpose or for finding intent as a whole."). It is only available with respect to *facts*.

The government's reliance on *United States v. Cuti*, 720 F.3d 453 (2d Cir. 2013), is misplaced. Indeed, the Second Circuit in *Cuti* observed that while a conscious avoidance charge could be appropriate in a fraud case:

> District courts should pay heed, however, to circumstances in which a conscious avoidance charge may be inappropriate. This is so when the only evidence that alerts the defendant to the high probability of the criminal activity is direct evidence of the illegality such that the question for the jury is whether the defendant had either actual knowledge or no knowledge at all of the facts in question. Similarly, if the defendant denies ever having access to the facts that the government claims should have alerted him to the fraud, the issue is not whether the facts he knew should have alerted him but whether he could even have known those facts.

*Cuti*, 720 F.3d at 463. That is the case here, where the government contends that the defendants were actively aware of the misappropriation of bond proceeds, and the defendants contend that they had no such knowledge. There is simply no basis for a conscious avoidance charge.

The government's reliance on *Cuti* presumably hangs on its observation that "in a securities fraud case, if a defendant attended meetings that were part of the charged scheme, yet argues that he lacked the requisite scienter because, for example, he 'didn't bother to read in full' the documents he signed, the charge is appropriate." *Id.* (citing *United States v. Ebbers*, 453 F.2d 110 (2d Cir. 2006)). But *Ebbers* is nothing like this case. *Ebbers* involved false statements in audited financial reports filed with the SEC, and the defendant admitted that he had attended meetings at which he received information at odds with the financial statements, but claimed that



he didn't read the financials before he signed them. A conscious avoidance instruction was therefore appropriate with respect to the defendant's knowledge of the underlying facts that made the financial statements false. 453 F.2d at 124-25.

More on point is Judge Gardephe's recent decision not to give a conscious avoidance charge in *United States v. Tuzman*. The government attempts to distinguish *Tuzman* because in that case, none of the defendants were arguing that they weren't "paying attention" or "didn't read that email," whereas here, Mr. Archer has pointed to the fact that he prioritized other business and personal matters, and was lied to by his co-conspirators. But *Tuzman* is directly on point. As here, Judge Gardephe pointed out that the defendants' argument was that their co-conspirators were "lying, lying, lying" and therefore they lacked the requisite knowledge. *See* Ex. A, Tr. at 6780. With respect to the notion that the defendants weren't "paying attention," Judge Gardephe explicitly explained:

> THE COURT: But it has to be consciously avoiding. It's not just "I was really busy; I was flying around the world; I had a lot going on; I do M&As." It's got to be more than that, consciously avoiding.
>
> [AUSA]: Right.
>
> THE COURT: It can't be just "I'm busy."

Ex. A, Tr. at 6790. That is the case here. While Mr. Archer has argued that he was busy – concentrating on the sale of Rosemont Realty, his other business interests, and the birth of his two youngest children – "it's got to be more than that." In this case, there is no evidence that any defendant took any step to willfully blind themselves to any fact, let alone one that should have been obvious to them. This is a case about direct knowledge, or no knowledge at all.

Here, there is simply no fact that the defendants are alleged to have consciously avoided knowing. To be sure, all three defendants contest that they knew that Jason Galanis was misappropriating the proceeds of the WLCC bonds. But there is no factual predicate – and the government's letter certainly offers none – to suggest that any defendant actively "decided not to learn th[at] key fact.'" *Ferrarini*, 219 F.3d at 157. The government's argument in favor of a conscious avoidance charge reads out the requirement that the defendants intentionally closed their eyes to some relevant fact. Indeed, the government's arguments would support a conscious avoidance charge in literally every fraud case, but that is plainly not the law. On the facts of this case, a conscious avoidance charge is simply not appropriate.[1]

## II. The Court Should Give a Multiple Conspiracies Charge

---

[1] Especially if the Court gives a conscious avoidance charge, but even if it doesn't, the Court should also instruct the jury that it cannot infer guilty from the defendants' proximity to Jason Galanis and the other admitted co-conspirators, or from the defendants' status. Particularly if the jury is instructed on conscious avoidance, these charges are absolutely necessary to ensure that the jury does not mistakenly conclude that it can infer knowledge simply because a defendant "should have known" some fact, or should have been aware of some fact by virtue of that defendant's status within one of the various companies at issue in this case.



A multiple conspiracies charge is appropriate on the facts of this case, where the jury could easily believe that there was one conspiracy to defraud the clients of Atlantic and Hughes by failing to disclose material conflicts of interest – a conspiracy that included Jason Galanis, Hugh Dunkerley, Michelle Morton, and Gary Hirst – and another, separate conspiracy to misappropriate the proceeds of the WLCC bonds. While the government certainly argues that these two schemes are part of a single, overarching conspiracy, that is always the case when a multiple conspiracies charge is given; the issue only arises when the government alleges a single conspiracy that the jury could reasonably conclude was actually two or more separate schemes.

"A conviction cannot stand if the government has alleged a single conspiracy, but its proof demonstrates multiple conspiracies." *See United States v. Alkins*, 925 F.2d 541, 553-54 (2d Cir. 1991) (citing *Kotteakos v. United States,* 328 U.S. 750 (1946)).  Accordingly, "where the proof is susceptible to the inference that there was more than one conspiracy, the question of whether one or more than one conspiracy has been established is a question of fact for a properly instructed jury."  *United States v. Maldonado-Rivera,* 922 F.2d 934, 962 (2d Cir. 1990); *accord United States v. Uccio,* 917 F.2d 80, 87 (2d Cir. 1990); *United States v. Friedman,* 854 F.2d 535, 561 (2d Cir. 1988), *cert. denied,* 490 U.S. 1004 (1989).

"A multiple conspiracies charge is required where several different conspiracies could be inferred from the evidence offered at trial."  *United States v. Restrepo*, 547 F. App'x 34, 40 (2d Cir. 2013) (citing *United States v. Aracri,* 968 F.2d 1512, 1520 (2d Cir. 1992); *Maldonado-Rivera,* 922 F.2d at 962-63)); *see also* 1 SAND ET AL., MODERN FEDERAL JURY INSTRUCTIONS-CRIMINAL ¶ 19.01, Instruction 19-5 & cmt. at 19-22 (2009) ("Generally speaking, the instruction is appropriate in cases where a number of defendants have been collectively charged in the indictment with participation in a single, overall conspiracy, but where there is a basis for the defense claim that multiple conspiracies existed.").

"The charge is designed to assist the jury in determining whether a defendant's conduct was part of the single, comprehensive conspiracy charged."  *Id.* (citing *Aracri,* 968 F.2d at 1520). The need for such an instruction stems from the potential "'spill over effect' of permitting testimony regarding one conspiracy to prejudice the mind of the jury against the defendant who is not part of that conspiracy."  *United States v. Harris,* 8 F.3d 943, 947 (2d Cir. 1993).  "A proper multiple conspiracies instruction must stress that in order to return a conviction, jurors are required to find that the single conspiracy charged existed and that the individual defendant knowingly participated in that conspiracy."  *Restrepo*, 547 F. App'x at 40 (citing *United States v. Berger,* 224 F.3d 107, 114 (2d Cir. 2000)).

As discussed above, the government has always charged – initially in separate counts and now in a single count – two distinct conspiracies, one involving the takeover of investment advisers and criminal breaches of fiduciary duty, and another involving the misappropriation of WLCC bond proceeds.  Even after the investment adviser defendants pled, the government continued to make the same allegations and put on the same evidence that was at issue when both conspiracies were charged.  Since the evidence and allegations of both distinct conspiracies were put in front of the jury, the Court must instruct the jury on multiple conspiracies.

While no defendant at trial is charged with investment adviser fraud, the government has remained committed to arguing that the trial defendants – despite the fact that none of them are


investment advisers –conspired to commit and committed securities fraud in connection with the failure to disclose material conflicts of interest to the clients of Atlantic and Hughes. *See* Gov. Mem. In Opp. to Defendants' Pre-Trial Motions [ECF No. 308] at 33 ("A trial against any single defendant in this case would necessarily involve the same evidence of how the participants in the scheme caused the WLCC to issue more than $60 million in bonds based on false and misleading representations, caused Hughes and Atlantic clients to purchase issuances of the bonds, failed to invest the bond proceeds on the WLCC's behalf in the manner agreed upon, recycled certain of the bond proceeds, and misappropriated the proceeds of the bonds for their own purposes.").

The government has accordingly introduced hours of testimony and reams of documents to prove up a conspiracy to improperly purchase WLCC bonds in the client accounts of Hughes and Atlantic, outside of those clients' investment guidelines and without disclosing conflicts of interest. *See, e.g.* Tr. 639-59 (direct testimony of Michael Smith, representative of OSERS, a Hughes Capital Management pension fund client); 1667-88 (direct testimony of Clifton Moore, CIO of Micheline retirement plans, a Hughes client); 2033-53 (direct testimony of Daniel Turney, employee of Hughes and Atlantic Asset Management). Of course, not one of these witnesses knew or had ever met Mr. Archer or any his co-defendants. *See* Tr. 764 (Smith testifying he's never met or communicated with Devon Archer); 1689-90 (Moore, same); 2066 (Turney, same).

Although the government's theory is that the fraud on the clients of Atlantic and Hughes and the fraud on the WLCC are part of a single, overarching scheme, the jury could easily find otherwise. Each of the two schemes has different victims and involves different misrepresentations, and each could easily exist without the other. For example, the WLCC bond proceeds could be stolen regardless of the undisclosed conflicts of interest; likewise, an investment adviser can violate its fiduciary duties and place conflict-laden securities with its clients, but without any intention to misappropriate funds.

Since a "multiple conspiracies charge is required where several different conspiracies could be inferred from the evidence offered at trial," *Restrepo*, 547 F. App'x at 40 (citation omitted), one is absolutely necessary here. The allegations, charging documents, and trial evidence all show two distinct conspiracies. Mr. Archer will be hugely prejudiced without a multiple conspiracies instruction to stem the "'spill over effect' of permitting testimony regarding one conspiracy to prejudice the mind of the jury against the defendant who is not part of that conspiracy." *United States v. Harris,* 8 F.3d 943, 947 (2d Cir. 1993).

### III. The Court Should Instruct That The Jury Must Be Unanimous on One of The Government's Two Theories of Fraud in Order to Convict

Since Mr. Archer first filed pre-trial motions more than six months ago, he has argued that Count Two of the Indictment charged two separate and distinct alleged schemes as a single crime. *See* ECF No. 290 at 1, ECF No. 303 at 3; *see also* Defense Proposed Verdict Form [ECF No. 373 Ex. B]. The months of briefing and trial that followed have only reinforced what is plain in the Indictment: the government has alleged two distinct schemes, with two distinct sets of victims, as a single securities fraud.

As explained at the charge conference, the current instructions – if coupled with the government's proposed verdict form – will allow the jury to convict even if they were not unanimous on what fraud was committed. For example, six jurors could believe that the WLCC



was defrauded but the clients of Atlantic and Hughes were not; four jurors could believe that only the clients of Hughes were defrauded (*i.e.*, the third bond issuance), but not the clients of Atlantic or the WLCC; and two jurors could believe that only the clients of Atlantic were defrauded (*i.e.*, the first bond issuance), but not the clients of Hughes or the WLCC.

The government does not deny this is true but claims that, even so, a typical unanimity instruction is sufficient. *See* Tr. 3463. This is no argument. The specific unanimity instruction that Mr. Archer requests is not only undisputedly permissible under controlling Second Circuit law, but necessary to guarantee that the jury fairly evaluates the evidence against him.

The Court should use the jury charge to ensure that Mr. Archer cannot be convicted unless the jury actually agrees on his criminal conduct. The Second Circuit has provided a model instruction for this exact situation:

> (1) One more point about the requirement that your verdict must be unanimous. Count __ of the indictment accuses the defendant of committing the crime of _____ in either one of two different ways. The first is that he _____. The second is that he _____.
>
> (2) The government does not have to prove both of these for you to return a guilty verdict on this charge. Proof beyond a reasonable doubt of one or the other is enough. But in order to return a guilty verdict, all twelve of you must agree that the same one has been proved. All of you must agree that the defendant ____. Or all of you must agree that he ____.

*United States v. Shaoul*, 41 F.2d 811, 818 n.4 (2d Cir. 1994) (citing Pattern Criminal Jury Instructions of the District Judges Association of the Sixth Circuit, Instruction No. 8.03A (1991), reprinted in Modern Federal Jury Instructions: Criminal Pattern Jury Instructions 6-142 (1991)). This charge allows the jury to convict if it finds a defendant participated in either of the two alleged schemes, but eliminates the profoundly unfair possibility that the jury convict him without agreeing on which scheme he was involved in.

In fighting this simple and appropriate instruction, the government misconstrues what is permissible for what is proper. The government argues that "[t]he case law is a general unanimity instruction is *sufficient*, there does not *need* to be special findings about which theory or which facts" are proven." Tr. 3463:14-16 (emphasis added); ECF No. 529, at 7-8. This is an accurate summary of the general legal principle, but it fails to grapple with the complexity of this case and, in particular, the nature of the securities fraud charged by the government here. On the facts of this case, a more specific unanimity instruction – of the type specifically approved by the Second Circuit, as set out above – is both appropriate and necessary to ensure a fair verdict.

The Second Circuit has repeatedly made clear – before and after *Schad* – that specific unanimity instructions are proper in cases where the jury may convict on two distinct factual theories. In *United States v. Natelli*, for instance, the jury received a general unanimity instruction when two separate alleged false statements – each sufficient to convict – underlay the crime charged. 527 F.2d 311 (2d Cir. 1975). Reviewing an appeal after the jury convicted on a general unanimity instruction, the *Natelli* court stated, "When there is more than one

specification as a predicate for guilt . . . it would be sound practice to instruct the jury that they must be unanimous on a particular specification to convict." *Id.* at 325.

The Second Circuit has maintained this principle – that specific instructions are appropriate in cases where the charges are based on multiple factual theories of the crime – ever since. *See House*, 636 Fed. Appx at 53 n.3 (observing that "it would be sound practice" for courts to require a specific unanimity instruction (citing *Natelli*, 527 F.2d at 325)); *Shaoul*, 41 F.3d at 818 (remarking that it is "advisable as a matter of sound policy to give 'specific' unanimity instructions" in appropriate cases (citation omitted)); *see also United States v. Harris*, 8 F.3d 943, 945 (2d Cir. 1993); *United States v. Schiff*, 801 F.2d 108, 115 (2d Cir. 1986); *United States v. Peterson*, 768 F.2d 64, 67 (2d Cir. 1985).

Not one of these cases suggests that a trial court should not give a specific unanimity instruction when the government alleges multiple theories of the same crime. To the contrary, the Second Circuit has repeatedly commended a specific unanimity instruction in such circumstances as "sound practice." On the facts of this case, and as charged in the indictment, Mr. Archer respectfully submits that a specific unanimity charge of the type set out in *Schad* would be appropriate here and that the verdict form should similarly reflect the unique nature of the charged crimes in this case.[2]

Thank you for your consideration.

Respectfully,

 /s/  Matthew L. Schwartz
Matthew L. Schwartz

---

[2] The government attaches a series of verdict sheets to its letter, but it fails to discuss the nature of the charges in those cases. For example, the verdict sheet in *United States v. Bonaventre*, 10 Cr. 228, was a simple "not guilty" or "guilty" verdict sheet, but the government had separated different theories of securities fraud into totally separate counts, such that the indictment had already done the work of requiring unanimity of theory. As the verdict form made clear, for example, even though all of the securities fraud counts related to the massive fraud at Bernard L. Madoff Investment Securities, Count Six in that case specifically charged "securities fraud *in connection with Madoff Securities investment advisory clients*," Count Seven charged "securities fraud *in connection with audits at Madoff Securities*," and Count Eight charged "securities fraud *in connection with Madoff Securities' accounting practices.*" Having charged each flavor of securities fraud as a separate count, further specificity in the verdict sheet was not necessary. That is not the case here.