

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 25, 2018

**BY EMAIL AND ECF**
The Honorable Ronnie Abrams
United States District Judge,
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:  <u>United States v. John Galanis, et al.</u>, S3 16 Cr. 371 (RA)

Dear Judge Abrams:

  The Government writes in response to the Court's Order of this evening, requesting that the Government (1) respond to Mr. Touger's argument that he has not in fact opened the door to the admission of John Galanis's plea allocution in the *Gerova* case (the "Gerova Evidence"); and (2) identifying those portions of the allocution that it would seek to introduce in the event the Court permits the introduction of such material.

<u>Mr. Touger Has Unequivocally Opened the Door to the Gerova Evidence</u>

  As the Court is well aware, the parties have heavily litigated the admissibility of John Galanis's prior Gerova conduct. The Court ultimately precluded the Gerova evidence, in large part on the basis of Mr. Touger's representation that he did not intend to argue that John Galanis had been duped or deceived by Jason Galanis in connection with the Wakpamni bond fraud.

  Thus, during the May 16 conference, the Court found that if John Galanis "were to argue that . . he was duped by [Jason Galanis] in the context of this conspiracy, [then] that would open the door" to the Government being able to introduce the Gerova Evidence. (May 16, 2018 Tr. 8-9). Mr. Touger agreed: "I would agree with Your Honor." (*Id.*)

  On June 14, the Government argued that John Galanis had opened the door to the Gerova Evidence through his cross-examinations of Government witnesses that focused on these witnesses' "trust" of Jason Galanis and Jason Galanis's "influence" on the Wakpamni bond deals. The Court disagreed: "I don't think that is a sufficient basis to open the door to evidence of the Gerova conviction absent an explicit argument that John Galanis was unaware of Jason Galanis' history of fraud or [that] he was duped by Jason Galanis in the context of this conspiracy or question[s] to that effect." (Tr. 2457). But the Court also held that, "[t]o the extent Mr. Touger makes such an argument or questions a witness about the manner in which Jason Galanis purportedly duped John Galanis, he can still open the door, and he can do so on summations as well, and it would be within my discretion to reopen the case, as the government has suggested, and permit the government to introduce an appropriate evidence at that time. See

the *Alcantara* case, 674 Federal Appendix, at 29-30." (Tr. 2458). Mr. Touger in no way challenged the Court's ruling or statements, nor did he indicate a different view with respect to what arguments in summation might open the door to the Gerova Evidence.

Instead, without revisiting the issue in any fashion, Mr. Touger repeatedly flaunted the Court's ruling during his summation today. For example, Mr. Touger made the following statements, among others:

- "The evidence demonstrates Jason Galanis was able to fool *each and every person in this case*, *get each and every one at some time to do what he wanted without letting them know the real reason for what was really happened.* Jason fooled two of the largest successful law firms. He fools Mr. Raine[s], he fooled the most respected accounting firms in the world, that all the deals were on the up and up. He fools the marketing, *he fooled his own cronies*. The evidence clearly shows, and the prosecution has not produced any evidence to the contrary, this proves the fact that Jason could fool anyone. *Through it all, the prosecution has produced no evidence that shows that John Galanis had any idea or involvement with what his son was doing and he, John Galanis, was still held in high regard to the end.*" (Tr. 3764) (emphasis added).

- "From the outside looking in, the annuity was doing just what it was supposed to do, and then I think most clearly, most clearly Jason fooled *each and every person in this case*." (Tr. 3769) (emphasis added).

- "The evidence clearly shows Jason was lying to *everyone* to get more funds. The prosecution has produced no evidence that shows that *anyone* knew the truth." (Tr. 3748) (emphasis added).

Mr. Touger does not, and cannot, contest that he made these statements. Nor can he credibly contest that he has now argued before the jury – in direct contravention of his prior representations to the Court – that his client was duped by Jason Galanis. Instead, he appears to argue that any statements couched in the terms "the evidence showed" or the "Government did not prove" cannot open the door to previously precluded evidence. Mr. Touger is wrong.[1]

The cases cited by Mr. Touger in court today are simply inapplicable to the issue before the Court, as those cases relate to the circumstances in which defense counsel may, through argument, trigger the waiver provision of a proffer agreement and thus open the door to the admission of the defendant's proffer statements. That is not the issue before the Court. At their core, the proffer agreement cases cited by Mr. Touger hold that the mere "argument that there is insufficient evidence [] suggests no new facts and injects no alternate version of events inconsistent with the proffer statements." *United States v. Rosemond*, 841 F. 3d 95, 111 (2d Cir. 2016) (citations omitted). But that line of cases, which address the intersection of Federal Rule of

---

[1] The Government notes that even if Mr. Touger were correct, and he is not, he did not couch his statement that "Jason fooled each and every person in this case" in the "magic language" on which he now attempts to rely.

Evidence 410 and general contract principles, has nothing to say about when defense counsel may "open the door" to the admissibility of evidence pursuant to Rule 404(b) that was previously precluded by a Court. Defense counsel has failed to cite, and the Government has not located, a single case in which the framework applicable to the triggering of the admission of proffer statements has ever been applied to the question of whether evidence should be admitted pursuant to Rule 404(b) as a result of a defendant's counsel explicitly raising arguments to which such evidence would be directly responsive. Indeed, when the Court raised the straightforward framework governing that question on May 16 and again on June 14, Mr. Touger raised no disagreement.

Additionally, in the context of Rule 404(b) admissibility questions, Mr. Touger's argument makes no sense. The reason that the "the evidence shows" that Jason Galanis duped John Galanis or that "the Government has not proven" John Galanis had the requisite knowledge regarding Jason Galanis's fraudulent activity *is because the Court precluded such evidence based on Mr. Touger's express representation that he would not make such arguments*. To allow this gamesmanship and accept Mr. Touger's argument would provide for trial by ambush with no recourse and operate to eviscerate the purposes behind Rule 404(b). *See, e.g.*, *United States* v. *Mercado*, 573 F.3d 138, 141 (2d Cir. 2009) (noting the Second Circuit's "inclusionary approach" to Rule 404(b) evidence, and upholding admission of 404(b) evidence regarding, inter alia, the development of the relationship between a defendant and a co-conspirator as "relevant and highly probative as to knowledge and intent," which the Court noted was, "especially true in a case, such as the one now before us, where the prior dealings between two conspirators show the basis for the trust between the co-conspirators . . . [and] also especially applicable in this case where, as Defendant strenuously argues, some of the observed conduct might be nothing more than innocent acts of a friend, and not a knowing participation in a conspiracy") (quotations omitted).

There is little question that Mr. Touger intentionally flaunted the Court's ruling in an explicit gamble that he could get away with claiming to have been duped by Jason while avoiding the reopening of the case and the introduction of relevant and admissible evidence to the contrary. But counsel's conduct has severely prejudiced the Government and has left the jury with a wildly misleading sense of the facts. Mr. Touger was on clear notice of the consequence should he put Mr. Galanis's knowledge at issue. He should not now be able to reap the benefit of his improper behavior while preventing the Government from rebutting his false arguments.

The Proper Procedure

As the Court correctly recognized in advising Mr. Touger that if he opened the door during summations, the case might be reopened, the case actually governing this situation is *United States v. Alcantra*, 674 F. App'x 27 (2d. Cir. Dec. 22, 2016). As set forth in *Alcantra*, the Court should adopt the following procedure.

- First, the Court should now consider the admissibility of the Gerova Evidence under Rule 404(b) in light of the fact that the defendant has unequivocally now put at issue his lack of knowledge or intent. Such consideration must, of course, include a Rule 403 inquiry. The Government respectfully submits that – for all the reasons previously recognized by the

Court – the facts here weigh strongly in favor of admission given the centrality of knowledge and intent to the articulated defense. Indeed, as previously addressed by the Court, the Government is not even seeking to introduce John Galanis's Gerova conviction, rather it seeks to introduce only portions of his guilty plea allocution, further undermining any claim of unfair prejudice.

- Second, if and when the Court rules the Gerova Evidence admissible, the Court should instruct the jury that the Government will be permitted to briefly reopen its case in light of an argument forwarded by the defense. The Government will then offer the below specified Gerova Evidence.

- Third, the Court should then give an appropriate limiting instruction concerning the Gerova Evidence, namely that the Gerova Evidence may be used solely to establish knowledge or intent and not for propensity.

- Fourth, the Government would then give a very brief supplemental summation, followed by a similarly brief supplemental summation by Mr. Touger. This is necessary in order to permit the parties to argue the supplemental evidence to the jury.

- Fifth, summations would then resume in the normal course with summations by Archer and Cooney and the Government's rebuttal summation.

## The Scope of Additional Proof

In the event the Court permits the Government to reopen the case, the Government would seek to offer the following portions of John Galanis's plea and sentencing transcripts:

> I, John Galanis, along with others conspired to commit securities fraud in or about 2009 to in or about 2011 in that I and others openly managed brokerage accounts of an individual and effected the sale of Gerova stock and received and concealed proceeds derived therefrom knowing that this activity was designed to conceal from the investing public the true ownership and control of that Gerova stock.

Transcript, *United States* v. *Galanis*, 15 Cr. 643 (PKC), (S.D.N.Y. July 20, 2016), at 21.

From Galanis's sentencing allocution, the Government seeks to introduce the following:

> Most of my involvement in the Gerova matter started when Jason came to me and asked me to sell the shares on an arrangement he had made with an investment advisor . . . . Jason explained that the deal would be the investment advisor would buy shares which would save him and Gerova.

[Additional Text on Following Page]

Transcript, *United States* v. *Galanis*, 15 Cr. 643 (PKC), (S.D.N.Y. Feb. 16, 2017), at 21-22.

        Respectfully submitted,

        ROBERT KHUZAMI
        Attorney for the United States, Acting Under
        Authority Conferred by 28 U.S.C. § 515

By: ____/s_____
    Rebecca Mermelstein
    Brendan F. Quigley
    Negar Tekeei
    Assistant United States Attorneys
    (212) 637-2360/2190/2442

cc:    Defense Counsel (via e-mail)