# PELUSO & TOUGER, LLP

*ATTORNEYS AT LAW*
*70 LAFAYETTE STREET*
*NEW YORK, NEW YORK 10013*

TELEPHONE: (212) 608-1234
FACSIMILE:   (212) 513-1989

August 17, 2018

Honorable Ronnie Abrams
United States District Court Judge
United States Courthouse
40 Foley Square
New York, New York 10007

Re:   **United States v. John Galanis**
      **16 CR 371 (RA)**

Dear Judge Abrams:

Please accept this letter brief as Mr. Galanis' Rule 29 motion.   The standard for evaluating a Rule 29 motion for acquittal is whether viewing all the evidence in the light most favorable to the government, any rational jury could find the defendant guilty beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979).  The defendant moves for a judgment of acquittal on the grounds that the government failed to present sufficient proof from which any rational juror could conclude beyond a reasonable doubt that John Galanis is guilty on each and every count for which he stands convicted.

The evidence submitted to the jury was insufficient to prove John Galanis was a member of the charged conspiracy.  The evidence submitted to the jury contained no direct evidence that John Galanis ever knowingly joined the conspiracy.  His membership in the conspiracy is solely based on circumstantial evidence.  While the absence of direct evidence is not necessarily dispositive, "if the evidence viewed in the light most favorable to the prosecution gives 'equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence,' then 'a reasonable jury must necessarily entertain a reasonable doubt.'" United States v. Glenn, 312 F.3d 58, 70 (2d. Cir. 2002) (quoting United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996)).  Here, the government's evidence gave "nearly equal circumstantial support" to the notion that John Galanis never intentionally mislead anyone, but instead only acted to introduce the WLCC and Burnham in order to obtain a bonus for himself and because he believed the bonds would benefit both parties.  See id.; see also United States v. Newman, 773 F.3d 438, 451 (2d. Cir. 2014) (vacating defendants' convictions of insider trading due to insufficiency of the evidence and specifically the government's failure to prove the defendants acted knowingly and willfully); United States v. Coplan, 703 F.3d 46, 69 (2d.

Honorable Ronnie Abrams
Page 2 of 4
August 17, 2018

Cir. 2012) (vacating conspiracy conviction because the evidence as to intent, when "viewed in the light most favorable to the government, remains, at best, equipoise.").

"Although circumstantial evidence alone can support a conviction, there are times that it amounts to only reasonable speculation and not to sufficient evidence." Newman v. Metrish, 543 F.3d 793, 796 (6th Cir. 2008); United States v. Cartwright, 359 F.3d 281, 291 (3d Cir. 2004). This is exactly the situation herein. Here, the evidence the government most relied on to prove that John Galanis was a member of the conspiracy is the fact that he is the father of Jason Galanis. It is axiomatic law that the mere relationship with a member of the conspiracy is not enough to prove that one is a member of the conspiracy. John Galanis maintained throughout the trial that he was not meeting with and communicating with members of the WLCC and their representatives in a nefarious manner in order to get the WLCC to issue bonds, and no evidence was presented to the contrary. He maintained that the goal of his involvement was to benefit himself financially through a bonus payment for introducing the WLCC to Burnham and that the bonds themselves would also benefit the WLCC and Burnham. The evidence presented at trial was insufficient to prove beyond a reasonable doubt that John Galanis ever knowingly and intentionally joined the charged conspiracy. "It would not satisfy the [Constitution] to have a jury determine that the defendant is *probably* guilty." Coplan, 703 F.3d at 69 (citing Sullivan v. Louisiana, 508 U.S. 275, 278 (1993)).

In order to prove that John Galanis acted to aid the charged conspiracy, the government had to prove that John Galanis misled the WLCC representatives during the negotiations on the bond deal. John Galanis never made any material misstatements with the intent to defraud anyone in this matter. John Galanis made no material misstatements to the WLCC in order to induce them to agree to sell bonds. See United States v. Litvak, 808 F.3d 160, 181-82 (2d. Cir. 2015) (whether misstatements are "material" is the central issue in a securities fraud case). John Galanis owed no fiduciary responsibility to the WLCC, as they were represented by attorneys of their own choosing who were well versed in this area of law. There was no proof that WLCC decided to sell the bonds in question based on any statements made by John Galanis, as his role in this matter was merely as the person who brought two entities together, the WLCC and Burnham.

The vast majority of the negotiations regarding this bond transaction did not involve John Galanis at all and only involved the WLCC's lawyers and Jason Galanis who was purportedly acting on behalf of Burnham. John Galanis' statements to the WLCC were mostly limited to the initial meeting between the parties at the convention in Las Vegas. At that meeting John Galanis stated that his son had a position at Burnham wherein he had great influence on deciding what investment opportunities Burnham would become involved in. The evidence at trial certainly proves this statement to be true. Second, John Galanis stated that because the Wakpamni Lake Community had sovereign immunity that they would not be able liable for the bond value if the bonds went unpaid. The evidence at trial also proves this statement to be true. Thereafter, the only role John Galanis had was as someone who transferred information from Jason Galanis to the WLCC representatives and vice versa. John Galanis made no material

Honorable Ronnie Abrams
Page 3 of 4
August 17, 2018

misstatements at any time.  John Galanis never willfully misled the WLCC or any of their representatives.  In addition, John Galanis made no misstatements to any of the investors in the WLCC bonds, as each investor witness testified that they had never communicated with John Galanis in any fashion and had never even heard his name mentioned.  "In order to impose criminal liability, the government must also prove that the defendant willfully violated the law." United States v. Vilar, 729 F.3d 62, 88 (2d. Cir. 2013); see also Newman, 773 F.3d at 451.  The government has failed to do so herein.

Furthermore, the fact that John Galanis received a commission from Jason Galanis from proceeds of the bonds does not prove that John Galanis was a member of the charged conspiracy.  The evidence at trial clearly demonstrated that commissions are a recognized form of payment in these types of financial deals, that the WLCC representatives assumed John Galanis would receive a commission and that the amount of his commission was within the normal range of commissions paid in these types of financial deals.

It is alleged by the government and was so charged that there was one overwhelming conspiracy that began with John Galanis meeting with and recruiting the WLCC leaders to issue bonds and ended after the WLCC had issued three separate tranches of bonds totaling approximately $65 million dollars.  It is alleged that the goal of the charged conspiracy was to steal those proceeds.  As part of the charged conspiracy, it was alleged by the government that Jason Galanis conspired with Michelle Morton and others to aid Ms. Morton in purchasing two investment advisory firms, Hughes and Atlantic, and then using the institutional customers of those firms to purchase the bonds from the WLCC without the permission of the institutional clients and against their best interests.

However, during the trial of this matter it became clear that John Galanis did not participate in the purchase of Hughes and Atlantic and the ensuing use of their clients to purchase the WLCC bonds.  There was also no proof presented that John Galanis had any knowledge of this aspect of the conspiracy nor was this aspect of the conspiracy reasonably foreseeable to him.  It is the position of John Galanis that there were two separate and distinct conspiracies proven, not the one all-encompassing conspiracy that was charged in the indictment.

The evidence produced at trial clearly demonstrated that there were at least two conspiracies involved in this case.  The evidence at best proves there was one conspiracy which included Jason Galanis, John Galanis and others, and the goal of this conspiracy was to convince the WLCC to issue bonds and then as the jury found to misappropriate the funds.   Then, a second conspiracy that included Jason Galanis, Hugh Dunkerly, Michelle Morton and others to purchase Hughes and Atlantic and use their institutional clients to purchase the WLCC bonds.  When the evidence demonstrates that two separate and distinct conspiracies were formed as opposed to the one conspiracy charged in the indictment, the Court must determine whether any defendants were prejudiced, and if so, a trial order of dismissal must be granted. See United States v. Gonzalez, 399 Fed. Appx.

Honorable Ronnie Abrams
Page 4 of 4
August 17, 2018

641, 645 (2d. Cir. 2010) ("[I]f there is a variance between the single conspiracy charged and multiple that have been proved at trial, we reverse only upon a showing of substantial prejudice."); see also United States v. Cambindo Valencia, 609 F.2d 603, 641 (2d. Cir. 1979) ("a multiple conspiracy charge is required whenever several conspiracies might be inferred from the evidence").

      Not only can the government not point to one item of evidence in this case or the testimony of any witness that demonstrates that John Galanis had any involvement or knowledge of the actions by Jason Galanis and others relative to the purchase of Hughes and Atlantic and the improper use of their institutional clients, the government cannot demonstrate that John Galanis had any reason to believe any improprieties regarding the purchase of the bonds was being committed by Jason Galanis and others.  John Galanis' involvement or knowledge of this activity is pure speculation and not based on any evidence, but rather his association with other bad actors.  "[T]he inferences rising from keeping bad company are not enough to convict a defendant of conspiracy." United States v. Wexler, 838 F.2d 88, 91 (3d Cir. 1988). "[G]uilt of a conspiracy cannot be proven solely by family relationship or other type of close association." United States v. Ritz, 548 F.2d 510, 522 (5th Cir. 1977); see also United States v. Armone, 363 F.2d 385, 403-404 (2d. Cir. 1966) (holding district court properly charged that membership in a conspiracy cannot be proved merely because of family relationship).  A defendant's "participation in a scheme whose ultimate purpose a defendant does not know is insufficient to sustain a conspiracy under 21 U.S.C. § 846." United States v. Sliwo, 620 F.3d 630, 633-34 (6th Cir. 2010); accord United States v. Boria, 592 F.3d 476, 481-82 (3d Cir. 2010); see also United States v. Rodriguez, 392 F.3d 539, 545-46 (2d Cir. 2004). Here, the evidence proves two distinct conspiracies with two distinctly different participants and goals therefore the verdicts must be overturned.

      For all of the above reasons John Galanis respectfully requests that his motion for acquittal pursuant to Rule 29 be granted.

Respectfully submitted,

David Touger