I6MJGAL1                        Charge Conference

```
1   UNITED STATES OF AMERICA
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        16 Cr. 371 (RA)

5   JOHN GALANIS, et al.,

6              Defendants.

7   ------------------------------x

8                                   New York, N.Y.
                                    June 22, 2018
9                                   11:00 a.m.

10

    Before:
11
                    HON. RONNIE ABRAMS,
12
                                        District Judge
13

14                          APPEARANCES

15  ROBERT KHUZAMI,
         Acting United States Attorney for the
16       Southern District of New York
    BY:  BRENDAN F. QUIGLEY,
17       REBECCA G. MERMELSTEIN,
         NEGAR TEKEEI,
18            Assistant United States Attorneys

19  PELUSO & TOUGER
         Attorneys for Defendant John Galanis
20  BY:  DAVID TOUGER

21  BOIES, SCHILLER & FLEXNER LLP (NYC)
         Attorneys for Defendant Devon Archer
22  BY:  MATTHEW LANE SCHWARTZ
         LAURA HARRIS
23       CRAIG WENNER

24

25
```

I6MJGAL1                      Charge Conference

1   Appearances (Cont'd)

2

3   PAULA J. NOTARI
         Attorney for Defendant Bevan Cooney
4             - and -
    O'NEILL and HASSEN
5        Attorneys for Defendant Bevan Cooney
    BY:  ABRAHAM JABIR ABEGAZ-HASSEN
6

7

8   Also present:  Kendall Jackson, Paralegal
                   Ellie Sheinwald, Paralegal
9                          Eric Wissman, Paralegal
                           Special Agent Shannon Bienick, FBI
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I6MJGAL1                         Charge Conference

1              (Trial resumes)

2              (In open court; jury not present)

3              THE COURT:  Good morning, everyone.  You may be

4     seated.  Are we waiting for anybody?

5              MR. QUIGLEY:  Not from the government.

6              THE COURT:  All right.

7              MR. TOUGER:  This is off the record.

8              (Off-the-record discussion)

9              THE COURT:  That is fine.  I just wanted to make sure.

10    I thought we were waiting for him, but I am glad we can

11    proceed.

12             So I obviously circulated a draft charge last night.

13    I'm happy to go through any objections that you have.  I think

14    we probably should send back a copy of the indictment unless

15    there is a strong objection.  Obviously, it needs to be

16    redacted.  Then there are certain things in the charge I am

17    sure you saw.  I instructed on Count 2 first and then Count 1.

18    We could change the order in the indictment.  I don't think

19    that is necessary.

20             MR. QUIGLEY:  I don't think so, your Honor.

21             THE COURT:  I thought it was easier to do that way.

22    There are a number of proposed instructions that I didn't

23    include that if anyone has an objection to, you can let me

24    know.

25             Immunity was something that I wanted to make sure the

I6MJGAL1                        Charge Conference

1    language that I used was accurate.  I took out references to

2    non-proses because I don't think anyone got a non-pros, did

3    they?

4              MR. QUIGLEY:  That's right.  We have a couple of

5    exhibits.

6              THE COURT:  The safe harbor, I don't know if you

7    wanted to add that in.  We'll talk about that.

8              I changed the proposed interstate commerce instruction

9    a little bit and used a more standard one, but again I am open

10   to discussing that.  We need to add in Dr. Archer's testimony

11   in terms of character, a character witness.

12             I didn't know if you needed specific investigative

13   techniques.  Why don't we go through it and let me know.  Who

14   wants go first with their objections?

15             MR. QUIGLEY:  It makes sense to go through by page.

16             THE COURT:  Sure.  Why don't you start, Mr. Quigley,

17   and just go and page-by-page.

18             MR. SCHWARTZ:  Can I ask you to identify the charge

19   because I am looking at a red-lined item.  I didn't have time

20   to go back to the original.

21             THE COURT:  Sure.  While you're going through it, let

22   me say this about motions.  It may be best -- I am open to

23   whatever the defense wants -- it may be best to just hold off

24   until after the jury comes back, and if there are convictions,

25   then we can discuss if you want to do something in a written

1    format or orally.

2            MR. TOUGER:  That would be my request.

3            THE COURT:  Your preference?

4            MR. TOUGER:  Yes.

5            MS. NOTARI:  Mine as well.

6            MR. SCHWARTZ:  I am happy to do anything.  I want to

7    be practically-minded as long as I am fully reserved.

8            THE COURT:  You're fully reserved, no doubt about

9    that.  The record is clear.  I think that is the best practice.

10            MR. QUIGLEY:  We would obviously agree with that.  It

11    is not our motion.

12            THE COURT:  I wanted to get that out of the way

13    because it affects the timing.

14            MR. QUIGLEY:  So on the record is reserved.

15            THE COURT:  What page?

16            MR. QUIGLEY:  Page 11.

17            THE COURT:  Okay.

18            MR. QUIGLEY:  Actually, Page 12, circumstantial

19    evidence is as valuable as direct evidence.  Just a minor

20    comment, but the last sentence based on all the evidence or

21    lack of evidence in the case, circumstantial and direct.

22    Perhaps it should read circumstantial or direct.

23            THE COURT:  Okay.

24            MR. QUIGLEY:  Then Page 14, cooperating witness

25    testimony.

1              MR. TOUGER:  The name?

2              THE COURT:  If it is about that thing, you can, but I

3     will give you the opportunity to make any objections you want

4     to make as well.

5              MR. TOUGER:  The only thing on circumstantial evidence

6     is I would ask that the following language which comes from

7     United States versus Glenn, 312 F.3d 58, at Page 70 (2d Cir.

8     2002), also given by the Honorable Robert P. Patterson in

9     United States versus Martinez Sandoval, 01 Cr. 307, and the

10    language is that where two equally strong inferences can be

11    drawn from the same facts, one favorable to the prosecution and

12    one favorable to the defendant, then you should draw the

13    inference that is favorable to the defendant.  It is for you

14    and you alone to decide what inferences you will draw.

15             THE COURT:  I am not inclined to add that language,

16    but I will take a look at it and I'll think about it.  I will

17    see if there are other charges that have used that.  I am not

18    inclined to include that.  I don't believe I have ever included

19    that in a charge before, but I will consider it.

20             MR. QUIGLEY:  Just for the record, we object to that.

21             Page 14, cooperating witness testimony.  So you have

22    also heard from a witness who testified that they were -- I

23    don't know if your Honor was -- it was he.

24             THE COURT:  That he was.

25             MR. QUIGLEY:  He was.

1            THE COURT:  We only had Dunkerley?

2            MR. QUIGLEY:  Right.  Then it says the witness has

3    agreed to testify and cooperate with the government in exchange

4    for the government's agreement to ask the court to give him a

5    lighter sentence than he would otherwise receive.

6            I think that misstates the cooperation agreement.  He

7    was very clear and consistent with the standard cooperation

8    agreement in this district, he received no promise of any

9    particular sentence.  The more standard language is he agreed

10   to testify and cooperate with the government in the hopes of

11   receiving a reduced sentence.

12           MR. TOUGER:  I also argue the government has agreed to

13   put in a 5K1 letter.  They have agreed to allow the court to

14   give him a reduced sentence.

15           MR. QUIGLEY:  If he complies with his cooperation

16   agreement.  The cooperation agreement is not complete yet and

17   we don't -- he was very clear, and again it is standard with

18   all cooperators in this district, that the Judge ultimately

19   determines his sentence.  The government never asks in the 5K

20   letter for any particular sentence.  In 25, 35 5K letters we

21   have never asked for a particular sentence.  That is the way it

22   works.

23           MR. SCHWARTZ:  Section 5K1.1 of the guidelines is a

24   section about downward departures from the guideline range.  It

25   is apparently about seeking a lighter sentence.  Of course, it

1    is true that the government's obligations aren't triggered

2    unless the other side lives up to their obligations, but that

3    is true of any contract.

4           If one side breaches a contract, the other side

5    doesn't have to perform.  The law is clear cooperation

6    agreements are contracts and the essential benefit of the

7    bargain is testimony in exchange for 5K1 letter, meaning a

8    request for lighter sentence.  Your Honor has gotten it exactly

9    right.

10          THE COURT:  This is the language you had proposed, not

11   surprisingly, but I will consider your arguments with respect

12   to.

13          MR. QUIGLEY:  Thank your Honor.

14          So immunity, Page 16, paragraph N, you have heard

15   testimony of witnesses who testified under a grant of immunity

16   from this Court, and then the next sentence begins with, with

17   respect to both categories of witnesses.  That is left over

18   from when it is referred to both immunity and non-pros, so that

19   first clause should be stricken.

20          THE COURT:  Right.  Right.  Just start with "this

21   means that."

22          MR. QUIGLEY:  What this means is the testimony of the

23   witness will not be used against him in any criminal case

24   exception a prosecution for perjury or false statement.

25          MR. SCHWARTZ:  While we are looking at that charge, a

1    minor language point, if we can change "this Court" to "the

2    Court."

3            MR. QUIGLEY:  That is fine with us.

4            THE COURT:  Sure.

5            MR. SCHWARTZ:  That appears two or three times just in

6    the immunity section.

7            THE COURT:  I see it twice, but I am happy to make

8    that change.

9            MR. SCHWARTZ:  Three times, on the second line from

10   this Court.

11           THE COURT:  Where is the third?  So I see it in the

12   first sentence.

13           MR. SCHWARTZ:  In the last two --

14           THE COURT:  I see.  It is the last, got it, I see,

15   okay.

16           MR. SCHWARTZ:  Then the second line in the second

17   paragraph, right.

18           THE COURT:  Yep, got it.  Okay.  Thanks.

19           MR. QUIGLEY:  Then the same instruction, final

20   paragraph, however, the testimony of a witness who has been

21   granted immunity should be examined closely to determine

22   whether or not it is colored in such a way as to place guilt

23   upon a defendant in order to further the witness' own

24   interests.  For that not being in there, the objection is more

25   to the next sentence, such testimony should be scrutinized with

1    you with great care and you should act upon it with caution.

2              I think generally a standard credibility instruction

3    is sufficient for all types of witnesses, and here it seems to

4    go well beyond that.  I think certainly the first sentence of

5    that paragraph is sufficient to flag the jury's attention to

6    the potential biases of an immunized witness.  I don't think it

7    is appropriate to say they should act upon it with caution.  It

8    is any other witness.

9              MR. TOUGER:  It is not any other witness.  They're an

10   interested witness, and this is the standard I have seen many

11   times in this Court.

12             MR. QUIGLEY:  They're not interested witnesses.  They

13   have no interest in the outcome of the case.

14             MR. TOUGER:  Okay.

15             MR. QUIGLEY:  Their immunity is not at all dependent

16   upon the outcome of the case.

17             MR. TOUGER:  Not the outcome, but interested witness

18   in keeping somebody happy.

19             MR. QUIGLEY:  In telling the truth.

20             MR. SCHWARTZ:  At least one of them testified

21   explicitly they hoped by coming in here testifying pursuant to

22   the grant of immunity, that would result in them not being

23   charged subsequently.

24             MR. TOUGER:  Mr. Martin testified he is here to tell

25   the truth you want to hear.

I6MJGAL1                    Charge Conference

1          MR. QUIGLEY:  We are fine with the first sentence.

2          The additional such testimony should be scrutinized by

3     you with great care and how you should act upon with caution

4     suggests these are super-special category of witnesses that I

5     don't think is really necessary.

6          MR. TOUGER:  I have heard that charge in many

7     courtrooms in this Court, your Honor.

8          THE COURT:  It is clearly appropriate in the context

9     of the cooperating witness or someone who gets a non-pros.

10         MR. TOUGER:  In essence, Mr. Martin is getting a

11    non-pros.  He is back in Spain where he can never, as he said,

12    he is perfectly safe.  While they didn't give him a formal

13    non-prosecution, in reality, he is not going to get prosecuted

14    for this crime.

15         THE COURT:  Look, my views, I don't think you need

16    both sentences, that it should be examined closely to determine

17    whether it is colored in such a way and it should be

18    scrutinized with good care.  I think with great care and you

19    should act upon it with caution.  I don't think we need both of

20    those because I think they're repetitive because the focus is

21    you should pay closer attention to this.

22         MR. QUIGLEY:  That is okay.  I don't think we need

23    both sentences.

24         THE COURT:  I'll take out one of those two.

25         MR. QUIGLEY:  We would prefer the second sentence be

1    struck, the one with great care and caution.

2              THE COURT:  I will look at those and I'll think about

3    it.

4              MS. NOTARI:  I just think the second sentence is less

5    legal, less legalese, more user friendly.

6              MR. TOUGER:  If you take out a sentence, the second

7    one is the one that should be taken out.

8              MR. SCHWARTZ:  We leave it to your Honor to combine

9    the sentences appropriately.

10             THE COURT:  I will do that.  I will leave in the

11   notion they should examine this testimony closely, but I don't

12   think it needs to be repetitive.

13             MR. QUIGLEY:  I just think Ms. Tekeei's point of our

14   original requested charge, I think some of this is left over

15   from when --

16             THE COURT:  When there was a non-pros in the same

17   instructions?

18             MR. QUIGLEY:  Right.

19             THE COURT:  That is what my question was.

20             Also do you want to mention the safe harbor letter?

21   Is that necessary?

22             MR. QUIGLEY:  I don't think it is.  He wouldn't have

23   come here without it.

24             THE COURT:  Right.  He didn't get a benefit from the

25   safe harbor.  It is a protection if he comes, but --

1     MR. QUIGLEY:  I think it is a fair argument from the

2     defense, but I don't think it needs to be relayed in the jury

3     charge.

4     MR. SCHWARTZ:  I am thinking about that for the first

5     time.  I didn't realize when your Honor referred to safe harbor

6     before, I think safe passage --

7     THE COURT:  That is what I meant.

8     MR. SCHWARTZ:  I get that now.  Can we come back to

9     that?  I want to reflect on that for a second.

10    THE COURT:  Sure.  What is next?

11    MR. QUIGLEY:  Character testimony I guess we'll fill

12    in with Dr. Archer, right?  That is the one character witness

13    we've had.  Page 19, Q.

14    THE COURT:  Is there going to be any other character

15    testimony?

16    MR. SCHWARTZ:  I don't think so, your Honor.

17    MS. NOTARI:  Could there be a sentence that a

18    defendant is certainly under no burden to put on character,

19    because this is unusual.  We have a situation where one put on

20    character testimony, and perhaps there might be an inference

21    held against Mr. Cooney that, you know, he didn't put on?

22    THE COURT:  Why don't we start that paragraph by

23    saying although a defendant is under no obligation to offer any

24    testimony or present any testimony or something like that, you

25    have heard the testimony of Dr. Archer.  You have heard the

1    testimony -- you have heard testimony --

2              MR. SCHWARTZ:  Mr. Archer.

3              THE COURT:  -- that Mr. Archer has a good reputation.

4              MR. SCHWARTZ:  For honesty and trustworthiness.

5              MR. QUIGLEY:  Reputation for honesty and

6    trustworthiness is fine with us.

7              THE COURT:  Okay.

8              MR. SCHWARTZ:  Also Michelle Morton thinks he is cute.

9              THE COURT:  Yes.  What is next?

10             MR. QUIGLEY:  I know your Honor asked about specific

11   investigative techniques on Page 20.  I think I would just ask

12   that we reserve on that until after closing.  I don't know what

13   arguments they're going to make.  This has been some suggestion

14   of when people were interviewed and stuff, but let's see where

15   that goes.

16             THE COURT:  I will reserve on that.  The language is

17   okay?

18             MR. QUIGLEY:  Yes.  Just to confirm, I don't think

19   there are any testimonial stipulations.

20             MR. SCHWARTZ:  That is my memory.  There are fact

21   stipulations and there are document stipulations.

22             MR. QUIGLEY:  On the substantive instructions --

23             THE COURT:  The stipulation --

24             MR. QUIGLEY:  -- is fine as-is.

25             THE COURT:  Fine as-is?

1          MR. QUIGLEY:  On the substantive instructions,

2     Paragraph 2 A, Page 23 under indictment, I think the final

3     paragraph of that is duplicative of the rest of the charge.

4          To find the defendants guilty, you must find the

5     government proved the specific charges in the indictment.

6     There is no other charges or crimes referenced in this charge.

7     The jury is instructed they have to find that the government

8     proved beyond a reasonable doubt each of the elements of the

9     offenses.  I think that just invites jury speculation and it is

10    duplicative.

11         MR. SCHWARTZ:  I think the jury has heard evidence of

12    all sorts of other crimes and insinuations of other crimes, and

13    so it is appropriate to remind the jury that in order to find

14    the defendants guilty, they have to find the defendants guilty

15    of the crimes that are actually charged in the indictment.

16         MR. QUIGLEY:  That is what the whole instructions are

17    about, the charges contained in the indictment.

18         THE COURT:  I am just going to leave that in.  It is

19    self-evident, but I also don't see the harm.

20         MR. QUIGLEY:  Page 25, Paragraph V, consider each

21    defendant and each count separately.  In addition, some of the

22    evidence was admitted against only one defendant.  Let me

23    emphasize that any defendant -- solely admitted against one

24    defendant.  That is confusing in light of the charge of

25    reasonable foreseeability.  I don't think there has been any

1    real independence 404 (b) type evidence that was not related to

2    the conspiracy as a whole.  We would move to strike that.

3              THE COURT:  Was there any evidence?

4              I am asking defense counsel now, that was limited to

5    only one defendant?

6              MR. SCHWARTZ:  Well, to my memory, there was not

7    evidence that came in an instruction that was limited to one

8    defendant.  There was no 404 (b) limiting instruction given for

9    anything, as I recall, which is why there was no prior bad acts

10   charged in here, which I think is appropriate.

11             There certainly was a lot of evidence that only

12   related to one or two of the defendants.  Your Honor gave an

13   instruction in the middle of trial with respect to one of

14   those.  I certainly agree it is tied to the notion of

15   reasonable foreseeability, so it might make sense to put those

16   two charges closer together, but there are separate concepts.

17             One is you can only consider evidence against the

18   defendant if it is an act of an alleged co-conspirator if you

19   determine it was made in furtherance of the conspiracy and it

20   was reasonably foreseeable to them.

21             Then what we're talking about now is the consequence

22   of having made that determination, then that evidence is,

23   therefore, admissible as to one defendant.  Just to ground it

24   in the facts of this case, when your Honor gave that specific

25   instruction, it related to things that John Galanis had said to

I6MJGAL1                    Charge Conference

1   the WLCC about the demand for further bond issuances.  That

2   plainly is evidence that is properly admissible against John

3   Galanis, for whatever it is worth, for something he supposedly

4   said.

5           Our argument would be that was to the extent it

6   happened, not reasonably foreseeable to Mr. Archer, I presume

7   Mr. Cooney and, therefore, not admissible as to them.  You need

8   both pieces of the puzzle to complete that thought.

9           MR. QUIGLEY:  The whole reasonable foreseeability

10  point is more than adequately addressed in your Honor's later

11  instruction for liability and acts and declarations for

12  co-conspirators.  What this instruction is intended to refer to

13  is independent 404 (b) evidence of some prior bad act of one

14  defendant, which is not -- that is not at issue here.  The

15  issue is we have charged a conspiracy, whether certain acts of

16  the defendants were reasonably foreseeable.

17          I think what is confusing and prejudicial to the

18  government about it, it suggests to the jury if one defendant

19  did something in furtherance of the conspiracy, they can't

20  consider that against the other defendants.  I think having the

21  liability for acts and declarations of the co-conspirators

22  instruction is sufficient to deal with that, what the law is on

23  that issue.  Having it in one place is not --

24          MR. SCHWARTZ:  I am going to -- I had a thought in my

25  head.  It is not a total response to that, so I'll pause.

1          THE COURT:  All right.  Let me look at the reasonable

2     foreseeability section and then I'll decide if we need this in

3     addition or if it is confusing.

4          MR. SCHWARTZ:  That is fine.  Can I just say what was

5     in my head because otherwise I'll lose it.

6          I said a second ago that there was no 404 (b) evidence

7     put in.  I think that's right.  There was evidence that the

8     government had moved on under 404 (b) that sort of a little

9     teeny bit came in and didn't come in pursuant to any

10    instructions.  Does it really come in?  I don't know how

11    they're going to argue it.

12         Depending on how they argue it, it may be appropriate

13    to have a similar act or a prior bad acts, subsequent bad act

14    charge if we can.

15         THE COURT:  What are you referring to specifically?

16         MR. SCHWARTZ:  Specifically I am thinking about the

17    so-called Wisconsin bonds, which is at least, as laid out in

18    the government's motion prior to trial, was going to be another

19    scheme which they said was to similar effect to misappropriate

20    the proceeds of a different bond issuance from a different

21    consortium of tribal related entities.

22         To my memory, and they put in stuff that wasn't read

23    in so it may be buried in there, but to my memory, the only

24    time any evidence of that was really put in front of the jury

25    so far was a single email in which Jason Galanis sort of lays

I6MJGAL1                          Charge Conference

1   out a plan for a further bond issuance without, obviously, any

2   discussion of misappropriating funds.

3           THE COURT:  That was focused on the interest payments,

4   right?

5           MR. SCHWARTZ:  No, no.

6           THE COURT:  Is that right?

7           MR. SCHWARTZ:  This is totally different.

8           MR. QUIGLEY:  Without backing away from our position

9   as to what the facts were, the Wisconsin bonds is something we

10  haven't emphasized certainly in the trial.  It is not something

11  I do not see us emphasizing in summation.

12          MR. SCHWARTZ:  All I am saying is if they argue it in

13  a way that is unexpected to me, and it sounds unexpected to Mr.

14  Quigley, we revisit it at that time.

15          MR. QUIGLEY:  No objection to revisiting.

16          THE COURT:  That is fine.  We'll revisit it.

17          I will tell you right now I am inclined to take this

18  paragraph out.  I do think it is confusing in light of the way

19  the evidence has come in.  As I said, I'll take a closer look

20  at the reasonable foreseeability section.

21          MR. QUIGLEY:  You were intending to take it out?

22          THE COURT:  I will probably take out this paragraph,

23  but as I said a moment ago, I will look at the reasonable

24  foreseeability section first before I decide for sure.

25          MR. QUIGLEY:  Thank your Honor.

1          Then our next substantive comments on the material

2     facts section on Page 30, material facts on Page 30, really it

3     is on Page 31 and it is the paragraph beginning a material fact

4     is the one that a reasonable person or reasonable investor

5     would consider important in making his or her investment

6     decision.  Here the indictment charges a fraud on both the

7     purchasers of the securities, the pension funds, but more

8     directly the sellers of the securities in terms of the WLCC.

9     So I think the investor language should be replaced with,

10    "person" and --

11          THE COURT:  Just a material fact is one that a

12    reasonable person would consider important in making his or her

13    investment decision?

14          MR. QUIGLEY:  A decision in connection with purchase

15    or sale of securities.

16          THE COURT:  Making his or her decision in connection

17    with the purchase or sale of securities, is that what you said?

18          MR. QUIGLEY:  Yes, or decision regarding the purchase

19    and sale of securities, but something that doesn't refer to

20    just an investment decision.

21          MR. SCHWARTZ:  I don't think that is right.  The case

22    law on securities fraud is unanimous, and using the reasonable

23    investor language, and there are often cases where the alleged

24    misrepresentations were made to an issuer or a seller of

25    securities.  So the locution, I take it the point the locution

I6MJGAL1                    Charge Conference

1   is a little bit weird, but the legal standard is just

2   unambiguous.

3          If you want to say in here the alleged misstatements

4   were directed towards the WLCC and the customers of Atlantic

5   and Hughes, I don't have a problem with that.  The legal

6   standard is the reasonable investor standard.

7          MR. QUIGLEY:  The statute deals with the fraud in

8   connection with the purchase and sale of securities.  Here we

9   allege both purchase and sellers were defrauded.  I think it is

10  confusing to speak only of the purchaser.

11         THE COURT:  Is the WLCC not an investor?  Tell me

12  factually how this would be confusing for the jury.

13         MR. QUIGLEY:  Because they didn't invest any of their

14  own money.  The point was they were induced to issue bonds.

15         THE COURT:  They were invested in an annuity?

16         MR. QUIGLEY:  They thought, your Honor, I think, I

17  think reasonable person would just be more -- we are not going

18  to obviously argue that there was -- I think it is confusing

19  to, given the facts.

20         Yes, I take your point they were investing in an

21  annuity or they were told they were going to invest in an

22  annuity.  When I read this at first glance and being familiar

23  with the case for the last six months, I read it as somebody

24  who's buying the Wakpamni bonds, which is only the -- and the

25  jury is not as steeped in the case as people here, will be

I6MJGAL1                         Charge Conference

1   similarly confused.

2            THE COURT:  I think the language you cited, Mr.

3   Schwartz, is accurate and what is used in the case law.  Tell

4   me again what you would propose in terms of adding language to

5   clarify this?

6            MR. SCHWARTZ:  To the extent you believe that is

7   somehow confusing -- I don't believe it is -- then if -- and

8   this is throughout the charge.  It is already in there, and I

9   think if you look, you'll see that it is already in there.  If

10  you want to be clear that in this case the alleged

11  misstatements are directed towards the customers of Atlantic

12  and Hughes and the WLCC, then that is fine.

13           I do want to be clear about one thing.  While the WLCC

14  did believe that they were investing in an annuity, the annuity

15  is not a security upon which the securities fraud charge here

16  is based.

17           MR. QUIGLEY:  Right.

18           THE COURT:  That is a fair point.

19           MR. QUIGLEY:  I agree with Mr. Schwartz on that.

20           That goes to our point that the security at issue here

21  is the bonds.  So it is fraud in connection with the purchase

22  or sale of the WLCC bonds.  Frankly, I think that supports kind

23  of neutralizing this language and talk about persons and not

24  investors.

25           MR. SCHWARTZ:  You can say a reasonable investor,

I6MJGAL1                    Charge Conference

1    comma, which could be a buyer or seller or buyer and issuer or

2    something like that.

3         MR. QUIGLEY:  I guess similarly in the second -- I

4    have struck out here in this section any time it says investor,

5    person.  Then the other change I would have is in the paragraph

6    beginning in considering whether a statement or omission was

7    material, the second sentence of that paragraph, it does not

8    matter whether the actual person who purchased or sold the

9    bonds to capture the WLCC and again the statutory language

10   regarding fraud in connection with the purchase or sale of a

11   security.

12        MR. SCHWARTZ:  I don't have a problem with purchase or

13   sold.  Again it ought to say investor and not person.  I think

14   the government is inviting error by suggesting your Honor use

15   reasonable person instead of reasonable investor, which is the

16   standard.

17        THE COURT:  Is there a way to clarify who the investor

18   was to make it just for Mr. Schwartz's point?  Is there a

19   clause we can put in after reasonable investor to avoid any

20   confusion?

21        MR. SCHWARTZ:  Correcting the sentence that the

22   government was just concentrating on probably does it if you

23   say it does not matter whether the actual investor who

24   purchased or issued the bonds.

25        MR. QUIGLEY:  Then maybe a sentence after the first

1    full paragraph on that page beginning with material fact,

2    something after that sentence.

3              Here the government alleges that the investors are

4    both the WLCC who issued the bonds and the pension funds on

5    whose behalf, the pension fund clients of Hughes and Atlantic

6    on whose behalf the bonds are purchased.

7              THE COURT:  We would leave the material fact paragraph

8    alone, but then we would add a sentence at the end that says

9    here the government alleges that the investors are both the

10   WLCC which purchased the funds.

11             MR. QUIGLEY:  Issued the bonds.

12             THE COURT:  Sorry.  Who issued the bonds.  I am sorry.

13   I misspoke.  WLCC which issued the bonds and the pension fund

14   clients of Hughes and Atlantic on whose behalf the bonds were

15   purchased?

16             MR. QUIGLEY:  Certain of the bonds were purchased.

17             THE COURT:  On whose behalf certain of the bonds were

18   purchased.  Is that right?

19             MR. QUIGLEY:  Yes.

20             MR. SCHWARTZ:  Say it one more time.

21             THE COURT:  We add a line that says here the

22   government alleges the investors are both the WLCC which

23   purchased the bonds and the pension fund clients of Hughes and

24   Atlantic on whose behalf --

25             MR. TOUGER:  (Inaudible)

1              MR. SCHWARTZ:  Issued.

2              THE COURT:  What did I say?

3              Here the government alleges the investors are both the

4    WLCC, which issued the bonds.  I am sorry if I misspoke, I am

5    reading from the transcript, and the pension fund clients of

6    Hughes and Atlantic on whose behalf certain of the bonds were

7    purchased.

8              MR. QUIGLEY:  I am thinking out loud about this.

9              THE COURT:  I can print that line that you just read

10   if that is helpful.

11             MS. NOTARI:  That would be helpful.

12             THE COURT:  Can you print that line and hand it to all

13   of them?  Thanks.

14             MR. QUIGLEY:  Instead of here the government alleges,

15   and I know I suggested that language, I would propose an

16   introductory clause in assessing materiality, the relevant

17   investors are the WLCC who issued the bonds and the pension

18   fund clients.

19             MR. SCHWARTZ:  Well, it is always -- thank you -- it

20   is always a little difficult when we start wordsmithing like

21   this, but it is important to ground the charge in the facts so

22   the jury knows what we are talking about.

23             When you talk about materiality, it is the

24   hypothetical reasonable investor and not these particular

25   investors, so I worry about having too much in this part of the

1   charge connected to the specific facts in the case.  If the

2   government thinks there is something confusing again, I don't

3   think it is confusing, and I think it could be corrected by

4   referring generally, as I said, to investors who were

5   purchasers or issuers.

6          If something more specific your Honor believes is

7   necessary, that is fine.  When this section becomes too

8   fact-bound, you really risk confusing the jury in the other

9   way, which is suggesting that materiality is subjective when it

10  is objective, and that is the whole purpose of this section of

11  the charge.

12         MR. QUIGLEY:  Give us one second, your Honor.

13         THE COURT:  Sure.

14         (Pause)

15         THE COURT:  I will note that I am not going to charge

16  on the defense theory of the case, and for the same reason it

17  may be appropriate to stay away from what the government

18  alleges for the same reason.

19         MR. SCHWARTZ:  I am not sure I understand that.  The

20  charge talks almost exclusively about what the government

21  alleges.

22         THE COURT:  It talks about what is in the indictment.

23         Beyond what is in the indictment, I am not marshaling

24  the evidence.  I am just saying what the indictment alleges,

25  which is what they have to decide whether it is proven or not,

I6MJGAL1                    Charge Conference

1    but I think once I get into saying what the government alleges

2    this, when I am not going to do the same with respect to what

3    the defense case is, what the defendant's position is, that may

4    be troublesome.

5              MR. SCHWARTZ:  Two things to that.

6              One is that I would ask for an opportunity to talk to

7    my co-counsel and see if we can propose language that meets

8    that concern, and the second is if your Honor nonetheless

9    adheres to that view, I would then feel very strongly that the

10   indictment should not go back into the jury room because the

11   indictment is incredibly fact-bound.  If they have a document

12   back there that is the government's factual allegations spelled

13   out over 30 pages and nothing from the defense, I think that

14   that would be deeply unfair.

15             MR. TOUGER:  Mr. Schwartz brought that up now.  I was

16   going to bring that up later.  Unlike most federal indictments

17   which are very scant on facts, very bland, this one is very

18   fact-intensive, and I think that would make it, as Mr. Schwartz

19   said, very improper to go back into the jury room because it is

20   just the statement of the charges, it is almost like a

21   complaint in some ways.

22             THE COURT:  Look, this is why I asked if you had an

23   objection to the indictment going back when I started today.

24             MR. TOUGER:  When I went back and looked at it, I

25   think it is almost like a complaint more than an indictment.

I6MJGAL1                      Charge Conference

1            MR. QUIGLEY:  It is helpful for the indictment to go

2     back to the jury, your Honor.  It didn't sound like anybody had

3     any objections.  We hadn't focused on it too much especially in

4     a case like this where the jury will be instructed that the

5     indictment is not evidence.  It is simply the allegations that

6     the government has to prove beyond a reasonable doubt, so I

7     think equipping the jury to make the decisions as to whether

8     the government has proven certain allegations, it is helpful

9     for them to have those allegations.

10           MR. TOUGER:  I think it is unfair in this case because

11    it is sort of a rehashing of the government's case in general

12    and it is not just the charges.  If you want to put back the

13    statute, that is another question, but this indictment is not

14    just a restatement of the charges, it is very fact --

15           THE COURT:  What I think is fair, one of two things,

16    either send back the indictment and then do instruct on the

17    defense theory of the case, or I don't send back the

18    indictment.  Obviously, chunks of the indictment are quoted in

19    the charge and they will have the charge, but they won't have

20    the whole indictment.  I think that that is the fair

21    resolution.

22           MR. QUIGLEY:  If we can think about it and let your

23    Honor know later today.  It didn't sound like anybody had an

24    objection earlier today.  We are in the process of redacting it

25    as we speak.

I6MJGAL1                    Charge Conference

1           THE COURT:  Why don't you do this.  Why don't you

2    provide a redacted copy of the indictment to defense counsel

3    later today and to me.  Then just, if you all just let me know,

4    you can let me know Monday morning, but let me know, all of

5    you, if your preference is to have both, that I instruct on the

6    defense theory of the case and I send back the indictment, or I

7    do neither, in which case just the quotes that are contained in

8    the charge will go back with the charge but not the indictment,

9    okay?

10          MR. SCHWARTZ:  Thank you.

11          MR. QUIGLEY:  Back to?

12          THE COURT:  Going back to this language.

13          MR. QUIGLEY:  Yes.  I think in the Taglifari case,

14   your Honor used the reasonable person formulation in the first

15   sentence.  A material fact is one that a reasonable person

16   would have considered important in making his or her investment

17   decision.  I think just for a lead-in sentence saying

18   reasonable person would be appropriate, and then in the next

19   paragraph, as we had suggested, who purchased or issued the

20   bonds, not just who purchased.

21          THE COURT:  If I don't want to change the language

22   from reasonable investor to reasonable person, is there

23   anything else you think I should do in the first paragraph?

24          I will add it.  I will add the "or issued" after "who

25   purchased" in the second full paragraph on 31, but if I think,

1    look, the standard is a reasonable investor, is there anything

2    else I can do to clarify that?

3              MR. QUIGLEY:  Then instead of investment decision, at

4    least in one of the investment decision statements, we would

5    say decision regarding the sale or purchase of securities to

6    make it -- because both of those are investment decisions.

7              MR. SCHWARTZ:  Say it again.

8              MR. QUIGLEY:  Instead of investment decision, a

9    decision regarding the sale or purchase of securities, which

10   are both adding forms of investment decisions, but it is a

11   little bit broader.

12             MR. SCHWARTZ:  That is fine.

13             THE COURT:  So the first line, the first full

14   paragraph, would read a material fact is one that a reasonable

15   investor would consider important in making his or her

16   investment decision regarding the sale or purchase of a

17   security or securities?

18             MR. QUIGLEY:  Of securities.

19             THE COURT:  Does anyone have an objection to that?

20             MR. SCHWARTZ:  No, your Honor.

21             THE COURT:  Why don't we do that and then we'll add

22   "or issued" in the next paragraph after, "who purchased or

23   issued."

24             MR. QUIGLEY:  On the conspiracy charge, Page 40, in

25   the first section, conspiracy to commit securities fraud, the

I6MJGAL1                        Charge Conference

1   sentence beginning on Page 40, however, you must find each

2   defendant not guilty of conspiracy unless the government proves

3   all elements of conspiracy beyond a reasonable doubt.  I think

4   the issue here is each defendant.  The jury is instructed

5   elsewhere to consider each defendant separately.

6           THE COURT:  Why don't we say, however, you must find

7   the defendant you are considering not guilty of conspiracy

8   unless the government proves all of the elements of a

9   conspiracy beyond a reasonable doubt, okay?

10          MR. QUIGLEY:  That is fine with us.

11          THE COURT:  Off the record.

12          (Off-the-record discussion)

13          THE COURT:  Go on.  Back on the record.

14          MR. QUIGLEY:  That is all we have, your Honor.

15          THE COURT:  Okay.  Defense counsel?

16          MR. QUIGLEY:  Just to clarify on deliberations of the

17  jury, you indicate you are going to send back the exhibits?

18          THE COURT:  Am I going to send back the exhibits?

19          MR. QUIGLEY:  Yes.

20          THE COURT:  Yes.

21          MR. QUIGLEY:  We'll start getting that ready now.

22          THE COURT:  Right.

23          MR. SCHWARTZ:  I have one comment on that.

24          When we had discussed this before, I think we had said

25  that you would include language making clear to the jury

1    although they were getting all of the exhibits, they could

2    still ask questions about specific exhibits.

3              THE COURT:  I thought I did that, but maybe --

4              MR. SCHWARTZ:  It could be me.  I am worried about if

5    the jury remembers one particular bit of evidence, but they

6    didn't write down what exhibit it is.  We lose two days as they

7    go searching for something that someone remembers.  That is

8    why, honestly, it is better not for all the exhibits to go back

9    and they can just ask for whatever they want.

10             THE COURT:  I will send them all back what I added,

11   but I am happy to add in more language if you like, Page 52 and

12   3 A, right to see evidence in communication with the Court. You

13   are about to go into the jury room and begin your

14   deliberations.  I will send back all the exhibits to the jury

15   room, but feel free to ask for any items as well.

16             Do you want me to clarify that?

17             MR. SCHWARTZ:  "If you need help locating any specific

18   exhibits" or whatever, your Honor.

19             THE COURT:  If you want to ask for specific items --

20             MR. SCHWARTZ:  In other words --

21             THE COURT:  You may have trouble locating?

22             MR. SCHWARTZ:  It makes it clear you can ask for

23   something else, but you can ask for us to help you with what we

24   have stuck in there.

25             THE COURT:  I will just say please feel free to ask

1    for specific items you may have trouble locating.

2              MR. QUIGLEY:  That is fine.

3              THE COURT:  Any other objections from defense counsel?

4              MR. SCHWARTZ:  I have a few comments.

5              THE COURT:  Go ahead.

6              MR. SCHWARTZ:  Would you prefer I go through the pages

7    or talk first about the charges that your Honor did not include

8    that I would like to revisit?

9              THE COURT:  Either way.

10             MR. SCHWARTZ:  Let me talk about the big, some of the

11   big-picture issues first.

12             One, your Honor did not include a multiple

13   conspiracies charge.  In this case the government charged a

14   multi -- not technically a multi-object conspiracy, but they

15   charged a conspiracy that had two distinct acts of securities

16   fraud as its objects:  One, the undisclosed conflicts to the

17   investors of Atlantic and Hughes; and  two, the

18   misappropriation of the WLCC bond funds.  I think there is more

19   than ample evidence for a jury here to determine that those

20   were entirely separate conspiracies, so I think it is

21   appropriate to give that charge here.

22             THE COURT:  Do you want to be heard?

23             This actually, I am happy to hear you out today and if

24   you want to submit a letter on this, I am happy to read your

25   letters if you think that would be useful.  If there is nothing

1    that you want to add, this is sufficient.

2              MR. QUIGLEY:  We are happy to put in a letter.  I

3    think this kind of dovetails with the reasonably foreseeability

4    argument.  The defendants on trial, the issues of Atlantic and

5    Hughes were not reasonably foreseeable to them, that is not the

6    basis the jury can convict them on the conspiracy.  I don't

7    think there is a basis or a multiple conspiracies charge is

8    appropriate here.  If you want to hear from us in a letter, we

9    are happy to do that.

10             THE COURT:  I think on this issue, I don't think I

11   need to hear you out on any other issue in writing, but on the

12   multiple conspiracy issue, it would be helpful to get a letter.

13             MR. SCHWARTZ:  We are happy to do it.

14             Just so Mr. Quigley has the benefit of my initial

15   reaction when he puts in his letter, the argument he just made

16   is circular, right, because you only get to reasonable

17   foreseeability if you already determine that there was a

18   conspiracy and that this was an act in furtherance of the

19   conspiracy by a co-conspirator.  You can't consider that in

20   determining whether there was a conspiracy and what the

21   conspiracy was in the first place.

22             Here the question is, was there one conspiracy or were

23   there multiple conspiracies, and the reasonable foreseeability

24   issue we were talking about doesn't feed into that.  That goes

25   into whether there was a meeting of the minds and what the

1    conspirators allegedly agreed to.  So we should just bear that

2    in mind when we submit our letters.

3           MR. QUIGLEY:  To that, I think this would be frankly a

4    closer question if perhaps -- we'll put it in writing.

5           THE COURT:  All right.  If you can both get your

6    letters by Monday, that would be helpful.  I don't obviously

7    expect the charge to be before Wednesday earliest, but still.

8           MR. QUIGLEY:  That is fine.

9           MR. SCHWARTZ:  Next, your Honor has chosen not to

10   include a separate charge on the fact that the jury cannot

11   infer guilt from association or guilt as a result of position.

12   That concept --

13          THE COURT:  I think I do have the concept of guilt by

14   association in the charge.

15          MR. SCHWARTZ:  It is there, but only in respect of

16   specific things.  You can't infer that someone joined a

17   conspiracy just because they were adjacent to it.  I will talk

18   about some of my specific comments.

19          Given the way the evidence has come in here, it is

20   appropriate to have those two charges, especially the guilt by

21   virtue of position, which is not there at all.  That is

22   particularly important in light of the sort of countervailing

23   issue, which is that your Honor has chosen to include a

24   conscious avoidance charge.

25          I think that that is, with respect, not appropriate on

1    the facts of this case.  There is no factual predicate here for

2    giving that charge.  There is no fact that I think the jury has

3    been presented any evidence about that there is an argument

4    that any defendant willfully blinded themselves to it.

5            If the government thinks otherwise, we invite them to

6    proffer what that is, but that evidence has not been presented

7    to the jury.  This is a straight case about active knowledge on

8    the government's part and on the part of the defendants.  They

9    didn't know and they were duped or at least with respect to Mr.

10   Archer.

11           So I don't think conscious avoidance plays any part in

12   this case.  I don't think there is a factual predicate for it,

13   but if the government makes a proffer, and your Honor

14   determines otherwise, it is particularly important to have

15   those other two charges in there because certainly the jury

16   should not be in a position of not being presented the complete

17   understanding of the law there, which is in cases where there

18   is an appropriate factual predicate for conscious avoidance,

19   you still cannot infer guilt by virtue of association or

20   proximity or position, and there has been a lot of evidence

21   about proximity and position, and my view is no evidence of

22   conspiracy or criminal intent.

23           MR. QUIGLEY:  Taking those in response in order, your

24   Honor, on Page 45 of your charge, it adequately discusses the

25   mere presence, mere association is not a sufficient basis to

I6MJGAL1                    Charge Conference

find membership in a conspiracy.  I don't think a stand-alone

charge about position or anything like that is necessary.

On a conscious avoidance, we think it is entirely

appropriate in this case.  I would point the court, I

appreciate the court has included it, but the Cuti case, 720

F3d. 453, 464 and 465, discusses how the elements certainly,

the first element of conscious charge is that knowledge is in

dispute.  Here, as your Honor has said and is true, knowledge

is whether the defendants knew they were participating in a

scheme with respect to these bonds is the critical issue in

this trial.  I think there are, with respect to the second

element --

MR. SCHWARTZ:  Hold on a second.  I don't mean to

interrupt.  That is not a fact one can consciously avoid.

One cannot consciously avoid knowing they were part of

a scheme to misappropriate the proceeds of the bonds.  That is

an element of conspiracy which your Honor instructs is not

susceptible to conscious avoidance.  There has to be an active

meeting of the minds, active intent to join the conspiracy.

Similarly, with respect to the substantive securities

fraud, there has to be intent to deceive, intent to defraud,

which is also not susceptible to conscious avoidance.  That

only comes into play with respect to facts, and that is what I

don't understand the government's theory what fact --

MR. QUIGLEY:  The Cuti case uses an example.

1          For example, in a securities fraud case, if a

2    defendant attended meetings that were part of the charged

3    scheme, it argued he lacked the requisite scienter because he

4    didn't read in full the documents he signed.  The charge is

5    appropriate.  That is similar to the facts in this case.

6          Another quote from the Cuti case, purported knowledge

7    despite the defendant's deep involvement in the transactions

8    that effectuated the fraud all but invited the conscious

9    avoidance charge.

10          Here we have John Galanis who is at the forefront of

11    the fraud, he is involved in drafting these documents and

12    claiming that he -- he claims he was entitled to a finder's

13    fee, which is nowhere in the documents.  That in and of itself

14    supports a conscious avoidance charge.

15          With respect to Mr. Archer and Cooney, there is

16    evidence he was aware Jason Galanis didn't just have 15 or $20

17    million to give it to buy bonds.  We saw emails about the need,

18    for Galanis' need for discretionary liquidity, his summer cash

19    hole, about investing, suggesting the bond proceeds were going

20    to be invested in his apartment, and that was an email from Mr.

21    Archer, that bond proceeds would be invested in Wealth

22    Assurance Holdings.

23          While those facts certainly support an inference of

24    actual knowledge that they participated in a fraudulent scheme,

25    again in the Cuti case and other decisions in the Second

I6MJGAL1                       Charge Conference

1    Circuit has been very clear those same facts can support a

2    predicate for conscious avoidance charge.  Given the disputed

3    issues about knowledge in this case and the defendants'

4    involvement in the transactions that effectuated the bond

5    fraud, we don't think this is a close question on conscious

6    avoidance.

7             MR. SCHWARTZ:  The issue is the second part of the

8    conscious avoidance test.  Of course, there is no disagreement

9    we are contesting knowledge.  The question is whether there is

10   any evidence of conscious avoidance.

11            The thing Mr. Quigley just said, I don't think they

12   actually support the inferences he is drawing, but those are

13   all evidence of actual knowledge, not conscious avoidance.

14   Nothing what was just said is suggesting conscious avoidance.

15            There was a reference to not reading documents or

16   something like that.  That is not conscious avoidance.  I point

17   your Honor to United States against Tusman, in which Judge

18   Gardephe in December refused to give a conscious avoidance

19   theory and expressly distinguished this exact argument the

20   government was making about Cuti, and what he said was it has

21   to be consciously avoided.

22            It is not just I was really busy, I was flying around

23   the world, I had a lot of going on, I do M&As.  It has to be

24   more than that.  It can't be just I'm busy.  That is the

25   argument we have put forward.  I will hand up to your Honor the

1    extensive discussion on the record in the Tusman case where

2    Judge Gardephe talked about this and distinguished all the

3    cases, and he ultimately didn't give that charge.  There is

4    simply no factual predicate here.

5             MR. QUIGLEY:  In reading documents from the Second

6    Circuit in Cuti, they said in a securities fraud case, if a

7    defendant attended meetings as part of the charged scheme, he

8    argues he lacked the requisite scienter because he didn't

9    bother to read in full the documents he signed, the charge is

10   appropriate.  Cuti, C U T I, citing United States versus

11   Ebbers, 458 F.3d at 124 and 125.

12            Here with respect to the second part of the conscious

13   avoidance charge, the facts in dispute are the defendants know

14   the bonds proceeding were going to be misappropriate.  Did they

15   know they were participated in a fraud?  There are facts that

16   clearly put them on notice of that that we have outlined.

17            Many of the emails we read in, John Galanis'

18   participation in drafting the documents for the bonds, aware

19   there was no $2.3 million finder's fee due to him under those

20   documents and, yes, Mr. Schwartz is right, those facts could

21   also support actual knowledge, but again the Second Circuit in

22   Cuti discusses this as well.  It has been clear the same facts

23   can support actual knowledge can be used as --

24            THE COURT:  I think what would be useful, I know you

25   have a lot of work to do, in that letter adding conscious

1    avoidance charge and your interpretation of the law, and I will

2    read the cases that you have cited today.

3            MR. TOUGER:  I would just add that as far as

4    Mr. Galanis is concerned, there is only one meeting that

5    involved Mr. Galanis, and that is the first meeting in Las

6    Vegas, and the testimony is clear nothing was decided at that

7    meeting whatsoever.

8            There is no document that John Galanis writes after

9    that, I don't know what they're talking about John Galanis

10   writing.  There is not one document he writes.  He edits and

11   reviews documents, and we are not saying he did.  There is no

12   evidence that John Galanis, nor will I make an argument that

13   John Galanis didn't see or didn't do.  That is not the case

14   here.

15           John Galanis did exactly what he did.  There is no

16   evidence whatsoever that he consciously avoided anything or

17   stuck his head in the sand on anything.  I don't understand

18   where there is no email that we're going to say no, that is not

19   John Galanis.  There is nothing like that here.

20           MR. QUIGLEY:  Among other documents for Mr. Galanis, I

21   refer the court to Government Exhibit 1304, which is the final

22   source of use of funds for the first issuance sent by

23   Mr. Galanis, but obviously we'll put it in a letter.

24           MR. TOUGER:  There is no doubt he sent that letter and

25   that he has knowledge of that.  We are not saying he didn't.

1    He didn't write that.  The evidence is clear Mr. Anderson

2    wrote, wrote most of the documents here.

3            THE COURT:  Why don't you guys put these in your

4    letters with respect to conscious avoidance.  The question I do

5    want to ask, though, is with respect to the proposed charge

6    regarding participation from association.

7            I did give an instruction when the guilty pleas of

8    Morton, Jason Galanis and Hirst were admitted, and I do wonder

9    if I should reiterate something about that, about other

10   defendants.  We have the standard instruction about persons not

11   on trial and you're not supposed to speculate.  Is there

12   somewhere else that I should mention that?

13           MR. QUIGLEY:  There is an instruction, I don't

14   honestly know if it is in here, but is often given with

15   cooperators.

16           MR. TOUGER:  It is in there.

17           MR. QUIGLEY:  It says that if somebody else pled

18   guilty --

19           THE COURT:  But that is only in the cooperator

20   section.  I wonder, we can take out -- maybe we have a

21   different section -- we can take out that line that is not

22   duplicative from the cooperator section and just have a line

23   about the fact you have heard testimony about certain

24   individuals who have pled guilty to related offenses and then

25   essentially reiterate what I said during the course of the

I6MJGAL1                    Charge Conference

1   trial.

2                MR. QUIGLEY:  I think we would be fine with that.

3                The decision of a witness to plead guilty was a

4   personal decision about his or her own guilt and may not be

5   used against you in any way as evidence.  I would say just

6   given that it came in as 806 evidence, as impeachment, it says

7   here against or unfavorable to any defendant.  I would say

8   favorable or unfavorable to any defendant inasmuch as it would

9   be inappropriate for the defendants to argue or even suggest

10  that, hey, the really guilty people here plead guilty.

11               That is the one modification we want to make to that

12  instruction.

13               THE COURT:  I will take a look at that and I will

14  distribute a revised draft.  So, Mr. Schwartz, you talked about

15  multiple conspiracies?

16               MR. SCHWARTZ:  So I am not sure we had proposed a

17  separate charge on it, but is a related concept to the multiple

18  conspiracies, but we had proposed language about the need for

19  the jury to be unanimous as to essentially the theory if they

20  were to convict.

21               Perhaps your Honor has solved that in part through

22  adoption of the defense proposed verdict sheet.  We haven't

23  seen a verdict sheet here.  I think it is important that the

24  jury be charged on that concept where the government has

25  multiple different theories, both legal theories and factual

I6MJGAL1                     Charge Conference

1    theories here, and it is critical that the jury understand that

2    they need to be unanimous on one in order to convict.

3              MR. QUIGLEY:  The securities fraud count includes

4    language to that effect, that you must be unanimous on Page 28

5    as to what type of unlawful conduct, if any, you are

6    considering, if any, the defendant you are considering

7    committed.  We don't think any language beyond that is

8    necessary or appropriate.

9              MR. SCHWARTZ:  Where is that?

10             MR. QUIGLEY:  Page 28, under the first element of

11   fraudulent acts, we don't think any -- I am not sure that is

12   necessary, but it is included in many securities charges,

13   and --

14             THE COURT:  It says on the bottom of 28, you must be

15   unanimous as to which type of unlawful conduct, if any, the

16   defendant you are considering committed.

17             MR. SCHWARTZ:  Read in context, though, that is

18   referring to, in essence, which of the subsections of 10b-5 the

19   jury is considering as opposed to the actual sort of theory of

20   fraud.  That language is meant to say you all have to agree

21   either it was a scheme or artifice to defraud or

22   misrepresentation, but half of you can't say it was a scheme or

23   artifice and the other half can't say it was a material

24   misrepresentation.  That is what I take the language to be in

25   there now.

1           There is a broader concept with the way the government

2      has charged this case and the way it will argue this case with

3      numerous different theories of liability.  The jury has to be

4      unanimous as to which one, if any, is appropriate.

5           MR. QUIGLEY:  I think the charge in here is fine

6      as-is.  I don't think anything beyond that is appropriate.  I

7      think, frankly, the verdict form, the defendants' proposed

8      verdict form, in my 11 trials as an AUSA, it is unlike anything

9      I have ever seen.  I don't think the jury has to reach that

10     level of specificity or have special findings even with respect

11     to, say, primary liability and aiding and abetting liability.

12     There is case law saying the jury doesn't have to be unanimous

13     with respect to that.

14          The jury has to be unanimous the fact the defendant

15     committed the offense charged.  They don't have to agree on the

16     precise factual predicate.  There is case law out there

17     supporting that as well.

18          THE COURT:  Do you disagree, just to clarify, do you

19     disagree with Mr. Schwartz's statement that the jury needs to

20     be unanimous on the theory?

21          MR. QUIGLEY:  I disagree with that, yes.  The jury

22     does not need to be unanimous on the theory.  They need to be

23     unanimous whether the defendant committed the offense charged.

24          MR. SCHWARTZ:  That is not right.  Look at the example

25     we were just talking about, the fact there were two alleged

1   sets of victims here, the WLCC and the clients of Atlantic and
2   Hughes.  What if six jurors believe that the WLCC was defrauded
3   and induced into issuing these bonds, and those same six jurors
4   absolutely disagree that there was anything wrong with respect
5   to the clients of Atlantic and Hughes, and the other six jurors
6   have the exact opposite reaction, they believe beyond a
7   reasonable doubt that the clients of Atlantic and Hughes were
8   duped, but not the WLCC.
9           In that case, they would all be unanimous that the
10  defendants were guilty and they would all be unanimous the
11  defendants were innocent, but on the government's theory, that
12  would be sufficient to convict, and that is not right.
13          MR. QUIGLEY:  That is not the law.
14          The case law is a general unanimity instruction is
15  sufficient, there does not need to be special findings about
16  which theory or which facts -- there are numerous cases about
17  this, Shad v.Arizona, 501 U.S. 64, a jury need not be unanimous
18  on the theory of liability.  This is like black letter law.  I
19  don't think Mr. Schwartz is right at all.
20          THE COURT:  All right.  We have added one more topic
21  to your letter, all right?
22          Then I understand you proposed the charges about
23  defendants' position and about internal compliance policies.
24          MR. SCHWARTZ:  I think that is probably no longer
25  relevant since the investment adviser counts are out and those

I6MJGAL1                         Charge Conference

1      defendants are out.

2                THE COURT:  Did you want to go through any specific

3      objections you had?

4                MR. SCHWARTZ:  There are two other big picture things.

5                One, and this is minor but important to me, as I

6      understand it, you're going to send copies of the jury charge

7      back into the jury room.  If that is so, I would ask that your

8      Honor revert to not capitalizing the G in government or

9      capitalizing the D in defendants.

10               THE COURT:  That is fine.

11               MR. SCHWARTZ:  Second, I just want the record to be

12     clear, I do not understand the government in this case to be

13     seeking a forfeiture of any specific assets.  I understand them

14     only to be pursuing, in the event of conviction, substitute

15     assets theory.  In the event that the government is seeking

16     forfeiture of any specific assets, I do ask that be submitted

17     to the jury under Rule 32.2.

18               MR. QUIGLEY:  It hasn't been a focus of mine.  I don't

19     think the indictment contains any specific allegation.  There

20     is a general allegation.

21               MR. SCHWARTZ:  I want to be clear.  I am making the

22     request.  The government has to decide now, otherwise they lose

23     the ability to seek forfeiture of specific assets.

24               MR. QUIGLEY:  We are not seeking forfeiture of any

25     specific assets per the indictment.

I6MJGAL1                    Charge Conference

1                MR. SCHWARTZ:  As to specific counts, some of these

2       are small.  You have under Section H what is and is not

3       evidence.

4                MR. QUIGLEY:  Under general instructions.

5                THE COURT:  Page 10.

6                MR. SCHWARTZ:  The third paragraph you talk about

7       things that are not evidence, including exhibits marked for

8       identification, materials used to refresh a witness's

9       recollection.  I don't know if your Honor wants to make

10      reference here to the various demonstrative aids to the jury.

11               THE COURT:  Sure.

12               MR. QUIGLEY:  That is fine with us, your Honor.

13               THE COURT:  Okay.

14               MR. SCHWARTZ:  I join in Mr. Touger's request in the

15      general instruction about direct and circumstantial evidence,

16      to either include the language that he proposed about

17      essentially the tie goes to the defense when there are

18      different inferences, or there needs to be some other language

19      about such as what we had originally proposed about the fact

20      that there are strong and weak inferences and there are

21      multiple inferences that can be drawn from the evidence, and

22      that is the nature of circumstantial versus direct evidence.

23               THE COURT:  Right now it reads there are times when

24      different inferences may be drawn from the evidence.  The

25      government asks you to draw certain inferences, the defendants

I6MJGAL1                     Charge Conference

1    ask you to draw another.  It is for you and you alone to decide

2    what inferences you will draw.

3            MR. SCHWARTZ:  Right.  Then you go to the example, and

4    the example really only compels one conclusion.

5            THE COURT:  Here I don't have an example after that.

6    This is Page 12, the last paragraph.

7            MR. TOUGER:  That is where the United States v. Glenn

8    says that if there is a tie, it goes to the runner basically.

9            THE COURT:  Yes.

10           MR. QUIGLEY:  We oppose that.

11           THE COURT:  I am not inclined to add that language.  I

12   will read Glenn before I make a decision and then I will look

13   at other charges.

14           MR. SCHWARTZ:  Under L, law enforcement and government

15   employee witnesses, I think it should just be you have heard

16   testimony from a law enforcement official.

17           THE COURT:  That is fine.  That is a good point.  I

18   guess we had the special agent doing the reading, but he didn't

19   really testify.

20           MR. QUIGLEY:  That is why we left it alone, your

21   Honor.

22           MR. SCHWARTZ:  Again I wouldn't want them to be

23   confused about the FINRA witness.

24           THE COURT:  About?

25           MR. SCHWARTZ:  The FINRA witness.

I6MJGAL1                        Charge Conference

1              THE COURT:  That is fine.  I will just say you have

2    heard testimony from a law enforcement official.

3              MR. SCHWARTZ:  So in the cooperating witness charge,

4    in the third paragraph, there is a line, the last line, indeed,

5    it is the law in federal courts that the testimony of a single

6    cooperating witness may be enough in itself for conviction if

7    the jury believes that the testimony establishes guilt beyond a

8    reasonable doubt.

9              Obviously, that is a correct statement of the law, but

10   I submit that on the somewhat unusual facts of this case, it

11   would be really misleading because -- and I don't think the

12   government would disagree -- they could believe every single

13   word that Hugh Dunkerley said, and it would not supply guilt

14   beyond a reasonable doubt as to any of the defendants, and so

15   the suggestion that believing Hugh Dunkerley means conviction

16   is wrong.  In fact, all of us have embraced the truth of, if

17   not everything, certainly the gravamen of Hugh Dunkerley's

18   testimony.

19             THE COURT:  I think that is a fair point in the

20   context specifically of this case, so I will take out that

21   line.

22             MS. NOTARI:  Which line?

23             THE COURT:  On Page 15, the last line, the first full

24   paragraph.  I think we have a similar line in there in the

25   immunity section.

1            MR. SCHWARTZ:  Yes, I agree.

2            MR. QUIGLEY:  That one, there was testimony from Mr.

3    Martin about Mr. Cooney, so I would -- and McMillan about

4    Galanis, so I think that certainly with respect to Mr. McMillan

5    about Mr. Galanis --

6            THE COURT:  Do you think that Mr. McMillan's testimony

7    could convict Mr. Galanis on its own, and the same with respect

8    to Martin for Cooney?

9            MR. QUIGLEY:  Certainly with respect to, yes, I think

10   definitely with respect to Mr. McMillan with respect to John

11   Galanis.  He testified that he was, the way he set up this

12   account and disbursed the bond proceeds, I think that is the

13   standard instruction and it is appropriate there.

14           MS. NOTARI:  I would note the only testimony that Mr.

15   Martin had against Mr. Cooney was that there was a phone call

16   that he received saying Mr. Jason Galanis was arrested in the

17   Gerova case.  That absolutely could not be used to convict Mr.

18   Cooney in this case.  That is ridiculous.

19           MR. QUIGLEY:  I am paraphrasing, but it had nothing to

20   do with the independent bonds or Wakpamni.  I think that is --

21   look, I take -- I realize that in and of itself -- I think a

22   lot about this.  That is probably fine with respect to Cooney.

23           THE COURT:  I note, I know this was cited in a

24   different case suggested and I took it out.  On the specific

25   facts of this case, it is fair to take out that language, and I

1    think since I took it out of cooperation in addition and there

2    is some questions with respect to the particular immunized

3    witnesses here, I am going to take that out.  So that is the

4    last sentence on 16 will read you are instructed the government

5    is entitled to call a witness granted immunity by an order of

6    this Court.

7              Then I will say, however, the testimony -- just say

8    the testimony of such a witness should be examined closely to

9    determine whether or not it is colored in such a way as to

10   place guilt upon the defendant in order to further the

11   witness's own interests.  If you believe the witness's

12   testimony to be true and determine to accept the testimony, you

13   may give it such weight, if any, as you believe it deserves.

14             MR. QUIGLEY:  That is fine with us.

15             THE COURT:  That is what the immunized witness charge

16   is going to read.

17             MR. SCHWARTZ:  Then still the general instructions, X,

18   we talked a little bit about deferring on the investigative

19   techniques, which I am fine on.  The use of recordings, text

20   messages and emails charge I think should come out.

21             If it stays in, it needs to be changed.  It has been

22   the defense in this case, which has introduced text messages at

23   least first, not solely, has introduced recordings and things

24   like that, and so if this charge is going to stay, it needs to

25   be balanced.  I would suggest it come out.  I don't think

I6MJGAL1                         Charge Conference

1    anyone is going to argue that any of the evidence in this case

2    was improperly obtained.

3              THE COURT:  Do you agree with that, given both sides

4    used the same kind of evidence?

5              MR. QUIGLEY:  I do to some extent.  I considered

6    raising this.  My issue is that given kind of most, if not all,

7    but many of the recordings and emails the defendants have

8    introduced have been their own statements.  Obviously, the

9    government got its emails and text messages through.

10             THE COURT:  I will take out the fact it was the

11   government that used this evidence.  The use of this evidence

12   is entirely lawful.

13             (Continued on next page)

14

15

16

17

18

19

20

21

22

23

24

25

1           MR. QUIGLEY:  That's fine with us.

2           MR. SCHWARTZ:  You can wait until after the closings.

3     I suggest it should come out.  I have tried to keep this issue

4     out.  I spoke to the government, and we even redacted the Bates

5     numbers that referenced the search warrant.  I just don't think

6     that has a place in this case.

7           MR. QUIGLEY:  I just think, your Honor, all that's out

8     there with massive state surveillance, there may be a juror who

9     is hung up about that.

10          THE COURT:  I will think about that.

11          MR. SCHWARTZ:  It that juror exists, they are not

12    going to be overcome by --

13          THE COURT:  In any event, I will take out the

14    reference to the government's use.  I will just say "the use is

15    entirely lawful," so it will apply to both parties.

16          MR. SCHWARTZ:  Then under substantive instructions,

17    2B, "summary of the indictment," so in the, I guess, fourth

18    paragraph the one that begins "the indictment alleges," I'm

19    using the red line, so my page numbers don't work.  I'm sorry.

20    So just tell me --

21          MS. NOTARI:  24.

22          MR. SCHWARTZ:  Tell me when you are there.

23          THE COURT:  Yes, page 24.

24          MR. SCHWARTZ:  So six lines down, there is a

25    reference, it says, "And to fraudulently cause clients of

1    investment advisory firms to buy certain of those bonds."  I

2    would ask that "investment advisory firms" to be changed to

3    reference specifically Atlantic and Hughes.  Again, I don't

4    want there to be any confusion with the other investment

5    advisors, especially Burnham Asset Management.

6              MR. QUIGLEY:  That's fine with us.

7              THE COURT:  I'm sorry.  What did you say?

8              MR. QUIGLEY:  That's fine with us, the change, to use

9    the firms Hughes and Atlantic.

10              THE COURT:  Okay.

11              MR. SCHWARTZ:  There is, in the knowledge, intent, and

12    willfulness charge for securities fraud, there is -- the final

13    paragraph is essentially conscious avoidance.  Obviously if

14    conscious avoidance comes out, that should come out.  I suggest

15    it should come out as repetitive anyway.

16              MR. QUIGLEY:  Sorry, what paragraph?

17              MR. SCHWARTZ:  It is the last paragraph of knowledge,

18    intent, and willfulness.  And I think it is -- I think it is

19    very confusing there, and I think conscious avoidance generally

20    is very confusing in fraud cases where the mental state

21    required to convict is knowledge, intent, and willfulness, and

22    so to end this part of the charge and the conscious avoidance

23    note suggests that conscious avoidance is sufficient for the

24    jury to find the requisite mental state to convict on

25    securities fraud, and that's plainly not the law.  Conscious

I6m2gal2                     Charge Conference

1    avoidance relates only to knowledge, but not to intent or

2    willfulness.  You can't consciously avoid intending to defraud

3    someone.  You can't consciously avoid willful misconduct.  So

4    even if conscious avoidance stays in as a charge, I believe

5    that that paragraph should be removed.

6         THE COURT:  All right.  I will consider that when I

7    consider, you know, your conscious avoidance letters.

8         MR. SCHWARTZ:  Then in the conspiracy charge, under

9    the second element, looking at the fourth paragraph beginning

10   "it is not necessary for the government to show."

11        THE COURT:  All right, or the last paragraph on page

12   44.

13        MR. SCHWARTZ:  Five lines down there is a sentence

14   that begins "in fact, a defendant may know only one other

15   member of the conspiracy."

16        THE COURT:  Yes.

17        MR. SCHWARTZ:  I think that that should not be "know."

18   A defendant may have conspired with only one other member of

19   the conspiracy."  But that sort of goes to the same point that

20   I was making before about guilt by association, but especially

21   if that charge is not going to be in there as a standalone, it

22   is important to distinguish between simply knowing someone.

23   There is no dispute that these defendants knew at least certain

24   of the admitted conspirators.  And having conspired --

25        THE COURT:  Got it.

1    MR. QUIGLEY:  I think in context, Judge, that the

2    instruction is clear and they still have to find that they

3    joined the conspiracy.  This is about their knowledge.  I think

4    it is a standard charge.

5    THE COURT:  We can say "the fact the defendant may

6    know and conspire with only one other member of the conspiracy

7    it may still be considered."

8    MR. TOUGER:  I think and know and conspire has to be

9    in.

10   THE COURT:  Anything else?

11   MR. SCHWARTZ:  There is language in here and right now

12   I am only finding it in the context of the conscious avoidance

13   charge, but it is elsewhere, talking about essentially the

14   absence of bad faith, where it says "it is not sufficient to

15   show the defendant was merely negligent, foolish, or mistaken,"

16   and I think in this case, at least with respect to two of the

17   defendants, a theory of the defense is that they were actively

18   deceived, and I would add that that concept be included to the

19   list of things that are insufficient.

20   MR. QUIGLEY:  Sorry, what are we looking at?

21   MR. SCHWARTZ:  I'm fine.  I can put in a letter.

22   THE COURT:  He wants the concept somewhere in the

23   charge about the fact that two defendants were actively

24   deceived and/or that guilt by association is not enough or

25   guilt by virtue of your position in your company is not enough.

I6m2gal2                    Charge Conference

1    I know there is a good faith exception.

2              MR. QUIGLEY:  If there is a good faith exception, your

3    Honor, then, again, the "mere presence" language I think is

4    encompassed in the general -- in the conspiracy charge.

5              THE COURT:  All right.  I'm going to look at the

6    charge as a whole and see if there is anywhere that it is

7    appropriate to put those concepts in.

8              MR. SCHWARTZ:  And then finally, on the "duty to

9    deliberate" charge, at the end, and I appreciate that this is

10   likely your Honor's standard charge --

11             THE COURT:  It's a lot of judges' standard charge.

12             MR. SCHWARTZ:  Yes.

13             There were three sentences at the beginning of the

14   third paragraph that I think had been, I believe, agreed to by

15   both parties, if I recall, in the original joint requests to

16   charge that I think ought to be restored.  They said -- this is

17   the paragraph that now begins "it is your duty as jurors to

18   consult with one another."

19             THE COURT:  Yes.

20             MR. SCHWARTZ:  Before that it said, "The verdict must

21   represent the considered judgment of each juror.  In order to

22   return a verdict, it is necessary that each juror agree to the

23   verdict.  Your verdict must be unanimous."

24             THE COURT:  I'm happy to add that.  I do think that is

25   in here, but I'm happy to add it and have it be a little

1    repetitive.

2              MR. SCHWARTZ:  Thank you, your Honor.  That's all I

3    have.

4              THE COURT:  So I will get the letter -- obviously,

5    Ms. Notari, if you have anything you want to add --

6              MS. NOTARI:  I just want to make sure the record

7    reflects that we join in all of Mr. Schwartz's objections.

8              THE COURT:  Mr. Touger, do you have anything you want

9    to add.

10             MR. TOUGER:  No.  I think I have said everything.

11             THE COURT:  So the letter I want you to address

12   multiple conspiracies, I want you to address conscious

13   avoidance, and then I want you to address the unanimity point

14   which bears on the verdict sheet in particular.  It may also

15   bear on the charge, but what do we really need to know from

16   them or not.  And then, as I said, there are a couple small

17   things I will think about, and I will send you an updated

18   draft, but we will be thinking about if there is anywhere there

19   that it is appropriate to add in the notion of guilt by

20   association or position.  And, again, you are going to let me

21   know about the indictment and the defense theory or neither.

22   As I noted earlier, I'm inclined to do either neither or both.

23             MR. QUIGLEY:  If you are going to send the charge back

24   that has the statutory allegations --

25             THE COURT:  Exactly, I think it has all the overt acts

I6m2gal2                        Charge Conference

 1   in it, right?

 2           MR. QUIGLEY:  It does in the statute.

 3           MR. SCHWARTZ:  Is that the government expressing a

 4   preference for neither?

 5           MR. QUIGLEY:  No.  We are just make sure we were aware

 6   of all the options.

 7           MR. SCHWARTZ:  We are going to get a proposed redacted

 8   indictment first so that we can consider this issue in the --

 9           MR. QUIGLEY:  Why don't we -- we will decide and

10   rather than spending -- if we decide not to send the indictment

11   back, rather than spending hours redacting it, we will just let

12   everyone know that.

13           MR. SCHWARTZ:  Okay.  We will talk, too.  We may

14   prefer to do it the other way, but we will talk.

15           THE COURT:  You can talk and take a close look at the

16   charge and what from the indictment is in the charge and then

17   think about is that sufficient if I were not to send the

18   indictment back, but then I also wouldn't present the defense

19   theory of the case in the charge.

20           MR. QUIGLEY:  Okay.  I think the one thing I said was

21   in there, but now I realize it may not be, is the overt acts.

22           MR. SCHWARTZ:  I think they are in there.

23           THE COURT:  I think they are in there.

24           MR. SCHWARTZ:  They are quoted in there.

25           MR. QUIGLEY:  Okay.  Fair enough.

1          THE COURT:  Yeah.  Sorry.  I feel like I just looked

2     at them.  Here.  So it is on the bottom of 46, there are six

3     overt acts that were alleged in the indictment.

4          MR. QUIGLEY:  Got it.  Thank you, your Honor.

5          THE COURT:  Okay.  So I will see you on Monday

6     morning.

7          MS. NOTARI:  Your Honor, I just wanted --

8          MR. TOUGER:  What time, your Honor?

9          THE COURT:  9, 8:45 in case there are any issues and

10    there are any other evidentiary issues I need to address.

11         MS. NOTARI:  So these e-mails I am handing you, these

12    exhibits are in addition to what I have given you with the

13    other outstanding issue which was the big round number exhibit.

14    These are some that we are in dispute about.

15         THE COURT:  Okay.

16         MR. QUIGLEY:  Obviously I'm not familiar with what

17    Ms. Mermelstein was reviewing with Ms. Notari.

18         MS. NOTARI:  So I want to hand those up.

19         THE COURT:  Are they hearsay objections just so I know

20    when I read them?

21         MR. QUIGLEY:  I honestly don't know.  That was between

22    Ms. Mermelstein and Ms. Notari.  With respect to Mr. Archer,

23    they did send us, I think, a final list of exhibits that they

24    intend to introduce last night, so we are going through those.

25    There may be a few more objections, so we are trying to work it

1    out in the first instance and let your Honor know.

2              MS. NOTARI:  And I need to review over the weekend

3    what hasn't been put in and also in light of what Mr. Archer

4    put in there may be more.

5              THE COURT:  Again, I need time to review things, so I

6    need to know what the objections are.  I don't want to give you

7    more work to do.  If you can write just a really brief letter

8    just letting me know what's in dispute and what the objection

9    is, you don't have to write a whole brief on every exhibit, but

10   I need to hear that from both of you ideally later today or

11   Saturday so I can look at it before Monday morning.  And attach

12   the exhibits.

13             MS. NOTARI:  Okay.

14             MR. QUIGLEY:  Okay.

15             THE COURT:  If I don't have them you can e-mail them

16   to chambers, that's fine, but whatever is easier for you.

17             MR. QUIGLEY:  Okay.  Thank you.

18             MS. NOTARI:  I think the ones that I have given you

19   are pretty straight forward.  It's just --

20             THE COURT:  That's fine.  I'm going to assume the

21   objection is hearsay, but I will look at them and then I will

22   see you Monday at 8:45.

23             We are going to go all day Monday.  We are going to go

24   into summations.  You all are going to decide who is going to

25   go first, to the extent there is time for a defense summation.

1    Then we are going to do Tuesday from 1 to 5.  That may require

2    us to excuse alternate No. 13, so I want to get your okay on

3    doing that.  We can decide this Monday morning if we have to

4    make her come in, but it seems to me that if we already have

5    three other alternates, that to not spend the four hours on

6    Tuesday would be a shame.

7             MR. QUIGLEY:  Yeah, I don't think we object o that,

8    your Honor, given where we are in the trial.

9             MR. SCHWARTZ:  I think that's fine, given where we are

10   at trial.

11            MR. TOUGER:  I just have to get Mr. Galanis's

12   approval.

13            THE COURT:  So we will decide it Monday morning.

14            MR. SCHWARTZ:  I think the one minor scheduling thing

15   we would ask for, I doubt very much this would be an issue, but

16   on the off chance that on Monday we both complete all of the

17   evidence and the government's principal summation and one

18   defense summation that we be able to start fresh on Tuesday

19   with the second defense summation so no one has to split.

20            THE COURT:  Yeah, I'm not going to make someone split.

21   I don't want to make you split, but I also don't want to waste

22   two hours if you think that you are going to be two hours and

23   15 minutes.

24            MR. SCHWARTZ:  I can't imagine that happening.

25            THE COURT:  So we will see where we are.  And I'm

I6m2gal2                        Charge Conference

1   going to suggest -- I'm going to order them lunch on Monday and

2   take a shorter lunch break, and we can take the short bathroom

3   breaks, but we will keep those short, okay?

4             MR. QUIGLEY:  Okay.

5             MR. SCHWARTZ:  I will hand to your Honor's clerk --

6             THE COURT:  I'm also going to ask them if they can

7   stay a little longer on Monday which may be -- which is my

8   preference.

9             MR. TOUGER:  Just thinking in my head, I think we will

10  be able to get through the government's summation and one

11  defense summation on Monday without trying to work --

12            THE COURT:  If that's the case, then that's fine.

13            MR. TOUGER:  If everything goes as schedule.

14            THE COURT:  Okay.  We will see where we are.  Thanks.

15  Have a good weekend.

16            (Adjourned to Monday, June 25, 2018 at 8:45 a.m.)

17

18

19

20

21

22

23

24

25