

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

November 8, 2018

**BY ECF**

Hon. Ronnie Abrams
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Galanis*, S3 16 Cr. 371 (RA)

Dear Judge Abrams:

    I represent Devon Archer and write to briefly reply to the government's argument, in its letter dated October 31, 2018 [ECF No. 686], that the supplemental authority provided by Mr. Archer was untimely and his objections were unpreserved. In fact, the Court can and should consider Mr. Archer's responses to Your Honor's questions, which pertained to evidence that Mr. Archer timely objected to.

    Following the October 22 oral argument on the defendants' post-trial motions, Mr. Archer submitted supplemental authority concerning two very specific issues raised by the Court: first, whether the Court could consider the extremely short duration of the jury's deliberations; and second, whether the government's introduction of misleading summary charts unfairly prejudiced Mr. Archer. [*See* ECF No. 683.] In its response, the government incorrectly asserts that Mr. Archer's arguments are untimely and his objections unpreserved. But Mr. Archer properly preserved his objections to the summary charts, and provided additional supplemental authority in response to an inquiry from the Court.

    *First*, Mr. Archer timely objected to the introduction of the government's inaccurate and misleading summary charts. Regarding the chart referenced by the Court at oral argument, GX 4011, the government's argument that Mr. Archer "never objected to GX 4011 in any fashion," [*see* ECF No. 686 at 1,] is flatly contradicted by trial transcript:

> Q. And are each of these charts accurate based on the evidence you have reviewed?
>
> A. Yes.
>
> MS. MERMELSTEIN: The government would offer --
>
> MR. TOUGER: Objection. May we approach?
>
> THE COURT: Sure.
>
> MR. TOUGER: I believe all three of us have the same objection to the word accurate. There is no way -- that's a conclusion; there is no proof. As a matter of fact, we say the charts aren't accurate at all in many instances.


>       THE COURT: You can cross-examine her on that.

Tr. 4946:16–2947:6; *see also* Tr. 124:8–10 ("[Defense counsel:] Mr. Archer had made a motion previously that all defendants are joining in all objections and motions. THE COURT: Fine."). Despite arguing that Mr. Archer never objected to GX 4011 "in any fashion," the government quotes this very objection in its letter. [*See* ECF No. 686 at 2.] This alone should put to rest any notion that Mr. Archer did not timely object to the introduction of GX 4011.

Nonetheless, the government seems to argue that, in order to preserve his objection, Mr. Archer needed to provide the government with information about every inaccuracy in its charts. [*See* ECF No. 868 at 8 (criticizing the defendants' "single vague objection" to the charts)]. But to properly preserve his objection, Mr. Archer was not required to describe in detail every inaccuracy in the summary charts. "The objection should be specific enough to alert the trial judge to the proper course of action and to enable the opponent to obviate the objection, if possible." Wright & Miller, 21 Fed. Prac. & Proc. Evid. § 5036.1 (2d ed.).

In this case, the government attempted to introduce all of its summary charts with a single question – which itself was vague and conclusory – asking whether the charts were "accurate based on the evidence you reviewed." *See* Tr. 2946:16–18. The defendants' objection was squarely aimed at the foundation the government tried to lay, objecting to the charts' accuracy and contending that "the charts aren't accurate at all in many instances." The Court then issued a clear ruling – and cut off any further discussion of the nature of the inaccuracies – by admitting the charts and instructing the defendants that they "can cross-examine her on that." This was more than sufficient to preserve accuracy-based objections to the charts. Mr. Archer was also not required to later object to each assertion made by the government witness as she reviewed the charts in front of the jury. *See* Fed. R. Evid. 103(b) ("Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal.").

While Mr. Archer was certainly prepared to describe particular inaccuracies to the Court, the clear indication from the Court – that defendants "can cross-examine her on that" – was that any additional argument was not going to persuade the Court to exclude the chart entirely. Indeed, Mr. Archer's prior experience in informally raising concerns about the summary charts with the government counseled that (a) the government would not agree to any changes to the charts, and (b) the Court expected that the examination of the government witness would clear up any ambiguity in the charts. [*See, e.g.*, ECF No. 868 at 2 (describing Mr. Archer's objections to the use of confusing acronyms and references to Code Rebel); Tr. 2549:1–5 ("THE COURT: If the witness is going to make that clear. . . . Then I'm fine with it as is.").[1]

---

[1] The government criticizes Mr. Archer for not spelling out the precise nature of his objections to the charts' accuracy in advance of their introduction. But the informal exchange of information to try to obviate objections is a fundamentally different process than objections on the record intended to (among other things) preserve error. Because Mr. Archer joined in an objection to the admission of the charts based on their accuracy, he properly preserved his objection on the record.



The government's citations to *United States v. Indi-viglio* and *United States v. Villafuerte* simply show that a "general objection" cannot preserve every conceivable specific objection. [*See* ECF No. 686 at 8 (citing *United States v. Indi-viglio*, 352 F.2d 276 (2d Cir. 1965), and *United States v. Villafuerte*, 502 F.3d 204 (2d Cir. 2007)).] The defendant's general objection to the pretrial proceedings in *Indi-viglio* described "facts bearing upon only one claim – that the defendant was illegally brought into the country by federal agents." *Indiviglio*, 352 F.2d at 279. This objection was not specific enough to preserve an objection to the introduction of statements the defendant made to the FBI in violation of his Sixth Amendment right to counsel. *Id.* at 279–80. In *Villafuente*, the defendant argued that the district court did not properly discharge its duties at sentencing under 18 U.S.C. § 3553. But the defendant "did not object" at all to the district court's application of the 3553(a) factors or his sentence. *Villafuente*, 502 F.3d at 206. The Second Circuit then proceeded to analyze the trial court's application of the 3553(a) factors under a plain error standard. *Id.* Neither of these cases demonstrate in any way that Mr. Archer's contemporaneous objection to the introduction of summary charts as inaccurate somehow failed to preserve his objection to the introduction of those inaccurate summary charts.

*Second*, Mr. Archer provided supplemental authority in direct response to inquiries from the Court. The government argues that Mr. Archer's "eleventh hour effort to manufacture new issues based on a single inquiry from the Court during oral argument is untimely." [ECF No. 686 at 7.] But there are certainly no rules prohibiting the Court from inquiring at any time about any concerns it may have about the trial conducted before it, and a party's response to an inquiry from the Court are not subject to any time limit or procedural limitation. The government certainly does not cite any rules to the contrary. Indeed, Rule 33 is designed in large part to avoid "manifest injustice," *see United States v. Silver*, 184 F.Supp.3d 33, 52 (S.D.N.Y. 2016) ("[On a] Rule 33 motion, the question is not whether there was error in the evidentiary ruling, but whether there is 'manifest injustice' and a real concern that an innocent person may have been convicted." (internal quotation marks omitted)), *cited and quoted by United States v. Snyder*, No. 17-1668-CR, 2018 WL 3342308, at *1 (2d Cir. July 9, 2018)), and it is absolutely appropriate in that context that the Court should be able to voice its own concerns about the quality of the proof at trial, and that the parties should be free to address those concerns.

Furthermore, the Court's inquiry concerned not just the introduction of GX 4011, but the testimony of the FBI Special Agent as well. *See* Oct. 22, 2018 Tr. at 41:15–17 ("THE COURT: I want to talk just for a minute about the testimony of Agent Kendall and the chart and the $900,000 transfer that was really an error by Morgan Stanley."). Separate and apart from the inaccurate and misleading chart itself, the government elicited extremely prejudicial testimony from the FBI Special Agent. As noted by the government, by the time the interest payment shown in GX 4011 was made, "RSB no longer held the bonds." [ECF No. 868 at 2.] This testimony improperly insinuated that Mr. Archer received money he did not deserve. The government's argument that the agent's testimony "made clear that the bond payments had been inadvertently sent to the original bond holder," [*id.*,] cannot be reconciled with the actual testimony – testimony that never used words or concepts like mistake, error, or inadvertence.

The agent testified that "903,000 was sent from U.S. Bank WLCC to RSB," and the government then stated that earlier evidence showed that Mr. Archer transferred bonds "through VL Assurance to Burnham." Tr. 2969:22–2970:2. The government then asked, "At the time [of] these wires in October of 2015, did RSB hold any Wakpamni bonds?" The agent answered,

"No," *id.* 2970:2–4 – suggesting that RSB received and transferred funds to which Mr. Archer was not entitled.  The agent did testify without explanation and in the passive voice that "Wires were reversed" – suggesting, especially given the depiction on GX 4011, that Mr. Archer may have been involved in that transaction – and that money was transferred to current bond holders, but the agent ended her testimony on GX 4011 agreeing that "they basically paid themselves the interest on the bonds." Tr. 2970:5–22.

This is a far cry from a "clear" explanation that the wire to RSB was "inadvertent." The jury heard testimony that Mr. Archer's company received money it never should have and that he, along with other defendants, "basically paid themselves interest on the bonds." The truth, as Mr. Archer explained in his October 27 letter, [*see* ECF No. 683 at 4,] was that Morgan Stanley made a mistake. This mistake did not involve RSB or Mr. Archer at all, and Morgan Stanley both made the error and corrected it entirely within their own system.[2]

In sum, Mr. Archer's October 27 letter was a proper response to an inquiry from the Court, and all of Mr. Archer's objections to the inaccurate and misleading government summary charts were properly preserved.

As before, we remain available to provide the Court whatever other information it may find helpful in resolving Mr. Archer's motions.  Thank you for your consideration.

Respectfully,

 /s/  Matthew L. Schwartz
Matthew L. Schwartz

---

[2] Mr. Archer was also unable to introduce some of the most powerful evidence of the government's approach: the agent's substantially more accurate draft chart. [*See* ECF No. 683 at 6 (discussing 3517-5 at pdf 67).] The government argues that there was no basis to admit the draft chart because the agent testified it "was not accurate." [ECF No. 686 at 9.] However, Mr. Archer offered the draft chart as impeachment evidence and as a prior inconsistent statement under Rule 613(b) – not as a summary chart under Rule 1006.