and everyone just wants to make sure that the inmates are safe and secure. But, you know, I think before the Court orders extraordinary measures, it makes sense to do a little bit of information gathering. We can -- you know, we can try to do -- there is a limited amount of information gathering we can try to do within short order to see what is actually going on and to be able to report to the Court on that to allow the Court to know what is happening, and, therefore, if there is anything else that needs to change, we can discuss it at that time.

THE COURT: Let me just ask you a couple of large questions, Mr. Barnea, just so that I ask them and I know that we are all sort of talking on the same wavelength. I take it that you have no quarrel with the basic proposition that is put forth in petitioners' papers that there is an important constitutional right that they are attempting to vindicate, correct? That they have the right to be in a situation, despite the fact that they are incarcerated, where they are not unduly exposed, or exposed, to an infectious disease of this type, correct? That the Bureau of Prisons has to do everything within its power to make sure that that is not the case?

MR. BARNEA: Well, I would agree, obviously, and I think it doesn't require me to agree with the fact that the Supreme Court and the Second Circuit has held that one of the duties of the Bureau of Prisons is to maintain inmates' health and safety. I would note, however, that this pandemic is